ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Telephone:   (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
michael.menitove@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:   (212) 735-2040

MICHAEL S. BAILEY (*Pro Hac Vice*)
michael.bailey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  (202) 371-7000
Facsimile:   (202) 393-5760

*Attorneys for Defendant*
INTUITIVE SURGICAL, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION** | **Lead Case No. 3:21-CV-03825-VC** |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | Judge:  The Honorable Vince Chhabria<br><br>**DEFENDANT INTUITIVE SURGICAL, INC.'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**<br><br>Date: December 9, 2021<br>Time: 2:00 p.m.<br>Courtroom: 4 – 17th Floor<br><br>Amended Complaint Filed: September 10, 2021 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 9, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Defendant, Intuitive Surgical, Inc. ("Intuitive"), will and hereby does move the Court for an order dismissing the Amended Consolidated Class Action Complaint (ECF No. 52 (the "Complaint")) filed by Plaintiffs Larkin Community Hospital, Franciscan Alliance, Inc., King County Public Hospital District No. 1, DBA Valley Medical Center, and Kaleida Health (collectively, "Plaintiffs").

This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It is based on this Notice, the Memorandum of Points and Authorities below, the files in this action, the arguments of counsel, and any other items the Court may consider.  Intuitive respectfully requests that the Court dismiss the Complaint in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Complaint should be dismissed because it fails to state a claim under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1, 2).

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ..................................................................................................................... 3

    I.      THE COMPLAINT'S ALLEGATIONS .................................................................. 3

          A.     da Vinci System Service ............................................................................. 3

          B.     EndoWrist Instruments ............................................................................. 4

    II.     THE *RESTORE* AND *REBOTIX* LITIGATIONS ................................................. 5

ARGUMENT .......................................................................................................................... 6

    I.      ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED
          BECAUSE THEY FAIL TO PLEAD A RELEVANT MARKET  IN
          WHICH INTUITIVE ALLEGEDLY HAS HARMED COMPETITION .............. 6

    II.     PLAINTIFFS' CLAIMS REGARDING INTUITIVE'S REFUSAL TO
          PROVIDE ACCESS TO ITS PROPRIETARY SERVICE SOFTWARE
          AND THE ENDOWRIST INSTRUMENT USAGE COUNTER
          CONSTITUTE DEFICIENT REFUSAL TO DEAL THEORIES AND
          SHOULD BE DISMISSED ................................................................................. 10

    III.    PLAINTIFFS' CLAIMS REGARDING DA VINCI SERVICE AND X
          AND XI INSTRUMENTS SHOULD BE DISMISSED FOR FAILURE
          TO PLEAD ANTITRUST INJURY BECAUSE PLAINTIFFS'
          INABILITY TO OBTAIN THIRD-PARTY "SERVICE" OR "REPAIR"
          OF THOSE INSTRUMENTS IS FULLY ATTRIBUTABLE TO
          INTUITIVE'S LAWFUL REFUSALS TO DEAL ................................................ 14

CONCLUSION ..................................................................................................................... 15

DEFENDANT'S MOTION TO DISMISS                   LEAD CASE NO. 3:21-cv-03825

# TABLE OF AUTHORITIES

Page(s)

## CASES

*3Shape Trios A/S v. Align Technology, Inc.*,
No. 18-1332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4686614 (D. Del. Sept. 26, 2019) ..........................12

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
592 F.3d 991 (9th Cir. 2010) .........................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................6, 9, 13

*Axis, S.p.A. v. Micafil, Inc.*,
870 F.2d 1105 (6th Cir. 1989) .......................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................6

*City of Pittsburgh v. West Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998)...........................................................................................14

*In re Elevator Antitrust Litigation*,
502 F.3d 47 (2d Cir. 2007)..............................................................................................12

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .........................................................................................11

*Kaufman v. Time Warner*,
836 F.3d 137 (2d Cir. 2016)........................................................................................7, 10

*Kentmaster Manufacturing Co. v. Jarvis Products Corp.*,
146 F.3d 691 (9th Cir. 1998), *opinion amended*,
164 F.3d 1243 (9th Cir. 1999) ..................................................................................7, 8, 9

*LiveUniverse, Inc. v. MySpace, Inc.*,
304 F. App'x 554 (9th Cir. 2008) ...................................................................................14

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, ,
No.  8:20-cv-2274-VMC-TGW, 2021 WL 1227593
(M.D. Fla. Mar. 8, 2021).....................................................................................5, 6, 12, 15

*Restore Robitcs, LLC v. Intuitive Surgical, Inc.*,,
No. 5:19cv55-TKW-MJF, 2019 WL 8063989
(N.D. Fla. Sept. 16, 2019)..................................................................................5, 6, 11, 15

iv

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises, LLC*,
    532 F.3d 963 (9th Cir. 2008) ............................................................................7

*Sidibe v. Sutter Health*,
    4 F. Supp. 3d 1160 (N.D. Cal. 2013) ................................................................7

*Siva v. American Board of Radiology*,
    418 F. Supp. 3d 264 (N.D. Ill. 2019) ................................................................7

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)..........................................................................................11

## STATUTES

15 U.S.C. §1 ................................................................................................... ii, 1

15 U.S.C. §2 ................................................................................................... ii, 1

## RULES

Federal Rule of Civil Procedure 12(b)(6) ..................................................... ii

DEFENDANT'S MOTION TO DISMISS                    LEAD CASE NO. 3:21-cv-03825

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

According to the Complaint, Plaintiffs are hospitals that acquired Intuitive's da Vinci surgical systems and, like all da Vinci customers, entered into contracts agreeing that they would purchase from Intuitive the service necessary to maintain their da Vinci systems and the EndoWrist instruments necessary to perform surgeries with those systems.  Plaintiffs concede that only Intuitive—through its proprietary service software—can provide da Vinci service and that only Intuitive manufactures and sells EndoWrist instruments.  Plaintiffs allege that Intuitive has unlawfully prevented Plaintiffs from purchasing da Vinci "service" and EndoWrist "repairs"—which entail bypassing the usage limits that Intuitive prescribes for its instruments— from so-called independent repair companies ("IRCs").[1]  Specifically, Plaintiffs claim that Intuitive has engaged in unlawful tying, exclusive dealing and monopolization, in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).

All of Plaintiffs' claims are deficient and should be dismissed.  *First*, Plaintiffs fail to plausibly allege a relevant antitrust market in which Intuitive purportedly has harmed competition.  Plaintiffs have failed to adequately plead that da Vinci service or EndoWrist instruments occupy a relevant market that is distinct from da Vinci systems.  To the contrary, Plaintiffs' allegations establish that Intuitive's da Vinci systems, service and EndoWrist instruments constitute a single product that customers (like Plaintiffs) agree to purchase over time from Intuitive.  Indeed, the Complaint alleges that routine service is necessary to maintain the functionality of da Vinci systems and that only Intuitive has the capability—through its

---

[1] Though not a basis for this motion, Intuitive notes that Plaintiffs' characterization of these entities as "independent repair companies" is inaccurate.  According to FDA law and regulations, these entities are "manufacturers" or "remanufacturers" that were required—but failed—to seek regulatory clearance.

proprietary software—to perform that service.  Similarly, the Complaint alleges that EndoWrist instruments are necessary to operate da Vinci systems and are only manufactured and sold by Intuitive.  Moreover, Plaintiffs allege that when customers choose to acquire da Vinci systems, they are apprised through their contracts that they may only seek service from Intuitive. Plaintiffs also allege that these contracts require them to purchase new EndoWrist instruments from Intuitive when they reach the Intuitive-prescribed maximum uses (typically ten).

*Second*, Plaintiffs cannot state a claim based on Intuitive's alleged (i) refusal to provide access to its proprietary service software or (ii) incorporation of a usage counter into every EndoWrist instrument and purported "redesigning" of the usage counter for X and Xi EndoWrist instruments.  Two district courts have already held that nearly identical theories constituted "refusal to deal" claims, and such claims are not viable absent a prior course of dealing between a defendant and its competitors.  Because Plaintiffs do not—and cannot—allege any prior course of dealing between Intuitive and any IRC, the portions of Plaintiffs' monopolization claims (Counts III and VI) invoking these theories should be dismissed.

Moreover, even if Plaintiffs' theories were analyzed as technological tying claims, Plaintiffs fail to state a claim because the Complaint lacks plausible allegations that Intuitive *changed* the design of its products to render them incompatible with any competitor's offerings. Indeed, the Complaint indicates that Intuitive *has never* shared its proprietary service software and *has always* incorporated a usage counter into its EndoWrists.  And while Plaintiffs assert in a conclusory manner that Intuitive "redesigned" the X and Xi usage counter after receiving "reports" by 2012 of hospitals circumventing usage counters, the Complaint indicates that IRCs did not start this business until 2018—*four years after* Intuitive launched Xi and X instruments.

*Third*, all of Plaintiffs' claims relating to (i) da Vinci service and (ii) X and Xi EndoWrist

instruments should be dismissed for failure to plausibly allege antitrust injury.  Plaintiffs concede

that they are unable to purchase third-party da Vinci "service" because IRCs lack access to

Intuitive's proprietary service software.  Plaintiffs further concede that they are unable to

purchase X and Xi EndoWrist "repairs" because IRCs have been unable to bypass the usage

counters for those instruments.  Because Plaintiffs' admitted inability to purchase third-party

"service" and X and Xi "repairs" is fully attributable to Intuitive's lawful refusals to deal, not

any anticompetitive conduct, Plaintiffs' purported harm cannot constitute antitrust injury—which

requires the dismissal of all their claims relating to da Vinci service and X and Xi instruments.

## BACKGROUND

## I.    THE COMPLAINT'S ALLEGATIONS

As alleged in the Complaint, "founded in 1995, Intuitive designs and manufactures the da

Vinci." (Compl. ¶ 37).  Intuitive allegedly has developed different "generations" of da Vinci

surgical systems, including the "S," "Si," "Xi," "X" and "SP."  (*Id.* ¶ 39.)  Intuitive "also

manufactures and sells EndoWrists and other accessories used with the da Vinci."  (*Id.* ¶ 23.)  In

addition, Intuitive "installs and services da Vincis throughout the U.S."  (*Id*. ¶ 69.)

### A.    da Vinci System Service

Plaintiffs allege that each da Vinci system "requires regular maintenance and service" (*id.*

¶ 58), and "hospitals are dependent on robot maintenance services for the continued operation of

their da Vincis" (*id.* ¶ 148).  Plaintiffs further allege that Intuitive "design[ed] da Vincis to inhibit

the ability of IRCs to perform maintenance on them."  (*Id*. ¶ 184.)  Specifically, Plaintiffs allege

that Intuitive "encrypts and hides from robot owners and IRCs the service software necessary to:

(a) test the robot arms during preventative maintenance; (b) input Intuitive serial numbers after

replacing da Vinci robot parts; and (c) remove the reminder message after performing

preventative maintenance or repairing the robot."  (*Id.* ¶ 64.)  Plaintiffs concede that critical da

3

Vinci system services "can be obtained only from Intuitive," including "'provid[ing] and install[ing] Software upgrades'; 'replac[ing] defective malfunctioning System parts'; and 'replac[ing] and install[ing] Software, Hardware, and mechanical parts for safety.'"  (*Id*. ¶ 148 (alterations in original).)  Plaintiffs also allege that "Intuitive is . . . the only manufacturer of da Vinci robot parts."  (*Id.* ¶ 65.)

According to the Complaint, "Intuitive conditions the purchase or lease of a da Vinci on acceptance of Intuitive's service contract," and "[t]he service contract requires the purchaser to use Intuitive as the sole servicer for all da Vincis and prohibits the purchaser from either servicing the robot itself or hiring an [IRC] to service the da Vinci."  (*Id.* ¶ 3.)

### B.   EndoWrist Instruments

EndoWrist instruments are surgical instruments "modeled after the human wrist and offer a greater range of motion than the human hand."  (*Id.* ¶ 93.)  Plaintiffs allege that "Intuitive exercises complete control over the design, manufacture, sale, and replacement of EndoWrists."  (*Id*. ¶ 92.)  EndoWrist instruments are "the only FDA-approved surgical instruments that are compatible with the da Vinci" (*id.* ¶ 91) and are "necessary to perform [da Vinci] surgery" (*id.* ¶ 119).  Plaintiffs further allege that "[t]he da Vinci was designed to work exclusively with instruments manufactured and sold by Intuitive."  (*Id*. ¶ 95.)

According to the Complaint, EndoWrist instruments include a usage counter—i.e., a "programmable memory chip inside each EndoWrist that limits the number of times the instrument can be used."  (*Id*. ¶ 96.)  "A majority of EndoWrists have a maximum use limit of ten."  (*Id*. ¶ 98.)  Plaintiffs allege that IRCs have developed "solutions" to circumvent the usage counters for "the older da Vinci models (the S and Si models)," but have not done so for "the newer, X and Xi models."  (*Id*. ¶ 143.)  According to Plaintiffs, IRCs have been unable to "repair" X and Xi instruments because "Intuitive invested substantial resources and excessive

4

efforts to re-design the memory chip installed in EndoWrists for the X and Xi models solely to prevent any third parties (including SIS, Restore and Rebotix) from servicing EndoWrists."  (*Id.*)

Plaintiffs allege that Intuitive's "Sales Agreements provide that the customer 'purchases' any instruments for use with the da Vinci from Intuitive, and require that the customer use those instruments only for the 'maximum number of uses' set forth in the instrument catalog."  (*Id.* ¶ 132.)  Plaintiffs further allege that pursuant to those agreements, "hospitals cannot hire IRCs to service or repair their EndoWrists."  (*Id.* ¶ 4.)

## II.   **THE *RESTORE* AND *REBOTIX* LITIGATIONS**

Prior to Plaintiffs' filing of the Complaint, three other lawsuits were filed by purported Intuitive competitors seeking to "repair" EndoWrist instruments.  *See Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF (N.D. Fla. filed Feb. 27, 2019) ("*Restore*"); *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW (M.D. Fla. filed Sept. 28, 2020) ("*Rebotix*"); *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496-VC (N.D. Cal. filed May 10, 2021) ("*SIS*").  Plaintiffs in *Restore*, *Rebotix* and *SIS* bring antitrust claims alleging that Intuitive has harmed competition in the repair and replacement of EndoWrist instruments through tying, exclusive dealing and conduct relating to the EndoWrist instrument usage counter.  Plaintiffs in *Restore* also bring antitrust claims alleging that Intuitive has harmed competition in da Vinci service.

As further discussed below, the *Restore* and *Rebotix* courts dismissed plaintiffs' claims regarding Intuitive's refusal to provide access to its proprietary service software and its incorporation—and alleged "redesign" of—the EndoWrist usage counter, holding that those claims were based on deficient "refusal to deal" theories.  *See Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF, 2019 WL 8063989, at *7 (N.D. Fla. Sept. 16, 2019); *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274-VMC-TGW, 2021 WL

5

1227593, at *8 (M.D. Fla. Mar. 8, 2021).

The *Restore* and *Rebotix* courts otherwise denied Intuitive's motions to dismiss.  But Intuitive's arguments in this motion are distinguishable from any argument that did not prevail in *Restore* or *Rebotix*.  Notably, while those decisions held that plaintiffs adequately pleaded relevant markets encompassing "repaired" and new EndoWrist instruments (as well as da Vinci service in *Restore*), Intuitive did not raise—and neither court considered—the argument in this motion (which Intuitive intends to raise at summary judgment in *Restore* and *Rebotix*) that there is no plausible relevant market for da Vinci service or EndoWrist instruments that is distinct from the da Vinci systems on which that service is performed, or in which those instruments are used.  *See Restore*, 2019 WL 8063989, at *6; *Rebotix*, 2021 WL 1227593, at *6.[2]

## ARGUMENT

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While well-pleaded factual allegations in a complaint must be accepted as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (citation omitted).

## I.   ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO PLEAD A RELEVANT MARKET IN WHICH INTUITIVE ALLEGEDLY HAS HARMED COMPETITION

Each of Plaintiffs' antitrust claims—tying, exclusive dealing and monopolization—hinges on their allegations that Intuitive has harmed competition in either the purported "da Vinci service aftermarket" (Counts I-III) or the "EndoWrist Repair and Replacement

---

[2]  In *SIS*, Intuitive filed a motion to dismiss (which is currently pending) arguing that SIS failed to plausibly allege a relevant market encompassing EndoWrist instruments.  (ECF No. 37.)

Aftermarket" (Counts IV-VI).  Because Plaintiffs fail to plausibly allege the existence of either

such relevant "aftermarket," all of their claims should be dismissed.  *See, e.g.*, *Sidibe v. Sutter*

*Health*, 4 F. Supp. 3d 1160, 1179-80 (N.D. Cal. 2013) (dismissing tying, attempted

monopolization and monopolization claims for failure to plausibly allege a relevant market).

Specifically, Plaintiffs fail to plausibly allege that da Vinci service or EndoWrist

instruments occupy a relevant market distinct from the da Vinci systems on which those services

are performed, or in which those instruments are used.  "The existence of distinct products

depends upon 'the character of the demand for the two items.'"  *Rick-Mik Enters., Inc. v. Equilon*

*Enters., LLC*, 532 F.3d 963, 975 (9th Cir. 2008) (citation omitted).  Plaintiffs must allege facts

showing "sufficient demand for the purchase of [da Vinci service and EndoWrist instruments]

separate from [da Vinci systems]."  *See id.*  "Relevant evidence of separate and distinct

consumer demand . . . is, *inter alia*, the history of the products being, or not being, sold

separately."  *Kaufman v. Time Warner*, 836 F.3d 137, 142 (2d Cir. 2016).

In this regard, the Ninth Circuit and other courts have recognized that essential

components of a product cannot constitute "separate products."  *See Rick-Mik Enters.*, 532 F.3d

at 974 (affirming dismissal of tying claim alleging that defendant's franchises were tied to credit-

card processing services because "[defendant's] credit card services are an essential part of its

franchise," which demonstrated that "[t]he franchise and the method of processing credit

transactions are not separate products, but part of a single product (the franchise)"); *Siva v. Am.*

*Bd. of Radiology*, 418 F. Supp. 3d 264, 274, 277 (N.D. Ill. 2019) (plaintiff failed to plausibly

allege that defendant's initial certification product was separate from its maintenance of

certification product because "adding a new component to the product that will cause customers

to incur ongoing costs does not make the component a new product").

The Ninth Circuit's decision in *Kentmaster Manufacturing Co. v. Jarvis Products Corp.*, 146 F.3d 691 (9th Cir. 1998), *opinion amended*, 164 F.3d 1243 (9th Cir. 1999), is instructive.  In that case, plaintiff alleged that a manufacturer of slaughterhouse equipment monopolized separate markets for slaughterhouse equipment and the spare parts used with that equipment.  *See* 146 F.3d at 694.  The Ninth Circuit affirmed the dismissal of plaintiff's claims, concluding that the equipment and spares were not separate products:

> [Plaintiff's] description of its product is of a unit made up of equipment and of spares—a unit sold over a period where the purchaser of what might be called section A knows that eventually he will be buying complementary section B.  No rational purchaser would look only at A's price and suppose that he could have A without B.  Since A will not work for long without B, and since no one else but [plaintiff] makes B, the rational buyer of A must calculate the cost of B when he makes his initial purchase.

*Id.*  The defendant's competing equipment and spares worked in the same way—i.e., defendant was the only manufacturer of spares for its equipment.  *See id.*  Accordingly, the Ninth Circuit held that defendant's equipment and spares were "a single product, sold over time."  *Id.*

Similarly, here, Plaintiffs' allegations establish that Intuitive's da Vinci systems, service and EndoWrist instruments constitute a single product that customers (like Plaintiffs) agree to purchase over time from Intuitive.  Just like the spares used in defendant's slaughterhouse equipment in *Kentmaster*, da Vinci service and EndoWrist instruments are essential components of da Vinci systems that are ***only sold by Intuitive*** and must be purchased periodically in order for the systems to function.  Indeed, the Complaint alleges that:  (i) "hospitals are dependent on robot maintenance services for the continued operation of their da Vincis" (Compl. ¶ 148); and (ii) critical maintenance services "can be obtained only from Intuitive" (*id.*) because only Intuitive has "the service software necessary" to perform those services (*id.* ¶ 64), and "Intuitive is also the only manufacturer of da Vinci robot parts" (*id.* ¶ 65).  With regard to EndoWrist instruments, Plaintiffs allege that:  (i) "EndoWrists are the only instruments compatible with the

da Vinci," which "was designed to work exclusively with instruments manufactured and sold by Intuitive" (*id.* ¶ 95); (ii) "Intuitive exercises complete control over the design, manufacture, sale, and replacement of EndoWrists" (*id.* ¶ 92); and (iii) EndoWrists must be replaced after a certain number of uses, typically ten (*id.* ¶ 98).  Moreover, Plaintiffs' allegations illustrate that when customers choose to acquire da Vinci systems, they are apprised through the terms of Intuitive's contracts that they will need to purchase da Vinci service and EndoWrist instruments from Intuitive in order to continue to use their systems over time.  (*See id.* ¶¶ 3, 59, 100, 107, 132.)

Perhaps sensing deficiencies in their market definition allegations, Plaintiffs inject unavailing assertions into the Complaint that da Vinci service and EndoWrists are sold in "separate markets" from da Vinci systems.  ***First***, with regard to da Vinci service, Plaintiffs assert that "surgical robots and da Vinci service are separate products that are sold or leased in separate markets from one another."  (*Id.* ¶ 175.)  This assertion should be afforded no weight because it is a bare legal conclusion that is devoid of factual support.  *See Iqbal*, 556 U.S. at 678.

***Second***, Plaintiffs allege that "EndoWrists are a separate product from da Vincis themselves" because "Intuitive sells replacement EndoWrists separately from da Vincis, in part because EndoWrists may wear out over time and need repair or replacement."  (Compl. ¶ 99.)  Plaintiffs further allege that Intuitive charges separate prices for EndoWrists (*id.* ¶ 100) and has generated more revenue and profit in recent years from EndoWrist sales than da Vinci system sales (*id.* ¶¶ 104-05).  But these allegations do not distinguish Plaintiffs' claims from the deficient pleading in *Kentmaster*, where the complaint similarly alleged that defendant sold its equipment and spares at different times and prices, and "[d]ue to the wear and tear that slaughterhouse equipment must undergo and its continuous replacement, the sale of spares 'is a highly profitable high volume business.'"  *See Kentmaster*, 146 F.3d at 693.

Plaintiffs also assert that "there is independent demand for EndoWrist repair . . . which is provided as a standalone service by IRCs such as Restore, Rebotix, Revanix, and SIS."  (Compl. ¶ 101.)  But the existence of IRCs offering EndoWrist "*repair*" does not address the question of whether there is independent demand for EndoWrist *instruments* and da Vinci systems. Plaintiffs concede that Intuitive is the sole manufacturer and seller of EndoWrist instruments and da Vinci systems (*id.* ¶¶ 37, 92, 127), and it sells its instruments pursuant to contractual terms that customers enter upon acquiring a da Vinci system (*id.* ¶¶ 100, 107, 132).  Plaintiffs' inability to plead that EndoWrist instruments and da Vinci systems have ever been sold separately—or by any company except Intuitive—confirms that they constitute a single product.  *See Kaufman*, 836 F.3d at 144-45 (plaintiffs failed to plausibly allege that Premium Cable Services and set-top boxes were separate products because there was no "allegation that there has ever been separate sales of cable boxes and cable services in the United States").

Thus, Plaintiffs have failed to plausibly allege that da Vinci service or EndoWrist instruments occupy a relevant market distinct from da Vinci systems.  For this reason alone, all of Plaintiffs' claims should be dismissed.

## II.   PLAINTIFFS' CLAIMS REGARDING INTUITIVE'S REFUSAL TO PROVIDE ACCESS TO ITS PROPRIETARY SERVICE SOFTWARE AND THE ENDOWRIST INSTRUMENT USAGE COUNTER CONSTITUTE DEFICIENT REFUSAL TO DEAL THEORIES AND SHOULD BE DISMISSED

As part of their monopolization claim regarding the purported aftermarket for da Vinci service (Count III), Plaintiffs allege that Intuitive has engaged in anticompetitive conduct because it "design[ed] da Vincis to inhibit the ability of IRCs to perform maintenance on them" (Compl. ¶ 184) by "encrypt[ing] and hid[ing] from robot owners and IRCs the service software necessary to" perform preventative maintenance and repairs on da Vinci systems (*id.* ¶ 64). Similarly, as part of their monopolization claim regarding the purported aftermarket for

"EndoWrist Repair and Replacement" (Count VI), Plaintiffs allege that Intuitive has engaged in anticompetitive conduct by (i) incorporating a usage counter into EndoWrist instruments; and (ii) purportedly "redesigning" the usage counter for X and Xi instruments, after IRCs developed "solutions" to bypass the usage counters on "the older da Vinci models (the S and Si models)," to prevent IRCs from "repairing" the "newer" X and Xi EndoWrists.  (*Id.* ¶¶ 143, 196.)

Plaintiffs' above-referenced theories should be dismissed because they constitute facially deficient "refusal to deal" claims—nearly identical to the theories that were dismissed in *Restore* and *Rebotix*.  **First**, in *Restore*, Judge Wetherell dismissed plaintiffs' theory challenging Intuitive's refusal to provide access to its "distributor's toolkit, consist[ing] of 'all necessary documentation, software, and passwords to service da Vinci robot systems.'"  *Restore*, 2019 WL 8063989, at *7.  The court held that those "refusal to deal allegations, based on [p]laintiffs' being denied access to the distributor's toolkit . . . do not" constitute anticompetitive conduct "because [p]laintiffs have alleged no prior course of dealing with [Intuitive]."  *Id.*

Indeed, it is well established that "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'"  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (alteration in original) (citation omitted).  As the Ninth Circuit has recognized:

> The one, limited exception to this general rule occurs when a company (1) "'unilateral[ly] terminat[es] . . . a voluntary and profitable course of dealing,'; (2) 'the only conceivable rationale or purpose is "to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition,"'; and (3) the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers."

*FTC v. Qualcomm Inc.*, 969 F.3d 974, 993-94 (9th Cir. 2020) (alterations in original) (citations omitted).

**Second**, in *Rebotix*, the plaintiff alleged that Intuitive's "'incorporating a usage counter' is anticompetitive" and that "developing a newer Xi da Vinci model that is resistant to the workaround [enabling Rebotix to service S/Si EndoWrists] is further evidence of anticompetitive behavior." *Rebotix*, 2021 WL 1227593, at *8. As Judge Covington held, any claim that Intuitive should have "design[ed] a usage counter that is easier to bypass" or "exclude[d] a usage counter altogether . . . is in essence a refusal to deal claim." *Id.*; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (analyzing allegations that defendants "design[ed] the[ir] elevators to prevent servicing by other providers" as a "refusal to deal"); *3Shape Trios A/S v. Align Tech., Inc.*, No. 18-1332-LPS, 2019 WL 3824209, at *8 (D. Del. Aug. 15, 2019) (where "[plaintiff] contend[ed] that [defendant] should have designed its [product] to make it easier for [customers] to order . . . from [defendant's] competitors," the court construed the allegations as "just another refusal to deal claim"), *report and recommendation adopted*, 2019 WL 4686614 (D. Del. Sept. 26, 2019). Judge Covington further held that "Intuitive has no duty to design its products in a way that makes it easier for [plaintiff] to provide repairs" and "has 'no duty to help its competitors survive or expand when introducing an improved product design' like the Xi model." *Rebotix*, 2021 WL 1227593, at *9 (quoting *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1002 (9th Cir. 2010)). Because plaintiff could not allege that Intuitive terminated any prior course of dealing with its competitors, Judge Covington dismissed plaintiff's claims relating to the usage counter. *Id.* at *10.

Here, just as in *Restore*, Plaintiffs' allegation that Intuitive refuses to provide access to its necessary "service software" (Compl. ¶ 64) is a refusal to deal theory. And just as in *Rebotix*, Plaintiffs' allegations that Intuitive incorporated a usage counter into its EndoWrist instruments (Compl. ¶¶ 134, 196)—and purportedly "redesigned" the X and Xi usage counters to prevent

third parties from circumventing those counters (*id.* ¶¶ 143, 196)—similarly constitute refusal to deal theories.  Further, as in *Restore* and *Rebotix*, these alleged refusals to deal cannot be unlawful because Plaintiffs do not—and cannot—allege that Intuitive engaged in any prior course of dealing in which it allowed any competitor to "service" da Vinci systems or "repair" EndoWrist instruments.  To the contrary, the Complaint indicates that Intuitive **has always prohibited** such third-party "service" and "repairs," including because its contracts with customers "prohibit[] the [customer] from either servicing the robot itself or hiring an [IRC] to service the da Vinci" (*id.* ¶ 3) and "hir[ing] IRCs to service or repair their EndoWrists" (*id.* ¶ 4).

Moreover, even if these claims were analyzed as "technological ties," Plaintiffs fail to state a claim because they do not—and cannot—plausibly allege that Intuitive changed the design of its products to render them incompatible with any competitor's offerings.  *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1757a (4th & 5th eds. 2020) (technological tying claim viable only if "the defendant changes the design of the primary product in a way that makes it incompatible with rival complementary products").  The Complaint indicates that Intuitive **has never** shared its service software and **has always** incorporated usage counters into EndoWrist instruments.  (*See, e.g.*, Compl. ¶¶ 64, 134, 184.)  Plaintiffs assert that Intuitive "redesigned" the X and Xi usage counter to prevent third-party "repairs," but that assertion lacks supporting factual allegations and, if anything, is contrary to facts pleaded in the Complaint.  Specifically, the Complaint alleges that the Xi—and thus the "redesigned" usage counter—was launched in 2014.  (*Id.* ¶ 143.)  While Plaintiffs assert "that Intuitive had received reports by or before 2012 . . . that hospitals were circumventing" usage counters (*id.*), this allegation is conclusory and cannot satisfy Plaintiffs' pleading burden.  *See Iqbal*, 556 U.S. at 678 ("mere conclusory statements[] do

not suffice" to state a claim).  Tellingly, Plaintiffs fail to identify any customer or IRC that purportedly could circumvent the usage counter or had the technology to do so "by or before 2012."  In fact, Plaintiffs' only allegations regarding when IRCs began EndoWrist "repairs" indicate that those services *were not offered until 2018*.  (*See* Compl. ¶ 122 ("Restore has been servicing EndoWrists since 2018."); *id.* ¶ 125 ("SIS did not contact potential customers until 2019.").)

Thus, the Court should dismiss the portions of Plaintiffs' claims challenging Intuitive's alleged:  (i) refusal to provide access to its proprietary service software; and (ii) incorporation of usage counters into EndoWrists and "redesign" of the X and Xi usage counter.

## III.   PLAINTIFFS' CLAIMS REGARDING DA VINCI SERVICE AND X AND XI INSTRUMENTS SHOULD BE DISMISSED FOR FAILURE TO PLEAD ANTITRUST INJURY BECAUSE PLAINTIFFS' INABILITY TO OBTAIN THIRD-PARTY "SERVICE" OR "REPAIR" OF THOSE INSTRUMENTS IS FULLY ATTRIBUTABLE TO INTUITIVE'S LAWFUL REFUSALS TO DEAL

Courts routinely dismiss antitrust claims for failure to plead antitrust injury when a plaintiff does not plausibly allege that its purported injury is directly attributable to anticompetitive conduct by the defendant.  *See, e.g., LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008) (affirming dismissal of Sherman Act claims for failure to plead antitrust injury because plaintiff's alleged injury flowed from defendant's lawful refusal to deal, not any anticompetitive conduct); *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998) (explaining that "antitrust injury must be caused by the antitrust violation—not a mere causal link, but a direct effect," while affirming dismissal of claims seeking damages and injunctive relief for failure to plead antitrust injury); *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1107 (6th Cir. 1989) (affirming dismissal of antitrust claim because "any injury that [plaintiff] may have suffered did not flow directly from [defendant's] presumably unlawful act").

Here, Plaintiffs cannot plead antitrust injury regarding their inability to purchase third-

party da Vinci "service" or X and Xi EndoWrist "repairs" because the Complaint establishes that those purported injuries are fully attributable to Intuitive's lawful refusals to deal.  With regard to da Vinci service, Plaintiffs allege that IRCs are unable to provide such service because Intuitive refuses to provide access to its "service software necessary to" perform critical maintenance and repairs.  (Compl. ¶ 64.)  As for "repairs" of X and Xi instruments, Plaintiffs expressly concede that the "solutions" IRCs have used to bypass Intuitive's usage limits "work only for EndoWrists used with the older da Vinci models (the S and Si models), not the newer, X and Xi models." (*Id.* ¶ 143.)  Because any claim challenging Intuitive's alleged refusal to share its proprietary service software or the design of X and Xi usage counters should be dismissed (for the reasons explained above), Plaintiffs cannot establish that their inability to purchase third-party da Vinci "service" or X and Xi "repairs" is attributable to anticompetitive conduct.  Thus, the Court should dismiss all of Plaintiffs' claims regarding (i) da Vinci service and (ii) X and Xi EndoWrist instruments for failure to plausibly allege antitrust injury.[3]

## CONCLUSION

Thus, Intuitive respectfully requests that the Court dismiss the Complaint in its entirety.

---

[3] In *Restore*, the court declined to dismiss all of plaintiffs' claims regarding da Vinci service. *Restore*, 2019 WL 8063989, at *4.  The court reasoned that "[a]lthough not having the distributor's toolkit . . . impacts Plaintiffs' ability to compete, they have alleged that they are ***able to compete some*** without the toolkit . . . but could compete more—even without the toolkit . . . but for the tying and exclusive dealing arrangements."  *Id.* (emphasis added).  In *Rebotix*, the court "decline[d] to dismiss the portions of the complaint based on . . . Xi model[]" instruments.  *Rebotix*, 2021 WL 1227593, at *10.  The court explained that although Rebotix's usage counter claims were dismissed, Rebotix still alleged "contractual tying, contractual exclusivity, and threats of economic retaliation" that "could plausibly foreclose Rebotix from repairing [Xi] EndoWrists."  *Id.*  Here, by contrast, Plaintiffs have squarely alleged that their inability to purchase third-party da Vinci "service" and X and Xi "repairs" is directly attributable to Intuitive's refusal to share its proprietary service software and design of the X and Xi usage counters, and they have failed to identify any da Vinci "service" or X or Xi "repair" that an IRC is capable of performing.  Thus, even absent the other misconduct alleged in the Complaint, Plaintiffs still would be unable to purchase third-party da Vinci "service" or X and Xi "repairs"; therefore, Plaintiffs cannot establish antitrust injury arising from their conceded inability to purchase such "service" or "repairs."

Dated: October 11, 2021      /s/ Allen Ruby
ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Telephone:   (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
michael.menitove@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:     (212) 735-2040

Michael S. Bailey (*Pro Hac Vice*)
michael.bailey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP
1440 New York Avenue, N.W.
Washington D.C. 20005
Telephone:  (202) 371-7000
Facsimile:     (202) 393-5760

*Attorneys for Defendant*
INTUITIVE SURGICAL, INC.