# EXHIBIT 81

ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Telephone: (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
michael.menitove@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2040

MICHAEL S. BAILEY (*Pro Hac Vice*)
michael.bailey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

*Attorneys for Defendant*
INTUITIVE SURGICAL, INC.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARKIN COMMUNITY HOSPITAL, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>Defendant. | Judge: The Honorable Vince Chhabria<br><br>**DEFENDANT INTUITIVE SURGICAL, INC.'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY**<br><br>Date: September 23, 2021<br>Time: 2:00 p.m.<br>Courtroom: 4 – 17th Floor<br><br>Civil Action No. 3:21-CV-03825-VC |

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC. and KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 1 (DBA VALLEY MEDICAL CENTER) <br><br>                               Plaintiffs, <br>     v. <br><br> INTUITIVE SURGICAL, INC., <br><br>                               Defendant. | Civil Action No. 3:21-cv-05198-VC |
| KALEIDA HEALTH, on behalf of itself and all others similarly situated, <br><br>                               Plaintiff, <br>     v. <br><br> INTUITIVE SURGICAL, INC., <br><br>                               Defendant. | Civil Action No. 3:21-cv-05266-VC |

i

## NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS

TO PLAINTIFF AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT at 2:00 p.m. on September 23, 2021, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Vince Chhabria, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Defendant Intuitive Surgical, Inc. ("Intuitive"), will and hereby does move the Court for an order to stay the above-referenced cases (i) pending resolution of closely-related actions concerning nearly identical issues already being litigated by Intuitive in the Middle and Northern Districts of Florida, or (ii) in the alternative, until May 31, 2022—which likely would allow time for the courts in those pending actions to issue critical rulings, including on motions for summary judgment, and for trial in one of those actions to be completed.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Karen Hoffman Lent ( "Lent Decl.") in support hereof and exhibits thereto, the files in these actions, and such further evidence and arguments that the Court may consider. Intuitive respectfully requests that the Court enter stays in these actions.

## STATEMENTS OF ISSUES TO BE DECIDED

Whether stays of these actions are warranted when closely-related and far more procedurally advanced actions, involving overlapping parties are pending in different district courts, and the resolution of those pending actions will necessarily address numerous identical fact and legal issues, promote judicial economy and comity, and not unduly prejudice any party.

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...............................................................................................................5

I. THE PENDING ACTIONS .................................................................5

II. PLAINTIFFS' CLAIMS AGAINST INTUITIVE .................................8

III. PLAINTIFFS' ALLEGATIONS REGARDING REBOTIX AND RESTORE ...........................................................................................9

ARGUMENT ...................................................................................................................10

I. STAYS WOULD SERVE THE ORDERLY COURSE OF JUSTICE ................10

II. INTUITIVE WILL SUFFER SUBSTANTIAL HARDSHIP IF IT IS FORCED TO LITIGATE THE SAME CLAIMS IN MULTIPLE COURTS ............................................................................................13

III. STAYS WILL NOT IMPOSE ANY HARDSHIP OR INEQUITY ON PLAINTIFFS .......................................................................................14

CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*C.M.D. v. Facebook, Inc.*,
No. C 12-1216 RS, 2013 WL 12182270 (N.D. Cal. May 20, 2013) ................................11

*Camara v. Bayer Corp.*, No. C,
09-06084 WHA, 2010 WL 902780 (N.D. Cal. Mar. 9, 2010)...........................................10

*FormFactor, Inc. v. Micronics Japan Co.*,
No. CV-06-07159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008)............................11

*Krejce v. Merck & Co.*,
No. 4:08-CV-295 CAS, 2008 WL 824269 (E.D. Mo. Mar. 25, 2008) ............................11

*Landis v. North American Co.*,
299 U.S. 248 (1936)...............................................................................................................4

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) .................................................................................3, 10, 11

*Litchfield Co. v. BP, P.L.C.*,
No. 2:10-cv-01462, 2010 WL 2802498 (D.S.C. July 14, 2010)......................................11

*Vance v. Google LLC*,
No. 5:20-CV-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) . 10, 11, 12, 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Larkin Community Hospital, Franciscan Alliance, Inc., King County Public Hospital District No. 1 (d/b/a Valley Medical Center) and Kaleida Health (collectively, "Plaintiffs") bring the present actions, asserting nearly identical antitrust claims and alleging many of the same facts previously raised in both *Restore Robotics LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF, pending before Judge T. Kent Wetherell II in the Northern District of Florida, and *Rebotix Repair LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-02274-VMC-TGW, pending before Judge Virginia Covington in the Middle District of Florida (collectively, the "Pending Actions"). Intuitive manufactures and sells a minimally invasive surgical robotic system called the da Vinci, which includes Intuitive-manufactured instruments, some of which are called EndoWrist instruments. EndoWrist instruments are attached to robotic arms and manipulated by a doctor sitting at a surgeon's console usually several feet from the patient. Surgeons around the globe have elected to use the da Vinci in over 8.5 million surgeries, attesting to the benefits of robotic-assisted surgeries. The present actions, like the Pending Actions, bring antitrust claims concerning what Plaintiffs inaccurately characterize as "repairing" EndoWrist instruments. They also concern the servicing or preventative maintenance performed on da Vinci systems, which Intuitive offers to its customers.

Consistent with and pursuant to detailed stress testing that has been submitted to and reviewed by the FDA, Intuitive designs EndoWrist instruments with usage limits that disable the instruments after they have been used a prescribed number of times. Plaintiffs claim that Intuitive has violated Sections 1 and 2 of the Sherman Act by preventing unauthorized third parties from circumventing these usage limits through a process that plaintiffs in the Pending

**INTUITIVE'S MOTION TO STAY**                    **Case Nos. 3:21-cv-03825, 3:21-cv-05198, 3:21-cv-05266**

Actions—and Plaintiffs in these cases—inaccurately characterize as "repairs." Plaintiffs, like plaintiff in the *Restore* action, also allege that Intuitive has violated Sections 1 and 2 of the Sherman Act by preventing unauthorized third parties from "servicing" da Vinci systems.

While Plaintiffs filed their Complaints within the last three months, the Pending Actions have been litigated for far longer, already resulting in millions of pages of document productions, 41 depositions, and the submission of myriad expert reports. The parties in the Pending Actions are now in the midst of expert discovery, will be filing summary judgment motions this fall, and must prepare for at least one trial that already has been scheduled for early next year.

The connections between Plaintiffs' cases and the Pending Actions far exceed the overlapping theories of liability. Plaintiffs' claims are inextricably intertwined with plaintiffs in the Pending Actions: Rebotix Repair LLC ("Rebotix") and Restore Robotics LLC and Restore Robotics Repairs LLC (together, "Restore"). Rebotix is the only provider of the technology used in the EndoWrist "repair" services that Plaintiffs claim they seek to purchase (and which Restore has also provided using Rebotix's technology), and Restore is the only purported provider of the third-party da Vinci "service" that Plaintiffs claim that they seek to purchase.

Intuitive expects that the Pending Actions will establish that Rebotix's EndoWrist "repair" services, which result in the unauthorized modification of EndoWrist instruments through the addition of a new circuit board, are unlawful because neither Rebotix nor any other party (including Restore) has obtained FDA clearance (known as "510(k) clearance") for this process. While Rebotix and Restore have represented that FDA clearance is unnecessary, discovery in the Pending Actions has revealed that—on multiple occasions—FDA personnel have taken the position that 510(k) clearance is required for the EndoWrist "repair" service at issue. If the Pending Actions establish that the FDA has required 510(k) clearance for this

EndoWrist "repair" service (which neither Rebotix nor Restore has received), then the "repair" business would be unlawful and Rebotix and Restore would be unable to establish antitrust injury. Given that Plaintiffs' claims relating to EndoWrist "repair" are predicated on the lawfulness of Rebotix's business, principles of comity and judicial efficiency would call for the same conclusion as applied to Plaintiffs.

Intuitive further submits that Restore is not a viable provider of da Vinci system "service" because Restore does not have access to Intuitive's "distributors' toolkit," which Restore acknowledges is essential to servicing the da Vinci system. As a result, it is undisputed that Restore cannot perform the vast majority of basic da Vinci system service. Moreover, the record evidence in *Restore* demonstrates that any customer that has attempted to procure da Vinci "service" from Restore has quickly abandoned that effort after realizing Restore's severe limitations. If the *Restore* action were to establish that Restore is unable to provide viable "service" for da Vinci systems, then Restore would be unable to establish antitrust injury. Because Plaintiffs' claims relating to da Vinci "service" hinge on purchasing such service from Restore, comity and judicial efficiency would call for the same conclusion as to Plaintiffs.

This motion does not argue that Plaintiffs would be collaterally estopped from relitigating legal and factual issues addressed in the Pending Actions. The prospect of collateral estoppel is not a prerequisite for a stay. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial court may, with propriety, find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . ***does not require that the issues in such proceedings are necessarily controlling of the action before the court***." (emphasis added)). Instead, a stay should be granted based on the three-factor test derived from

3

the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936). Each of these factors weighs strongly in favor of staying Plaintiffs' actions pending the resolutions of the Pending Actions.

*First*, staying Plaintiffs' actions would serve the orderly course of justice by promoting judicial economy and comity. Absent stays, this Court will be asked to decide legal and factual issues even though they will have long been litigated and likely will be exhaustively addressed in the Pending Actions. As a result, stays here would avoid duplicative and wasteful litigation, conserve the resources of the judicial system, and mitigate the risk of inconsistent holdings and results across jurisdictions.

*Second*, Intuitive would suffer substantial undue hardship and injury if it were forced to litigate and engage in discovery anew on a *third* (or *fourth*, if a stay were denied in the SIS action) front relating to EndoWrist "repair" and da Vinci "service" activities performed by Rebotix and Restore while simultaneously devoting tremendous time and resources to the Pending Actions. As noted, the Pending Actions are in the midst of expert discovery, with summary judgment imminent and trial in *Rebotix* scheduled for March 2022.

*Third*, Plaintiffs will not suffer any hardship or inequity from stays. Plaintiffs opted not to file suit against Intuitive until long after the Pending Actions were filed, and there is no urgency to Plaintiffs' claims now insofar as they do not plausibly allege imminent or irreparable injury from Intuitive's alleged anticompetitive conduct. Indeed, Plaintiffs do not allege that they have ever purchased EndoWrist "repairs" or third-party da Vinci "service."

Thus, Intuitive respectfully requests that the Court stay the present actions until the Pending Actions have been fully resolved or, in the alternative, until May 31, 2022—which likely would allow time for the courts in the Pending Actions to issue critical rulings, including

on motions for summary judgment, and for trial in *Rebotix* to be completed.

## BACKGROUND

### I.   THE PENDING ACTIONS

On February 27, 2019, Restore filed its suit against Intuitive.[1]  On September 28, 2020, Rebotix filed its complaint against Intuitive.  (*See* Lent Decl. Ex. 2 ("Rebotix Compl.").)

Restore and Rebotix allege that Intuitive has engaged in antitrust misconduct that hinders their ability to "repair" EndoWrist instruments.  They bring claims under Sections 1 and 2 of the Sherman Act asserting that Intuitive has unlawfully:  (i) tied the purchase and servicing of da Vinci systems to the purchase of EndoWrist instruments from Intuitive (Restore Compl. ¶¶ 124-26; Rebotix Compl. ¶¶ 62-64); (ii) engaged in exclusive dealing by forcing customers to purchase new EndoWrist instruments from Intuitive (Restore Compl. ¶¶ 127-29; Rebotix Compl. ¶¶ 65-67); (iii) monopolized the purported market for repair and replacement of EndoWrist instruments (Restore Compl. ¶¶ 118-20; Rebotix Compl. ¶¶ 68-70); and (iv) attempted to monopolize that same purported market (Restore Compl. ¶¶ 121-23; Rebotix Compl. ¶¶ 71-73).

Restore also alleges that Intuitive has engaged in antitrust misconduct that impairs its ability to compete to "service" da Vinci systems.  Restore brings claims under Sections 1 and 2 of the Sherman Act asserting that Intuitive has unlawfully:  (i) monopolized the purported market for da Vinci surgical robot service (Restore Compl. ¶¶ 106-08); (ii) attempted to monopolize that same purported market (*id.* ¶¶ 109-11); (iii) tied da Vinci service to surgical systems and parts (*id.* ¶¶ 112-14); and (iv) engaged in exclusive dealing by forcing customers to purchase da Vinci service from Intuitive (*id.* ¶¶ 115-17).

---

[1]  Restore subsequently filed an amended complaint on May 13, 2019, and a Second Amended Complaint on March 29, 2021 (*see* Lent Decl. Ex. 1 ("Restore Compl.")).

Intuitive has denied all these allegations and submits that these plaintiffs' claims will fail on multiple grounds, including because Rebotix and Restore cannot prove antitrust injury, given that their businesses are unlawful or not viable. Intuitive expects that the Pending Actions will establish that Rebotix and Restore were required to obtain 510(k) clearance from the FDA for their EndoWrist "repair" services, but they admittedly failed to do so. Indeed, the FDA has already expressed an opinion that Rebotix's EndoWrist "repair" process required 510(k) clearance. In June 2018, the Lead Reviewer responsible for the da Vinci system at FDA, while copying his Supervisory Branch Chief, informed a third party acting as a distributor of Rebotix's "repaired" EndoWrists that "if the use-life counter [on EndoWrist instruments] is reset or extended past the number of available use lives, then the device specifications are changed. As such, you would be considered a remanufacturer per 21 CFR 820.3(w)" and "subject to premarket notification (510(k)) requirements defined in 21 CFR 807.81." (Lent Decl. Ex. 3, REBOTIX166917.) In February 2020, the Assistant Director in the Division of Health Technology (general surgery devices) at FDA wrote to Rebotix, explaining "we believe that a 510(k) is needed before you continue your operation." (Lent Decl. Ex. 4, REBOTIX146955.)

As set forth in Intuitive's counterclaims in both Pending Actions, Restore and Rebotix also have deceptively marketed the "repair" process in numerous ways—which despite the "repair" misnomer does not concern broken or defective EndoWrist instruments, but instead circumvents the instruments' critical built-in usage limits without Intuitive's authorization. Rebotix and Restore engaged in this enterprise using the *same* patented technology—the insertion of a chip into the EndoWrist instrument called the "Interceptor." This "Interceptor" chip, developed by Rebotix, effectively tricks the instrument into believing that it may continue to function beyond the initial limits established pursuant to Intuitive's safety testing.

In addition, Intuitive expects that the *Restore* action will establish that Restore cannot offer viable da Vinci service because it admittedly lacks access to Intuitive's "distributors' toolkit," which provides "all necessary documentation, software, and passwords to service da Vinci systems." (Restore Compl. ¶¶ 55-56.) Without Intuitive's proprietary distributor's toolkit, Restore concedes that it cannot: (i) "know the meaning of the error codes appearing on the da Vinci robot system to perform repairs on the system"; (ii) "test the robot arms during preventative maintenance"; or (iii) "remove the reminder message after performing preventative maintenance or repairing the robot system." (*Id.* ¶¶ 56-58.) The *Restore* court already dismissed Restore's claim demanding that Intuitive provide Restore with its distributor's toolkit. *See Restore Robotics, LLC v. Intuitive Surgical, Inc.*, No. 5:19-cv-55-TKW-MJF, 2019 WL 8063989, at *7 (N.D. Fla. Sept. 16, 2019). While Judge Wetherell allowed the da Vinci "service" claims to proceed because Restore "alleged that they are able to compete some without the toolkit but could compete more" but for Intuitive's conduct, *id.* at *4, the record evidence has established that Restore cannot perform the vast majority of basic da Vinci system maintenance or repair. Indeed, customers that attempted to hire Restore for da Vinci service swiftly abandoned those efforts after realizing Restore's severe limitations.

The Pending Actions are already at advanced stages in their proceedings. The *Restore* action has been litigated for nearly two and a half years, and the *Rebotix* action has been litigated for nearly a full year. The parties in the Pending Actions have completed fact discovery and are in the midst of expert discovery. The parties have produced and secured third-party production of millions of pages of documents, and have deposed 41 individuals or entities with relevant information, including 13 Intuitive employees and two distinct Intuitive 30(b)(6) depositions. Pursuant to the current Case Management Order in *Restore*, expert discovery will close on

October 21, and summary judgment and *Daubert* motions are due by November 12.  Pursuant to

the Case Management Order in *Rebotix*, expert discovery will close on September 30, and

summary judgment and *Daubert* motions are due by October 22.  A March 2022 expected trial

date has been assigned in *Rebotix*, and a trial in *Restore* could occur in late summer 2022.

## II.   PLAINTIFFS' CLAIMS AGAINST INTUITIVE

Similar to Restore and Rebotix, Plaintiffs claim that Intuitive has engaged in antitrust

misconduct that impairs the ability of third parties to "repair" EndoWrist instruments and, like

Restore, to "service" da Vinci systems.  Like Restore and Rebotix, Plaintiffs bring claims under

Sections 1 and 2 of the Sherman Act asserting that Intuitive has unlawfully:  (i) tied the purchase

of da Vinci systems to the purchase of EndoWrist instruments from Intuitive (*Larkin v. Intuitive*,

ECF No. 1, Larkin Compl. ¶¶ 133-38; *Kaleida Health v. Intuitive*, ECF No. 1, Kaleida Compl. ¶¶

133-38; *Franciscan Alliance, Inc. v. Intuitive*, ECF No. 1, Franciscan Compl. ¶¶ 191-93); (ii)

monopolized the "EndoWrist Service Aftermarket" according to Larkin and Kaleida (Larkin

Compl. ¶¶ 127-129; Kaleida Compl. ¶¶ 127-29), or "the domestic aftermarket for replacements

and repairs of EndoWrists" according to Franciscan and Valley Medical Center (Franciscan

Compl. ¶¶ 197-99); and (iii) attempted to monopolize the purported market for "EndoWrist

Service Aftermarket" (Larkin Compl. ¶¶ 130-32; Kaleida Compl. ¶¶ 130-32).  In addition, like

Restore, Plaintiffs bring claims under Sections 1 and 2 of the Sherman Act asserting that

Intuitive has unlawfully: (i) monopolized the purported da Vinci service aftermarket (Larkin

Compl. ¶¶ 114-16; Kaleida Compl. ¶¶ 114-16; Franciscan Compl. ¶¶ 188-90); (ii) attempted to

monopolize that same purported market (Larkin Compl. ¶¶ 117-19; Kaleida Compl. ¶¶ 117-19);

(iii) and tied da Vinci service to the da Vinci system (Larkin Compl. ¶¶ 120-26; Kaleida ¶¶ 120-

26; Franciscan Compl. ¶¶ 182-84.)

In addition to these overlapping claims, Plaintiffs plead factual allegations similar to Restore's and Rebotix's in the Pending Actions. For example:

- All five complaints have substantially similar descriptions of how Intuitive allegedly acquired its monopoly power in the purported market for surgical robots. (Larkin Compl. ¶¶ 45-55; Kaleida Compl. ¶¶ 35-45; Franciscan Compl. ¶¶ 30-46; Rebotix Compl. ¶¶ 14-26; Restore Compl. ¶¶ 16-23.)

- All five complaints challenge Intuitive's design of its EndoWrist instruments with a usage counter to prevent them from being reused more than the number of times Intuitive prescribed. (Larkin Compl. ¶ 88; Kaleida Compl. ¶ 88; Franciscan Compl. ¶ 6; Rebotix Compl. ¶ 3; Restore Compl. ¶ 7.)

- All five complaints allege that Intuitive's standard sales contract prohibits customers from using: (i) any surgical instruments with the da Vinci system other than EndoWrist instruments acquired from Intuitive; and (ii) EndoWrists subjected to any unauthorized third-party "repair." (Larkin Compl. ¶¶ 66-67; Kaleida Compl. ¶¶ 66-67; Franciscan Compl. ¶¶ 99-100; Rebotix Compl. ¶¶ 34, 54; Restore Compl. ¶ 98.)

## III.   PLAINTIFFS' ALLEGATIONS REGARDING REBOTIX AND RESTORE

Plaintiffs allege that Rebotix and Restore are two providers that they could hire to perform EndoWrist "repairs" and da Vinci "service." (Larkin Compl. ¶¶ 4, 54; Kaleida Compl. ¶¶ 4, 54; Franciscan Compl. ¶¶ 106-07, 131.) With regard to EndoWrist "repairs," Rebotix is the only company that Plaintiffs specifically allege has the technology to "reset" EndoWrist instrument usage counters. (Larkin Compl. ¶ 80; Kaleida Compl. ¶ 80; Franciscan Compl. ¶ 160.) As for da Vinci system "service," while Larkin and Kaleida purport to identify other service providers they could hire, they both acknowledge that other providers in fact rely on Restore to perform "service" on da Vinci systems. (*See* Larkin Compl. ¶ 54; Kaleida Compl. ¶ 54 (alleging Great Lakes Robotics offers da Vinci "service" "through its partnership with Restore"); *see also* Restore Compl. ¶ 62 ("Restore is the only known competitor to Intuitive and its exclusive distributors for da Vinci robot service.").) Notably, Plaintiffs do not allege that they have ever purchased EndoWrist "repairs" or third-party da Vinci "service."

## ARGUMENT

"District courts have 'discretionary power to stay proceedings.'" *Vance v. Google LLC*, No. 5:20-CV-04696-BLF, 2021 WL 534363, at *3 (N.D. Cal. Feb. 12, 2021) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005)). "A trial court may, with propriety, find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva*, 593 F.2d at 863. Determining whether to grant a stay requires weighing the three "*Landis* factors": "[T]he possible damage to the non-moving party, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice [also referred to as judicial economy]." *Vance*, 2021 WL 534363, at *3. Courts "have routinely granted stays where there are overlapping issues of fact or law with a case before different district courts." *Id*. And granting a stay is appropriate even when resolution of another action will not result in collateral estoppel in the stayed proceeding. *See Leyva*, 593 F.2d at 863-64.

Here, all three *Landis* factors weigh heavily in favor of staying Plaintiffs' actions pending the resolution of the Pending Actions. Granting stays would: (i) serve the orderly course of justice by facilitating judicial economy and comity, eliminating the need for duplicative work by different courts and the potential for inconsistent or confusing rulings; (ii) prevent hardship to Intuitive that would result from litigating nearly identical issues simultaneously in this case and the Pending Actions; and (iii) not impose any hardship or inequity on Plaintiffs.

## I.  STAYS WOULD SERVE THE ORDERLY COURSE OF JUSTICE

Granting stays will significantly advance the orderly course of justice by promoting judicial economy and comity. Judicial economy "furthers the [orderly course of justice] factor" and is "the primary basis courts consider when ruling on motions to stay." *Vance*, 2021 WL 534363, at *6. Judicial economy is undermined by forcing courts to resolve substantially

similar, if not identical, issues in multiple cases, particularly when the action to be stayed is predicated on issues addressed in the earlier-filed action. *See id.*; *Camara v. Bayer Corp.*, No. C 09-06084 WHA, 2010 WL 902780, at *2 (N.D. Cal. Mar. 9, 2010) (judicial economy weighed in favor of granting a stay because proceeding "would unnecessarily duplicate work and could lead to inconsistent results").[2]

Judicial economy is served where, as here, "pending resolution of independent actions [will] bear upon the case." *Leyva*, 593 F.2d at 863. In this regard, courts regularly stay proceedings when pending actions in other fora are capable of simplifying the issues the second court must address, even if the pending action will not necessarily dispose of a subsequent action entirely. *See, e.g.*, *FormFactor, Inc. v. Micronics Japan Co.*, No. CV-06-07159 JSW, 2008 WL 361128, at *2-3 (N.D. Cal. Feb. 11, 2008) (although "ITC rulings are not binding on this [c]ourt, . . . if the ITC proceedings bear on the issues of this case, it would be the most efficient and fairest course of action to stay the remaining claims of this action"); *C.M.D. v. Facebook, Inc.*, No. C 12-1216 RS, 2013 WL 12182270, at *1 (N.D. Cal. May 20, 2013) (granting stay to allow for settlement in a related case because that settlement would simplify issues in the litigation even if it did not resolve the case).

In *Vance*, for example, the court stayed a suit brought against Google, in light of an earlier-filed case that the same plaintiff had brought against IBM. *See Vance*, 2021 WL 534363, at *1. The court in *Vance* was presented with issues that were "similar and predicated on the

---

[2]  *See also Litchfield Co. v. BP, P.L.C.*, No. 2:10-cv-01462, 2010 WL 2802498, at *2 (D.S.C. July 14, 2010) (granting stay while an MDL determination was pending where proceeding with discovery in the litigation would "mock an efficient and orderly judicial system"); *Krejce v. Merck & Co.*, No. 4:08-CV-295 CAS, 2008 WL 824269, at *1 (E.D. Mo. Mar. 25, 2008) (granting stay "to conserve judicial resources and to prevent duplicative litigation and inconsistent pretrial orders pending transfer").

issues" in the IBM case, particularly whether IBM wrongfully acquired and used data that Google was alleged to have used. *Id*. at *6. The *Vance* court reasoned:

> Because there are predicate . . . questions . . . at the heart of this [later-filed] case, judicial efficiency counsels that a stay is appropriate pending the resolution of issues in the [earlier-filed] action. By allowing the [earlier-filed action's] court to resolve some of these overlapping issues, significant efficiencies are gained because the Court avoids issuing inconsistent rulings and expending unnecessary judicial resources on mooted issues. *Id*.

Similarly, here, staying the present actions will conserve judicial resources and promote comity by allowing the courts in the Pending Actions to address fact and legal issues that are virtually identical to those presented in the present actions. Some of those issues that will need to be addressed in the Pending Actions, and are equally relevant here, include: (1) whether purported "repair" of EndoWrist instruments requires FDA 510(k) clearance; (2) whether the process used by Rebotix to "repair" EndoWrist instruments increases the risk of patient harm; (3) whether Intuitive's usage limits on its EndoWrist instruments are based on valid engineering and patient safety principles; (4) whether Restore is a viable provider of da Vinci "service"; (5) whether a relevant antitrust market for "robotic surgery" exists; and (6) whether Intuitive has market power in that (or any) properly defined antitrust market.

As explained above (*see supra* p. 6), Intuitive submits that the EndoWrist "repair" business is unlawful because, admittedly, neither Rebotix nor Restore (or any other third party that purports to offer EndoWrist "repair" services) obtained 510(k) clearance. Further, the record in the Pending Actions confirms that FDA personnel informed Rebotix of the agency's conclusion that 510(k) clearance is required. Accordingly, Intuitive believes it is highly likely that the courts in the Pending Actions will defer to the FDA's conclusion that Rebotix was required to obtain 510(k) clearance and, thus, that Rebotix's EndoWrist "repair" business was and is unlawful. If Rebotix's "repair" activities were established to be unlawful in the Pending

Actions, Plaintiffs should be prevented from having a second bite at the apple to argue that the business was legal. Principles of comity, fairness, and judicial economy would weigh strongly in favor of reaching the same conclusion on the legality of the "repair" business, which would dispose of Plaintiffs' "repair" claims.

Intuitive further submits that Restore is not a viable provider of da Vinci "service" because Restore does not have access to Intuitive's "distributors' toolkit," which Restore acknowledges is essential to servicing the da Vinci system. Moreover, the evidence in *Restore* demonstrates that any customer that has attempted to procure da Vinci "service" from Restore has quickly abandoned that effort after realizing Restore's severe limitations. If the *Restore* action were to establish that Restore is unable to provide viable da Vinci "service," principles of comity, fairness, and judicial economy would weigh strongly in favor reaching the same conclusion here, and Plaintiffs would be unable to establish antitrust injury arising from their alleged inability to obtain that non-existent "service" from Restore.

As noted, the parties in the Pending Actions already have completed fact discovery and summary judgment briefing is imminent, whereas the current action is at the pleading stage. Thus, stays would allow the courts in the Pending Actions to resolve the aforementioned issues, which would serve the orderly course of justice by promoting judicial economy and comity.

## II. INTUITIVE WILL SUFFER SUBSTANTIAL HARDSHIP IF IT IS FORCED TO LITIGATE THE SAME CLAIMS IN MULTIPLE COURTS

Intuitive would suffer substantial hardship if it were forced to incur significant expenses and expend resources litigating the present actions based on issues likely to be exhaustively addressed in the Pending Actions and because it is possible that litigating the Pending Actions and present actions simultaneously could lead to inconsistent or confusing outcomes. These circumstances present the type of hardship that supports granting stays. *See Vance*, 2021 WL

534363, at *5-6 (hardship exists if parties may "incur significant expenses on litigation that may be rendered moot," if "there will be significant overlap in the discovery . . . creating additional expenses," or if proceeding "increas[es] the risk of inconsistent rulings and confusion").

For similar reasons to those discussed above, granting stays would avoid those potential hardships. **First**, absent stays, both Intuitive and Plaintiffs are likely to incur significant expenses litigating issues that will be addressed in the Pending Actions. To the extent the parties intend to seek discovery that goes beyond the records created in the Pending Actions, it is likely to create additional expense (for both sides) that will be entirely wasted if key issues—like whether Rebotix was required to obtain 510(k) clearance for its EndoWrist "repair" business and whether Restore is a viable provider of da Vinci "service"—are decided by the Pending Actions, and this Court decides to follow those rulings.

**Second**, Intuitive will be harmed if rulings on the same issues in this case and the Pending Actions diverge. For example, if the courts in the Pending Actions were to hold that Rebotix and Restore cannot demonstrate antitrust injury because they did not obtain 510(k) clearance for the EndoWrist "repair" business required by FDA or that Restore was unable to offer viable da Vinci "service," Intuitive respectfully submits that it should not have to relitigate or contend with differing judgments as to those same activities here. At the very least, this Court may benefit from the soon-to-be issued rulings from the courts in the Pending Actions.

## III.    STAYS WILL NOT IMPOSE ANY HARDSHIP OR INEQUITY ON PLAINTIFFS

Finally, stays will not harm Plaintiffs. Courts are "generally unwilling to presume delay is harmful without specific supporting evidence." *Vance*, 2021 WL 534363, at *4. Evidence of harm may include the potential for loss of evidence, the loss of an ability to litigate issues that bear on a party's legal rights, or the need to address ongoing harm. *See id*.

Here, Plaintiffs cannot offer evidence of harm that would result from staying the actions.

*First*, stays would not risk loss of evidence. A robust evidentiary record has already been generated in the Pending Actions, with millions of pages of documents produced and 41 individuals deposed, including 13 Intuitive employees and two distinct Intuitive 30(b)(6) depositions. This evidence will be preserved during stays in the present actions, and any non-duplicative discovery is subject to litigation holds preserving conceivably relevant documents.

*Second*, Plaintiffs will not lose any meaningful ability to litigate issues that bear on their own rights if this Court stays the present actions and allows issues relating to Rebotix's and Restore's activities to be resolved in the Pending Actions. Given that Plaintiffs would be reliant on Rebotix and Restore for any EndoWrist "repair" or da Vinci "service," Plaintiffs cannot be harmed if these predicate issues are resolved in the Pending Actions while the present actions are stayed. Indeed, stays could ultimately benefit Plaintiffs by allowing the Pending Actions to provide guidance as to the issues to be litigated regarding Rebotix's and Restore's activities, allowing Plaintiffs to litigate only those remaining issues relating to Plaintiffs' own activities.

*Third*, Plaintiffs cannot suffer any ongoing harm because they do not plausibly allege imminent or irreparable injury from Intuitive's purportedly anticompetitive conduct. Indeed, Plaintiffs' Complaints are bereft of any allegation that they have ever purchased any EndoWrist "repair" or third-party da Vinci "service."

## CONCLUSION

For the foregoing reasons, Intuitive respectfully requests that the Court stay these actions until the resolution of the Pending Actions or, in the alternative, until May 31, 2022.

Dated:  August 13, 2021

/s/ Allen Ruby
ALLEN RUBY (SBN 47109)
allen@allenruby.com
ALLEN RUBY, ATTORNEY AT LAW
15559 Union Ave. #138
Los Gatos, CA 95032
Telephone:  (408) 477-9690

KAREN HOFFMAN LENT (*Pro Hac Vice*)
karen.lent@skadden.com
MICHAEL H. MENITOVE (*Pro Hac Vice*)
michael.menitove@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:  (212) 735-3000
Facsimile:   (212) 735-2040

MICHAEL S. BAILEY (*Pro Hac Vice*)
michael.bailey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  (202) 371-7000
Facsimile:   (202) 393-5760

*Attorneys for Defendant*
INTUITIVE SURGICAL, INC.