# Bateman Decl. Ex. 4

# Proving Antit Damages: Legal and Economic Issues II.6.F.1

***Proving Antitrust Damages: Legal and Economic Issues > PART II > Chapter 6 Econometrics and Regression Analysis > F. Before-During and Related Approaches to Damages***

## 1. "Dummy Variable" Models Versus "Prediction" Models [n180]

Two methods are commonly considered to estimate the impact of alleged conduct on the outcome of interest: (1) dummy variable models; and (2) prediction models. [n181]

For simplicity, we compare the methods here in the context of a price fixing conspiracy, and as such in the estimation of price overcharges-though the ideas can be adapted to a broad range of outcomes and alleged conduct. Although both dummy variable and prediction models make use of data from a nonconspiracy period, they differ primarily in whether they also make use of data from the conspiracy period. The dummy variable model uses data from both the alleged conspiracy period and the non-conspiracy period to estimate the relationship between price, economic factors, and a dummy variable for the alleged conspiracy period, with the dummy variable measuring how much higher prices were in the alleged conspiracy period relative to the non-conspiracy period, after controlling for the other economic factors. The prediction model uses data from only the non-conspiracy period to estimate the relationship between price and economic factors. It then uses the estimated relationship as a basis to predict what prices would have been during the alleged conspiracy period but for the alleged conspiracy, with the gap between actual prices and the estimated but-for prices assumed to represent the effect of the price-fixing conspiracy.

For simplicity, assume that the best explanatory variable available for capturing the potentially anticompetitive effects of the price-fixing conspiracy is a dummy variable representing the time period when the alleged anticompetitive acts took place. [n182] This variable will be 1 during that period and 0 at other times (similar to the PERIOD variable discussed earlier). Other explanatory variables that affect the dependent variable may also be included in the regression. The coefficient on the dummy variable measures how much higher (or lower) the price would have been on average in the conspiracy period relative to the non-conspiracy period, controlling for other observable economic factors. Because the coefficient on the dummy variable in the regression model is an estimate

---

[n180] . Material in this section draws heavily from Gustavo Bamberger, Dennis Carlton & Mark Israel, *Economic Analysis of Cartels* (Working Paper, drafted 2012).

[n181] . Paul E. Godek, Time-Series Models for Estimating Economic Damages in Antitrust (and Other) Litigation: The Relative Merits of Predictive versus Dummy-Variable Approaches, 1 ANTITRUST CHRONICLE (2011); Philips & Durlauf, supra note 167.

[n182] . Depending on the nature of the antitrust allegations, the theory of causation, and specific facts of the case, there can be variables other than a dummy that may better measure the anticompetitive behavior in estimating damages. *Id.* Assume, for example, prices can only increase when existing customer contracts expire over time. The impact of the alleged conspiracy would not increase prices to all customers immediately, so average price increases related to the alleged conspiracy would be expected to trend upward over time. There could be several ways to model this effect other than using a simple dummy variable for the alleged conspiracy period, depending on the available data. *Id.* Under certain circumstances, one simple method to create a variable to approximate the conspiracy might be a "time trend" beginning at the period of the alleged conspiracy, with the value "1" in the first observation (*e.g.*, a month) of the conspiracy period, "2" in the second, "3" in the third, etc. If average prices were the appropriate dependent variable, then the coefficient on this trend variable would be interpreted as the average monthly price increase due to the conspiracy. The overcharge in any month during the conspiracy would be the corresponding time trend value multiplied by that coefficient. However, care must be used with this and any approach for creating a variable that measures the impact of an alleged anticompetitive act. For example, at some point all contracts will have been renegotiated, so it would be inappropriate to continue to predict price increases beyond a certain number of observations.

of the effect of the conspiracy on the dependent variable, this type of model is often called a *dummy variable model*. [n183]

This model typically assumes that the coefficients on the explanatory variables are the same in the conspiracy and non-conspiracy periods. This assumption may not always be valid. For example, price-fixing conspirators may react differently to changes in supply and demand factors than they would have had they not been conspiring. Thus, it is important to test whether prices react differently to the supply and demand factors in the conspiracy period than they did in the non-conspiracy period.

In more technical terms, it is important to test whether there has been a significant shift in the relationship between the explanatory variables and the dependent variable of interest. [n184] In particular, one can estimate the same economic model over the conspiracy and non-conspiracy subsamples of the available data and test statistically whether the model's parameters are statistically significantly different in the two time periods. If the assumption of model stability is not rejected, then there is a statistical basis to rely on the results from the dummy variable model to estimate the cartel effect on price. If the stability assumption is rejected, the model may be unreliable.

An alternative to the dummy variable model is a *prediction model*. [n185] The first step in implementing a prediction model is to estimate the reduced form equation on the data from the non-conspiracy period. Then, this equation is used to predict the prices that would have prevailed in the conspiracy period, given the values of the explanatory variables in that period.

The prediction model assumes that the coefficients on the explanatory variables that would have held during the conspiracy period absent the conspiracy are the same as those that actually hold in the non-conspiracy period. But, under certain conditions, this assumption may be invalid. For example, assume there was a change in the relationship between the explanatory variables and the variable of interest (e.g., price) in the conspiracy period that had nothing to do with the alleged anticompetitive conduct (e.g., entry or exit of firms from the market) and the prediction model does not take that change into account. Under these conditions, estimates using data solely from the non-conspiracy period are unlikely to accurately predict pricing but for an alleged conspiracy or other anticompetitive act. [n186] Moreover, as discussed above, a prediction model should be tested where possible to check whether it accurately predicts turning points in the data. [n187]

In addition, one also could estimate the model using data from the conspiracy period and then use the resulting estimates to predict back ("backcast") into the non-conspiracy period. [n188] If the backcast is above the actual prices in the non-conspiracy period, that would suggest the price-setting process in the conspiracy period produced higher prices than the price-setting process in the non-conspiracy period. This finding would be consistent with the proposition that the alleged anticompetitive behavior in the conspiracy period increased prices, and the difference between the actual and predicted prices in the non-conspiracy period could form the basis for calculating an overcharge and damages. The backcast model relies on similar assumptions as the prediction model (in effect, it is predicting prices that would have prevailed had the conspiracy been operational in the non-conspiracy period).

---

[n183] . See James F. Nieberding, Estimating Overcharges in Antitrust Cases Using a Reduced-Form Approach: Methods and Issues, J. APPL. ECON. 361, 367-369 (2006).

[n184] . GREENE, *supra* note 2, at 168-75.

[n185] . *See* MADDALA & LAHIRI, *supra* note 34, at § 4.7; Nieberding, *supra* note 183, at 367-69.

[n186] . In this way, the prediction model may suffer from some of the same limitations related to the dummy variable model discussed above.

[n187] . A dummy variable model can suffer from a similar problem of failing to fit turning points well, and thus incorrectly attributing to the conduct turning points that may have nothing to do with the alleged conduct. *See* WOOLDRIDGE, *supra* note 1, at 65-67.

[n188] . Or, more generally, one could combine both data from before and after the period of the alleged anticompetitive act, using the combined before and after data to estimate the prediction model. Such before-during-after models are discussed in the next section.

If the results from the prediction and dummy-variable models are significantly different, one should assess carefully whether there are sufficient data and sufficient industry stability for the prediction model to be reliable. If the conditions required for a reliable prediction model are not met, then one should test whether the stability assumptions underlying the dummy-variable model are met, and if so, rely on the results from the dummy-variable model. Importantly, there may be situations in which neither model is appropriate, in which case the value of econometric evidence in assessing damages may be quite limited.

Proving Antitrust Damages: Legal and Economic Issues Copyright © 2017 American Bar Association. All Rights Reserved.

---

End of Document