# Cahoy Supp. Dec. Ex. 100

```
 1                UNITED STATES DISTRICT COURT
 2           FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4    IN RE: DA VINCI SURGICAL ROBOT      ) Lead Case No.:
      ANTITRUST LITIGATION,                ) 3:21-cv-03825-VC
 5    --------------------------------------)
      THIS DOCUMENT RELATES TO:            )
 6    ALL CASES                            )
      --------------------------------------)
 7
 8    SURGICAL INSTRUMENT SERVICE          )
      COMPANY, INC.,                       ) Case No.
 9                                         ) 3:21-cv-03496-VC
                      Plaintiff,           )
10                                         )
          vs.                              )
11                                         )
      INTUITIVE SURGICAL, INC.,            )
12                                         )
                      Defendant.           )
13    --------------------------------------)
14
15
16             REMOTE PROCEEDINGS OF THE
17   DEPOSITION OF JOHN SAMPSON IN HIS PERSONAL CAPACITY
18         AND AS CORPORATE DESIGNEE, 30(B)(6)
19              THURSDAY, NOVEMBER 3, 2022
20
21
22
23   REPORTED BY NANCY J. MARTIN
24   CSR. NO. 9504, RMR, RPR
25   PAGES 1 - 104
```

Page 1

```
 1                  UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO DIVISION
 4   IN RE: DA VINCI SURGICAL ROBOT    ) Lead Case No.:
     ANTITRUST LITigation,             ) 3:21-cv-03825-VC
 5   ------------------------------------)
     THIS DOCUMENT RELATES TO:         )
 6   ALL CASES                         )
     ------------------------------------)
 7
 8   SURGICAL INSTRUMENT SERVICE       )
     COMPANY, INC.,                    ) Case No.
 9                                     ) 3:21-cv-03496-VC
                  Plaintiff,           )
10                                     )
         vs.                           )
11                                     )
     INTUITIVE SURGICAL, INC.,         )
12                                     )
                  Defendant.           )
13   ------------------------------------)
14
15
16                         - - -
17              Thursday, November 3, 2022
18                         - - -
19       Remote Deposition of JOHN SAMPSON, in his
20   personal capacity and as corporate designee, 30(B)(6),
21   beginning at 11:09 a.m., before Nancy J. Martin, a
22   Registered Merit Reporter, Certified Shorthand
23   Reporter.  All parties appeared remotely.
24
25

                                                    Page 2
```

```
 1     A P P E A R A N C E S :
 2
       JOHN KENDRICK, ESQ.
 3     MARIAM AZHAR, ATTORNEY AT LAW
       COVINGTON & BURLING LLP
 4     1999 Avenue of the Stars
       Los Angeles, California  90067
 5     jkendrick@cov.com
       Counsel for Intuitive Surgical
 6
 7
 8     MANUEL J. DOMINGUEZ, ESQ.
       COHEN MILSTEIN SELLERS & TOLL PLLC
 9     11780 US Highway
       Suite N500
10     Palm Beach Gardens, Florida  33408
       (561) 515-1431
11     jdominguez@cohenmilstein.com
       Counsel for the hospital plaintiffs
12
13
       ALSO PRESENT:
14
       PATRICK DOWNES
15
       NOAH SUSZCKIEWICZ, LEGAL VIDEOGRAPHER
16
17
18
19
20
21
22
23
24
25
```

```
 1         A.   John Francis Sampson.
 2         Q.   And where do you currently work?
 3         A.   I work for Franciscan Alliance.
 4         Q.   What is your current work address?
 5         A.   At 15- -- well, my current address is
 6    435 Park Place Circle, Mishawaka, Indiana.
 7         Q.   Okay.  Great.
 8              Have you ever been deposed before?
 9         A.   Yes, I have.
10         Q.   How many times?
11         A.   Once.
12         Q.   Okay.  When was that?
13         A.   In '95, '96.
14         Q.   And do you remember the parties in that case?
15         A.   Yes.  It was an antitrust lawsuit that the
16    FTC brought against a couple of pharmaceutical
17    distributors that were proposing to merge.  The FTC
18    was against that merger, and I was a witness in that
19    case.
20         Q.   And did you -- sorry.  Go ahead.
21         A.   I was a witness in that case for the FTC.
22         Q.   Okay.  Great.
23              Did you end up testifying at trial?
24         A.   Yes, I did.
25         Q.   Okay.  So I'll start with some ground rules.
```

Page 8

1      Q.  Then setting aside any documents
2   Mr. Dominguez gave you, did you do any independent
3   research, going through documents that were not given
4   to you by Mr. Dominguez to prepare for your deposition
5   today?
6      A.  No, I did not.
7      Q.  Okay.  Have you talked to anyone from
8   Franciscan about today's deposition?
9      A.  Just that I was being deposed today.
10     Q.  Okay.  And I guess as a side note, I know
11  there's several different entities that are part of
12  the Franciscan health system.  So I'll just use the
13  word "Franciscan" to refer collectively to the system
14  as a whole.  Is that fair?
15     A.  Yes.
16     Q.  And if you need to specify a particular part
17  of a Franciscan answer, just let me know.
18         Is that fair?
19     A.  Yes.  I will ask if I need further
20  clarification.
21     Q.  Okay.  Perfect.
22         So when did you start at Franciscan?
23     A.  I started at Franciscan in April of 2015.
24     Q.  Okay.  And what was your job title?
25     A.  I was the director of capital equipment.

Page 13

1    Q.  And what were your responsibilities in that
2    role?
3    A.  My responsibilities were to work with our
4    collaborative, our directors and managers and
5    identifying potential savings opportunities as it
6    related to capital equipment throughout the system.
7    Q.  Did you play a role in identifying the need
8    for new capital equipment?
9    A.  No, I did not.
10   Q.  Okay.  And who identifies the need for new
11   capital equipment?
12   A.  In most cases, it's the clinicians that use
13   that equipment within the facilities.
14   Q.  And "clinicians," that means like doctors or
15   surgeons?
16   A.  Doctors, nurses, department heads, directors.
17   It could be COO or the CEO.
18   Q.  Okay.  And then when they identify the need,
19   who do they identify that need to at Franciscan?
20        MR. DOMINGUEZ:  Objection to form.
21        You can answer.
22        THE WITNESS:  They -- I'm sorry.  Repeat the
23   question.
24   BY MR. KENDRICK:
25   Q.  Sorry.  When they identify the need for new

```
 1    capital equipment, who do they identify the need to?
 2             MR. DOMINGUEZ:  Again, objection to form.
 3             Go ahead.
 4             THE WITNESS:  There are multiple people they
 5    would identify that need to.
 6    BY MR. KENDRICK:
 7        Q.  Now, are you one of those people?
 8        A.  I would be one of those people in the chain,
 9    correct.
10        Q.  Okay.  And did your role involvement
11    negotiations with sellers of capital equipment?
12        A.  Yes.
13        Q.  Okay.  Did you transition to a different role
14    at some point?
15        A.  No.  I'm still in the same role.  My title
16    has changed.
17        Q.  And what's your new title?
18        A.  My new title, my current title is
19    contracting -- contract sourcing administrator for
20    capital equipment.
21        Q.  Okay.  And did that change in title involve
22    any change in responsibilities?
23        A.  No.
24             MR. KENDRICK:  Okay.
25             Mariam, can you please pull up Tab 1.  I
```

Page 15

```
 1        off on it, yes.
 2        BY MR. KENDRICK:
 3             Q.   Okay.  And did you need Terri's approval too
 4        or just Keith's?
 5             A.   Just Keith.
 6             Q.   And your E-mail references "a formal Memo to
 7        Kevin."  Do you see that part of your E-mail?
 8             A.   Yes.  Yes.
 9             Q.   And is that formal memo just the E-mail
10        that's the first page of this document?
11             A.   Yes.  That's my recollection.
12             Q.   There wasn't a separate formal memo?
13             A.   No, there was not.
14             Q.   So let's go down through the attachments.  So
15        just Bates No. -501, turning to Page 4.
16             A.   -501?
17             Q.   Yes.
18             A.   Okay.
19             Q.   So do you see the middle paragraph that
20        begins, "In April 2014"?
21             A.   Yes.
22             Q.   And then it lists technological improvements
23        made to the Xi?
24             A.   Yes.
25             Q.   So did Franciscan seek to upgrade the Xi to
```

Page 44

```
 1    take advantage of those improvements?
 2            MR. DOMINGUEZ:  Objection to form.  Lacks
 3    foundation.
 4            THE WITNESS:  I don't know what Indy's
 5    ultimate reason for wanting to upgrade those Xi's was.
 6    BY MR. KENDRICK:
 7       Q.   Do you have any understanding --
 8       A.   I'm assuming that because ultimately, by this
 9    time the Xi had been out for a few years, and what
10    we've seen in mixed facilities where we had Si's and
11    Xi's is that the physicians, the surgeons preferred
12    using the Xi's for their cases.
13            And so at this time, in 2019, they may have
14    been underutilized because all the surgeons wanted to
15    use the Xi's, which would create issues with
16    scheduling.  And so they wanted Xi's.
17       Q.   And so why did the surgeons prefer the Xi?
18            MR. DOMINGUEZ:  Objection to form.  Lacks
19    foundation.
20            THE WITNESS:  I'd be speculating.  I'm not a
21    surgeon.  I wouldn't know.
22            MR. KENDRICK:  Mariam, can we pull up Tab 16,
23    16-b.
24            (Deposition Exhibit 188 was marked for
25            identification.)
```

Page 45

```
 1                    C E R T I F I C A T E
 2         I do hereby certify that the aforesaid testimony
 3    was taken before me, pursuant to notice, at the time
 4    and place indicated; that said deponent was by me duly
 5    sworn to tell the truth, the whole truth, and nothing
 6    but the truth; that the testimony of said deponent was
 7    correctly recorded in machine shorthand by me and
 8    thereafter transcribed under my supervision with
 9    computer-aided transcription; that the deposition is a
10    true and correct record of the testimony given by the
11    witness; and that I am neither of counsel nor kin to
12    any party in said action, nor interested in the
13    outcome thereof.
14
15                    [signature]
                      Nancy J. Martin, RMR, CSR
16
17    Dated:  November 16, 2022
18
19
20
21    (The foregoing certification of this transcript does
22    not apply to any reproduction of the same by any
23    means, unless under the direct control and/or
24    supervision of the certifying shorthand reporter.)
25
```

Page 99