# EXHIBIT A

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION,**<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Lead Case No. 3:21-cv-03825-AMO<br><br>**DEFENDANT'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>Date:<br>Time:<br>Courtroom:   10<br><br>The Honorable Araceli Martínez-Olguín |

1

## **TABLE OF CONTENTS**

2
**Page**

3   Table of Authorities ..................................................................................................... ii

4   NOTICE OF MOTION AND MOTION ....................................................................... 1

5   STATEMENT OF ISSUE TO BE DECIDED ............................................................. 1

6   MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

7   PRELIMINARY STATEMENT .................................................................................. 2

8   RELEVANT BACKGROUND ..................................................................................... 3

9   LEGAL STANDARDS ................................................................................................. 7

10  ARGUMENT ................................................................................................................. 9

11  I.     THE COURT SHOULD RECONSIDER ITS PRIOR RULING AND
            DENY THE HOSPITAL PLAINTIFFS' MOTION FOR SUMMARY
12          JUDGMENT ................................................................................................... 9

13  II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THESE
            MATTERS FOR AN INTERLOCUTORY APPEAL UNDER § 1292(b) ..................... 12
14

15  CONCLUSION ............................................................................................................ 14

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Apple, Inc.* v. *Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ..................................................................9

*Arizona* v. *Ash Grove Cement Co.*,
  459 U.S. 1190 (1983)..........................................................................................8

*In re Cement Antitrust Litig.*,
  673 F.2d 1020(9th Cir. 1981) .........................................................................8, 13

*Coronavirus Reporter* v. *Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ........................................................................10, 13

*Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992).........................................................................................10

*Epic Games, Inc.* v. *Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024), and *cert.
  denied*, 144 S. Ct. 682 (2024) ................................................................... *passim*

*Gamevice, Inc.* v. *Nintendo Co., Ltd.*,
  2023 WL 4032009 (N.D. Cal. June 14, 2023)........................................................8

*Gray* v. *Golden Gate National Recreational Area*,
  866 F. Supp. 2d 1129 (N.D. Cal. 2011) ...............................................................8

*Juliana* v. *United States*,
  949 F.3d 1125 (9th Cir. 2018) ............................................................................8

*Lambrix* v. *Tesla, Inc.*,
  2023 WL 8265916 (N.D. Cal. Nov. 17, 2023) .......................................................7

*FTC* v. *Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ..............................................................................7

*Reese* v. *B.P. Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ...................................................................8, 13, 14

*Reilly* v. *Apple, Inc.*,
  578 F. Supp. 3d 1098 (N.D. Cal. 2022) ................................................................9

*Rodriguez* v. *Barrita, Inc.*,
  62 F. Supp. 3d 936 (N.D. Cal. 2014) ...................................................................7

*SIS, Inc.* v. *Intuitive Surgical, Inc.*,
  571 F.Supp.3d 1133 (N.D. Cal. 2021) .............................................................4, 14

- ii -

**Statutes**

28 U.S.C. §1292(b) ...................................................................................1, 2, 8, 12

Civ. L. R. 7-9 ...................................................................................................1, 7, 8

Fed. R. Civ. P. 54(b) ..............................................................................................1

Motion for Reconsideration, or Interlocutory Appeal
3:21-cv-03825-AMO

1                    **NOTICE OF MOTION AND MOTION**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3           PLEASE TAKE NOTICE that on such date as may be directed by the Court,

4 Defendant Intuitive Surgical, Inc. ("Intuitive") will and hereby does move the Court pursuant to

5 Civil Local Rule 7-9 and Federal Rule of Civil Procedure 54(b) to reconsider portions of the

6 Court's March 31, 2024 Order Granting in Part and Denying in Part Hospital Plaintiffs' Motion

7 for Summary Adjudication (Dkt. 232, the "Order").  Specifically, Intuitive requests that the

8 Court reconsider its rulings as to the interrelated issues of the definition of a U.S. market for

9 EndoWrist repair and replacement, Intuitive's power in such a market, and separate products.

10 Order at 14:9-11, 18:9-11, and 21:3-5.  Intuitive respectfully submits that the Court's rulings on

11 these issues directly conflict with the Ninth Circuit's decision in *Epic Games, Inc.* v. *Apple, Inc.*,

12 67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024), and *cert. denied*, 144 S. Ct. 682

13 (2024), and that reconsideration is warranted under Civ. L.R. 7-9(b)(3) and/or the inherent

14 authority of the Court to prevent clear error or manifest injustice.

15           In the alternative, Intuitive requests that the Court certify its Order on these issues

16 for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

17           This Motion is based upon this Notice of Motion and Motion, the accompanying

18 Memorandum of Points and Authorities in support thereof, and such arguments and authorities as

19 may be presented at or before the hearing.

20                 **STATEMENT OF ISSUE TO BE DECIDED**

21           1.  Whether the Court should reconsider the portion of its March 31, 2024 Order

22 granting summary judgment for the Hospital Plaintiffs (or "Plaintiffs") as to the existence and

23 definition of a separate, single-brand aftermarket for EndoWrist repair and replacement and as to

24 Intuitive's alleged monopoly power in such an aftermarket, Order at 14:9-11, 18:9-12, and 21:3-

25 5, where Plaintiffs have not demonstrated that they meet the four requirements for defining a

26 single-brand aftermarket set forth in *Epic Games*, 67 F.4th at 977, and where the Court correctly

27 concluded that there are genuine disputes of fact precluding summary judgment as to the

1  definition of the alleged primary market or "foremarket" (for surgical robots) and as to

2  Intuitive's power in that alleged foremarket.

3        2.  If the Court denies leave to seek reconsideration or declines to reconsider its

4  Order, whether the Court should certify, pursuant to 28 U.S.C. § 1292(b), an interlocutory appeal

5  as to the following question of law:  Can a plaintiff be granted summary judgment on the

6  existence and definition of a single-brand aftermarket, and a defendant's alleged monopoly

7  power in such an aftermarket, without (a) satisfying the four requirements for establishing a

8  single-brand aftermarket set forth in *Epic Games*, 67 F.4th at 977, or (b) establishing as a matter

9  of undisputed fact that the defendant has monopoly power in a properly defined foremarket?

10  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

11  <u>**PRELIMINARY STATEMENT**</u>

12        Intuitive respectfully requests that the Court reconsider the portion of its

13  March 31, 2024 Order (Dkt. 232) granting the Hospital Plaintiffs' Motion for Summary

14  Adjudication as to the interrelated issues of the definition of a U.S. market for EndoWrist repair

15  and replacement, Intuitive's market power and monopoly power in such a market, and separate

16  products.  Order at 14:9-11, 18:9-12, and 21:3-5.  We respectfully submit that these portions of

17  the Court's Order are in direct conflict with the Ninth Circuit's decision in *Epic Games*, 67 F.4th

18  946 (9th Cir. 2023).  If the rulings at issue are left uncorrected, trial in this matter will have a

19  serious and substantial legal error embedded into it before a jury is empaneled.  In the

20  alternative, Intuitive respectfully requests that the Court certify those rulings for an interlocutory

21  appeal to the Ninth Circuit.

22        In brief, Plaintiffs allege that Intuitive has a monopoly in a purported market for

23  "minimally invasive surgical robots" as well as in a separate purported aftermarket for

24  "EndoWrist repair and replacement."  The latter is, for antitrust purposes, a "single-brand

25  aftermarket."  Generally, the law forbids antitrust plaintiffs from defining a market around the

26  defendant's own brand of products.  There is a limited exception, however.  And in *Epic Games*,

27  which was decided after Intuitive submitted its opposition to Plaintiffs' Motion for Summary

28  Adjudication, the Ninth Circuit clarified what is required for that exception to apply.

Specifically, the *Epic Games* Court enumerated four factors that a plaintiff seeking to allege a single-brand aftermarket "must show." 67 F.4th at 977. Plaintiffs here do not claim to be able to satisfy these four factors as a matter of undisputed fact, and the summary judgment record establishes that they cannot do so. Plaintiffs instead have consistently maintained only that they need not satisfy the *Epic Games* factors to define a single-brand aftermarket, *if* they can establish that Intuitive has monopoly power in the alleged primary market for surgical robots. *See* Dkt. 194, Ex. A at 2:27-3:7, 4:1-2; Dkt. 226 at 2:5-3:9.

But here, the Court determined correctly that there are genuine disputes of fact precluding summary adjudication as to the definition of a surgical robot market and, accordingly, whether Intuitive has monopoly power in any such market. Order 14:12-16:4. As a result, under *any* interpretation of *Epic Games*—including the Plaintiffs' own interpretation—there was no legal or factual basis for the Court to enter judgment defining a separate, single-brand aftermarket for EndoWrist repair and replacement or finding that Intuitive has monopoly power in such a single-brand aftermarket. Stated differently, having properly denied summary judgment as to the definition of the "primary" market or "foremarket," which Plaintiffs alleged to be a market limited to surgical robots, the only course available to the Court on the record here was to deny summary judgment as to the rest of the market definition issues as well. Intuitive respectfully submits that the Court's contrary rulings cannot be squared with Ninth Circuit law.

## **RELEVANT BACKGROUND**

Plaintiffs moved for partial summary judgment on April 10, 2023. Dkt. 149. On page 1 of their motion, Plaintiffs described their claims as challenging Intuitive's conduct "under claims of tying, exclusive dealing, and monopolization in the ***aftermarkets*** for EndoWrist repair and replacement and da Vinci servicing." *Id.* at 1 (emphasis added). Plaintiffs argued that "many" health care providers opted to buy third-party serviced EndoWrists from SIS and other third parties, instead of from Intuitive, Dkt. 149 at 10, and that this offered "undisputed proof" of a "separate demand for EndoWrist repair and replacement, such that it constitutes a separate product from the da Vinci." *Id.* at 11-12. Plaintiffs then went on to argue, in relevant part, that (1) there exists a "Robot" market, in which Intuitive has monopoly power, and (2) there exists a

1   separate, single-brand aftermarket for "EndoWrist repair and replacement," in which Intuitive

2   also has monopoly power. *Id.* at 12-19.

3   Intuitive filed its opposition to Plaintiffs' motion, and a cross-motion for summary

4   judgment, on April 13, 2023. Dkt. 153. In its opposition, Intuitive argued that there were

5   disputed issues of fact regarding the definition of both the alleged foremarket and the alleged

6   aftermarket, and whether Intuitive has monopoly power in either one. *Id.* at 27-29. In addition,

7   Intuitive argued that "[t]he contract the customer signs for the da Vinci Surgical System provides

8   that the customer will purchase EndoWrists from Intuitive on a going forward basis," and that

9   "[m]aterials provided to the customer in advance of purchase address the lifetime cost of the

10  *system*, including EndoWrists." *Id.* at 26-27. Therefore, "[w]hether there are separate products

11  here is *at least* a disputed issue of fact." *Id.* at 27.

12  Plaintiffs' motion and Intuitive's opposition on these issues were both filed

13  against the backdrop of Judge Chhabria's 2021 motion to dismiss decision, which held that "it

14  makes sense (at least at the pleading stage) to conceptualize the market for refurbishment

15  services separately from the market for surgical robots" *because* Intuitive was alleged to have "a

16  monopoly in the market for surgical robots." *SIS, Inc.* v. *Intuitive Surgical, Inc.*, 571 F.

17  Supp. 3d 1133, 1140 (N.D. Cal. 2021).

18  On April 24, 2023, however, eleven days after Intuitive filed its opposition to

19  summary judgment, the Ninth Circuit issued its decision in *Epic Games*, in which it clarified and

20  crystallized what is required to establish a separate, single-brand aftermarket in an antitrust case.

21  The Ninth Circuit held:

22  > In sum, to establish a single-brand aftermarket, a plaintiff must
23  > show: (1) the challenged aftermarket restrictions are 'not generally
    > known' when consumers make their foremarket purchase;
    > (2) 'significant' information costs prevent accurate life-cycle
24  > pricing; (3) 'significant' monetary or non-monetary switching costs
    > exist; and (4) general market-definition principles regarding cross-
25  > elasticity of demand do not undermine the proposed single-brand
    > market.
26

27  67 F.4th at 977.

28

1    Although Plaintiffs' next brief on the cross-motions cited the Ninth Circuit's *Epic*

2  *Games* decision on a completely different issue, *see* Dkt. 169 at 16, Plaintiffs did not discuss the

3  Ninth Circuit's relevant market analysis or the test the Ninth Circuit set out for establishing a

4  single-brand aftermarket.

5    Intuitive promptly brought the relevant holding of *Epic Games* to the Court's

6  attention in the first brief on summary judgment that it filed after the Ninth Circuit's decision—

7  Intuitive's May 25, 2023 reply on its cross-motion for summary judgment. *See* Dkt. 188.  There,

8  Intuitive cited *Epic Games* for the proposition that "an 'aftermarket' exists as a *separate* relevant

9  market only if, *inter alia*, the customer's obligation to purchase aftermarket items from the same

10  seller is not disclosed at the time of the original purchase." Dkt. 188 at 15:12-14.  Pointing to the

11  language of the da Vinci purchase contracts that discloses the ongoing need to purchase

12  EndoWrists from Intuitive, Intuitive argued that "plaintiffs cannot make this showing."  *Id*. at

13  15:15-16.  Intuitive also argued that any claim that it had "concede[d]" possession of monopoly

14  power in a separate EndoWrist relevant market ignores "the factual and legal showing that no

15  such relevant market exists."  *Id*. at 15:16-18.

16    Plaintiffs then moved for leave to file a sur-reply specifically to respond to

17  Intuitive's arguments regarding *Epic Games*.  Dkt. 194.  Nowhere in their motion for leave or in

18  their proposed sur-reply did Plaintiffs argue that they had satisfied or could satisfy the four

19  factors that *Epic Games* identified as required "to establish a single-brand aftermarket."  *See id.*

20  Instead, Plaintiffs made two arguments, one procedural and one substantive, about why the Court

21  should ignore the holding of *Epic Games*.  Procedurally, they argued that Intuitive "had every

22  opportunity to make this specious argument in its opposition brief" to Plaintiffs' motion—even

23  though *Epic Games* had not yet been decided when Intuitive filed its opposition—"but failed to

24  do so." Dkt. 194 at 3:9-10 & n.4.  Substantively, Plaintiffs argued (in their proposed sur-reply)

25  that the *Epic Games* factors apply "*only where the defendant lacks market power in the primary*

26

27

28

- 5 -

*market* that might allow it to profitably exclude competition in the aftermarkets." Dkt. 194, Ex. A, at 2:3-7 (emphasis in original).[1]

Plaintiffs claimed that they had demonstrated in their summary judgment briefs that "the evidence is unmistakable that Intuitive possesses monopoly power in a cognizable primary market: the market for minimally invasive surgical robots ('Robots')." *Id.* at 2:27-3:1. "As such," Plaintiffs maintained, "Plaintiffs need not rely on the lock-in theory to establish a relevant aftermarket for EndoWrist repair." *Id.* at 3:2-4. Plaintiffs further insisted that "Judge Chhabria's reasoning" in his motion to dismiss decision, from before *Epic Games*, "applies with equal force here at the summary judgment stage," after *Epic Games*. *Id.* at 3:28.

Accordingly, Plaintiffs did not argue that they *could* satisfy the *Epic Games* factors—only that they were not required to do so. Plaintiffs also did not argue that they were entitled to summary judgment on a separate, single-brand aftermarket for EndoWrist repair and replacement if the Court were to find (as it ultimately did) that there are disputed issues of fact concerning whether or not "Intuitive possesses monopoly power in a cognizable primary market" for Robots. *Id.* at 2:27-3:1. Instead, Plaintiffs made clear that their argument for summary judgment on a separate, single-brand aftermarket rested entirely and explicitly on the premise that "the evidence is unmistakable that Intuitive possesses monopoly power in a cognizable primary market" for surgical robots. *Id.*; *see id.* at 4:1-2 ("Because the evidence unambiguously shows that Intuitive has monopoly power in the Robots market, the requirements of the lock-in theory do not apply."). As discussed below, this Court rejected that premise when it found, correctly, that Plaintiffs' evidence on this point was not "unmistakable," but rather that "there

---

[1]  The Court denied Plaintiffs' motion for leave to file a sur-reply, as well as a subsequent motion by Intuitive for leave to file supplemental authority, which Plaintiffs opposed. Order at 32:16-18. Plaintiffs' briefs on those motions, however, are relevant here because, as discussed *infra*, they make explicit the premise underlying their motion for summary judgment—namely, that a separate, single-brand aftermarket may be found to exist *either* where plaintiffs can demonstrate "lock-in" by meeting the *Epic Games* requirements *or* where plaintiffs can demonstrate that the defendant has monopoly power in a properly defined primary market. *See* Dkt. 194, Ex. A at 2:3-26. As discussed, neither of those conditions is satisfied here.

exists a genuine dispute as to whether surgical robots constitute a distinct market that can be separated from laparoscopy and open surgery."  Order at 16:2-3.[2]

One more turn of events in the briefing record returned *Epic Games* to the spotlight.  On November 17, 2023, Judge Thompson granted Tesla's motion to dismiss in *Lambrix* v. *Tesla, Inc.*, 2023 WL 8265916 (N.D. Cal. Nov. 17, 2023), and Intuitive moved for leave to submit that decision as supplemental authority.  Dkt. 223.[3]  In *Lambrix*, Judge Thompson applied *Epic Games* to dismiss single-brand aftermarket claims even though Tesla was alleged to possess a 65-80% market share in the relevant primary market.  *Id.* at *3.  Under Plaintiffs' argument here, the four-factor test in *Epic Games* should not have applied because Tesla was alleged to have market power in the primary market; but Judge Thompson applied the *Epic Games* factors, and dismissed the claims at issue.

Plaintiffs disagreed with and tried to distinguish *Lambrix*.  *See* Dkt. 226.  But, again, Plaintiffs offered no argument that the summary judgment record in this case demonstrated that they had satisfied the *Epic Games* factors.  Nor did they dispute that those factors must be satisfied in the *absence* of a finding that the defendant has monopoly power in a relevant primary market.  To the contrary, Plaintiffs only reiterated their position that it is "irrelevant whether Intuitive's customers were aware of its behavior in aftermarkets," *if* they could establish that "Intuitive has a monopoly in the market for surgical robots."  *Id.* at 2:5-15.

## LEGAL STANDARDS

District courts have discretion to reconsider their own prior orders.  *Rodriguez* v. *Barrita, Inc.*, 62 F. Supp. 3d 936, 939 (N.D. Cal. 2014).  Under Civil Local Rule 7-9, parties can move for reconsideration by receiving leave from the court and showing at least one of three factors:  (1) "[t]hat at the time of the motion for leave, a material difference in fact or law exists

---

[2]  In its opposition to Plaintiffs' sur-reply motion, Intuitive argued explicitly that if the Court were to find (as it did) that there are disputed issues of fact concerning Intuitive's alleged power in the primary market, summary judgment as to a single-brand aftermarket would be inappropriate even under Plaintiffs' own view of the law:  "Even if, as plaintiffs assert, the statement of the *Epic* court that Intuitive quoted applies only if Intuitive lacks market power in the alleged primary market, *there is a material fact dispute on whether such market power exists*, as Intuitive demonstrated in its opening brief.  *See* Dkt. No. 153 at 27-29."  Dkt. 200 at 2:24-27.

[3]  As noted above, the Court denied Intuitive's motion.  Order at 32:16.

1  from that which was presented to the Court before entry of the interlocutory order for which

2  reconsideration is sought"; (2) "[t]he emergence of new material facts or a change of law

3  occurring after the time of such order"; or (3) "[a] manifest failure by the Court to consider

4  material facts or dispositive legal arguments which were presented to the Court before such

5  interlocutory order."  Civ. L.R. 7-9(b); *see Gamevice, Inc.* v. *Nintendo Co., Ltd.*, 2023 WL

6  4032009, at *1 (N.D. Cal. June 14, 2023).  Beyond those factors, district courts have "inherent

7  authority" to reconsider prior orders so as to "prevent clear error or prevent manifest injustice."

8  *Gray* v. *Golden Gate National Recreational Area*, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011).

9  Here, Intuitive respectfully submits that the Court should reconsider its decision to grant partial

10  summary judgment in favor of Plaintiffs because the Court did not consider the material facts

11  and dispositive legal arguments presented on the issue of what is required in the Ninth Circuit to

12  define a separate, single-brand aftermarket, and/or because the Court's decision on these issues

13  constitutes clear legal error and allowing the case to proceed on the basis of such error would

14  create a manifest injustice.

15          "An interlocutory appeal under 28 U.S.C. § 1292(b) is authorized when a district

16  court order involves a controlling question of law as to which there is substantial ground for

17  difference of opinion and where an immediate appeal from the order may materially advance the

18  ultimate termination of the litigation."  *Juliana* v. *United States*, 949 F.3d 1125, 1126 (9th Cir.

19  2018) (cleaned up).  "[A]ll that must be shown in order for a question to be 'controlling' is that

20  resolution of the issue on appeal could materially affect the outcome of litigation in the district

21  court."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981), *aff'd sub nom.*

22  *Arizona* v. *Ash Grove Cement Co.*, 459 U.S. 1190 (1983)).  "A substantial ground for difference

23  of opinion exists where reasonable jurists might disagree on an issue's resolution."  *Reese* v. *B.P.*

24  *Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "[N]either § 1292(b)'s literal text nor

25  controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the

26  litigation, only that it may materially advance the litigation."  *Id.*  If a ruling would "appreciably

27  shorten the time, effort, or expense of conducting" the district court proceedings, that is a

28  sufficient basis to certify an interlocutory appeal.  *See In re Cement*, 673 F.2d at 1027.

Motion for Reconsideration, or Interlocutory Appeal
3:21-cv-03825-AMO

<u>**ARGUMENT**</u>

**I.   THE COURT SHOULD RECONSIDER ITS PRIOR RULING AND DENY THE HOSPITAL PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Generally, a relevant market for antitrust purposes cannot be defined around the defendant's own brand of products, since any firm could be considered a "monopolist" in its own brand. *See, e.g., Apple, Inc.* v. *Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008). "Single-brand markets are, at a minimum, extremely rare." *Id.*; *see Reilly* v. *Apple, Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022) (same). There are, however, "some instances" in which "one brand of a product can constitute a separate market." *Epic Games*, 67 F.4th at 976 (quoting *Eastman Kodak Co.* v. *Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992)). "More specifically, the relevant market for antitrust purposes can be an *aftermarket*—where demand for a good is entirely dependent on the prior purchase of a good in a *foremarket*." *Id.* (emphasis in original).

Here, Plaintiffs claim that Intuitive has monopolized and excluded competition in an alleged *aftermarket* for "EndoWrist repair and replacement." Dkt. 149 at 1. Plaintiffs' theory is that the demand for goods and services in that aftermarket is entirely dependent on hospitals' prior purchase of the da Vinci robot from Intuitive, in an alleged *foremarket* for minimally-invasive soft tissue surgical robots. *Id.* at 10. Plaintiffs contend that Intuitive has monopoly power in the *foremarket*, and has leveraged that power to harm competition in the *aftermarket*. *Id.* The alleged aftermarket is a "single-brand" aftermarket because "EndoWrists" are Intuitive's own brand.

In *Epic Games*, the Ninth Circuit explained in detail the limited circumstances in which it may be permissible to define a separate, single-brand aftermarket in an antitrust case. 67 F.4th at 976-978. In particular, the Court explained how certain "conditions might 'lock-in' unknowing customers such that competition in the *foremarket*" cannot discipline a hypothetical monopolist's ability to raise prices in the aftermarket. *Id.* at 976. The Supreme Court had previously found such "lock-in" conditions present in a case in which customers had purchased copy machines from Kodak without being aware at the time that Kodak would place exclusive

1   restrictions on the parts and servicing of its copiers.  *See id.* (discussing *Eastman Kodak*, 504
2   U.S. at 455, 470).

3          The *Epic Games* Court summarized its holding by stating that "to establish a
4   single-brand aftermarket, a plaintiff must show" four enumerated factors, the first of which being
5   that "the challenged aftermarket restrictions are 'not generally known' when consumers make
6   their foremarket purchase."  *Id.* at 977; *see supra* 4:18-27.  Approximately six months after
7   deciding *Epic Games*, in November 2023, the Ninth Circuit reiterated its holding regarding "the
8   prerequisites for a single-brand market," in *Coronavirus Reporter* v. *Apple, Inc.*, 85 F.4th 948,
9   956 (9th Cir. 2023).  There the Court affirmed dismissal of a complaint where the plaintiffs had
10  alleged a single-brand aftermarket for Apple App Store apps.  *Id.* at 954-957.  Citing *Epic*
11  *Games*, the Court held:  "This allegation fails because Plaintiffs-Appellants did not allege the
12  prerequisites for a single-brand market.  For example, Plaintiffs-Appellants do not demonstrate
13  that iOS end consumers lacked awareness that buying an iPhone constrains which apps would be
14  available to them through the App Store."  *Id.* at 956.

15         On the cross-motions for summary judgment here, Plaintiffs submitted no
16  evidence and made no arguments suggesting that the challenged "aftermarket restrictions" on
17  EndoWrist repair and replacement are not generally known to hospitals when they make their
18  "foremarket purchase" of a da Vinci robot.  If anything, the undisputed summary judgment
19  evidence established that the *opposite* is true—*i.e.*, that the challenged restrictions on
20  EndoWrists *are* generally known to hospitals when they buy a da Vinci.  Intuitive presented
21  evidence, for example, that those restrictions appear plainly on the face of the da Vinci sales and
22  lease contracts that hospitals sign.  *See*, *e.g.*, Dkt. 188 at 15:3-11; *see also* Dkt. 153-18 ("Cahoy
23  Dec. Ex. 11").  Intuitive also presented evidence that the "hospitals and surgery centers that
24  purchase da Vinci systems are highly sophisticated consumers"; that a "sale of a da Vinci is
25  routinely preceded by extensive presentations on the costs and benefits to the hospital of having
26  a da Vinci available"; that this "customer-facing cost analysis includes ongoing costs for
27  EndoWrists and accessories used with the system"; and that "Customers are fully aware when
28  they purchase a da Vinci that its EndoWrists are limited-use devices that will require

1    replacement after a fixed number of uses." Dkt. 153-2 ("Rosa Dec.") ¶¶ 14, 20. Plaintiffs did

2    not attempt to dispute *any* of these facts. They certainly did not show that the facts concerning

3    customers' knowledge of the alleged aftermarket restrictions—or their access to information

4    regarding "accurate life-cycle pricing," 67 F.4th at 977—were undisputed in *Plaintiffs'* favor.

5          Instead, the one and only argument Plaintiffs made regarding the *Epic Games*

6    factors was that they were not required to satisfy those factors because Intuitive supposedly has

7    monopoly power in the alleged primary, *foremarket* for surgical robots. Dkt. 194, Ex. A at 2:1-

8    26; Dkt. 226:1-9. In Plaintiffs' own words: "Because the evidence unambiguously shows that

9    Intuitive has monopoly power in the Robots market, the requirements of the lock-in theory do

10    not apply." Dkt. 194, Ex. A at 4:1-2. As noted, Intuitive disagrees with Plaintiffs'

11    characterization of the law regarding whether and when the *Epic Games* factors apply, and at

12    least one post-*Epic Games* District Court decision (*Lambrix*) indicates that the monopoly power

13    "exception" that Plaintiffs rely on does not exist. *See supra* 7:4-18; Dkt. 223.

14          But no matter which way the parties' disagreement over that legal question may

15    ultimately be resolved, reconsideration of the rulings at issue should be granted.

16          Because the Court has denied Plaintiffs' motion for summary judgment as to the

17    definition of the alleged "Robot" foremarket and as to whether Intuitive has market power or

18    monopoly power in such a market, those are now issues of fact for a jury to decide. As the Court

19    recognized, there is sufficient evidence in the record to allow a reasonable jury to find that

20    surgical robots do *not* "constitute a distinct market that can be separated from laparoscopy and

21    open surgery." Order at 16:2-4. It follows inexorably from that ruling that the issue of whether

22    there is a separate, single-brand aftermarket for EndoWrist repair and replacement must also be

23    left for a jury. If the jury rejects Plaintiffs' alleged foremarket, and agrees with Intuitive "that

24    the relevant market must include at least laparoscopy surgery, particularly where laparoscopy

25    remains the majority surgery of choice for many types of surgery," Order at 15:23-25, there

26    would be no basis to conclude that Intuitive is a monopolist. Accordingly, there would also be

27    no basis to conclude that there exists a separate, single-brand aftermarket for EndoWrist repair

28

and replacement, or that Intuitive has monopoly power in such an aftermarket—*even under Plaintiffs' own definition of what is required to establish a single-brand aftermarket.*

The Court's granting of partial summary judgment in favor of the Hospital Plaintiffs thus directly conflicts with the Ninth Circuit's holding in *Epic Games*, no matter which side's view of the law regarding single-brand aftermarkets is accepted.  If permitted to stand, the Court's ruling on this issue would inject clear legal error into the case that cannot be avoided at trial.  And that ruling would create the significant risk of an inconsistent verdict—a finding that surgical robots compete in a broad primary market over which Intuitive has no power, but that Intuitive somehow still has monopoly power in a separate, single-brand aftermarket despite a failure of proof by Plaintiffs as to the *Epic Games* factors.

For these reasons, Intuitive respectfully requests that the Court reconsider its ruling.  Even if the Court does not hold that Plaintiffs are required to satisfy the four factors enumerated in *Epic Games* to define a single-brand aftermarket (as we believe they should be, under Ninth Circuit law), at a minimum the Court should deny summary judgment for Plaintiffs on the issues of whether there is a separate, single-brand aftermarket for EndoWrist repair and replacement and whether Intuitive has monopoly power in such a single-brand aftermarket.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THESE MATTERS FOR AN INTERLOCUTORY APPEAL UNDER  § 1292(B)

If the Court denies reconsideration, we respectfully submit that it should certify for interlocutory appeal its rulings granting summary judgment to Plaintiffs as to the existence and definition of a separate, single-brand aftermarket for EndoWrist repair and replacement, and Intuitive's alleged monopoly power in that alleged aftermarket.  Each of the requirements for certification under 28 U.S.C. § 1292(b) is met.

*First*, whether and when Plaintiffs can define a separate, single-brand aftermarket for EndoWrist repair and replacement is an issue of law.  Although the ultimate definition of a market involves findings of fact, *Epic Games* itself characterized as a "legal" issue the criteria that a plaintiff seeking to establish a single-brand aftermarket must establish.  67 F.4th at 978

(describing Epic's "Legal Challenges" to include whether "the district court committed legal error" by requiring Epic to show "lack of consumer awareness" and "switching costs").

*Second*, the legal question here is "controlling" because its resolution "could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. If the Ninth Circuit were to agree that Plaintiffs are required, in all circumstances, to prove all four *Epic Games* factors, that in itself could result in the termination of this litigation—since it would appear from the record and Plaintiffs' own arguments that they have no ability to meet that requirement. *See Reese*, 643 F.3d at 688 (a ruling that would eliminate claims from the case would "materially advance" the litigation). Regardless, a ruling from the Ninth Circuit at this stage would "appreciably shorten the time, effort, or expense of conducting" proceedings in this Court, *In re Cement*, 673 F.2d 1027, by reducing the possibility that this case proceeds to trial on the basis of rulings that appear to be in direct conflict with binding Ninth Circuit law, and thus reducing the possibility of a re-trial after appeal.

*Finally*, if the Court declines to reconsider its Order, then there would be a substantial ground for a difference of opinion concerning what a plaintiff must show in order to establish a separate, single-brand aftermarket. Intuitive respectfully submits that Ninth Circuit law on this issue is clear. In *Epic Games*, the Ninth Circuit explained in detail what a plaintiff "must show" in order "to establish a single-brand aftermarket." 67 F.4th at 977. In *Coronavirus Reporter*, the Ninth Circuit reiterated its holding regarding "the prerequisites for a single-brand market." 85 F.4th at 956. If the Court disagrees with the arguments Intuitive has presented for reconsideration, however, that would necessarily mean there *is* substantial ground for a difference of opinion concerning the application of *Epic Games*. Specifically, it would mean that the Court disagrees not just with Intuitive's argument that Plaintiffs cannot define a separate, single-brand aftermarket unless they satisfy the four enumerated *Epic* factors, but also with the only alternative argument that Plaintiffs proffered, which is that they would not be required to satisfy the *Epic* factors *if* they could first establish that Intuitive has monopoly power in the alleged relevant foremarket. The Court's decision would also be at odds with Judge Chhabria's motion to dismiss ruling, which rested explicitly on the premise that it only "makes sense . . . to

1    conceptualize the market for refurbishment services separately from the market for surgical

2    robots" if "Intuitive has a monopoly in the market for surgical robots." 571 F. Supp. 3d at 1140.

3            In this scenario, the Ninth Circuit should have the opportunity to consider

4    immediately the novel question of whether summary judgment can be granted in favor of a

5    plaintiff on a separate, single-brand aftermarket where the *Epic Games* factors have not been

6    established and where disputed issues of fact preclude summary judgment on the definition of

7    the alleged foremarket and the defendant's alleged power in that market. *See Reese*, 643 F.3d at

8    688 (when "novel legal issues are presented," they may "be certified for interlocutory appeal

9    without first awaiting development of contradictory precedent.").

10                            **<u>CONCLUSION</u>**

11            For the foregoing reasons, Intuitive respectfully requests that the Court grant

12    reconsideration and deny the Hospital Plaintiffs' Motion for Partial Summary Judgment.  In the

13    alternative, Intuitive requests that the Court certify an interlocutory appeal pursuant to 28 U.S.C.

14    § 1292(b).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Reconsideration, or Interlocutory Appeal
3:21-cv-03825-AMO

Dated:  April 30, 2024

By: /s/ *Kenneth A. Gallo*
    Kenneth A. Gallo

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman *(pro hac vice)*
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101
Email: jhill@paulweiss.com

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
Email: swinner@cov.com

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLINGTON LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLINGTON LLP**
One City Center 850 Tenth Street NW
Washington DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: alazerow@cov.com

Allen Ruby (SBN 47109)
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690
Email: allen@allenruby.com

Attorneys for *Defendant*
*Intuitive Surgical, Inc.*

- - 16 - -

Motion for Reconsideration, or Interlocutory Appeal
3:21-cv-03825-AMO