# EXHIBIT 4

(Original Exhibit No. 129-1)

**I   INITIAL R&D**

HISTORY

Benjamin Biomedical Inc. ("BB"), a FL corporation solely owned by David Mixner, has been repairing specialty medical equipment since 1994.  BB customers are mostly middlemen (distributors) that pick up the equipment from hospitals and surgery centers and send to BB for service.

R&D of EndoWrists manufactured by Intuitive ("Wrists") was begun by BB and utilized multiple outside subject matter experts and vendors.  Below is summary of the activities.

**2012**

Begin R&D on servicing Wrists.

Contract with engineering firm (G5) for solution to 10 use restriction.

Retain Larson & Larson PA as intellectual property counsel.

Retain Atty Howard Ross for business set up.

**2013**

Contract with AJW technology as regulatory consultants.

Continue R&D as a remanufactured product.  Remanufactured instead of repair was per the recommendation of AJW based on factors which can be discussed outside the scope of this outline.

Began developing quality system and design work to support regulatory submissions to FDA (for US) and for ISO certification/CE mark (International marketing).

June - Open **Rebotix LLC** (Rebotix) in Nevada.  (In Oct 2014 changed to a FL LLC.)  David Mixner sole member.

November - technology transfer of entire Wrist project from BB to Rebotix.  Work done by BB employees under terms of consulting contract.

[REDACTED]

**2014**

[REDACTED]

[REDACTED]

[REDACTED]

"     open F21, LLC (F21) in Nevada.  Holding company for patents.

- " F21 files 2 utility patent applications.
- " Submit 510K application to FDA.

**2015**

Jan – May:  Multiple communications with FDA and FDA handling of the submission (remanufacture / reprocessed device).

March - contract with subject matter expert Stan Hamilton to review programmable logic and documentation.  Begin correcting documentation and establishing potential improvements.

Enter negotiations with Steris / IMS to sell project.

June - FDA sends Request For Additional Information.

- " Steris / IMS declines purchase.

Begin design improvement cycle for programmable logic led by Stan.

December – Start due diligence for potential sale of technology to Stryker

**2016**

Feb – lower court ruling in <u>Impressions Products vs. Lexmark International,</u> patent case (<u>Lexmark</u>)

- " F21 granted first patent

March – Stryker declines purchase

Notes:

A significant amount of documentation was generated in support of development and regulatory submissions.  Documentation includes 3rd party and in-house testing and regulatory files (Technical Files-ISO; Design-FDA)  as well as documentation, contracts and communication with third party consultants and vendors (engineering, regulatory, test houses, etc.)

FDA request for Additional Information was, in the opinion of our experts, excessive and beyond that of a normal 510k submission.  The details are beyond the scope of this summary.  The costs of moving forward with FDA submission were very substantial.

The unexpected holding of the lower court in <u>Lexmark</u> combined with the costs of moving forward with the FDA made the US market impractical.

**II INTERNATIONAL REPAIR BUSINESS**

**Spring 2016**

Stan believes that board replacement is a service / repair only and suggests initiating repair business internationally.

David agrees to sell project to entity jointly owned by David and Stan, operate out of Panama, doing international repairs **– Rebotix Panama, SA** (RP)

Engage Attys Watson, Farley in NY to structure deal.  The model expands from just performing repairs to attempting to set up 3rd party service centers to perform repairs.  The internal business structure ends up involving more than one entity and there are relationships with 3rd parties.  Details are beyond the scope of this summary.

RP sets up operations in Panama, begins marketing and performing repairs.

**2017**

Jan. – F21 granted 2nd patent.

RP performs limited # of repairs.

RP achieves ISO 9001 certification as service company and seller of repair components (primarily the boards).  This means there is another entire set of quality system documents (service and administrative documents) for RP - based on the ones originally prepared for the original Rebotix LLC.  Also there are repair records for repairs performed by RP.

May - RP receives copy of preliminary injunction in favor of Intuitive from court in Denmark along with cease and desist letter from Attys Hogan, Lovells .  Injunction granted ex-parte. Primary claims are regulatory – not patent infringement.

" RP gets 2nd cease and desist letter from Hogan, Lovell threatening lawsuit in Germany.

" Supreme Court overturns Lexmark case.

June – Watson, Farley response letter to Hogan, Lovell.

July - Intuitive granted 2nd ex parte injunction – from German Court.  Watson, Farley declines acceptance of service.  Watson, Farley requests phone conference (ignored).

Intuitive actively engages with customers warning not to utilize repair service.

Documentation includes the quality system and repair records for RP and marketing documents.

**III  US REPAIR BUSINESS**

**Summer / Fall 2017**

With new Lexmark ruling the US market is re-examined.

Stan believes the service is a repair consistent with FDA positions regarding the service of instruments where no ownership changes hands, owner's right to repair, and remanufacture vs service analysis.  Further, that sale of component (boards) clearly does not require FDA clearance.  This position is consistent with other people in the industry whom David and Stan have talked to.

David enters negotiations (as POA of entities) with potential purchasers (including Frazier Capital) for sale of patents and technology.

**2018**

Enter negotiation with Northfield for sale of technology and patents.  Northfield advises that their consultants agree that the repair is a service, not a remanufacture.

Northfield backs out of purchase due to fear of litigation (breach of contract) with Intuitve.

Sent sample repairs to some US customers.  Customers happy with product but Dr Randy Fagan, Chief Medical Officer with HCA, sent notification that service of Wrists not authorized in their hospital shutting down customers.  According to his online bio he is/was affiliated with Intuitve

Begin negotiations with Restore Robotics regarding Restore utilizing Rebotix boards to perform Wrist repairs.

Engage attorney Reid Haney (Hill, Henderson, Ward – Tampa FL) to help restructure from international business structure to FL, LLC.

October - RP Enters contract with Restore Robotics as US service center.  RP agrees to sell boards and lease equipment and train on both.

**2019**

Jan – Feb :  Open Florida LLC - Rebotix Repair LLC (RR).  Transfer assets to RR.  There are multiple documents beyond the scope of this summary.

Restore initiates lawsuit against Intuitive for Anti-Trust violation.

Feb -  RR and PIPICZ market repair service in the US.

 March - RR begins performing repairs in the US.

April ? -Intuitive sends cease and desist letter to RR (from Intuitive, not attorneys)

April - Intuitive begins threats and taking actions against customers utilizing RR repairs

RR generates new quality system documents and is certified to ISO 9001 quality certification.

June – AAMI conference.  RR attended conference with marketing booth and information.  RR customer brought FDA representative to RR booth where repair was shown and explained to FDA representative including advising of re-setting counter.  FDA raised no objections or made any further inquiries at the time.  No further communication from FDA until Feb. 2020.

October – Restore contract expires – not renewed.

Throughout year RR had many customers using (or want to use) service only to discontinue (or decline) repair service solely because of Intuitive threats or actions.

Documentation:

RR quality system and repair records.  Marketing material.  Contracts and correspondence with Restore.