# ATTACHMENT 61

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4   IN RE: DA VINCI SURGICAL ROBOT     ) Lead Case No.:
     ANTITRUST LITIGATION,              ) 3:21-cv-03825-VC
 5   ------------------------------------)
     THIS DOCUMENT RELATES TO:          )
 6   ALL CASES                          )
     ------------------------------------)
 7
 8   SURGICAL INSTRUMENT SERVICE        )
     COMPANY, INC.,                     ) Case No.
 9                                      ) 3:21-cv-03496-VC
                   Plaintiff,           )
10                                      )
         vs.                            )
11                                      )
     INTUITIVE SURGICAL, INC.,          )
12                                      )
                   Defendant.           )
13   ------------------------------------)
14
15
16             REMOTE PROCEEDINGS OF THE
17    DEPOSITION OF JOHN SAMPSON IN HIS PERSONAL CAPACITY
18          AND AS CORPORATE DESIGNEE, 30(B)(6)
19                THURSDAY, NOVEMBER 3, 2022
20
21
22
23   REPORTED BY NANCY J. MARTIN
24   CSR. NO. 9504, RMR, RPR
25   PAGES 1 - 104
```

Page 1

1       was 12 units.
2       BY MR. KENDRICK:
3           Q.  But after this report, you became aware of
4       that?
5           A.  Yes.
6           Q.  Okay.  Do you think Franciscan was typically
7       able to get better terms because it was a group
8       organization comprised of multiple hospitals?
9               MR. DOMINGUEZ:  Objection to form.  Lacks
10      foundation.  Calls for speculation.
11              THE WITNESS:  I believe we were able to get
12      the best pricing we could because we would bring
13      volume to the table.
14      BY MR. KENDRICK:
15          Q.  And that pricing would typically be better
16      than an individual hospital trying to purchase the
17      same products?
18              MR. DOMINGUEZ:  Objection to form.  Lacks
19      foundation.  Calls for speculation.
20              THE WITNESS:  I would say that I knew that
21      the pricing for three or five units would be better
22      than the pricing for one.
23      BY MR. KENDRICK:
24          Q.  Okay.  So moving down, towards the end of
25      this page there's a line that says, "Service/

```
 1        A.   Yes.
 2        Q.   What was contained in that spreadsheet?
 3        A.   Basically, just the summary of the slides
 4   that I had gotten from Andy as far as the value that
 5   they were providing in this deal.
 6        Q.   And is that just financial value or other
 7   forms of value?
 8        A.   It was just financial value.
 9        Q.   Okay.  And then flipping to the next page.
10   At the top it says, "By purchasing these 5 systems
11   together we'll save $1.07 million."  Do you see that?
12        A.   Correct.
13        Q.   And is that accurate?
14        A.   To my knowledge, that's accurate.
15        Q.   So it's correct -- sorry.  Go ahead.
16        A.   Yes.
17        Q.   Okay.  So it's correct that Franciscan
18   ultimately saved 1.07 million on this purchase?
19        A.   Yes, as far as we were concerned.
20        Q.   So up towards the top of the previous page,
21   the middle E-mail -- do you see the middle E-mail from
22   Jennifer Marion?
23        A.   Yes.
24        Q.   Who is Jennifer Marion?
25        A.   Jennifer Marion is our corporate CFO.
```

Page 37

1       Q.  Okay.  And then above that there's an E-mail
2   from Matt Meyer?
3       A.  Mayer.
4       Q.  Who is Matt Mayer?
5       A.  Matt Mayer was my boss at the time.  He was
6   the VP of supply chain.
7       Q.  Okay.  Fair to say from these E-mails that
8   your colleagues were happy with the outcome of the
9   negotiation?
10      A.  Yes.
11      Q.  Is it fair to say you were primarily
12  responsible for obtaining that good outcome?
13      A.  It was a team effort, but yes.
14      Q.  And how did you obtain that discount?
15      A.  We obtained that discount by -- like I said,
16  a couple ways.  One, we purchased all of those systems
17  at the same time instead of having each individual
18  hospital purchase them individually.  So that was a
19  factor.
20          There was also the factor that we were
21  pressured to get the deal done before the end of
22  September so that Intuitive would have the POs and be
23  able to deliver the systems before the end of
24  September because that was the end of their annual
25  fiscal year.

Veritext Legal Solutions
866 299-5127

```
 1                    C E R T I F I C A T E
 2          I do hereby certify that the aforesaid testimony
 3     was taken before me, pursuant to notice, at the time
 4     and place indicated; that said deponent was by me duly
 5     sworn to tell the truth, the whole truth, and nothing
 6     but the truth; that the testimony of said deponent was
 7     correctly recorded in machine shorthand by me and
 8     thereafter transcribed under my supervision with
 9     computer-aided transcription; that the deposition is a
10     true and correct record of the testimony given by the
11     witness; and that I am neither of counsel nor kin to
12     any party in said action, nor interested in the
13     outcome thereof.
14
15                       [signature]
                         Nancy J. Martin, RMR, CSR
16
17     Dated:  November 16, 2022
18
19
20
21     (The foregoing certification of this transcript does
22     not apply to any reproduction of the same by any
23     means, unless under the direct control and/or
24     supervision of the certifying shorthand reporter.)
25
```

Page 99