# ATTACHMENT 67

**From:** Dwyer Margaret <Margaret.Dwyer@franciscanalliance.org>
**To:** Drew Ferguson <Drew.Ferguson@intusurg.com>
**Cc:** Downes Pat <Pat.Downes@franciscanalliance.org>, Coram Stephanie
<Stephanie.Coram@franciscanalliance.org>, Conner Daniel
<Daniel.Conner@franciscanalliance.org>, Schimmel Judith
<Judith.Schimmel@franciscanalliance.org>, Waninger Karen F
<Karen.Waninger@franciscanalliance.org>, Nichols Rick
<Rick.Nichols@franciscanalliance.org>, John Gullans <John.Gullans@intusurg.com>, Andy
Stoner <Andy.Stoner@intusurg.com>
**Subject:** Intuitive Surgical/Franciscan Alliance - Master Sales, Use, License, and Service Agreement
**Date:** Wed, 26 Aug 2020 18:53:07 -0500
**Importance:** Normal
**Attachments:** Intuitive-Franciscan-Agmt_(Dwyer_REDLINE_08-26-20).docx

---

Drew:

Attached is the Agreement containing Franciscan Alliance's response to Intuitive Surgical's revisions.  Judy Schimmel wanted rebate language added to the Agreement and it is under Section 15.16.  Please have the sales representative sent Judy the price list in Word format (portrait layout) that will be inserted under Exhibit F.  Judy and Pat Downes (General Counsel - Franciscan Alliance, Inc.) would like to schedule a negotiation meeting with Intuitive Surgical's team to discuss our proposed revisions.  The Franciscan Alliance team is available to meet as follows:

| | |
|---|---|
| **Friday, 09/18/20** | **1:00 pm to 2:00 pm eastern**<br>**2:00 pm to 3:00 pm eastern**<br>**4:00 pm to 5:00 pm eastern** |
| **Wednesday, 09/23/20** | **11:00 am to 12:00 pm eastern**<br>**1:00 pm to 2:00 pm eastern** |
| **Thursday, 09/24/20** | **1:00 pm to 2:00 pm eastern** |

Please let me know if any of these times work for your team, and if so, I will then send out a meeting invitation.  Thank you.

Margaret


**Margaret Dwyer, MBA | Contract Specialist**
**Office of Legal and Regulatory Affairs**
**FRANCISCAN ALLIANCE, INC.**
*Inspiring Health*
**1500 Albany Street | Beech Grove, IN  46107**
**(317) 782-6247 | margaret.dwyer@franciscanalliance.org | www.franciscanhealth.org**

---

**From:** Drew Ferguson <Drew.Ferguson@intusurg.com>
**Sent:** Friday, July 31, 2020 1:25 PM
**To:** Dwyer Margaret <Margaret.Dwyer@franciscanalliance.org>; Andy Stoner <Andy.Stoner@intusurg.com>

Cc: Downes Pat <Pat.Downes@franciscanalliance.org>; Coram Stephanie <Stephanie.Coram@franciscanalliance.org>; Conner Daniel <Daniel.Conner@franciscanalliance.org>; Schimmel Judith <Judith.Schimmel@franciscanalliance.org>; Waninger Karen F <Karen.Waninger@franciscanalliance.org>; Nichols Rick <Rick.Nichols@franciscanalliance.org>; John Gullans <John.Gullans@intusurg.com>

**Subject:** RE: Intuitive Surgical/Franciscan Alliance - Master Sales, Use, License, and Service Agreement

Margaret,

Please see an editable version of Exhibit D attached. Just a heads up, this is a pretty standard template with little room for redlines. Happy to discuss if you see something that you want aligned with the Master, I just wanted to be fully transparent. Have a great weekend!

Sincerely,

**Drew E. Ferguson**
Contract Negotiator
Direct:  1 678 291 1318

INTUITIVE

---

**From:** Dwyer Margaret <Margaret.Dwyer@franciscanalliance.org>
**Sent:** Friday, July 31, 2020 1:19 PM
**To:** Andy Stoner <Andy.Stoner@intusurg.com>
**Cc:** Downes Pat <Pat.Downes@franciscanalliance.org>; Coram Stephanie <Stephanie.Coram@franciscanalliance.org>; Conner Daniel <Daniel.Conner@franciscanalliance.org>; Schimmel Judith <Judith.Schimmel@franciscanalliance.org>; Waninger Karen F <Karen.Waninger@franciscanalliance.org>; Nichols Rick <Rick.Nichols@franciscanalliance.org>; Drew Ferguson <Drew.Ferguson@intusurg.com>; John Gullans <John.Gullans@intusurg.com>
**Subject:** [EXTERNAL] Intuitive Surgical/Franciscan Alliance - Master Sales, Use, License, and Service Agreement

Andy:

Please send Exhibit D in an editable format.  An image of the text was cut/pasted into the Word document.  Thank you.

Margaret

**Margaret Dwyer, MBA | Contract Specialist**
**Office of Legal and Regulatory Affairs**
**FRANCISCAN ALLIANCE, INC.**
*Inspiring Health*
**1500 Albany Street | Beech Grove, IN  46107**
**(317) 782-6247 | <u>margaret.dwyer@franciscanalliance.org</u> | www.franciscanhealth.org**

---

**From:** Andy Stoner <Andy.Stoner@intusurg.com>
**Sent:** Monday, July 27, 2020 5:20 PM
**To:** Dwyer Margaret <Margaret.Dwyer@franciscanalliance.org>
**Cc:** Downes Pat <Pat.Downes@franciscanalliance.org>; Coram Stephanie <Stephanie.Coram@franciscanalliance.org>; Conner Daniel <Daniel.Conner@franciscanalliance.org>; Schimmel Judith <Judith.Schimmel@franciscanalliance.org>; Waninger Karen F <Karen.Waninger@franciscanalliance.org>; Nichols Rick <Rick.Nichols@franciscanalliance.org>; Drew Ferguson <Drew.Ferguson@intusurg.com>; John Gullans <John.Gullans@intusurg.com>
**Subject:** RE: Intuitive Surgical/Franciscan Alliance - Master Sales, Use, License, and Service Agreement

CONFIDENTIAL

Hi Margaret –

Drew Ferguson, our contracts negotiator, reviewed and responded to your proposed revisions today.  Please see attachment.

Thank you!

Andy

---

**From:** Dwyer Margaret <Margaret.Dwyer@franciscanalliance.org>
**Sent:** Friday, July 24, 2020 7:47 PM
**To:** Andy Stoner <Andy.Stoner@intusurg.com>
**Cc:** Downes Pat <Pat.Downes@franciscanalliance.org>; Coram Stephanie <Stephanie.Coram@franciscanalliance.org>; Conner Daniel <Daniel.Conner@franciscanalliance.org>; Schimmel Judith <Judith.Schimmel@franciscanalliance.org>; Waninger Karen F <Karen.Waninger@franciscanalliance.org>; Nichols Rick <Rick.Nichols@franciscanalliance.org>
**Subject:** [EXTERNAL] Intuitive Surgical/Franciscan Alliance - Master Sales, Use, License, and Service Agreement

Andy:

My name is Margaret Dwyer and I am a Contract Specialist at Franciscan Alliance.  I am assisting Judy Schimmel and our attorney with this contract matter.  Attached the Master Sales, Use, License, and Service Agreement containing our proposed revisions.  Please review and let us know your thoughts.  We also need the following information:

1. the system move form referenced in Section 3.5 and Exhibit D (it was not attached to the draft contract we received for review); and

2. rebate language added to the contract for our review (we want this contract to include rebates).

Thank you.

Margaret


**Margaret Dwyer, MBA | Contract Specialist**
**Office of Legal and Regulatory Affairs**
**FRANCISCAN ALLIANCE, INC.**
*Inspiring Health*
**1500 Albany Street | Beech Grove, IN  46107**
**(317) 782-6247 | margaret.dwyer@franciscanalliance.org | www.franciscanhealth.org**

---

The information contained in this e-mail and any accompanying documents is intended for the sole use of the recipient to whom it is addressed, and may contain information that is privileged, confidential, and prohibited from disclosure under applicable law. If you are not the intended recipient, or authorized to receive this on behalf of the recipient, you are hereby notified that any review, use, disclosure, copying, or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by e-mail and destroy all copies of the original message. Thank you.

NOTE THAT THIS EMAIL ORIGINATED FROM OUTSIDE OF INTUITIVE SURGICAL.
Be alert for fraudulent emails that spoof internal "@intusurg.com" email addresses. Report any suspicious emails using the "**Report Phish**" button. Click KB0014776 for more information on the "Report Phish" button and to learn more about differentiating phishing from spam and bulk email, please review KB0014940.

The information contained in this e-mail and any accompanying documents is intended for the sole use of the recipient to whom it is addressed, and may contain information that is privileged, confidential, and prohibited from disclosure under applicable law. If you are not the intended recipient, or authorized to receive this on behalf of the recipient, you are hereby notified that any review, use, disclosure, copying, or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by e-mail and destroy all copies of the original message. Thank you.

NOTE THAT THIS EMAIL ORIGINATED FROM OUTSIDE OF INTUITIVE SURGICAL.
Be alert for fraudulent emails that spoof internal "@intusurg.com" email addresses. Report any suspicious emails using the "**Report Phish**" button. Click <u>KB0014776</u> for more information on the "Report Phish" button and to learn more about differentiating phishing from spam and bulk email, please review <u>KB0014940</u>.

# MASTER SALES, LICENSE, AND SERVICE AGREEMENT

Agreement No.: _____

This Master Sales, Use, License, and Service Agreement ("Master Agreement") is dated August————October 1, 2020 (the "Effective Date") and is between **Intuitive Surgical, Inc.**, a Delaware corporation ("Intuitive"), located at 1020 Kifer Road, Sunnyvale, California 94086, and **Franciscan Alliance, Inc.** with offices located at 1500 Albany Street, Beech Grove, Indiana 46107 ("Organization") on behalf of the Participants (defined below).

**The parties agree as follows:**

**1.**    **Introduction**

Organization agrees that each Participant will be bound to the terms and conditions of this Master Agreement as evidenced by a signed Transaction Agreement (defined below). Upon the signing by a Participant of a Transaction Agreement, the Participant agrees to purchase the Hardware and license the Software and Documentation from Intuitive, and Intuitive agrees to respectively sell and license the same to Participant, as well as provide Service for the System all according to the terms and conditions of this Master Agreement and the Transaction Agreement.

**2.**    **Definitions**

2.1    **"Acceptance"** means Participant's acceptance of the System as specified in the Transaction Agreement.

2.2    **"Delivery Date"** means the estimated scheduled date for delivery of the System to Participant specified in the Transaction Agreement.

2.3    **"Participant"** means Organization and any party that is part of, affiliated with, owned by, or controlled by the Organization and may purchase under this Master Agreement. A list of Participants is attached, made a part hereof, and marked as Exhibit A to this Master Agreement.

2.4    **"Instruments and Accessories"** means those instruments or accessories made or approved by Intuitive for use with the System.

2.5    **"Proctoring"** means the assistance, coaching, or surgical training provided by a surgeon (the "Proctor") who is familiar with the System to another surgeon (the "Proctee") on how to perform a particular Procedure (or Procedures) using the System.

2.6    **"Services"** means the support and maintenance of the System described in Section 5 for the Service fees designated in the Transaction Agreement.

2.7    **"System"** means the items comprising the da Vinci® Surgical System specified in the Transaction Agreement consisting of certain hardware components ("Hardware"), software program elements ("Software") and related manuals, labeling, instructions for use, notifications or other documentation ("Documentation"), that Participant may receive, purchase and license under this Master Agreement and the associated Transaction Agreement. If Participant purchases multiple Systems under this Master Agreement and an associated Transaction Agreement, all references to "System" or "System(s)" apply to each System sold and licensed. Each System purchased is a separate transaction to be delivered, accepted, and paid for separately.

2.8    **"Taxes"** means any taxes, levies, or similar governmental charges, now in force or enacted in the future, and however designated, including related penalties and interest, imposed by any governmental authority on, or measured by, the activities described.

2.9    **"Transaction Agreement"** means a separate agreement executed between Intuitive and a Participant detailing the terms of a transaction and binding the Participant to the terms of this Master Agreement and the Transaction Agreement. An example of a Transaction Agreement is attached as Exhibit B.

CONFIDENTIAL                                                      FRANCISCAN-00001610

2.10 **"Participant's Access Requirements"** means any reasonably applicable requirements designated by Participant that Intuitive personnel must meet to gain access to Participant's facility. Such requirements may include, but are not limited to, compliance with Participant's site policies and vendor credentialing requirements, such as vaccination, immunization, background investigation, training, hospital orientation, and liability insurance coverage.

2.11 "**SIMNOW da Vinci® Skills Simulator Agreement**" means the SimNow Service & Benefits offered by Intuitive for use with the daVinci® SimNow Skills Simulator. The SimNow Service & Benefits are governed by the terms of Exhibit C to this Master Agreement.

2.12 **"Reprocess" or "Reprocessing"** means Participant's process for cleaning, disinfection, and sterilization of Instruments and Accessories, including testing to validate cleaning, disinfection and sterilization process as may be required by applicable law and/or regulation.

2.13 **"Procedure"** means a surgical procedure or a diagnostic procedure.

2.14 **"Rebate"** shall be defined as any amount paid by Intuitive to Organization based on purchases of Software, Hardware, System, and/or Services by Organization under this Master Agreement during each calendar quarter during the term of this Master Agreement.

3. **System Delivery, Use, Relocation and Disposal**

3.1 **Delivery and Installation.** Subject to credit approval of Participant by Intuitive, Intuitive will use commercially reasonable efforts to deliver the System on or before the Delivery Date. Each of Intuitive and Participant will provide the other party with thirty (30) days' notice, or if the applicable Transaction Agreement is executed within thirty (30) days before the Delivery Date, a reasonable advance notice of any change in the Delivery Date. Participant will fully cooperate with Intuitive to permit Intuitive to install the System. Intuitive will use commercially reasonable efforts to install the System in an efficient and expeditious manner. Participant will also provide Intuitive with information, consultation, and advice reasonably necessary to permit installation.

3.2 **Delivery Terms.** Intuitive will deliver the System to Participant's designated location noted as the "Ship-to" in the Transaction Agreement using a carrier selected by Intuitive. Fees for shipping the System will be specified in the Transaction Agreement. Risk of loss or damage to the System passes to the Participant upon delivery of the System to Participant. Title to the System passes to the Participant upon Acceptance.

3.3 **On-Site Support.** At no charge to Participant, Intuitive will provide periodic on-site support to Participant's designated personnel on the proper operation and upkeep of the System in order for Participant to operate the System as further described in Section 3.4. To clarify, this support includes, but is not necessarily limited to, training on draping the System for use during a Procedure, proper attachment of Instruments and Accessories, and cleaning of parts of the System and the Instruments and Accessories. The cleaning to be performed regularly by Participant is described in the Documentation.

3.4 **Use of System.** Participant will ensure the proper use of the System consistent with the Documentation, and Participant will ensure the proper management and supervision of the System. Participant will not modify, disassemble, reverse engineer, alter, or misuse the System or Instruments and Accessories. Prohibited actions include, but are not limited to: (1) adding or subtracting any Participant or third party equipment, hardware, firmware, or software to or from the System, or (2) reconfiguring any of the Intuitive equipment, Hardware, firmware, or Software as originally provided to Participant as part of the System without Intuitive's express written permission. Participant will ensure that the System is moved and operated only by trained personnel in accordance with the Documentation and Intuitive's instructions. If Participant fails to comply with the requirements of this Section 3.4, Intuitive may terminate the associated Transaction Agreement immediately upon written notice, and any warranties applicable to the System will become void.

3.5 **Relocation of System.** Prior to relocating a System from a Participant's facility to another Participant's facility, Participant and Intuitive must sign a System Move Letter or Assignment and Assumption agreement the forms of which are attached hereto, made a part hereof, and marked as Exhibit D to this Agreement.

CONFIDENTIAL

FRANCISCAN-00001611

3.6     **Reprocess and Disposal**. Participant is responsible for properly Reprocessing and/or disposing of all medical instruments, devices, and systems related to the operation and function of the System, including Instruments and Accessories, in accordance with the Documentation and the then current local environmental and safety laws and standards.

4.     **Software License and Restrictions**

Software embedded within the System is provided under license and is not sold to Participant.  Subject to the terms and conditions of this Master Agreement, Intuitive grants to Participant a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the System in machine-executable object code form and solely in connection with the operation of the System as described in the Documentation.  Participant must not use, copy, modify, or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Master Agreement.  In addition, Participant must not reverse engineer, decompile, disassemble, attempt to derive the source code for, or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Participant must first request from Intuitive the information to be sought from the Software, and Intuitive may, in its discretion, provide information to Participant under good faith restrictions and impose reasonable conditions on use of the Software.  The structure and organization of the Software are valuable trade secrets of Intuitive and Participant will protect the Software as Intuitive's Proprietary Information (as defined in Section 13).  Intuitive reserves all rights to the Software not expressly granted to Participant. Some components of the Software may be provided to you under a separate license, at no additional fee, such as an open source license. In the event of a conflict between this Agreement and any such separate license, the separate license will prevail with respect to the component that is the subject of such separate license.

5.     **Services**

5.1     **Services Included**.  If Participant is current in payment to Intuitive of the Service fees specified in the Transaction Agreement, Intuitive, directly or through one of its designated service providers, will provide Services to Participant as listed below.  Intuitive will use parts sourced by Intuitive, which may, at Intuitive's discretion, include reconditioned parts, ("Equivalent to New" or "ETN").  ETN parts are components, assemblies, or partial products which have had prior usage, but have been inspected, reworked, and tested as required so that their function, performance, and appearance will be essentially equivalent to that of new parts.  Regardless of whether parts are new or ETN, Intuitive's appropriate warranties under Section 10.1(A) apply.

Intuitive will provide Services under the _dv Complete Care Plan_, with benefits and limitations as follows:

(A)     Adjust parts on the System from time to time;
(B)     Replace defective or malfunctioning System parts (excludes Instruments and Accessories; and any items contained in the Instrument Starter Kit, Camera Starter Kit, and Training Instrument Starter Kit set forth in the Transaction Agreement);
(C)     Repair System operational malfunctions;
(D)     Replace and install Software, Hardware, and mechanical equipment for safety and reliability;
(E)     Provide twenty four (24) hours per day, seven (7) days per week (24 x 7) telephone support by qualified service personnel;
(F)     Provide and install Software upgrades for feature enhancements. Software upgrades and Service with respect to additional equipment not included on the Transaction Agreement may be subject to separate terms to be agreed upon by the parties;
(G)     Provide preferred pricing and next day service repairs or replacement due to accidental damage, caused by Organization or its Participant, on endoscopes and camera heads;
(H)     Respond to Participant's request for Services described in Section 5.1(B)-(C) during normal business hours as promptly as is reasonable after Intuitive's receipt of Participant's request, but not later than twenty-four (24) hours after Intuitive's receipt; and
(I)     Perform System preventative maintenance inspections as necessary to maintain factory specifications.
(J)     Provide on-site visits for support of advanced training of Participant's personnel on sterile Reprocessing process.
(K)     When the system is connected to OnSite®, remotely monitor system to diagnose potential issues and proactively dispatch a Field Service Engineer to make repairs when needed.
(L)     Provide access to the da Vinci Surgery Customer Portal.

Page 3 of 26

**Services Included for ION™ Endoluminal System.** If ~~Eligible Buyer~~Organization is current in payment to Intuitive of the Service fees specified in Transaction Agreement, Intuitive, directly or through one of its designated service providers, will provide Services to ~~Eligible Buyer~~Organization as listed below.  Intuitive will use parts sourced by Intuitive, which may, at Intuitive's discretion, include reconditioned parts, ("Equivalent to New" or "ETN").  ETN parts are components, assemblies, or partial products which have had prior usage, but have been inspected, reworked, and tested as required so that their function, performance, and appearance will be essentially equivalent to that of new parts.  Regardless of whether parts are new or ETN, Intuitive's appropriate warranties under Section 10.1(A) apply.

Intuitive will provide Services under the ***ION Services Plan***, with benefits and limitations as follows:

(A)     Adjust parts on the System from time to time;
(B)     Replace defective or malfunctioning System parts (excludes Instruments and Accessories);
(C)     Repair System operational malfunctions;
(D)     Replace and install Software, Hardware, and mechanical equipment for safety and reliability;
(E)     Provide telephone support by qualified service personnel Monday through Friday 7am - 5pm ~~Eligible Buyer~~Organization's local time
(F)     Provide and install Software upgrades for feature enhancements. Software upgrades and Service with respect to additional equipment not included on Transaction Agreement may be subject to separate terms to be agreed upon by the parties;
(G)     Respond to ~~Eligible Buyer~~Organization's request for Services described in Section 5.1(B)-(C) by phone, e-mail, or an on premise visit, during normal business hours (excluding Intuitive holidays) promptly as is reasonable after Intuitive's receipt of ~~Eligible Buyer~~Organization's request, but not later than twenty-four (24) hours after the longer of Intuitive's receipt or end of Intuitive holiday. Normal business hours are Monday through Friday, 8:00 a.m.- 5:00 p.m. ~~Eligible Buyer~~Organization's local time.  Billable rates are applicable for service outside of normal business hours, and for reasons defined below in Section 5.2 (Limitations of Service).
(H)     Perform System preventative maintenance inspections as necessary to maintain factory specifications.
(I)     Provide on-site visits for support of advanced training of ~~Eligible Buyer~~Organization's personnel on sterile Reprocessing process.
(J)     Provide access to the da Vinci Surgery Customer Portal.

5.2     **Limitations on Services**.

(A)     **General**.  Intuitive does not have an obligation to provide Services (1) on any System where installation, repair, or adjustments have been made by an individual other than an Intuitive technician or an individual approved by Intuitive or (2) which are either necessary or desired as a direct or indirect result, in whole or in part, of unauthorized repair, modification, disassembly, alteration, addition to, subtraction from, reconfiguration, or misuse of the System, or negligence or recklessness on the part of Participant.

(B)     **Cleaning**.  Regular daily cleaning of the System as described in the Documentation is not included in the Services.

(C)     **Additional Equipment**.  Intuitive's Services obligations do not include the provision to Participant of any hardware developed by Intuitive that is not contained in the initial System purchased by Participant, and which Intuitive offers as a separate product or for an additional fee.

(D)     **Time and Materials**.  If the System needs repair or maintenance services due to any of the circumstances described in Section 5.2(A)-(B) above, Intuitive may, at its sole election, provide repair services at Participant's expense and at Intuitive's then current time and material rates.  Intuitive is not obligated to provide Services on any System for which any applicable warranty has been voided, or for which the performance of Services is otherwise excused by the terms of this Master Agreement or the associated Transaction Agreement.

(E)     **Unauthorized Instruments and Accessories**.  The System is designed for use only with the Instruments and Accessories.  If Participant uses the System with any surgical instrument or accessory not made or approved by Intuitive, Intuitive may discontinue Services, and any warranties applicable to any Services provided prior to any discontinuance will be void.

CONFIDENTIAL                                                                          FRANCISCAN-00001613

5.3     **Participant's Obligations.**

    (A)     **Notice, Access, and Cooperation**.  Participant will notify Intuitive or Intuitive's designated service provider of any requests for Services.  Participant will fully cooperate with and assist Intuitive in the provision of Services.

    (B)     **Clinical Liaison**.  Participant will designate one of its employees, agents, or representatives as a "Clinical Liaison."  The Clinical Liaison will be the point of contact with Intuitive for installation, Services, use of the System, and other related issues.  Nothing in this Section 5.3 authorizes Participant or the Clinical Liaison to perform Services or to perform any act otherwise prohibited by this Master Agreement or an associated Transaction Agreement.

6.     **Training**

Intuitive offers training to surgical personnel on the use and operation of the System. At Participant's request, at mutually agreed times and at mutually agreed locations, Intuitive will provide training in the use of the System to Participant's surgical personnel in accordance with the terms specified in the Transaction Agreement.

7.     **Proctoring**

At Participant's request, and upon Participant's issuance of a purchase order, Intuitive will arrange for Proctoring at Participant's location in accordance with the terms specified in the Transaction Agreement. Each Proctor is an independent contractor, is not an agent or employee of Intuitive, and is not authorized to act on behalf of, or legally bind, Intuitive. Intuitive is not responsible for Proctoring services provided by Proctors. The decision to utilize a Proctor is solely that of the Participant. Participant is responsible for ensuring that each Proctor meets Participant's credentialing requirements.

8.     **Instruments and Accessories**

Instruments and Accessories will be made available to Participant from Intuitive pursuant to separate orders placed by Participant to Intuitive from time to time in accordance with the terms and conditions contained in the then current Instrument and Accessory Catalog. Instruments and Accessories are subject to a limited license to use those Instruments and Accessories with, and prepare those Instruments and Accessories for use with, the System. Participant is responsible for Reprocessing Instruments in accordance with the Documentation. Any other use is prohibited, whether before or after the Instrument or Accessory's license expiration, including repair, refurbishment, or reconditioning not approved by Intuitive, and cleaning or sterilization inconsistent with the Documentation. This license expires once an Instrument or Accessory is used up to its maximum number of uses, as is specified in the Documentation accompanying the Instrument or Accessory.  Participant may purchase Instruments and Accessories for the purpose of Participant's Reprocessing requirements. The cost of Instruments and Accessories used in Participant's Reprocessing, including Instrument and Accessories used or involved in destructive testing, will be the responsibility of the Participant. Participant may contact Intuitive's Participant Support Department if, during the Reprocessing, Participant experiences results unacceptable under applicable law and/or regulation. Intuitive will provide commercially reasonable assistance in such investigations and remediation efforts but shall not be obligated to conduct or pay for such studies or provide materials at no cost or reduced cost as a condition of purchase or continued use.

9.     **Pricing and Payment Terms**

9.1     **System.**

    (A)     **Price.** Participant will pay to Intuitive the price specified in the Transaction Agreement for the System acquired under the Transaction Agreement according to the payment terms in the Transaction Agreement. The issuance of a purchase order by Participant is for the convenience of the Participant solely; therefore, whether or not Participant issues a purchase order does not affect Participant's commitment to acquire and pay for the System under this Master Agreement and the associated Transaction Agreement.

    (B)     **Payment Terms.** Payment terms for the purchase of the System will be specified in the Transaction Agreement.

CONFIDENTIAL

FRANCISCAN-00001614

(C)    **Security Interest.** Intuitive will retain a security interest in the System until payment of the full System purchase price has been received by Intuitive. Participant will perform all acts Intuitive reasonably determines are necessary or appropriate to perfect and maintain the security interest. If Participant defaults in its payments for the System, Intuitive has the right, without liability to Participant, to reclaim the System.

9.2    **Services.**

(A)    **Price.** Participant will pay for the Services at the price specified in the Transaction Agreement. The issuance of a purchase order by Participant is for the convenience of the Participant solely; therefore, whether or not Participant issues a purchase order does not affect Participant's commitment to pay for Services under this Master Agreement and the associated Transaction Agreement during the Initial Term (as defined in Section 14). The issuance of a purchase order by Participant is for the convenience of Participant solely; therefore, whether or not Participant issues a purchase order does not affect Participant's commitment to pay for Services under this Agreement during the Initial Term (as defined in Section 14).

(B)    **Payment Terms.** Payment terms for the purchase of Services will be specified in the Transaction Agreement. Participant will pay the invoice for Services not later than forty-five (45) days after the date of invoice. In the event Participant requires a purchase order to be referenced on a Service invoice to facilitate payment, Participant will provide Intuitive with a purchase order number sixty (60) days prior to each anniversary of Acceptance. ~~Interest will accrue from the date on which payment is due, at an annual rate of eight percent (8%) or the maximum rate permitted by applicable law, whichever is lower.~~ After the Initial Term of the Agreement, and subject to mutual written agreement, annual Services may be renewed at ~~Intuitive's then current list prices~~. no more than the lesser of the following amounts:

(i)    three percent (3.0%) of the prices due for the preceding Initial Term or renewal Services term; or

(ii)    the increase in the Consumer Price Index for All Urban Consumers (CPI-U) for the preceding Initial Term or renewal Services term.

9.3    **Funding Entity.**

A funding entity ("Funding Entity") may provide the funding for Participant to purchase the System defined herein, provided however, Participant remains responsible for payment in full according to the terms of this Master Agreement and the associated Transaction Agreement if Funding Entity fails to pay. A Funding Entity will have no rights or obligations whatsoever under this Master Agreement or the associated Transaction Agreement, except as specified in this Master Agreement or the associated Transaction Agreement. Participant acknowledges and agrees that once Acceptance has occurred and title of the System has passed to the Participant, if Participant subsequently enters into an arrangement with a Funding Entity, then Participant will enter into an agreement directly with the Funding Entity that does not involve Intuitive. Intuitive will not reverse the sale of the System to Participant in order to sell it to another entity, including but not limited to a Funding Entity.

9.4    **Taxes.**

Participant will be deemed to be Taxable until such time as Organization provides the Intuitive tax department with the appropriate, fully executed tax exemption certificate as directed below: Attn: Tax Department, Intuitive Surgical, Inc., 1020 Kifer Road, Sunnyvale, CA 94086; fax number: 408-523-1390; email at TaxEmail@intusurg.com.

9.5    **Organization's Guarantee.**

Organization hereby guarantees to and for the benefit of Intuitive the full and timely performance of the payment obligations of each Participant under this Master Agreement and each associated Transaction Agreement when and if such obligations become due according to the terms of this Master Agreement and associated Transaction Agreement (each an "Obligation"). Organization's guarantee under this Section 9.5 with respect to each Obligation shall continue in full force and effect until each such Obligation has been discharged.

10.    **Warranty and Disclaimer**

FRANCISCAN-00001615

10.1    **System Warranty.**

    (A)    Intuitive warrants to Participant that:

        (1)    the System as delivered will be free and clear of all liens and encumbrances (except as otherwise specified in this Master Agreement and the associated Transaction Agreement), and

        (2)    for the period specified in the Transaction Agreement will be free from defects in material and workmanship and will conform in all material respects to the Documentation when used in accordance with the Documentation and Intuitive's instructions.

    (B)    Intuitive's obligations under this Section 10.1 are limited to the repair (as further described in Section 5.1(B)-(C)) or, at Intuitive's option, replacement of all or part of the System.

    (C)    This warranty is void with respect to any claims:

        (1)    due to any installation, repair, adjustment, modification, disassembly, alteration, reconfiguration, addition to, subtraction from, or misuse of the System by Participant or any third party without the express written permission of Intuitive; or

        (2)    to the extent Participant has not operated, repaired, or maintained the System in accordance with the Documentation or any reasonable handling, maintenance, or operating instructions supplied by Intuitive; or

        (3)    to the extent Participant has used the System with surgical instruments or accessories that are not Instruments or Accessories approved by Intuitive; or

        (4)    to the extent Participant or Participant's employee, agent, or contractor has subjected the System to unusual physical or electric stress, misuse, abuse, negligence, or accident.

    (D)    The foregoing expresses Participant's remedy, and Intuitive's liability, for any breach of warranty with respect to the System by Intuitive.

10.2    **Services Warranty.**  Intuitive warrants that the Services will be performed consistent with generally accepted industry standards. If Intuitive breaches this warranty, Participant's remedy will be to require Intuitive to re-perform the Services.

10.3    **Warranty Against Viruses and Time Locks.**  Intuitive warrants and represents that as manufactured the Software does not contain, and will not transmit, any illicit code, including any computer virus, ransomware, time bomb, worm, trap door, back door, timer, clock, counter or other limiting routine, dongle key, instruction or design that would erase data or programming or otherwise cause the System or ~~Eligible Buyer~~Participant's network or systems to become inoperable or incapable of being used in the full manner for which they are intended ("Illicit Code").  Without limiting any other provision herein, if any Illicit Code is identified as manufactured, Intuitive shall take commercially reasonable steps necessary at no additional cost to ~~Eligible Buyer~~Participant to restore any and all ~~Eligible Buyer~~Participant Data lost as a result of such Illicit Code to the extent that such recovery is technically feasible.

10.4    **Critical Security Release, Update, and Upgrade Warranty.**  Intuitive warrants that it will provide to Organization a release, update, or upgrade to critical security vulnerabilities found in the System immediately, but in no case later than sixty (60) days after the date of such release, update, or upgrade.  Within 180 days of the general release of software updates or upgrades from any third party software vendor (operating system, database, etc.) used by Intuitive's solution, Intuitive will make available a release of its software compatible with such third party software.  Support updates or upgrades and maintenance required to maintain the above compatibility with be provided at no additional charge to Organization with a service or maintenance agreement with Intuitive.

10.5~~4~~    **No Other Warranties. INTUITIVE MAKES NO OTHER WARRANTY, EXPRESS OR IMPLIED, IN CONNECTION WITH THE SYSTEM OR SERVICES PROVIDED HEREUNDER AND THIS TRANSACTION, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF FITNESS FOR**

CONFIDENTIAL

FRANCISCAN-00001616

**A PARTICULAR PURPOSE, MERCHANTABILITY, AND NON-INFRINGEMENT. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF IMPLIED WARRANTIES; THEREFORE, THE ABOVE LIMITATION WILL APPLY ONLY TO THE EXTENT PERMITTED BY APPLICABLE LAW.**

**11.    Indemnification**

11.1    **Intuitive's Indemnification Obligations.**

(A)    To the extent allowable by law, Intuitive hereby assumes all liability for, and agrees to indemnify, defend and hold harmless ~~Customer~~Organization, its successors, permitted assigns, medical staff, agents and employees from and against, any and all liabilities, losses, damages, claims and expenses to the extent that they arise from third party claims, actions or demands including without limitation, claims arising in contract or tort (including negligence), strict liability or otherwise (collectively, "Claims") in any way relating to or arising from (a) Intuitive's breach of any of its representations or warranties or any other obligation hereunder, or (b) Intuitive's negligence or willful misconduct; provided that Intuitive's indemnification obligations under this Section 11.2 shall not apply to the extent that (i) such Claims arise from ~~Customer~~Organization's negligence or willful misconduct or breach of any of its obligations hereunder.

(B)    **Intellectual Property Indemnification.** Intuitive will indemnify Organization against all liabilities, expenses, or damages in connection with any third party claim that the System infringes any third party patent, trade secret, or copyright. If Organization is enjoined from the use of the System due to any such third party claim, Intuitive will promptly, at its option and expense, either (1) substitute the System or any part thereof with non-infringing material that will perform substantially in accordance with the Documentation; or (2) obtain the right of Organization to continue to use the System; or (3) remove the System and refund to Organization the purchase price of the System less reasonable depreciation.

(C)    **Intellectual Property Indemnification Limitations.** Intuitive has no obligation under this Section 11.1 to the extent any claim of infringement is based upon or arises out of: (1) any modification to the System if the modification was not made directly by Intuitive or through its designated service provider; or (2) the use or combination of the System with any hardware, software, products, data or other materials not specified, provided or approved by Intuitive.

(D)    **THE PROVISIONS OF THIS SECTION 11 STATE THE SOLE AND EXCLUSIVE OBLIGATIONS OF INTUITIVE FOR ANY PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS INFRINGEMENT.**

11.2    **Organization's Indemnification Obligations.** Intuitive will not be liable for, and Organization will indemnify and hold Intuitive harmless from and against, any claims or damages caused by Organization's failure to comply with the requirements of Sections 3.4 (Use of System) or 3.6 (Reprocess and Disposal).

To the extent allowable by law, ~~Customer~~Organization hereby assumes all liability for, and agrees to indemnify, defend and hold harmless Intuitive and its successors, permitted assigns, agents and employees from and against, any and all Claims by third parties to the extent that they arise from: (a) ~~Customer~~Organization's or its employees', medical staff's, agents', affiliates' or representatives' negligence or willful misconduct in the use, possession, or operation of the System, including without limitation, (i) use of the System by individuals who have not completed appropriate training or whose training was not conducted by Intuitive, (ii) use of the System with any surgical instrument or accessory that is not made or approved by Intuitive for use with the System, or (iii) the conduct of surgical procedures on cadavers used in training; or (b) ~~Customer~~Organization's breach of any of its representations or warranties or any other obligation hereunder, including without limitation ~~Customer~~Organization's failure to comply with the requirements of Section 3.4 (Use of System) and Section 3.5 (Reprocess and Disposal). Notwithstanding the foregoing, ~~Customer~~Organization's indemnification obligations under this Section 11.3 shall not apply to the extent that such claims arise from Intuitive's negligence or willful misconduct or breach of any of its obligations hereunder.

11.3    **Claim Notification Requirement.** A party's indemnification obligations under this Section 11 will not apply unless the indemnified party promptly notifies the indemnifying party of the claim as soon as the indemnified party became aware of it. The indemnifying party will have the right to control the defense or settlement of any claim at its cost and

CONFIDENTIAL

FRANCISCAN-00001617

with its choice of counsel.  The indemnified party will provide all reasonable cooperation to assist the indemnifying party in the defense or settlement of the claim.

11.4    **Shared Indemnification.**  If an injury is caused by the negligence of both Intuitive and ~~Customer~~Organization, the apportionment of any damages shall be shared between Intuitive and ~~Customer~~Organization based upon the comparative degree of each party's negligence and each party shall be responsible for its own defense and its own costs including but not limited to the cost of defense, attorneys' fees and witnesses' fees and expenses incident thereto.

## 12.    Limitation of Liability

Except for a breach of the obligations in Sections 3.4 (Use of System), 4 (Software License and Restrictions), 8 (Instruments and Accessories), 9 (Pricing and Payment Terms), the indemnification obligations of Section 11, 13 (Proprietary Information), to the extent permitted by applicable law, each of Participant's and Intuitive's aggregate liability to the other for claims relating to this Master Agreement and associated Transaction Agreement, whether for breach in contract or tort (including negligence), is limited to an amount equal to the sum of amounts paid or payable by Participant under the associated Transaction Agreement for the activity (such as procurement of the System, Service, or training) giving rise to the claim.  Except for a breach of the obligations in Sections 3.4, 4, 8, or 11, 13, no party will be liable for any indirect, punitive, special, incidental, or consequential damages in connection with or arising out of this Master Agreement or any Transaction Agreement (including loss of business, revenue, profits, use, data, or other economic advantage), even if that party has been advised of the possibility of damages. Some jurisdictions do not allow the limitation of liability for incidental or consequential damages; therefore in those jurisdictions the foregoing limitation of liability applies only to the extent permitted by law.

## 13.    Proprietary Information

"Proprietary Information" includes, but is not limited to, all non-public information (1) of the disclosing party ("Disclosing Party") that relates to past, present, or future research, development, or business activities or the results of those activities and (ii) that the Disclosing Party has received from others and is obligated to treat as confidential and proprietary.  In addition, Intuitive's Proprietary Information includes the terms and conditions of this Master Agreement and any associated Transaction Agreement and all information derivable from the System, but excluding information that can be learned simply through observation of the System and its operation.  Proprietary Information does not include information previously known by the receiving party ("Receiving Party") as demonstrated by the Receiving Party's contemporaneous written records, or information publicly disclosed without breach of an obligation of confidentiality, either before or after the Receiving Party's receipt of the information.  The Receiving Party will hold all Proprietary Information of the Disclosing Party in strict confidence and must not use for any purpose, or disclose to any third party, any Proprietary Information, except (1) as expressly authorized in this Master Agreement or any associated Transaction Agreement or in writing by the Disclosing Party, and (2) as required by law or by court order.  Notwithstanding any provision of this Agreement, the Receiving Party shall be permitted to disclose the Disclosing Party's Confidential Information solely to the extent that such disclosure is required by law or by order of any court or governmental authority, provided, however, that the Receiving Party, as permitted by law, shall first have given advance notice to the Disclosing Party, so as to permit the Disclosing Party as owner of the information an opportunity to review such information for confidentiality and privilege preservation and/or to attempt to obtain a protective order or similar administrative or legal remedy requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued or for such other legal requirement, and that the Receiving Party shall cooperate with the Disclosing Party in such efforts. The Receiving Party will use the same degree of care to protect the Proprietary Information as Receiving Party uses to protect its own information of like kind, but not less than all reasonable steps to maintain the confidentiality of the Proprietary Information.

## 14.    Term

14.1    The term of this Master Agreement will commence on the Effective Date and will continue for so long as any Transaction Agreement remains in effect. The Initial Term for each Transaction Agreement will be specified in such Transaction Agreement.

14.2    **Termination and Survival**. Either Organization or Intuitive may terminate this Master Agreement if the other party breaches a material term or condition of this Master Agreement and fails to cure the breach following thirty (30) days' written notice from the non-breaching party. Either Participant or Intuitive may terminate any associated Transaction Agreement if the other party breaches a material term or condition of the Transaction Agreement or any term or condition of this Master Agreement incorporated by reference in the Transaction Agreement and fails to cure the breach following thirty (30) days' written notice from the non-breaching party. Sections 3.4, 3.6, 4, 9.1, 9.3, 11, 12, 13, 14.2, 15, and any

Page 9 of 26

FRANCISCAN-00001618

other provision which by its nature will survive, will remain in effect notwithstanding the expiration or termination of this Master Agreement or associated Transaction Agreement..

**15.   Miscellaneous**

15.1   **Assignment**.   ~~This Master Agreement and each Transaction Agreement entered into under this Master Agreement will be binding upon the permitted successors and assigns of the parties. No party may assign this Master Agreement or any Transaction Agreement entered into under this Master Agreement without the prior written consent of the other party to such agreement, which will not be unreasonably withheld, except pursuant to a transfer of all or substantially all of a party's assets and business relating to the subject of this Master Agreement or the Transaction Agreement as the case may be, whether by merger, re-organization, sale of assets, sale of stock, or otherwise.   Participant may not assign or transfer the Software license granted to it under this Master Agreement to any third party without Intuitive's prior written consent.   Any attempt by either party to assign this Master Agreement or any Transaction Agreement entered into under this Master Agreement or any rights or duties thereunder contrary to the foregoing provision is void.   Intuitive consents to Participant's assignment of its payment obligations under this Master Agreement and associated Transaction Agreement to a Funding Entity as part of Participant's financing arrangement with the Funding Entity. If Participant assigns its payment obligations under this Master Agreement and the associated Transaction Agreement to a Funding Entity, Participant retains its right to all benefits under this Master Agreement and the associated Transaction Agreement, including without limitation all warranties, representations, and indemnification provided by Intuitive, and may independently enforce any obligation, warranty, or representation, including without limitation Intuitive's obligations under Section 5 (Services).~~ This Master Agreement will be binding upon and will inure to the benefit of Organization and Intuitive and their successors and permitted assigns.   Neither party may assign this Master Agreement without the prior written consent of the other party which will not be unreasonably withheld or delayed, provided that:

(a)      either party may assign its rights or obligations to a parent corporation or a subsidiary in which the assigning party holds a fifty percent (50%) or greater ownership interest without the consent of the other party; and

(b)      either party may assign its rights and obligations hereunder in connection with any transaction involving the sale or transfer of all or substantially all of its assets without the consent of the other party, provided that the assignee agrees in writing to assume the assignor's obligations hereunder and has at least substantially the same or greater ability to perform the assignor's obligations hereunder.

Any attempted assignment in violation of this provision will be void and will constitute a material breach of this Master Agreement.

15.2   **Costs**.   Except as otherwise specifically provided herein, each party will bear its own costs and expenses incurred in connection with the performance of its obligations hereunder.

15.3   **Debarment**.   Intuitive warrants and represents that individuals of its organization involved in providing Services under any Transaction Agreement have not been convicted of any criminal offense relating to health care and are not debarred, excluded, or otherwise ineligible for participation in any federal or state health care program.   If at any time before completion of any Transaction Agreement, Intuitive or any individual in its organization involved in providing Services under such Transaction Agreement is so convicted or is debarred, excluded or otherwise determined to be ineligible, Intuitive will notify the Participant that is a party to such Transaction Agreement in writing, the individual will immediately cease providing Services under the Transaction Agreement, and Intuitive will replace the individual with a replacement employee reasonably suitable to the Participant.

15.4   **Federal Audit**.   As a medical device manufacturer, Intuitive has an obligation to report certain adverse event details to the Food and Drug Administration (FDA). Intuitive may request, and ~~Customer~~Organization shall provide Intuitive, all information necessary to fulfill Intuitive's complaint reporting obligation of adverse events.   Until the expiration of four (4) years after furnishing Services under any Transaction Agreement, Intuitive will make available upon written request of the Secretary of the Department of Health and Human Services (the "Secretary") or upon request of the U.S. Comptroller General, or any of their duly authorized representatives, this Master Agreement and the associated Transaction Agreement and the books, documents, and records of Intuitive that are necessary to certify the nature and extent of costs for which the Participant that is a party to such Transaction Agreement may properly seek reimbursement. If Intuitive carries out any of the duties of this Master Agreement or a Transaction Agreement through a subcontract with a value or cost of ten thousand dollars ($10,000.00) or more over a twelve (12) month period, the subcontract will

FRANCISCAN-00001619

contain a clause to the effect that until the expiration of four (4) years after furnishing of services under the subcontract, the subcontracting party will make available, upon written request of the Secretary, or upon request of the U.S. Comptroller General or any of their duly authorized representatives, the subcontract, and the books, documents, and records of the organization that are necessary to verify the nature and extent of the costs. Intuitive will promptly notify Participant of any requests for information made under this provision.

15.5   **Force Majeure**. No party will be liable for any loss, damage, detention, delay, or failure to perform in whole or in part resulting from causes beyond that party's control including, but not limited to, acts of terrorism, fire, flood, earthquake, war, riots, labor disputes, shortage of components, or any governmental law, order, regulation, or ordinance.

15.6   **Insurance**. Intuitive has obtained, and will maintain throughout the term of each Transaction Agreement, (i) commercial general liability insurance including coverage for contractual liability, product liability, personal injury and bodily injury in an amount not less than $1,000,000 per occurrence/$3,000,000 aggregate (or as may be aggregated by the excess liability policy on the general liability policy); or (ii) a self-insurance program of equivalent protection. Intuitive will furnish the Participant with a certificate of insurance evidencing the coverage as outlined above, or comparable evidence of self-insurance, on Participant's request. Intuitive carries, and will continue to carry, workers' compensation insurance as required by law and include a waiver of subrogation.

15.7   **Interpretation**. Headings used in this Master Agreement and each Transaction Agreement are provided for convenience only and do not in any way affect the meaning or interpretation thereof. The terms "sale", "purchase", "acquire", "procure" and variations of such terms, as used in this Master Agreement or any Transaction Agreement with respect to the System, do not imply that the Software and Documentation aspect of the System are sold or purchased; the Software and Documentation are licensed under this Master Agreement and only the Hardware is sold, as the case may be. Neither party is the drafter of this Master Agreement or any Transaction Agreement. Accordingly, the language of this Master Agreement and each Transaction Agreement will not be construed for or against any party.

15.8   **Notices**. All notices under this Master Agreement will be given in writing and will be sent by certified mail, return receipt requested, or by prepaid overnight courier such that proof of delivery will be obtained, and will be addressed as set forth below or to such other address as may be specified in a prior written notice to the other party:

> <u>If to Organization</u>:
>
> Franciscan Alliance, Inc.
> ATTN:  Contract Specialist
> 1500 Albany Street
> Beech Grove, Indiana  46107
>
> <u>If to Intuitive</u>:
>
> Intuitive Surgical, Inc.
> ATTN:  Legal or Contracts Dept.
> 1020 Kifer Road
> Sunnyvale, California 94086

Neither party will be allowed to refuse acceptance of delivery of any such notice, and to accept delivery will be deemed as receipt of notice.

15.9   **Relationship of the Parties**. The relationship between Organization and any Participant on the one hand, and Intuitive on the other hand, is one of contract, and they are not, and will not be construed as partners, joint venturers, or agent and principal. Neither Organization nor any Participant is authorized to act for, or on behalf of, Intuitive, and Intuitive is not authorized to act for, or on behalf of, Organization or any Participant.

15.10   **Severability**. If any provision of this Master Agreement or associated Transaction Agreement is held by a court of competent jurisdiction to be invalid, then that provision will not affect the validity of the remaining provisions of the Master Agreement or associated Transaction Agreement, and the parties will substitute a valid provision for the invalid provision that most closely approximates the intent and economic effect of the invalid provision.

<u>Page 11 of 26</u>

FRANCISCAN-00001620

15.11 **Access to Participant's Facilities.**  Intuitive agrees that any Intuitive personnel who routinely provide Services at Participant's facilities will use commercially reasonable efforts to comply with Participant's Access Requirements, provided that Participant provides  Participant's Access Requirements in writing prior to execution of a Transaction Agreement.  Participant's need for Service may be unplanned and urgent with patient safety at stake.  Therefore, if Participant denies access to its facilities to any Intuitive personnel for performance of Services (Section 5) or warranty (Section 10) obligations in connection with a Procedure because such personnel have not met  Participant's Access Requirements, Intuitive's Services and warranty obligations in this Agreement will be suspended during such denial of access, provided that Intuitive uses commercially reasonable efforts to find replacement Intuitive personnel who comply with  Participant's Access Requirements.   Participant will indemnify and hold harmless Intuitive from any losses, claims, liabilities or causes of action arising from such denial of access.

15.12 **Data Use.**   Participant agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products ("Data").  Data includes vision probe video, catheter shape, and anonymized CT scans, and including any rights that may apply for users of ~~Eligible Buyer~~Organization's Intuitive products. In some instances Data may be communicated via data gathering or transmission technology to Intuitive.  In other instances, Intuitive may require Participant and Participant agrees to provide Data to Intuitive.  Such Data may be used for a variety of purposes, including, but not limited to (1) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, (4) providing a general resource for Intuitive's research and business development, and (5) relationship management, including but not limited to a) proctoring and other activities, b) procedure reporting, and c) customer efficiency and cost saving.  Intuitive does not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time.  In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third parties without the entity's or individual's consent, unless required by law or regulatory authorities.  In the event Intuitive provides ~~Eligible Buyer~~Organization with analysis, such analysis is may not be independently verified and Intuitive cannot guarantee the quality or accuracy of the analysis. Any analysis provided by Intuitive is Intuitive's Proprietary Information. Intuitive is not a Business Associate as defined by federal privacy laws. Neither Intuitive Surgical, nor the da Vinci Systems access, maintain, store, or transmit PHI or e-PHI.  In the event Intuitive becomes a Business Associate, Intuitive and ~~Customer~~Organization will enter into a mutually agreeable Business Associate agreement. In the event Intuitive becomes aware of an accidental communication of PHI, Intuitive acknowledges and agrees that Intuitive will promptly delete or otherwise destroy the PHI and Intuitive will not share such PHI with any third parties unless required by law or regulatory authorities.

15.13 **Waivers.** No waiver of any right by either party under this Master Agreement or associated Transaction Agreement will be of any effect unless the waiver is in writing and signed by the waiving party.  Any purported waiver not consistent with the foregoing is void.

15.14 **Counterparts**.  This Master Agreement and any associated Transaction Agreement may be executed by digitally scanned signed documents (e.g. Adobe PDF files) sent via e-mail, or in multiple copies, each of which is an original, and all of which taken together will constitute one single agreement.

15.15 **Entire Agreement; Amendment**.  Excluding the Service Agreements (see Exhibit E attached hereto and made a part hereof) between the parties dated September 30, 2019 which are not subject to the provisions of this Master Agreement, this Master Agreement is the entire agreement between Intuitive and Organization and supersedes any other prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter herein, pricing, and the applicable terms. Each Transaction Agreement is the entire agreement between Intuitive and the Participant that is party to such Transaction Agreement and supersedes any other prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter therein, pricing, and the applicable terms. Any terms or conditions in any Participant's (or as applicable, Funding Entity's) purchase order that are different from, inconsistent with, or in addition to, the terms and conditions of this Master Agreement and any associated Transaction Agreement will be void and of no effect, unless otherwise mutually agreed to in writing by Intuitive and such Participant.  This Master Agreement and any Transaction Agreement may be amended only in writing, signed by the parties to any such agreement.  Any purported oral modification intended to amend the terms and conditions of this Master Agreement or any Transaction Agreement is void.

CONFIDENTIAL                                                                                            FRANCISCAN-00001621

15.16    **Rebates and Reporting.**

(A)    Rebates.

(i)    Intuitive shall pay Rebates to Organization based on purchases of Software, Hardware, System, and/or Services by Organization in the amounts stated in Exhibit F.

> **Commented [FA1]:** FRANCISCAN ALLIANCE 08/26/20: Please send Judy Schimmel the price list to be attached under Exhibit F so she can review it.

(ii)    If a percentage is listed in Exhibit F for the Rebate, then the Rebate shall be determined by multiplying the stated percentage by the dollar amount actually paid by the Organization (excluding any added freight charges, Rebates, refunds, and credits on Software, Hardware, and.or System returns) for Software, Hardware, System, and/or Services purchased under this Master Agreement.

(iii)    Rebates shall be paid to Organization within thirty (30) days after the expiration of each calendar quarter in which such purchase took place during the term of this Master Agreement. Rebates shall be sent to Organization as follows:

(1)    For delivery of checks that require proof of delivery:

Franciscan Alliance, Inc.
ATTN:  Director of Contract Administration for Surgery, Nursing and Respiratory
1515 W. Dragoon Trail
Mishawaka, Indiana  46544

(2)    For all other mail deliveries (excluding notices under Section 15.8 of this Master Agreement):

Franciscan Alliance, Inc.
ATTN:  Director of Contract Administration for Surgery, Nursing and Respiratory
1515 W. Dragoon Trail
Mishawaka, Indiana  46544

(iv)    The payment of Rebates is intended to be in compliance with the exception to the Medicaid and Medicare Anti-Kickback Statute set forth at 42 U.S.C. §1320a-7b(b)(3)(A) and the "safe harbor" regulations set forth in 42 C.F.R. §1001.952(h).

(v)    Intuitive shall provide an electronic report with each Rebate payment that contains sufficient detail to permit Organization to accurately allocate the appropriate amounts to each Organization and Participant entity and location.

(B)    Intuitive Reports. The Intuitive reports submitted pursuant to this Section 15.16 shall include a listing of Organization's locations and Participants by each location and Participant's GLN associated with its ship-to address, even if Intuitive uses its own Organization identification number. The Intuitive reports shall be sent to Organization in accordance with Section 15.8 ("Notices") of this Master Agreement. Timely Rebate payment without the required reports shall be considered non-payment until reports meeting the above requirements have been delivered to Organization.

(C)    Electronic Reports. In addition to the Software, Hardware, System, and/or Services pricing listed in Exhibit F of this Master Agreement, on or prior to the Effective Date of this Master Agreement and thereafter upon request, Intuitive shall provide Organization with electronic copies of:

(i)    the price list in Exhibit F; and

(ii)    Intuitive's list prices.

CONFIDENTIAL    FRANCISCAN-00001622

**BOTH PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS MASTER AGREEMENT AND EXECUTE THIS MASTER AGREEMENT AS OF THE EFFECTIVE DATE.**

ACCEPTED BY:

**INTUITIVE SURGICAL, INC.**

By: _____

Name: _____

Title: _____

Date: _____

ACCEPTED BY:

**FRANCISCAN ALLIANCE, INC.**

By: _____

Name: _____

Title: _____

Date: _____

CONFIDENTIAL

FRANCISCAN-00001623

# EXHIBIT A

### List of Organization's Participants

| | |
|---|---|
| Franciscan Health Crown Point<br>1201 South Main Street<br>Crown Point, IN  46307 | Franciscan Health Carmel<br>North Meridian Medical Pavilion<br>12188 North Meridian Street, Building B<br>Carmel, IN  46032 |
| Franciscan Health Michigan City<br>3500 Franciscan Way<br>Michigan City, IN  46360 | Franciscan Health Indianapolis<br>8111 South Emerson Avenue<br>Indianapolis, IN  46237 |
| Franciscan Health Dyer<br>24 Joliet Street<br>Dyer, IN  46311-1799 | Franciscan Health Mooresville<br>1201 Hadley Road<br>Mooresville, IN  46158 |
| Franciscan Health Hammond<br>5454 Hohman Avenue<br>Hammond, IN  46320 | Franciscan Health Olympia Fields<br>20201 South Crawford Avenue<br>Olympia Fields, IL  60461 |
| Franciscan Health Munster<br>701 Superior Avenue<br>Munster, IN  46321 | Franciscan Physician Network<br>1515 Dragoon Trail<br>Mishawaka, IN 46544 |
| Franciscan Health Crawfordsville<br>1710 Lafayette Road<br>Crawfordsville, IN  47933 | Franciscan WorkingWells<br>1515 Dragoon Trail<br>Mishawaka, IN 46544 |
| Franciscan Health Lafayette Central<br>1501 Hartford Street<br>Lafayette, IN  47904 | Alverno Clinical Laboratories, LLC<br>2434 Interstate Plaza Drive<br>Hammond, IN  46324 |
| Franciscan Health Lafayette East<br>1701 South Creasy Lane<br>Lafayette, IN 47905 | Specialty Physicians of Illinois, LLC<br>3700 West 203rd Street<br>Olympia Fields, IL 60461 |
| Franciscan Health Rensselaer<br>1104 East Grace Street<br>Rensselaer, IN  47978 | |

CONFIDENTIAL

FRANCISCAN-00001624

**SAMPLE**

**EXHIBIT B**

Agreement No.: _____

Transaction Agreement
Between
Participant
and
Intuitive Surgical Inc.

This Transaction Agreement (the "Transaction Agreement") dated _____ (the "Effective Date") is entered into by and between **Intuitive Surgical, Inc.,** a Delaware corporation, with its principal place of business located at 1020 Kifer Road, Sunnyvale, CA 94086 ("Intuitive") and Franciscan Alliance, Inc., d/b/a Franciscan Health _____ with offices located at _____ ("Participant").

### RECITALS

A.      Intuitive and Franciscan Alliance, Inc. ("Organization") entered into a Master Sales, License and Service Agreement dated August _____, 2020 ("Master Agreement") for the sale of Intuitive products and services;

B.      Participant wishes to purchase a System and Service and agrees to be bound to the terms and conditions of the Master Agreement which is incorporated herein by reference and made a part of this Transaction Agreement.

C.      Intuitive and Participant hereby agree to the provisions of this Transaction Agreement which sets forth the terms of payment and provision of System and Service to be sold to Participant.

The parties therefore agree as follows:

**1.       Defined Terms.** Capitalized terms used but not defined herein have the meanings assigned to them in the Master Agreement.

**2.       Products and Price.**   The products to be provided under this Transaction Agreement are as listed below.

| System Type | Quantity | Delivery Date* | Price | Delivery Charge | Annual Service Fees |
|---|---|---|---|---|---|
| **System description** | 1 | ddMONyyyy | $x,xxx,xxx.xx | $xx,xxx.xx | First Year of Initial Term: **Included in System purchase price** Subsequent Years (2-5) of the Initial Term: $xxx,xxx.xx per year |

* The Delivery Date is an estimated "on or before" delivery date to Participant's designated location (see "Ship-to" below).

Intuitive makes no representation with regard to Certificate of Need requirements for this purchase. It is Participant's responsibility to determine whether this purchase complies with Participant's State Certificate of Need law and what Certificate of Need filing, if any, needs to be made with regard to this purchase.

Subject to availability, any Instruments or Accessories provided to Lessee, as set forth in this section 2, are subject to the Terms of the *da Vinci EndoWrist Instrument & Accessory Catalog* as if such Terms were contained in this Agreement. Delivery charges will be *Pre-Pay & Add*. If this section 2 includes Instruments or Accessories, they will be shipped FCA Intuitive's warehouse. If Single Site Instruments are listed, they will be delivered upon Lessee's completion of the advanced instrument training verification.

**3.       Acceptance.**   The System is deemed accepted by Participant upon delivery to Participant's designated location ("Acceptance").

**4.       Payment Terms.**

CONFIDENTIAL

FRANCISCAN-00001625

4.1 **System.** Participant will pay the invoiced amount not later than forty-five (45) days after the date of invoice. Upon Acceptance, Intuitive will deliver an invoice to Participant for amounts due under this Transaction Agreement for the System. Participant will pay the invoiced amount as specified in the Transaction Agreement. ~~Interest will accrue from the date on which payment is due, at an annual rate of eight percent (8%) or the maximum rate permitted by applicable law, whichever is lower.~~

4.2 **Service.** Intuitive will deliver to Participant an invoice for the annual Services fee forty-five (45) days prior to the first anniversary of Acceptance and each subsequent anniversary of Acceptance throughout the Initial Term of this Transaction Agreement. Participant will pay the invoice for Services not later than forty-five (45) days after the date of invoice. In the event Participant requires a purchase order to be referenced on a Service invoice to facilitate payment, Participant will provide Intuitive with a purchase order sixty (60) days prior to each anniversary of Acceptance. ~~Interest will accrue from the date on which payment is due, at an annual rate of eight percent (8%) or the maximum rate permitted by applicable law, whichever is lower.~~ After the Initial Term of this Transaction Agreement, and subject to mutual written agreement, annual Services may be renewed at ~~Intuitive's then current list price.~~ no more than the lesser of the following amounts:

    (a)    three percent (3.0%) of the prices due for the preceding Initial Term or renewal Services term; or

    (b)    the increase in the Consumer Price Index for All Urban Consumers (CPI-U) for the preceding Initial Term or renewal Services term.

5. **Term.** The initial term of this Transaction Agreement will commence as of the Effective Date and will continue until the fifth (5th) anniversary of Acceptance ("Initial Term") unless earlier terminated as provided in this Transaction Agreement. Thereafter, this Transaction Agreement may be renewed for successive one (1) year terms ("Renewal Term(s)") upon mutual written agreement of the parties.

6. **The "Ship-To" information for Participant is:**

    
|  |
| --- |
|  |

**The "Bill-To" information for Participant is:**

|  |
| --- |
|  |
| ***Participant's PO Number:*** |

7. **Taxes.** Participant will be deemed to be Taxable until such time as Organization provides the Intuitive tax department with the appropriate, fully executed tax exemption certificate as directed below: Attn: Tax Department, Intuitive Surgical, Inc., 1020 Kifer Road, Sunnyvale, CA 94086; fax number: 408-523-1390; email at TaxEmail@intusurg.com.

8. Participant**8.      Proctoring.** As of the Effective Date, the rate for Proctor's services is three thousand dollars ($3,000) per day. The payment terms for Proctoring are net thirty (30) days from the date of Intuitive's invoice. This pricing will remain in effect during the first year of the Initial Term. Thereafter, Proctoring will be made available to Participant at Intuitive's then current list price for Proctoring.

9. Except as specifically provided for herein, all of the terms and conditions of the Master Agreement as they are incorporated by reference into this Transaction Agreement shall remain in full force and effect. In the event of a conflict or inconsistency between the terms and conditions contained in this Transaction Agreement and the Master Agreement, the provisions in the Master Agreement will prevail.

**IN WITNESS WHEREOF,** the parties have caused this Transaction Agreement to be executed by their duly authorized representatives.

CONFIDENTIAL

FRANCISCAN-00001626

**IF THIS AGREEMENT IS NOT SIGNED BY BOTH PARTIES AND RETURNED TO INTUITIVE ON OR BEFORE _____, THE TERMS WILL BE SUBJECT TO CHANGE.**

INTUITIVE SURGICAL, INC.                          PARTICIPANT FRANCISCAN ALLIANCE, INC.,
                                                  D/B/A FRANCISCAN HEALTH _____

By: _____               By: _____

Name: _____                Name: _____

Title: _____               Title: _____

Date: _____                Date: _____

Page 18 of 26

CONFIDENTIAL                                                        FRANCISCAN-00001627

# EXHIBIT C

### SIMNOW da Vinci® Skills Simulator Agreement

**1. Use of Simulator.** Organization will ensure the proper use of the Simulator consistent with the Documentation, and Organization will ensure the proper management and supervision of the Simulator. Organization will not, nor will Organization permit any third party to, modify, disassemble, reverse engineer, alter, or misuse the Simulator. Prohibited actions include, but are not limited to: (1) adding or subtracting any Organization or third party equipment, hardware, firmware, or software to or from the Simulator, or (2) reconfiguring any of the Intuitive equipment, Hardware, firmware, or Software as originally provided to Organization as part of the Simulator without Intuitive's express written permission.

**2. Data Use.** Organization agrees that Intuitive and its affiliates within the Intuitive Surgical group of companies (collectively, "Intuitive") may collect data relating to the use of Intuitive products ("Data"). In some instances Data may be communicated via data gathering or transmission technology to Intuitive. In other instances, Intuitive may request Organization and Organization agrees to provide Data to Intuitive. To the extent Organization owns such Data, Organization authorizes Intuitive to utilize such Data for a variety of purposes, including, but not limited to (1) providing support and preventative maintenance of Intuitive products, (2) improving Intuitive products or services, (3) ensuring compliance with applicable laws and regulations, and (4) providing a general resource for Intuitive's research and business development. Furthermore, to the extent Organization owns such Data, Organization agrees that Intuitive may share such Data, whether in electronic or written form, with any Organization-authorized user of said Intuitive Equipment. Intuitive does not intend to collect protected health information (PHI) as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA) or analogous foreign patient privacy laws or regulations, as may be amended from time to time. In the event any Data communicated to Intuitive identifies an entity or individual, Intuitive will not share such Data with any third parties without the entity's or individual's consent, unless required by law or regulatory authorities.

**3. Software License and Restrictions.** Software embedded within the Simulator is provided under license and is not sold to Organization. Subject to the terms and conditions of this SIMNOW da Vinci® Skills Simulator Agreement ("Agreement"), Intuitive grants to Organization a non-exclusive, non-transferable, fully paid, restricted use license to use the Software solely as incorporated in the Simulator in machine-executable object code form and solely in connection with the operation of the Simulator as described in the Documentation. Organization must not use, copy, modify, or transfer the Software or any copy thereof, in whole or in part, except as expressly provided in this Agreement. In addition, Organization must not reverse engineer, decompile, disassemble, attempt to derive the source code for, or otherwise manipulate the Software, except that manipulation of the Software is permitted if, and then only to the extent that, the foregoing prohibition on manipulation is required to be modified by applicable law. In that case, Organization must first request from Intuitive the information to be sought from the Software, and Intuitive may, in its discretion, provide information to Organization under good faith restrictions and impose reasonable conditions on use of the Software. The structure and organization of the Software are valuable trade secrets of Intuitive and Organization will protect the Software as Intuitive's Proprietary Information. Intuitive reserves all rights to the Software not expressly granted to Organization.

**4. Networking Requirements.** Purchased equipment may require a network connection in order to achieve full functionality. Organization acknowledges that when Simulator is in use, Organization is responsible for maintaining an active network connection to Intuitive Surgical Simulator infrastructure as specified in the Simulator's network requirements, for the purpose of supporting all services such as, latest simulation updates, OS patches, anti-virus updates, data backup and user account management capabilities. Organization is responsible for the security of the Simulator and the security of the internal network to which the Simulator is configured. Intuitive reserves the right to change, add, or remove functionalities or features at any time.

**5. Information Security.** Organization is responsible for maintaining the confidentiality of its username(s), password(s), account(s), as well as all activities that occur under that account(s) and both the physical and cyber-security of the Simulator.

**6. Hardware Update.** Intuitive reserves the right to exchange and update Simulator hardware, as necessary, to maintain full functionality.

**7. Service.** Under the terms of this Agreement, Organization will receive access to the Intuitive Surgical library of basic, advanced, and procedure skills simulation. In the event of nonpayment, access to the Intuitive Surgical library of basic, advanced, and procedure skills simulation will be suspended. Organization will pay the invoiced amount not later than forty-five (45) days after the date of invoice.

**8. Opt Out.** At any time during the term of this Agreement, with thirty (30) days prior written notice, Organization may opt-out of the Simulator Service. For the avoidance of doubt, Organization will not receive a refund of any prepaid, unused Service fees.

CONFIDENTIAL

FRANCISCAN-00001628

**9. Entire Agreement; Amendment**.  Excluding the Service Agreements between the parties dated September 30, 2019 listed in Section 15.15 ("Entire Agreement; Amendment") of the Master Agreement, this Agreement is the entire agreement between Intuitive and Organization and supersedes any other prior agreements, understandings, promises, and representations made either orally or in writing by either party to the other party concerning the subject matter herein, pricing, and the applicable terms.  Any terms or conditions in Organization's purchase order that are different from, inconsistent with, or in addition to, the terms and conditions of this Agreement will be void and of no effect, unless otherwise mutually agreed to in writing by the parties.  This Agreement may be amended only in writing, signed by both parties.  Any purported oral modification intended to amend the terms and conditions of this Agreement is void.

CONFIDENTIAL

FRANCISCAN-00001629

# EXHIBIT D

**System Move Letter Template / Assignment and Assumption Agreement Template**

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is entered into as of the last date signed by Assigning Hospital, Receiving Hospital and Intuitive Surgical, Inc. ("Intuitive") (the "Effective Date") relating to that certain Agreement referenced below ("Subject Agreement" ) between Intuitive and Assigning Hospital for the referenced System:

| | | |
|---|---|---|
| Assigning Hospital/Legal Entity | | |
| Assigning Hospital Location: | | |
| Receiving Hospital/Legal Entity | | |
| Receiving Hospital Location | | |
| Subject Agreement | CLM record number: | |
| | MA record number | |
| | Other Agreement Number: | |
| | Agreement Effective Date | |
| System Move CLM number | | |
| System Serial Number | | |
| Estimated Move Date: | | |

| | |
|---|---|
| Fees: | $ |
| | A purchase order from either Assigning Hospital or Receiving Hospital for any Fees is required to authorize the System move. |

**WHEREAS**, Assigning Hospital has requested the right to assign rights and obligations for the System pursuant to the Subject Agreement and to Receiving Hospital; and Receiving Hospital wishes to accept such assignment;

**WHEREAS**, the parties acknowledge the importance of continued serviceability of the System and Intuitive wishes to authorize this assignment with that in mind.

**NOW THEREFORE**, the parties agree as follows:

1.      Terms not defined in this Agreement have the meaning assigned to them in the Subject Agreement.

2.      **Assignment of Assigning Hospital.** Assigning Hospital hereby assigns, sells, transfers, and conveys to Receiving Hospital

Page 21 of 26

FRANCISCAN-00001630

all of Assigning Hospital's right, title and interest in and to the System purchased under the terms and conditions of the Subject Agreement. **Assigning Hospital represents and warrants to Intuitive that as of the Effective Date, it has clear title to the System.**

3.     **Assumption of Receiving Hospital.** Receiving Hospital (i) accepts the assignment and agrees to assume, perform and be bound by, all of the terms and conditions of the Subject Agreement, (ii) assumes any obligations of Assigning Hospital, unless otherwise stated herein, related to the Subject Agreement, and (iii) acknowledges that it has received and read a copy of the Subject Agreement, and understands its contents.

4.     **Consent.** Intuitive consents to the assignment and assumption as set forth in Sections 2 and 3 above of Assigning Hospital and Receiving Hospital, respectively; provided, however, Assigning Hospital is and remains liable for any debts, obligations, and liabilities of Assigning Hospital related to the Subject Agreement with respect to any matters occurring before the Effective Date of this Agreement; and, Receiving Hospital is and remains liable for any debts, obligations, and liabilities of Receiving Hospital related to the Subject Agreement with respect to any matters occurring on or after the  Effective Date of this Agreement; and provided further that Assigning Hospital and Receiving Hospital comply with all other terms and conditions of this Agreement.

5.     **Move.** The System will be relocated AS-IS by Intuitive. Intuitive will wrap or crate the System in packing material as needed for the transport to secure the System at the Assigning Hospital's Location set forth above and move it to Receiving Hospital's Location set forth above using a carrier selected by Intuitive. Assigning Hospital and Receiving Hospital will provide Intuitive with access to the System, and any assistance that may be reasonably required to allow Intuitive to move and deliver the System in accordance with the terms herein.

6.     **Fees.** The Fees are as set forth above. A purchase order will be issued by the Assigning Hospital or Receiving Hospital to Intuitive for fees associated with this move concurrently with signature below. Intuitive will send the entity issuing the purchase order an invoice for the move fees; the invoice is payable net 30 days from the delivery of the System to Receiving Hospital's facility.

7.     **Instruments & Accessories.** Transfer of any instruments and accessories Assigning Hospital may have in its possession is not contemplated under this Agreement. Due to issues of patient safety, including sterility, Intuitive does not encourage the transfer of instruments and accessories by Assigning Hospital to Receiving Hospital. Any such transfer voids any warranty for the instrument or accessory and Assigning Hospital and Receiving Hospital will indemnify and hold Intuitive harmless of any claims (including attorneys' fees) any party may assert against Intuitive in connection with transfer of any instruments or accessories from Assigning Hospital to Receiving Hospital.

8.     **Continuation of Service.** The Services provision of the Subject Agreement, as amended, remains in full force and effect.

9.     **Reporting under Physicians Payment Sunshine Act.** Commencing in 2013, payments made or transfer of value under this arrangement may be reportable by Intuitive to the United States Federal Government ("Government") in compliance with the Physicians Payment Sunshine Act ("PPSA") provision of the Patient Protection and Affordable Care Act of 2010, as may be amended from time to time. The PPSA requires that medical device companies such an Intuitive report annually to the Government payments or provision of anything of value to covered physicians and hospitals. Information to be reported include the payee name, state license number, national provider identifier number, business address, specialty, nature of payment, and amount paid. The Government will subsequently make the reported information public available in a searchable, downloadable internet website.

10.    **Miscellaneous.**

    (a)    **Entire Agreement.** This Agreement contains the entire understanding of the parties hereto with respect to the subject matter hereof, and supersedes all other agreements between or among any of the parties with respect to the subject matter hereof.

    (b)    **Successors and Assigns.** This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective heirs, executors, legal representatives, successors and permitted transferees.

    (c)    **Severability.** In case any one or more of the provisions contained in this Agreement are for any reason be held to be invalid, illegal or unenforceable in any respect, the invalidity, illegality or unenforceability will not affect any

CONFIDENTIAL

FRANCISCAN-00001631

other provision of this Agreement and the invalid, illegal and unenforceable provision will be reformed and construed so that it will be valid, legal, and enforceable to the maximum extent permitted by law.

(d)     **Counterparts/Facsimile Signatures.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together constitute one and the same instrument. Signatures transmitted via facsimile are deemed originals for purposes of this Agreement.

(e)     **Section Headings.** The headings contained in this Agreement are for reference purposes only and are not in any way affect the meaning or interpretation of this Agreement.

ALL PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE EFFECTIVE DATE.

| ACCEPTED BY: **Assigning Hospital:** | ACCEPTED BY: **Receiving Hospital:** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

**Intuitive Surgical, Inc.**

By:     _____

Name:   _____

Title:  _____

Date:   _____

**Receiving Hospital hereby acknowledges the move is complete:**

By:     _____

Name:   _____

Title:  _____

Date:   _____

CONFIDENTIAL

FRANCISCAN-00001632

Move pertaining to:

| Assigning Hospital/Legal Entity | |
|---|---|
| Assigning Hospital Location: | |
| Receiving Hospital/Legal Entity | |
| Receiving Hospital Location | |
| Subject Agreement | CLM record number: | |
| | MA record number | |
| | Other Agreement Number: | |
| | Agreement Effective Date | |
| System Move CLM number | | |
| System Serial Number | | |

**(Note to Intuitive Surgical Field Engineering—please scan & email this page with signature above to systemmove@intusurg.com )**

CONFIDENTIAL

FRANCISCAN-00001633

**EXHIBIT E**

**Service Agreements between the Parties Effective September 30, 2019**

| TITLE | QUOTE NO. | LOCATION | SYSTEM SERIAL NO. | SERVICE TERM PERIOD |
|---|---|---|---|---|
| Service Agreement | 4008290 | Franciscan Health Olympia Fields | SK0410 | 06/24/19 to 12/22/21 |
| Service Agreement | 4008291 | Franciscan Health Dyer | SH0170 | 11/23/19 to 12/22/21 |
| Service Agreement | 4008312 | Franciscan Health Dyer | SK0932 | 09/23/19 to 12/22/21 |
| Service Agreement | 4008313 | Franciscan Health Crawfordsville | SH0169 | 11/23/19 to 12/22/21 |
| Service Agreement | 4008314 | Franciscan Health Michigan City | SK0931 | 09/23/19 to 12/22/21 |
| Service Agreement | 4008315 | Franciscan Health Lafayette East | SK0174 | 10/02/19 to 12/22/21 |
| Service Agreement | 4008316 | Franciscan Health Lafayette East | SK0930 | 09/22/19 to 12/22/21 |
| Service Agreement | 4008317 | Franciscan Health Crown Point | SK0929 | 09/30/19 to 12/22/21 |
| Service Agreement | 4008318 | Franciscan Health Crown Point | SH0551 | 11/29/18 to 12/22/21 |

CONFIDENTIAL

FRANCISCAN-00001634

**EXHIBIT F**

**Intuitive Surgical's Price List**

> **Commented [FA2]:** FRANCISCAN ALLIANCE 08/26/20: Please send Judy Schimmel the price list to be attached under Exhibit F so she can review it.

CONFIDENTIAL

FRANCISCAN-00001635