# ATTACHMENT 71

```
 1                 UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                      SAN FRANCISCO DIVISION
 4
 5   _____
                                   )
 6   IN RE:  DA VINCI SURGICAL     )
     ROBOT ANTITRUST LITIGATION    )  Lead Case No. 3:21-cv-03825-VC
 7   _____)
                                   )
 8   THIS DOCUMENT RELATES TO:     )
     ALL CASES                     )
 9   _____)
     SURGICAL INSTRUMENT SERVICE   )
10   COMPANY, INC.,                )
                                   )
11              Plaintiff,         )  Case No. 3:21-cv-03496-VC
                                   )
12        vs.                      )
                                   )
13   INTUITIVE SURGICAL, INC.,     )
                                   )
14              Defendant.         )
                                   )
15   _____)
16
17            REMOTE VIDEOTAPED DEPOSITION OF
18                   KAREN F. WANINGER
19                Thursday, October 6, 2022
20                        Volume I
21
22   Reported by:
     NADIA NEWHART
23   CSR No. 8714
24   Job No. 5504267
25   PAGES 1 - 90
```

Page 1

| | | |
|---|---|---|
| 1 | they just call themselves AAMI, AAMI.  They -- they | |
| 2 | are, basically, the professional organization, the | |
| 3 | national organization for my profession.  They are | |
| 4 | also -- well, you can look them up to find out what | |
| 5 | else they are.  But that's who AAMI is. | 01:37:49 |
| 6 |    Q   Why did you attend the AAMI annual conference | |
| 7 | in 2019? | |
| 8 |    A   That is the national conference for my | |
| 9 | profession, and so I attend to -- to learn and to | |
| 10 | share information with peers.  And there is -- as I | 01:38:07 |
| 11 | indicated earlier, there is an exhibit hall where | |
| 12 | medical equipment vendors will often bring new | |
| 13 | technology or new items that they think will be of | |
| 14 | interest to those of us who service and manage the | |
| 15 | service on their equipment. | 01:38:28 |
| 16 |    Q   What does Rebotix do? | |
| 17 |    A   My understanding, from the limited | |
| 18 | conversation I had, is that they are a servicer for | |
| 19 | da Vinci instruments, and they had some -- some | |
| 20 | information that they were offering to share about | 01:38:55 |
| 21 | opportunities to extend the life of those | |
| 22 | instruments or of some of those instruments. | |
| 23 |    Q   What was the outcome of your interactions | |
| 24 | with Rebotix? | |
| 25 |        MR. BATEMAN:  Objection; vague. | 01:39:16 |

Page 35

```
 1            You can answer.
 2            THE WITNESS:  They sent me some follow-up
 3    information after the conference.
 4    BY MR. CHAPUT:
 5       Q    What did you do with the follow-up                01:39:29
 6    information that Rebotix sent you?
 7       A    I reviewed it just very generally in terms of
 8    giving it a quick read through and I set it aside.
 9    Basically, I had forgotten about it until at some
10    point later there was a request to look for cost         01:39:43
11    avoidance opportunities, and then I remembered that
12    I had received that information.
13            So I -- I think I sent an email to a couple
14    people within our Franciscan team who would be aware
15    of the da Vinci robots to find out if there was any      01:40:05
16    interest in evaluating that organization further
17    in -- in the context of looking for cost savings.
18       Q    Was there any interest in evaluating Rebotix
19    further?
20            MR. BATEMAN:  Objection; calls for               01:40:25
21    speculation.
22            You can answer.
23            THE WITNESS:  At the time there -- there may
24    have been interest.  But it was pointed out that
25    there was language in our contracts with Intuitive       01:40:35
```

Page 36

```
 1      available --
 2           MR. BATEMAN:  Yeah, yes.
 3           MR. CHAPUT:  -- for you to see there.
 4           MR. BATEMAN:  All right.  So if you'd just
 5      hit refresh.  Yeah, there you go, Karen.  And then      01:46:24
 6      it's Exhibit 101.  Yep.
 7           THE WITNESS:  101-17?
 8           MR. BATEMAN:  Yeah.
 9           THE WITNESS:  Okay.  Page 1 of 21 is an
10      email.  Okay.                                            01:46:39
11      BY MR. CHAPUT:
12         Q   And, Ms. Waninger, does the document on the
13      Exhibit Share platform appear to be the -- the same
14      one that you're looking at in hard copy?
15         A   From a quick read-through, yes, it appears to    01:47:15
16      be the same.
17         Q   Okay.  Did you review the information that
18      Rebotix sent you and the attachments to Exhibit 101?
19         A   I gave it a quick read through, yes.
20         Q   Is there a particular reason that you didn't    01:47:34
21      explore it further after reviewing these materials?
22         A   I thought I --
23           MR. BATEMAN:  Objection; that
24      mischaracterizes testimony.
25           THE WITNESS:  So I thought I already answered     01:47:44
```

Page 41

| | | |
|---|---|---|
| 1 | that question earlier when I said I was informed | |
| 2 | that we had language in our contract with Intuitive | |
| 3 | that prevented us from pursuing anything like this | |
| 4 | without being in breach of contract. | |
| 5 | BY MR. CHAPUT: | 01:48:01 |
| 6 | Q   Sure.  And so I -- I apologize.  I can make | |
| 7 | my question a little bit more precise. | |
| 8 | I believe that you -- you testified that you | |
| 9 | reviewed it briefly but then set it aside until it | |
| 10 | came back later. | 01:48:11 |
| 11 | And so my question is, why did you set it | |
| 12 | aside and not pursue it further when you initially | |
| 13 | received the information from Rebotix that is | |
| 14 | reflected in Exhibit 101? | |
| 15 | A   Other things came up.  I don't know.  It -- | 01:48:23 |
| 16 | it wasn't on the top of my list of things that I | |
| 17 | needed to immediately accomplish. | |
| 18 | Q   Did you ever ask Rebotix for additional | |
| 19 | documentation or information regarding the service | |
| 20 | that Rebotix performed? | 01:48:47 |
| 21 | A   I don't specifically recall asking them, no. | |
| 22 | Q   Did you inquire about the specifics of the -- | |
| 23 | what Rebotix described as the repair that they | |
| 24 | perform on EndoWrist instruments? | |
| 25 | MR. BATEMAN:  Objection; vague and lack of | 01:49:06 |

Page 42

1    foundation.
2         THE WITNESS:  I don't recall asking them for
3    specifics.
4    BY MR. CHAPUT:
5    Q    Are you aware that Rebotix took apart                01:49:22
6    EndoWrist and added a new chip to the EndoWrist
7    instruments?
8         MR. BATEMAN:  Objection; vague, calls for
9    speculation, lack of foundation.
10        THE WITNESS:  I don't know what Rebotix does         01:49:34
11   to the instruments.
12   BY MR. CHAPUT:
13   Q    Would it have been important to you to find
14   out what Rebotix does to the instruments prior to
15   entering into an agreement with them?                     01:49:46
16   A    That's a theoretical question, so had we
17   chosen to investigate further, yes, there would have
18   been a lot more questions that I would have sought
19   answers to.
20   Q    What questions would you have sought answers         01:50:08
21   to had you decided to investigate further?
22   A    I don't know.  I can't answer that.  That was
23   then.  This is now.  I can't -- I don't know.
24   Q    Well, so you just mentioned that there -- you
25   would have had a lot more questions, and so my            01:50:25

Page 43

```
 1    question is whether there are any specific questions
 2    that you can think of now that you would have wanted
 3    answers to had you decided to investigate the
 4    Rebotix opportunity further.
 5          MR. BATEMAN:  Objection.  It's vague and          01:50:36
 6    hypothetical.
 7          Go ahead.
 8          THE WITNESS:  I would -- in my process of
 9    evaluating a service organization, there are some
10    basic things that I would ask.  One is what is their   01:50:50
11    knowledge of the equipment?  What are their
12    processes for providing repairs on the equipment?
13          What are their success rates with the repairs
14    that they have done?  Maybe ask for references of
15    other customers who are using them as a service.       01:51:22
16          Those are some of the steps that I would
17    normally take when evaluating a service
18    organization.
19    BY MR. CHAPUT:
20       Q   Since you didn't ask those questions of          01:51:37
21    Rebotix, is it accurate that you can't say whether
22    you would have recommended to Franciscan that they
23    enter into a service agreement with Rebotix?
24          MR. BATEMAN:  Objection.  It's vague,
25    hypothetical.                                           01:51:53
```

Page 44

```
 1          THE WITNESS:  I can't say what recommendation
 2   I would have made.  Had the language not been in the
 3   contract, I am sure I would have recommended we
 4   investigate further.
 5   BY MR. CHAPUT:                                          01:52:11
 6      Q   Have you ever spoken to Rebotix about this
 7   lawsuit?
 8      A   No.
 9      Q   Have you ever spoken to Rebotix about their
10   lawsuit against Intuitive?                              01:52:22
11      A   No.
12      Q   Did you ever discuss Rebotix with anyone from
13   Intuitive?
14      A   No.
15      Q   Did you have any further contact with Rebotix    01:52:30
16   about the EndoWrist service that they offered?
17          MR. BATEMAN:  Objection; vague.
18          THE WITNESS:  There may have been a follow-up
19   email exchange.  I don't recall specifically.
20   BY MR. CHAPUT:                                          01:53:04
21      Q   You mentioned earlier that you negotiated an
22   agreement to, I think, standardize the -- the terms
23   of Franciscan's service agreements with Intuitive;
24   is that correct?
25          MR. BATEMAN:  Objection; mischaracterizes        01:53:17
```

Page 45

```
 1           I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4           That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were administered an oath; that
 8   a record of the proceedings was made by me using
 9   machine shorthand which was thereafter transcribed
10   under my direction; that the foregoing transcript is
11   a true record of the testimony given.
12           Further, that if the foregoing pertains to the
13   original transcript of a deposition in a Federal
14   Case, before completion of the proceedings, review
15   of the transcript [X] was [ ] was not requested.
16           I further certify that I am neither financially
17   interested in the action nor a relative or employee
18   of any attorney or any party to this action.
19           IN WITNESS WHEREOF, I have this date subscribed
20   my name.
21   Dated: October 20, 2022
22
23
24                         _____
                                  NADIA NEWHART
25                                CSR NO. 8714
```

Page 87