# ATTACHMENT 85

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION | Lead Case No.: 3:21-cv-03825-VC |
| THIS DOCUMENT RELATES TO: ALL CASES | |
| SURGICAL INSTRUMENT SERVICE COMPANY, INC., Plaintiff, vs. INTUITIVE SURGICAL, INC., Defendant. | Case No.: 3:21-cv-03496-VC |

VIDEO-RECORDED VIRTUAL REMOTE DEPOSITION OF
DAVID FABRICANT

Scottsdale, Arizona
November 8, 2022
10:20 a.m. MST

REPORTED BY:
Janice Gonzales, RPR, CRR
AZ Certified Court Reporter No. 50844

Page 152

1    the distal tip, and the fourth was to resharpen any
2    cutting distal ends.  There may have been others, but
3    that's the high level that I recall.
4        Q.   In the first sequence of contacts, did
5    Mr. Papit and/or Mr. Mixner tell you that Rebotix
6    didn't really need 510(k) clearance for the kind of
7    repair service that they wanted to offer?
8        A.   Yes, that's -- that was the difference
9    between Rebotix being -- going as a repair company
10   and Stryker being a reprocessing company that
11   required a 510(k).
12       Q.   I don't understand what you just told me.
13   What does that mean?
14       A.   Rebotix is part of another company,
15   Benjamin Biomedical, that Mr. Mixner owned.  That was
16   a repair company.  Rebotix provided repair
17   EndoWrists, which was the four, five things I just
18   mentioned, but as a repair device, it did not require
19   a 510(k) from the FDA.  Stryker's quality system and
20   regulatory counsel would not let Stryker go forward
21   with this device unless it received a 510(k) from the
22   FDA.
23       Q.   Did you ever explain to Mr. Mixner and/or
24   Mr. Papit why it was that Stryker was not interested
25   in going ahead with them unless 510 clearance was

Page 153

1  obtained?
2        A.   Yes.
3        Q.   What did you say to them?
4        A.   I don't recall other -- I don't recall
5  other than our -- we will not go forward unless this
6  is a FDA-cleared device.
7        Q.   Well, did you explain to them whether or
8  not Stryker believed that it was legal to go forward
9  with the business they had in mind without FDA
10 clearance?
11       A.   That, I don't recall, if we gave them any
12 advice on how they wanted to operate Rebotix.
13       Q.   Did you ever discuss with Rebotix, with
14 Mr. Mixner, and/or Mr. Papit what kind of structure
15 there might be to a financial transaction between
16 Stryker and Rebotix if Stryker decided to go ahead
17 with that?
18       A.   Yes.
19       Q.   And what did you say to them about that?
20 What did you tell them?
21       A.   It's the LOI terms -- or IOI terms.
22       Q.   And do you recall in -- approximately
23 what those were?
24            THE WITNESS:  John, if you can pull up
25 document -- or Exhibit 239b, as in boy, and it's the

Page 156

1     with Stryker without 510(k) clearance?
2              MR. DOMINGUEZ:  Objection to form.
3              THE WITNESS:  So I'm looking even above,
4     under 1-4.  That also called out the 510(k)
5     clearance.
6     BY MR. RUBY:
7          Q.   Yes.  And, again, I'm not meaning to
8     argue, but we discussed -- you've explained that
9     there was a time when you told Rebotix that 510(k)
10    clearance was a condition of any kind of joint
11    undertaking -- any kind of deal between Stryker and
12    Rebotix; isn't that true?
13         A.   I'm trying to recall if initially they
14    thought they could get -- they had submitted their
15    510(k).  They thought they would get a 510(k);
16    therefore, it would not be a condition because they
17    would have already obtained it, but they got the
18    deficiency letter.
19         Q.   But after they got the deficiency letter,
20    didn't they explain to you that 510(k) clearance
21    wasn't needed.  Problem solved.  They didn't need a
22    510(k), right?
23             MR. DOMINGUEZ:  Objection.  Misstates the
24    evidence.
25             THE WITNESS: Yes, I'm sure that they

Page 157

1    tried to explain to us that they didn't think it was
2    required under the -- under a repair service.
3    BY MR. RUBY:
4         Q.   I'm sorry for talking over you.  I'll try
5    to slow down.
6              After they explained to you they thought
7    that 510(k) clearance wasn't required because this
8    was a repair, did you after that explain to them,
9    well -- I'm para- -- these are my words.  Did you
10   explain to them, Well, that's your opinion, but
11   there's not going to be a deal with Stryker unless
12   510 clearance was obtained, or words to that effect?
13        A.   One of the key considerations for -- for
14   Stryker was the 510(k) clearance.
15        Q.   And you told them that?
16        A.   Yes.
17        Q.   Did you ever tell Mr. Papit and/or
18   Mr. Mixner about any opinion that you personally had
19   as to whether the -- what they described as a repair
20   required 510(k) clearance or not?
21        A.   That, I don't recall, if I gave them my
22   opinion.
23        Q.   Did you ever tell them whether or not you
24   agreed with their opinion, that what they were
25   describing as a repair required 510(k) clearance?