UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION**

Case No.  21-cv-03825-AMO

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION**

Re: Dkt. No. 261

Before the Court is Defendant Intuitive Surgical, Inc.'s ("Intuitive") motion for reconsideration.[1]  Intuitive moves for reconsideration of part of the Court's March 31, 2024 Order re: Cross Motions for Summary Judgment.  ECF 232 ("March 31 Order").  The Court finds the motion for reconsideration suitable for decision without oral argument.  *See* Civ. L.R. 7-1(b).  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Intuitive's motion for the reasons below.

The Court assumes familiarity with the facts, procedural history, and legal argument discussed at length in the March 31 Order.  *See* ECF 232.

**I.     LEGAL STANDARD**

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).  As such, it should not be granted "absent highly unusual circumstances."

---

[1] Under Civil Local Rule 7-9(a), a party must seek permission from the court prior to filing a motion for reconsideration.  The Court granted Intuitive's earlier motion seeking leave to file the instant motion for reconsideration.  ECF 268.

United States District Court
Northern District of California

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  In this district, a party seeking reconsideration must satisfy additional requirements, set forth in Civil Local Rule 7-9(b).  Specifically, reconsideration may be sought only if one of the following circumstances exists:

> (1) That . . . a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).  In addition to these bases for a party to seek leave to file a motion for reconsideration in this district, district courts generally have "inherent authority" to reconsider prior orders to "prevent clear error or prevent manifest injustice."  *Gray v. Golden Gate Nat'l Recreational Area*, 866 F. Supp. 2d 1129, 1132 (N.D. Cal. 2011).

## II.    ANALYSIS

### A.    Reconsideration

Intuitive requests that the Court reconsider its rulings as to the issues of (1) the definition of a U.S. market for EndoWrist repair and replacement, (2) Intuitive's power in such a market, and (3) separate products, asserting that the Court's conclusions on these issues directly conflict with the Ninth Circuit's decision in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), cert. denied, 144 S. Ct. 681 (2024), and cert. denied, 144 S. Ct. 682 (2024).  In *Epic Games*, the Ninth Circuit clarified what is required to establish a separate, single-brand aftermarket in an antitrust case.  *Id.* at 976-77.  The court issued that opinion on April 24, 2023, eleven days after Intuitive filed its opposition to summary judgment.[2]  This Court did not adequately address the test set forth

---

[2] Hospital Plaintiffs argue in part that Intuitive waived its argument by failing to advance that EndoWrist repair and replacement could not exist as a single brand aftermarket unless established

in *Epic Games*, and it accordingly **GRANTS** Intuitive's motion for reconsideration to correct the legal error that would result from its omission.

### B.      Analyzing the Aftermarket

The Court focuses its attention on the propriety of its earlier grants of summary adjudication as to (1) the market definition of the EndoWrist repair and replacement market as well as (2) Intuitive's monopoly power in that market.  *See* ECF 232 at 16-21.  Both sides acknowledge that the putative EndoWrist repair and replacement market would be an aftermarket to a foremarket of Da Vinci surgical robots in the context of the Hospital Plaintiffs' allegations of unlawful tying.  *See generally* ECF 261 & ECF 266.

The Supreme Court considered unlawful tying in *Kodak*, where the defendant, a manufacturer of photocopying equipment (the primary market), was alleged to have unlawfully restrained competition in the aftermarket for service of its equipment by tying replacement parts for its equipment to that service.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 454-59 (1992).  Defendant Kodak argued that, even if it conceded that it possessed a monopoly share of the relevant aftermarket for parts, it still could not be held liable for a Sherman Act violation because competition existed in the primary market for equipment.  *Id.* at 465.  The Supreme Court explicitly summarized "the principal issue" that it decided as "whether a defendant's lack of market power in the primary equipment market precludes – as a matter of law – the possibility of market power in derivative aftermarkets." *Id.* at 455.

In addressing that question, the Supreme Court first confirmed that "an illegal tying arrangement" requires "appreciable economic power in the tying market," and that "[t]he existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market." *Id.* at 464 (citations omitted).  That plaintiff's claim for monopolization of the

United States District Court
Northern District of California

---

through the lock-in framework presented in *Kodak* and reaffirmed in *Epic Games*.  Not so. Intuitive raised this argument in its Reply brief, the first opportunity it had after *Epic Games* was decided.  *See* ECF 188 at 15 ("As the Ninth Circuit recently confirmed in *Epic Games*, an 'aftermarket' exists as a separate relevant market only if, inter alia, the customer's obligation to purchase aftermarket items from the same seller is not disclosed at the time of the original purchase.") (citing *Epic Games*, 67 F.4th at 976-77).

United States District Court
Northern District of California

aftermarket fell outside that standard paradigm, however, and instead centered on the premise that Kodak maintained a monopoly in the aftermarket despite the existence of competition in the equipment foremarket. *Id.* at 465 n.10; *see also id.* n.15 (describing "the ultimate inquiry" in that case as "whether competition in the equipment market will significantly restrain power in the service and parts markets"). The Supreme Court held that such an aftermarket-centered claim could proceed despite the primary market's competitiveness only if the plaintiff could establish certain facts, including customer unawareness of the aftermarket restraints at the time of purchase. *Id.* at 465-77.

Since *Kodak*, the Supreme Court and Ninth Circuit have only found single-brand markets plausible in the context of aftermarkets which are "wholly derivative from and dependent on the primary market." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1049 (9th Cir. 2008).[3] In *Epic Games*, the Ninth Circuit clarified that in the "lock-in" framework, a single brand of a product may constitute a separate aftermarket "where demand for a good is entirely dependent on the prior purchase of a good in a foremarket." 67 F.4th at 976. It further enumerated four factors a plaintiff must show to establish a single-brand aftermarket, the first of those being that "the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase." *Id.* at 977. In this way, the *Epic Games* court did not set forth a new test for assessing claims of aftermarket monopolization; rather, it clarified the existing standard and set forth specific considerations that this Court omitted from its analysis.

In its March 31 Order, this Court denied the Hospital Plaintiffs' bid for summary judgment regarding the definition of the market for surgical robots because there was a genuine dispute of fact. ECF 232 at 14-16. The Court then proceeded to analyze whether Hospital Plaintiffs were entitled to summary judgment on the definition of the alleged aftermarket for EndoWrist repair and replacement, as well as Intuitive's power in that market. ECF 232 at 16-21. The Court should not have proceeded so quickly to separately analyze the purported aftermarket definition. *See*

---

[3] "'Single-brand markets are, at a minimum, extremely rare' and courts have rejected such market definitions '[e]ven where brand loyalty is intense.'" *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1107 (N.D. Cal. 2022) (quoting *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008)).

*Kodak*, 504 U.S. at 464.  Indeed, in their summary judgment briefing, neither party discussed whether the Court could define an aftermarket where a foremarket has not first been defined. Because it was clear error to engage in that analysis, the Court must vacate the portion of its March 31 Order that granted summary judgment to the Hospital Plaintiffs on the definition of the EndoWrist repair and replacement market and the subsequent assessment of Intuitive's monopoly power in that market.

The Hospital Plaintiffs now argue that the Court properly granted summary judgment on the EndoWrist aftermarket and need not disturb its earlier ruling.  In part, Plaintiffs aver that they were not required to prove the *Epic Games* "lock-in" factors because they presented sufficient evidence that Intuitive possessed market power in the primary market.  Opp. (ECF 266) at 6 (citing *Kodak*, 504 U.S. at 465).  Plaintiffs cite repeatedly to orders issued and a transcript in *Lambrix v. Tesla, Inc.*, No. 23-cv-01145-TLT (N.D. Cal.), in support of the premise that the *Epic Games* "lock-in" factors need not be reached to establish a single-brand aftermarket where an antitrust plaintiff first shows that the defendant held significant market power in the foremarket. *See* Opp. (ECF 266) at 10; Statement of Recent Decision (ECF 276).  But that is not what has happened here: the Court did not find that Intuitive holds market power in the foremarket.  The Court expressly denied summary judgment for Plaintiffs on market definition and power as to the surgical robot foremarket, holding that disputed issues of fact remained for the jury to decide. ECF 232 at 14-16.  Thus, if a single-brand aftermarket for EndoWrist instruments can be established at this stage, it must be accomplished through satisfaction of the *Epic Games* "lock-in" factors.  The Hospital Plaintiffs cannot do so.

The first of the *Epic Games* "lock-in" factors to establish a single brand aftermarket is that that "the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase."  *Epic Games*, 67 F.4th at 977.  Plaintiffs submitted no evidence and made no arguments suggesting that the challenged aftermarket restrictions on EndoWrist repair and replacement are not generally known to hospitals when they make their "foremarket purchase" of a da Vinci robot.  To the contrary, Intuitive presented evidence establishing that the challenged restrictions appear in the da Vinci sales and lease contracts that hospitals sign.  *See, e.g.*, Larkin

5

Community Hospital "Use, License, and Service Agreement" (Cahoy Decl. Ex. 11).  Therefore, even if the Court engaged the *Epic Games* factors to assess a single-brand aftermarket for EndoWrist repair and replacement, the Hospital Plaintiffs are not entitled to summary adjudication on that issue.

Finally, the Court addresses Intuitive's assertion that the Court erred in granting summary adjudication in favor of the Hospital Plaintiffs regarding surgical robots and the EndoWrist instruments occupying separate markets.  *See* ECF 232 at 11-14.  Intuitive reasons, "because the Court has denied summary judgment for Plaintiffs on market definition and power as to robots . . . all related questions concerning the existence of a separate market for EndoWrists should also be submitted to the jury."  Reply (ECF 271) at 5.  The Court's March 31 Order discussed at length how the evidence revealed how surgical robots and the instruments are purchased separately, not in a fixed ratio, and that consumers, "when given a choice, opt to purchase the goods from different firms, rather than a single firm."  *See* March 31 Order (ECF 232) at 11-14 (citing *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, 571 F. Supp. 3d 1133 (N.D. Cal. 2021) (internal citation and quotation marks omitted)).  Moreover, Intuitive fails to provide further authority demonstrating error in the Court's conclusion.  Thus, the Court leaves that portion of the March 31 Order intact.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Intuitive's motion for reconsideration.  The Court hereby **VACATES** the portions of the Court's March 31, 2024 Order (ECF 232) granting Plaintiffs summary judgment as to the definition of a U.S. market for EndoWrist repair and replacement and Intuitive's power in such a market.

**IT IS SO ORDERED.**

Dated: July 30, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

6