Sonya D. Winner (SBN 200348)
**COVINGTON & BURLING LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: swinner@cov.com

Ashley E. Bass (*pro hac vice*)
Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 Tenth Street NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: abass@cov.com
Email: alazerow@cov.com

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

*Attorneys for Defendant/Counterclaimant Intuitive Surgical Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT REALTES TO:<br>ALL ACTIONS | Case No.: 3:21-cv-03825-AMO-LB<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IDENTIFYING NEW OPINIONS IN PROFESSOR ELHAUGE'S CLASS REBUTTAL REPORT**<br><br>Judge: Hon. Araceli Martínez-Olguín |

1    Defendant Intuitive Surgical, Inc. ("Intuitive") files this Supplemental Brief pursuant to the Court's January 24, 2025 Order Following Hearing (the "Order). ECF 311; *see also* 1/23/25 Hearing Tr. at 34. The Order granted Plaintiffs' Motion for Leave to file a Response to Intuitive's Objection to certain new material contained in the Class Certification Rebuttal Report of Plaintiffs' Expert, Prof. Elhauge ("Class Rebuttal Report"), and authorized Intuitive to file this supplemental brief.

The Objection (ECF 299.1) identified new opinions offered in Prof. Elhauge's Class Rebuttal Report that should have been addressed in his opening report if Plaintiffs wished to rely on them as part of their affirmative showing in support of class certification. *First*, Prof. Elhauge's Class Rebuttal Report offered the opinion, for the first time in this case, that Intuitive would have "less market power" over robots in the but-for world. *Id.* at 2. That opinion flatly contradicts Prof. Elhauge's prior opinion that Intuitive would have monopoly power over robots in the but-for world. *Second*, as a result of his new opinion that Intuitive would have "less market power," Prof. Elhauge proffers an opinion for the first time that Intuitive would have been forced to reduce its prices for robots for all customers in the but-for world – and even goes so far as to calculate, for the first time, purported ***damages*** for the class on robot sales. *Id.*; Class Rebuttal Report (ECF 297.4) ¶¶ 68-69, 80-81, 89-91 & tbl. 44.

Plaintiffs' Response to Intuitive's Objection (ECF 313) ("Response to Objection") does not identify anywhere in Prof. Elhauge's three prior reports in this case where he proffers these opinions. Plaintiffs do not – and cannot – dispute that Prof. Elhauge has consistently opined that Intuitive has monopoly power in his alleged relevant market of MIST robots in the real world or that he testified unequivocally during the deposition on his Opening Class Report that Intuitive would continue to have monopoly power in that alleged market in the but-for world. Elhauge Dep. (ECF 289.14) at 41:12-42:4. As a professor of antitrust law who presents himself as an economics expert, Prof. Elhauge knows perfectly well that "monopoly power" – "the substantial ability 'to control prices or exclude competition,'" *Epic Games, Inc. v. Apple, Inc.,* 67 F.4th 946, 998 (9th Cir. 2023) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)) – is the ultimate in market power. "Monopoly power

differs in degree from market power, requiring 'something greater.'" *Id.* (quoting *Eastman Kodak Co. v. Image Technical Svs.*, 504 U.S. 451, 481 (1992)).[1]

Prof. Elhauge's rebuttal opinion that Intuitive would have "***less*** market power" in the sale of robots in the but-for world (ECF 297.4 ¶ 80 (emphasis original)) is not only new, it cannot be squared with his prior opinion that Intuitive would retain ***monopoly*** power in that alleged market in his but-for world. Nor can it be reconciled with the hundreds of pages of his earlier reports describing market conditions (including specific demand for robotic surgery and absence of competing robot systems) that he claims support his opinion that Intuitive has monopoly power in a distinct market for MIST robots. None of his reports identify any of those factors that would ***change*** in the but-for world.[2] Rather than doing any such analysis, Prof. Elhauge instead simply asserts for the first time in his Class Rebuttal Report that Intuitive "could … easily lose some of that monopoly power in the but-for world and still have a sufficient degree of market power to have monopoly power." Class Rebuttal Report ¶ 69. Even if this juggling of definitions could be accurate in a situation involving no more than a *de minimis* decrease in market power, Prof. Elhauge's approach to increasing damages in his Class Rebuttal Report based on his new opinion about Intuitive's "less market power" means that he is inherently assuming that Intuitive would lose its ability to "control prices" to such an extent that it would not be able to increase robot prices for ***any*** customers. *See, e.g.*, Class Rebuttal Report ¶ 90 & tbl. 44. That is not consistent with "monopoly power" as it has long been defined. *See Epic Games,* 67 F.4th at 998.

---

[1] Monopolies are not automatically illegal under the antitrust laws, and it is well understood that they may exist as a result of innovation and other positive factors. *See Epic Games*, 67 F.4th at 998 (monopolization claim requires proof of "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident") (quoting *Grinnell*, 384 U.S. at 570-71). Plaintiffs' complaint does not allege that Intuitive gained its alleged monopoly for MIST robots unlawfully.

[2] Plaintiffs' Response to Objection points to one paragraph buried deep in Prof. Elhauge's Opening Class Report as implying that the opinion about lower robot prices in the but-for world is not new. Response at 1-2 (citing Elhauge Corrected Opening Class Report ¶ 680). But that paragraph is limited to Professor Elhauge's conclusory speculation that more servicing of robots in the but-for world could lead to lower prices for new robots. Elhauge Corrected Opening Class Report (ECF 297.2) ¶ 680. Nowhere in *any* of his reports does Prof. Elhauge proffer this as an opinion with supporting analysis. Nor does he point to any actual evidence about the economic relationship, if any, between service and new sales of robots.

1    Plaintiffs' Response to Objection also fails to show that the opinions in Prof. Elhauge's Class
2    Rebuttal Report about "the question of impact at the 'full package' level, including robot pricing" are
3    not new ones.  Response to Objection at 2.  Prof. Elhauge's opinions on this subject in his Class Rebuttal
4    Report are again inherently dependent on his new, substantially revised opinion about Intuitive's market
5    power in the but-for world.  He relies on this to supplement his prior assumption that *average* robot
6    prices would not increase in the but-for world (based on the trend he sees in historical averages) with a
7    leap of logic to conclude that robot prices would go down for *everyone.*  In other words, he posits that
8    the historical downward trend he sees in the *average* must automatically translate to a decrease in robot
9    prices for *every individual customer* in the but-for world.  Yet in his prior reports he recognized and
10   even stressed the variability of robot prices, which are individually negotiated with customers.  *See, e.g.*,
11   Elhauge Corrected Opening Class Report (ECF 297.2) ¶ 207.  His prior reports did not claim – and
12   based on the undisputed evidence, could not possibly have claimed – that robot prices were either
13   uniform for all customers or changed over time in a uniform way.  And without the about-face on his
14   testimony that Intuitive would have had monopoly power for robots in his but-for world, what Prof.
15   Elhauge's Class Rebuttal Report says on this subject literally makes no sense.  Nowhere in any of his
16   reports does Prof. Elhauge explain *why* Intuitive, if it truly has a monopoly for surgical robots and has
17   been earning some of the profits of that monopoly through the sale of instruments and service, would not
18   have simply changed its pricing in the but-for world – as *Chicken Delight* posits[3] – to instead charge
19   those extra amounts for the robots for *at least some customers.*  The fact that he cannot explain it is why
20   he swivels to the new opinion that Intuitive would have "less market power" over robots in the but-for
21   world after all.

22      That Prof. Elhauge's opinions on this subject in his Class Rebuttal Report are new is confirmed
23   beyond dispute by his effort to demonstrate class-wide impact by calculating – for the very first time –
24   damages figures that include purported damages on robot sales.[4]  Plaintiffs do not dispute that these

---

[3] *Siegel v. Chicken Delight, Inc.,* 448 F.2d 93 (9th Cir. 1971).

[4] *See* Class Rebuttal Report tbl. 44.  Prof. Elhauge's Class Rebuttal Report trumpets that these new calculations result in the same percentage of "injured" customers as his original report.  *Id.* ¶ 90.  He fails to point out that this result is inevitable from the way he did the calculation.  He merely *assumed* that robot prices would be lower in the but-for world by a single blanket percentage and then applied

calculations are new.  And it is these calculations to which Plaintiffs' counsel pointed at the January 23 hearing as the evidence that Prof. Elhauge had supposedly evaluated "package pricing."  1/23/25 Hearing Tr. at 30:21-31:4.  Plaintiffs' counsel pointed to no such calculations that had been done previously.

The belated submission of these opinions was improper under the governing rules, which required Plaintiffs to present their affirmative evidence in support of class certification with their opening motion papers.  *See* Objection at 1, 3 (citing cases).  That should end the matter.  It should go without saying that it is no defense to assert that Prof. Elhauge was merely "responding" to Intuitive's expert and its Opposition brief (Response to Objection at 1) – particularly when the observation to which Prof. Elhauge was "responding" was that his Opening Class Report failed to offer a model that would satisfy Plaintiffs' burden under the governing law.

Were the Court to overrule Intuitive's Objection to these new opinions, substantial prejudice would arise.  Intuitive had no opportunity to probe those new opinions in Prof. Elhauge's deposition (which focused on his Opening Class Certification Report), to offer a responsive report from its own expert, or to present a *Daubert* challenge to the new opinions.  And there can be no doubt that Intuitive has robust responses to offer.  In addition to their fundamental contradictions with Prof. Elhauge's prior testimony and reports, these new opinions remain inadequate to satisfy Plaintiffs' class certification burden, because even if they were deemed admissible, they still fail to adequately address the question of class-wide impact at the package level.  These opinions still rely on historical data on average robot prices – which is exactly the kind of analysis the Ninth Circuit rejected as a matter of law in *Chicken Delight*.  At the threshold, however, the belated submission of these new opinions was improper, and they can and should be rejected for that reason alone.

DATED: February 3, 2025            By: */s/ Sonya D. Winner*
                                                              Sonya D. Winner

---

that percentage to the prices paid by *everyone* for whom he had previously measured harm**,** which did nothing more than increase his total "damages" figures for those customers.  *See id.* The percentage of "injured" customers was the same because he *assumed* it was the same.

Sonya D. Winner (SBN 200348)
**COVINGTON & BURLINGTON LLP**
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
Email: swinner@cov.com

Kathryn E. Cahoy (SBN 298777)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306-2112
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: kcahoy@cov.com

Ashley E. Bass (*pro hac vice*)
Andrew Lazerow (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter, 850 Tenth Street NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 6291
Email: abass@cov.com
Email: alazerow@cov.com

Kenneth A. Gallo (*pro hac vice*)
Paul D. Brachman *(pro hac vice)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

William B. Michael (*pro hac vice*)
Crystal L. Parker (*pro hac vice*)
Daniel A. Crane (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: wmichael@paulweiss.com

Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: jhill@paulweiss.com

Allen Ruby (SBN 47109)
allen@allenruby.com
**ALLEN RUBY, ATTORNEY AT LAW**
15559 Union Ave. #138
Los Gatos, California 95032
Telephone: (408) 477-9690

*Attorneys for Defendant Intuitive Surgical, Inc.*