No. 25-_____

IN THE

# United States Court of Appeals for the Ninth Circuit

IN RE DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

On Petition for Permission to Appeal
from the United States District Court
for the Northern District of California
Case 3:21-cv-03825-AMO, Hon. Araceli Martínez-Olguín

Sonya D. Winner
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000

Kenneth A. Gallo
Paul. D. Brachman
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street NW
Washington, DC 20006
(202) 223-7300

Ashley E. Bass
Andrew Lazerow
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000

William B. Michael
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Counsel for Defendant-Petitioner*

April 14, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Petitioner, by and through their undersigned counsel, hereby certify the following:

Intuitive Surgical, Inc. ("Intuitive") (ISRG) by and through undersigned counsel, states that it is a publicly held company that has no parent corporation, and no publicly held entity owns 10% or more of its stock.

*/s/ Sonya D. Winner*
Sonya D. Winner

*Counsel for Defendant-Petitioner*
*Intuitive Surgical, Inc.*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 3

QUESTIONS PRESENTED.................................................................... 7

REASONS FOR GRANTING THE PETITION ...................................... 8

I.     The District Court's Predominance Analysis Disregards Precedent and
is Manifestly Erroneous as a Matter of Law.................................... 9

     A.     The District Court Ignored the Correct Legal Test for Assessing
Antitrust Impact.................................................................... 9

     B.     The District Court Erroneously Shifted the Burden to Petitioner
to Disprove Class-Wide Antitrust Impact. ......................... 15

CERTIFICATE OF COMPLIANCE ...................................................... 23

CERTIFICATE OF SERVICE ............................................................... 24

STATEMENT OF RELATED CASES ................................................... 25

EXHIBIT A:

     Order Granting Class Certification, ECF 333

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ................................................................................8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................................................... 3, 9, 13-15, 19

*Krehl v. Baskin-Robbins Ice Cream Co.*,
78 F.R.D. 108 (C.D. Cal. 1978) ..............................................................13

*Kypta v. McDonald's Corp.*,
671 F.2d 1282 (11th Cir. 1982) ..............................................................13

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
791 F.2d 1356 (9th Cir. 1986) ..........................................................10, 11, 14

*Metromedia Broad. Corp. v. MGM/UA Ent. Co.*,
611 F. Supp. 415 (C.D. Cal. 1985) ........................................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..............................................................14, 15, 19

*Siegel v. Chicken Delight, Inc.*,
448 F.2d 43 (9th Cir. 1971) ..........................................2, 5-7, 9-14, 18, 21

*Simon v. AT&T Corp.*,
2001 WL 34135273 (C.D. Cal. Jan. 26, 2001) ........................................13

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................3, 8, 15, 21

Fed. R. Civ. P. 23(b) ....................................................................8, 12

Fed. R. Civ. P. 23(b)(3).................................................................1, 3, 5

Fed. R. Civ. P. 23(f).....................................................................7, 8

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (5th ed.
    2023) ................................................................................................................11

**INTRODUCTION**

In this antitrust tying case, the district court certified a class of thousands of class members, seeking billions in damages from Petitioner Intuitive Surgical, Inc. ("Intuitive").  In doing so, the district court contravened established Ninth Circuit law and incorrectly shifted the burden for establishing predominance under Rule 23(b)(3) from plaintiffs to the defendant.  If left unaddressed, the district court's manifestly erroneous opinion not only will allow this massive case to proceed to trial improperly as a class action, but also may set a precedent that leads to legal error in other similar antitrust cases.  The Petition should be granted to avoid those results.

Intuitive developed an innovative system for minimally invasive robotic-assisted surgery, known as the da Vinci surgical system.  Among the benefits of the da Vinci are improved surgical outcomes, shorter hospital stays and a better experience for surgeons as compared to alternatives like open surgery and laparoscopy.  According to Respondents, Intuitive has a monopoly in an alleged relevant antitrust market of surgical robots for minimally invasive soft tissue ("MIST") surgery.

Respondents do not challenge Intuitive's alleged monopoly power over MIST surgical robots or claim it is unlawful.  Instead, they claim that Intuitive abused its alleged monopoly in MIST surgical robots by requiring customers to buy surgical instruments used with the da Vinci system and service for the da Vinci system only

from Intuitive.  Respondents claim this amounts to an unlawful "tying" or "exclusive dealing" arrangement in violation of the antitrust laws and that as a result, they paid supracompetitive prices for surgical instruments and service.

In the order under review, the district court certified a nationwide class of healthcare providers that purchased surgical instruments and service in connection with the da Vinci.  The district court did so without considering the prices for the total package of goods class members would have purchased in the but-for world. Specifically, the district court concluded that common issues predominated on the question of antitrust impact based solely on the opinions of the Respondent's expert regarding prices class members would have paid for instruments and service absent the challenged restraints, *ignoring* what class members would have paid for the da Vinci surgical robots themselves.

The district court's incomplete assessment of antitrust injury directly contravenes *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43 (9th Cir. 1971).  *Chicken Delight* held that a plaintiff asserting a claim under a tying theory must demonstrate antitrust injury by providing an assessment of the *total* price of the package— including both the tying and tied products—absent the alleged restraint.  *Id.* at 52. The district court nevertheless concluded that Respondents satisfied their burden to demonstrate common evidence of antitrust impact in this case by offering "proof" focused on instrument and service pricing alone.

The district court then compounded this error by flipping the burden under Rule 23, faulting Petitioner for failing to prove that class members would have been better off in the but-for world on a total package basis. But the controlling legal question on class certification is not whether a *defendant* has proven that some or all class members suffered no antitrust injury—the question is whether *plaintiffs* have presented a methodology showing that injury to the class can be demonstrated, under the applicable legal standard, through common evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35–36 (2013). Respondents failed to do so here because they offered no methodology that addresses the prices class members would have paid on a total package basis in the but-for world, even though the law of this Circuit requires them to do so. The failure here was Respondents'—not Petitioner's.

This petition should be granted to address the district court's manifest legal errors in failing to apply this Court's controlling decision in *Chicken Delight* and incorrectly shifting Respondents' burden under Rule 23(b)(3) to Petitioner.

## BACKGROUND

1. This petition arises from antitrust claims on behalf of hospitals and outpatient surgery facilities that purchase sophisticated surgical systems—the da Vinci—developed and manufactured by Petitioner. Respondents allege tying, exclusive dealing, and monopolization claims under the federal antitrust laws related to surgical instruments (EndoWrists) that attach to the da Vinci and service for the

3

da Vinci.  *See* Ex. A at 2.  The claims all rest on a common underlying theory: that Intuitive leverages its lawful alleged monopoly power in an alleged market of MIST surgical robots to force customers to purchase EndoWrists and service only from Intuitive, causing customers to pay higher prices for EndoWrists and service than they otherwise would.  *See* Respondents' Mot. for Class Cert. (ECF 267), at 2. Respondents seek *billions* of dollars in single damages based on this theory.  *Id.* at 22–23.

2.  Respondents—three hospitals that own or lease da Vinci surgical systems and operate da Vinci surgery programs—moved to certify a class of thousands of entities that "purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017 to December 31, 2021," excluding "government entities."  *Id.* at 1 & n.1.  Respondents' proposed class would include hospitals and outpatient surgery facilities varying in size and geographic location, as well as in the nature and scope of their robotic surgery programs.  *See* Petitioner's Class Cert. Opp. (ECF 288), at 4 (filed under administrative seal at ECF 289-1).  The record contains significant evidence that the price of the da Vinci robot is heavily negotiated between Intuitive and its customers and varies significantly across customers.  *Id.* at 4–5.

In their motion, Respondents' claim of antitrust injury rested entirely on a report from their proffered expert, Prof. Einer Elhauge, who opined that virtually

every putative class member paid higher prices for EndoWrists and da Vinci service than they would have paid in the absence of the challenged conduct.  Ex. A at 14.  Prof. Elhauge did *not* model the prices Intuitive would have charged for the other components of the *package* in the absence of the challenged restraints—including the price of the alleged "tying" product, da Vinci robots.  *Id.* at 14; *see also* ECF 288 at 9–10.  To the contrary, Prof. Elhauge testified that robot prices were "irrelevant" to his opinions in this case.  ECF 288 at 13.  Respondents thus did not offer any evidence—much less common, class-wide evidence—on the *total* price for the package that any customer would have paid in the but-for world.

Petitioners opposed class certification on the ground that, among other things, the putative class failed the Rule 23(b)(3) predominance requirement because Respondents failed to show that common questions on antitrust impact predominated over individualized inquiries.  In particular, Petitioners argued that Respondents made no effort to offer common evidence that would satisfy the controlling standard in *Chicken Delight* for demonstrating antitrust impact in cases alleging tying.  *See* ECF 288 at 8–15.  *Chicken Delight* requires a plaintiff asserting such a claim to assess "the value of both tying and tied products, free from the tying arrangement" to demonstrate antitrust impact.  *See Chicken Delight*, 448 F.2d at 53.  In other words, the plaintiff must demonstrate *net* economic harm, taking into account changes in

price of each component of the package in the absence of the challenged restraint, including a potentially *higher* price for the tying product.  *Id*. at 52–53.

In opposing class certification, Petitioner offered a report from an economist, Dr. James Hughes, who highlighted Prof. Elhauge's failure to consider the impact on robot prices in the but-for world.  *See* ECF 288 6–7, 10.  He pointed out that, since those prices were set through individual negotiations with a widely varying customer base, that impact would need to be assessed on a customer-specific basis in order to determine whether each customer would be better or worse off on a net basis in the but-for world.  *See id.* at 4–6, 10.  He offered examples to illustrate this, using a few simple assumptions, but he did not purport to offer a full analysis of what any particular customer would have actually paid.  *See* Expert Report of James W. Hughes, Ph.D. (ECF 288-5), ¶¶ 93–99 & Tbl. 1.

On reply, Respondents offered a rebuttal report from Prof. Elhauge in which he purported, for the first time, to offer new damages figures on a "package" basis. Rebuttal Report of Prof. Einer Elhauge (ECF 296-4), ¶¶ 89–91 & Tbl. 44.  But, his figures demonstrate that Prof. Elhauge simply maintained the assumption he made throughout the case that there would be no changes *or variation* in robot prices for any class members.  *Id.* ¶ 90 (calculating the average decrease in robot prices for a period Prof. Elhauge viewed as comparable to be less than 1% and applying that average decrease to all robot purchases by all class members during the class period).

He offered no analysis of whether the prices paid by *some* customers in fact increased—either during that historical period or, by analogy, in the but-for world. In short, he *assumed* that the impact on all customers would be the same; he made no effort to back that up with any evidence or analysis based on actual customer experiences.

3. The district court granted class certification.  On antitrust impact, the district court did not follow this Court's instruction in *Chicken Delight* that plaintiffs consider the "value of both tying and tied products, free from the tying arrangement" to demonstrate antitrust impact. *Chicken Delight*, 448 F.2d at 53.  Instead, the district court held that Prof. Elhauge's opinion that "customers would have paid less for both da Vinci service and replacement EndoWrists in the but-for world" satisfied Respondents' burden on injury.  Ex. A at 14.  The district court's discussion of antitrust impact did not require that Respondents address the price of the *robot* in the but-for world, nor the *total* price of the overall da Vinci package.  Instead, the district court faulted *Petitioner* for not offering an analysis to predict what robot prices would have been in the but-for world and not providing calculations of the total price class members would have paid.  *Id.* at 17–18.

## QUESTIONS PRESENTED

1.  Whether interlocutory review is warranted under Rule 23(f) where the district court certified a class based on purported common evidence of supracompetitive

prices for only two (of three) components of the package of goods class members purchase from Petitioner in contravention of *Chicken Delight*'s instruction to consider the total price that customers would have paid in the absence of the challenged restraint for the total package of goods.

2.   Whether interlocutory review is warranted under Rule 23(f) where the district court shifted the burden of proof to Petitioners to prove that members of the class would have suffered no injury in the but-for world rather than requiring Respondents to demonstrate that they possessed common proof of injury, as measured under the applicable legal standard.

## REASONS FOR GRANTING THE PETITION

The Court should review the district court's class certification order. Interlocutory review is appropriate under Rule 23(f) when decisions (i) are "manifestly erroneous"; (ii) create a "death-knell situation" for the defendant based on a "questionable" certification decision; or (iii) present "an unsettled and fundamental issue of law" that is likely to evade appellate review.  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

Here, the district court failed to apply governing precedent on an issue fundamental to whether Rule 23(b)'s predominance requirement was satisfied and flipped the burden on Petitioner to prove that class members were *not* harmed.  If the order stands, this case would proceed improperly as a class action on a basis that

runs contrary to the requirements of Rule 23 and the governing substantive law of this Circuit.

## I. The District Court's Predominance Analysis Disregards Precedent and is Manifestly Erroneous as a Matter of Law.

### A. The District Court Ignored the Correct Legal Test for Assessing Antitrust Impact.

The district court erred by ignoring the precedential framework for ascertaining injury under Respondents' theory of this case. As the Supreme Court has held, class-wide evidence of injury must match the theory of liability. *See Comcast*, 569 U.S. at 35 ("[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'"). In *Chicken Delight*, the Ninth Circuit set forth the standard for establishing antitrust impact in a case like this one based on a "tying" theory—*i.e.*, that the defendant used its alleged market power for a highly desirable product (here, the da Vinci robot) to force customers to purchase other products from it (here, EndoWrists instruments and da Vinci service). *Chicken Delight*, 448 F.2d at 52.

*Chicken Delight* involved a contractual requirement that franchisees purchase equipment, food items, and packaging exclusively from Chicken Delight as a condition of obtaining a license to the Chicken Delight trademark. The district court held that plaintiff established antitrust impact solely by showing that there was a

supracompetitive price on the "tied" equipment, food, and packaging compared to what customers would have paid in a competitive market. *Chicken Delight*, 448 F.2d at 52. This Court reversed, holding that the district court erred as a matter of law in assessing antitrust impact by considering only the asserted supracompetitive price on the tied products without also taking into account what Chicken Delight would have charged for the tying product (the trademark) in the absence of the contractual arrangement. As this Court explained:

> Clayton Act recovery is available only where actual injury has been suffered. The question here is whether the plaintiffs have suffered injury by virtue of the unlawful arrangement to which they were subjected. That arrangement of necessity involved both tying and tied products. To ascertain whether an unlawful arrangement for the sale of products has caused injury to the purchaser, the cost or value of the products involved, free from the unlawful arrangement, must first be ascertained.

*Id.* (internal citations omitted). Although *Chicken Delight* had provided the trademark license free of charge as part of the challenged contractual arrangement, this Court held that it could not be simply assumed that it would have done so in the absence of that arrangement. *See id.*; *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1370 (9th Cir. 1986) ("[I]n order to put the plaintiffs into the position they would have been, absent the illegal tie, the overcharges on the tied items should have been reduced by the amount plaintiffs would have paid for the license in the absence of the unlawful restraint."). The Court thus remanded for

10

a determination "as to the value of both tying and tied products, free from the tying arrangement." *Chicken Delight*, 448 F.2d. at 53.

Thus, it is an error of law to assess antitrust injury in a tying case without considering the totality of the prices a customer would have paid in the absence of the challenged restraint, including a potentially higher price for the tying product. This is because in the but-for world, where the challenged tying restriction does not exist, a defendant might make different choices as to how to price the tying product. *Id.* at 52–53; *see also Metromedia Broad. Corp. v. MGM/UA Ent. Co*., 611 F. Supp. 415, 426 (C.D. Cal. 1985) (applying *Chicken Delight* and stating "[s]imply to show that a noncompetitive price has been paid for the product which is tied is not enough"); Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 358b (5th ed. 2023) ("[A]n increasing number of courts have held that the purchaser has not been injured in fact . . . unless it shows that the combined payments for both tying and tied products exceeds their combined fair market value."). As this Court has recognized, *Chicken Delight* is an application of the general rule that "[a]n antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct." *L.A. Mem'l Coliseum Comm'n*, 791 F.2d at 1367, 1370–74.

Here, the district court certified the class without evidence "as to the value of both tying and tied products, free from the tying arrangement." *Chicken Delight*, 448 F.2d at 53. The district court did not identify any evidence from Respondents regarding pricing for each class member for robots (the tying product) in the but-for world; nor did the district court identify any evidence from Respondents of the total package price each class member would have incurred in the but-for world. Respondents presented no such evidence. Instead, the order's legal analysis of antitrust impact was based entirely on Respondents' expert's opinion that customers would have paid less for EndoWrists and service (the tied products). Ex. A at 14. The district court did not consider whether those lowered prices would have been offset for some customers by higher robot prices.

The district court attempted to sidestep its obligation to apply *Chicken Delight* by characterizing the issue as a "battle of the experts." *Id.* at 16. But the standard enunciated in *Chicken Delight* is a *legal* one not up for debate by the parties' experts. And there was no battle of the experts over the evidence that is germane to the *Chicken Delight* test. Rather, there was simply an absence of evidence from Respondents and their expert, who admitted in his deposition that he viewed an analysis of robot prices in the but-for world as "irrelevant." ECF 288 at 13. But such an analysis was precisely what was required to determine whether a common question of injury predominates over individual questions *under the governing law*.

*See Comcast*, 569 U.S. at 35 (a damages model that "does not even attempt" to serve as evidence of damages attributable to plaintiffs' theory cannot establish common evidence under Rule 23(b)); *Chicken Delight*, 448 F.2d. at 52–53. The district court never explained how Respondents could satisfy the requirements of *Chicken Delight* to show "the value of both tying and tied products, free from the tying arrangement" when Respondents undertook no consideration of the "but for world" pricing of the tying product—the da Vinci robots.

This is not a "no harm no foul" issue. Without any proof of how robot prices would be affected in the but-for world—whether they would change consistently for everyone or (more likely) would vary significantly in ways that left some class members better off and some worse off—Respondents had no way to demonstrate that the net impact on class members would be the same across the board, *i.e.*, that, measured under the applicable legal test, individualized issues of injury would not predominate. District courts in this Circuit that have faithfully applied *Chicken Delight* have found class certification inappropriate where proof of antitrust injury presented individual questions concerning the net economic impact of the tying arrangement on the full package purchased by each customer. *See, e.g.*, *Simon v.*

*AT&T Corp.*, 2001 WL 34135273, at *9 (C.D. Cal. Jan. 26, 2001); *Krehl v. Baskin-Robbins Ice Cream Co*., 78 F.R.D. 108, 121 (C.D. Cal. 1978).[1]

To support its view that Respondent's evidence was sufficient, the district court relied on two cases, *see* Ex. A at 14 (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 670–73 (9th Cir. 2022) (en banc), and *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972)), neither of which addressed the standard applicable to claims like those presented here. *See Comcast*, 569 U.S. at 35 (methodology offered for class certification must match the specific legal theory presented in the case). *Olean* considered common evidence of an overcharge caused by an alleged *price-fixing conspiracy*. It did not involve claims that the defendant had abused monopoly power for one product to increase prices for a different product. And the cited footnote in *Hawaii* discussed Hawaii's claim that was also attributed to an alleged *price fixing conspiracy*; the count on appeal was not even for a class action.

The district court further erred by stating that *Chicken Delight*'s directive is limited to tying cases. Ex. A at 19. This ignores this Court's subsequent holding in a non-tying case that *Chicken Delight* reflects the broader principle that antitrust

---

[1] *See also Kypta v. McDonald's Corp*., 671 F.2d 1282, 1283 n.2, 1285–86 (11th Cir. 1982) (discussing *Chicken Delight* favorably and affirming summary judgment and denial of class certification for failure to show that entire package was noncompetitive in tying case: "*Siegel* … stands for the proposition that injury resulting from a tie-in must be shown by establishing that payments for both the tied and tying products exceeded their combined fair market value.").

plaintiffs asserting any similar type of claim, including exclusive dealing, can only recover for net damages as a result of the alleged conduct. *See L.A. Mem'l Coliseum Comm'n*, 791 F.2d at 1370 (recognizing that *Chicken Delight* was applying the general principle in antitrust cases that "benefits that would not have been received by the plaintiff had there been no violation, or amounts which represent a recovery beyond the scope of the adjudicated antitrust liability, must be offset against the gross relief awarded").

The district court thus committed manifest error when it failed to apply the law of this Circuit for establishing antitrust impact. This Court should grant interlocutory review of the order on this ground alone.

### B. The District Court Erroneously Shifted the Burden to Petitioner to Disprove Class-Wide Antitrust Impact.

Respondents bore the burden of demonstrating that common evidence exists of class-wide antitrust injury consistent with Respondents' theory of harm. *See Comcast*, 569 U.S at 35–36; *Olean*, 31 F.4th at 665 ("[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied."). Rather than holding Respondents to their burden, the district court flipped the burden by faulting Petitioners for not proving that class members would have been better off in the but-for world on a package basis. For example, the order states that Respondents "elicited an admission" from Petitioner's expert that "he performed no analysis to predict what robot prices would have been in the but-for

world absent Intuitive's challenged conduct." *See* Ex. A at 17. But Petitioner's expert had no duty to perform such an analysis—that was Respondents' burden. And Intuitive obtained the same admission from Prof. Elhauge—he did no such analysis because he viewed it as "irrelevant." ECF 288 at 13. It was an error of law for the district court to flip the burden in this way—the burden always remained with Respondents to put forth a viable and legally valid common methodology for establishing antitrust injury.

Three salient points confirm that the district court impermissibly placed the burden of proof on Petitioner.

1. Respondents set forth no methodology demonstrating the prices class members would have paid for da Vinci surgical robots in the but-for world, nor any methodology demonstrating what class members would have paid on a total package basis for EndoWrists, service, and their surgical robots. In fact, in their opening brief, Respondents expressly argued that it was not necessary to consider the price of robots as part of the antitrust impact analysis. ECF 267 at 22.

In so doing, Respondents relied on Prof. Elhauge's assumption that Intuitive would not have changed its robot pricing behavior in the but-for world. ECF 288 at 11. But that is exactly the assumption this Court rejected in *Chicken Delight*. Prof. Elhauge's "analysis" of robot prices involved nothing more than a review of *averages* of actual prices that Intuitive charged for its surgical robots, with no

16

analysis of the substantial variation that existed in the prices individual customers paid. *Id.* at 14. It is this review that the district court cited in its order, concluding that "when controlled for inflation, Intuitive lowered robot prices in the[] relevant [prior] period." Ex. A at 16–17. But this says nothing about what robot pricing would have been in the but-for world—much less whether robot prices in the but-for world would have changed in different ways for different customers when, as Petitioner pointed out in the briefing on the motion, it would have faced a multi-billion-dollar reduction in revenue on the "tied" parts of the package. ECF 288 at 14. Prof. Elhauge, who considered only *average* actual prices, including in his belated offer of "damages" numbers, did not even consider the latter question as it related to real-world historical prices for any particular customer.

In short, Prof. Elhauge assumed the very thing he was tasked with proving: that there was a common methodology for determining whether class members would have paid more for robots and for the total package of goods purchased from Intuitive in the but-for world. He simply assumed—in direct contravention of *Chicken Delight*—that robot pricing could be ignored, and the district court accepted that assumption.

2. The district court then turned to a critique of Petitioner's expert. Petitioner explained in its opposition to class certification that Respondents had committed a critical error under *Chicken Delight* by simply assuming that robot prices would have

17

remained the same in the but-for world. Indeed, this was the precise basis upon which this Court reversed in *Chicken Delight*—it was error for the district court in that case to accept plaintiff's assumption that Chicken Delight would continue charging nothing for its trademark in the but-for world. *See Chicken Delight*, 448 F.2d at 52. Rather than faulting Respondents for this error, the district court criticized Petitioner's expert for not providing a reliable basis to demonstrate the "total price paid by class member hospitals in the but-for world." Ex. A at 17. That criticism was misplaced given Respondents' burden of proof on class certification.

In his report, Dr. Hughes provided a few illustrative examples to show that if Intuitive charged more for da Vinci robots in the but-for world (for example, by reducing real-world discounts), such changes in robot prices could wipe out any claimed damages on EndoWrists and service for certain class members, meaning that those class members would not be better off in the but-for world on a package basis. Contrary to the district court's description, Dr. Hughes was not opining that "Intuitive would have eliminated all robot discounts in the but-for world and charge[] all customers 'list prices.'" Ex. A at 17. He was instead noting the possibility that eliminating discounts for *some* customers would make them net "losers" in the but-for world. And he explained that this issue, which Prof. Elhauge had failed to investigate, would require individualized analyses to determine what each class member would have paid on a package basis in the but-for world.

The point is that in the but-for world, for any given customer, Intuitive could have made the decision to reduce robot discounts by a little bit, or by a lot, or not at all. This decision would have a resulting impact on whether each class member was harmed on a total package basis. Contrary to the district court's order, it was not Dr. Hughes' responsibility to prove up these issues for the class. Rather, these were the questions that Respondents and Prof. Elhauge had to address. *See Comcast*, 569 U.S at 35–36; *Olean*, 31 F.4th at 665. Having failed to do so, Respondents could not demonstrate that common proof of impact existed for the class as a whole.

3. Finally, the district court stated that Petitioner had offered no "economic literature" to support the notion that in a tying arrangement, a decrease in the price of the tied goods would result in a price increase for the tying product. *See* Ex. A at 18. The district court further stated that Petitioner "avoid[ed] naming this 'basic' principle or citing any economic literature in support thereof." *Id.* In fact, Petitioner had pointed to something even more compelling than economic literature on this point: controlling law from this Circuit. And, in any event, Petitioner *had* also pointed the Court to confirmatory economic literature—including from Respondents' own expert.

In its opposition brief, Petitioner cited a book Prof. Elhauge had authored that discussed tying, including how the issue of antitrust injury was addressed in *Chicken Delight*. In that book, Prof. Elhauge stated that "in most cases a premium price on

the tied product *must be accompanied* by a reduction in the price of the tying product."  ECF 288 at 12 (quoting Phillip E. Areeda, Herbert Hovenkamp, & Einer Elhauge, Antitrust Law, Vol. X, 413 (2d ed. 2004) (Bass Decl. Ex. 16, ECF 288-20)) (emphasis added).  As a result, the book goes on to say, *Chicken Delight* "held that the tied buyer is injured in fact only when it is forced to pay above-market prices for the sum of the tying and tied products."  *Id*. (quoting Areeda, Hovenkamp, & Elhauge, Antitrust Law, Vol. X, 414 (2d ed. 2004)).[2]

At the end of its discussion of "economic literature," the district court addressed the so-called "Single Monopoly Profit Theory."  Ex. A at 18.  It is unclear why the district court felt the need to do so given that the court acknowledged that both sides' experts viewed the Single Monopoly Profit Theory as not relevant to the class certification issues in this case.  *Id.*  Nonetheless, it appears that the district court believed that if that theory did not apply, then there would be no basis in economics to conclude that the price of a tying product may increase in the but-for world in the absence of the challenged restraint and that specific customers may be

---

[2] Dr. Hughes' report also presented extensive additional economic literature on this point.  ECF 288-5 ¶¶ 67–76.  The economic theory on which *Chicken Delight* was based was hardly remarkable—it simply recognizes that if a monopolist engages in a tying arrangement, it may choose to trade some of the price it *could* obtain for its monopoly tying product for enhanced prices on the tied products.  But if its ability to obtain those higher prices for the tied products is eliminated, it would logically be expected to revisit what it charges for the tying product—which would be particularly applicable here, where Respondents posited that Intuitive faced a substantial reduction in revenues on the tied products in the but-for world.  As Dr. Hughes pointed out, this premise of *Chicken Delight* is very much in the mainstream of the economic literature.  *Id.*

worse off on a package basis.  But the district court offered no explanation for this conclusion.  *Chicken Delight* provides the controlling legal standard:  one cannot assume that the price of a tying product would remain the same in the absence of the challenged restriction, and for this reason, a plaintiff must present an assessment "as to the value of *both* tying and tied products, free from the tying arrangement." *Chicken Delight*, 448 F.2d at 53 (emphasis added).

In sum, the district court impermissibly shifted the Rule 23 burden of proof in this case to Petitioner, when it was Respondents' burden to demonstrate with common evidence that the class as a whole was injured on a package basis.  This error by the district court provides an additional basis for the Court to grant review.

## CONCLUSION

The petition for permission to appeal should be granted.

April 14, 2025                                            Respectfully submitted,


                                                         */s/ Sonya D. Winner*
                                                         SONYA D. WINNER
                                                         COVINGTON & BURLING LLP
                                                         415 Mission Street, Suite 5400
                                                         San Francisco, CA 94105
                                                         (415) 591-6000

                                                         ASHLEY E. BASS
                                                         ANDREW LAZEROW
                                                         COVINGTON & BURLING LLP
                                                         850 Tenth Street NW
                                                         Washington, DC 20001

(202) 662-6000

KENNETH A. GALLO
PAUL. D. BRACHMAN
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street NW
Washington, DC 20006
(202) 223-7300

WILLIAM B. MICHAEL
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Counsel for Defendant-Petitioner
Intuitive Surgical, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with Fed. R. App. P. 5(c)(1) and Circuit Rule 5-2(b) because it contains 5,198 words, including 0 words manually counted in any visual images, excluding the items exempted by Fed. R. App. P. 32(f) and Circuit Rule 5-2(b).  *See* Circuit Rule 32-3.  The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Dated:  April 14, 2025                    */s/ Sonya D. Winner*
                                          Sonya D. Winner

                                          *Counsel for Defendant-Petitioner*
                                          *Intuitive Surgical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  Pursuant to Federal Rule of Appellate Procedure 25(c), I made service of this petition and accompanying documents via email on the following counsel:

Jeffrey J. Corrigan
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
jcorrigan@srkattorneys.com
jspector@srkattorneys.com

Gary I. Smith, Jr.
Samuel Maida
Jeannine M. Kenney
Reena A. Gambhir
HAUSFELD LLP
gsmith@hausfeld.com
smaida@hausfeld.com
jkenney@hausfeld.com
rgambhir@hausfeld.com

Manuel J. Dominguez
Daniel McCuaig
Christopher J Bateman
COHEN MILSTEIN SELLERS & TOLL PLLC
jdominguez@cohenmilstein.com
dmccuaig@cohenmilstein.com
cbateman@cohenmilstein.com

Michael J. Boni
Joshua D. Snyder (pro hac vice)
John E. Sindoni (pro hac vice)
BONI, ZACK & SNYDER LLC
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com

*Counsel for Plaintiffs-Respondents Larkin Community Hospital, Franciscan, Alliance, Inc., and King County Public Hospital District No. 1 (dba Valley Medical Center)*

*/s/ Sonya D. Winner*
Sonya D. Winner

*Counsel for Defendant-Petitioner Intuitive Surgical, Inc.*

24

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Petitioner and their counsel state that they are aware of the following related case, which alleges similar conduct by Petitioner Intuitive Surgical, Inc.:

*Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*, 9th Cir. Case No. 25-1372.