# ATTACHMENT 4

```
 1                UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4
 5    IN RE: DA VINCI SURGICAL        )
 6    ROBOT ANTITRUST LITIGATION      )
                                      )
 7    THIS DOCUMENT RELATES TO ALL    )
 8    CASES                           )
                                      )
 9    SURGICAL INSTRUMENT SERVICE     ) Case No.
10    COMPANY, INC.,                  ) 3:21-cv-03496-VC
11              Plaintiff,            )
              v.                      )
12    INTUITIVE SURGICAL, INC.,       )
13              Defendants.           )
      _____ )
14
15
16        REMOTE VIDEO RECORDED DEPOSITION OF
17                   JUDITH SCHIMMEL
18            Thursday, September 22, 2022
19
20
21    REPORTED BY:
22    RENEE HARRIS, CSR, CCR, RPR
23    JOB NO. 5490761
24
25    PAGES:   1 - 159
```

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4
 5   IN RE: DA VINCI SURGICAL       )
 6   ROBOT ANTITRUST LITIGATION     )
 7                                  )
 8   THIS DOCUMENT RELATES TO ALL   )
 9   CASES                          )
10                                  )
11   SURGICAL INSTRUMENT SERVICE    ) Case No.
12   COMPANY, INC.,                 ) 3:21-cv-03496-VC
13            Plaintiff,            )
14        v.                        )
15   INTUITIVE SURGICAL, INC.,      )
16            Defendants.           )
17   _____)
18
19        Remote Videotaped Deposition of JUDITH
20   SCHIMMEL, the witness herein, at 10:08 a.m. EDT,
21   on Thursday, September 22, 2022, before Renee
22   Harris, California Certified Shorthand Reporter
23   No. 14168, New Jersey Certified Court Reporter No.
24   30XI00241200 and Registered Professional Reporter.
25
```

Page 2

```
 1    APPEARANCES OF COUNSEL:
 2
 3    CO-LEAD COUNSEL FOR THE PROPOSED CLASS:
 4         COHEN MILSTEIN SELLERS & TOLL PLLC
 5         BY:  MANUEL J. DOMINGUEZ, ESQ.
 6         11780 U.S. Highway One, Suite N500
 7         Palm Beach Gardens, FL 33408
 8         (561) 515-2604
 9         jdominguez@cohenmilstein.com
10      -AND-
11         BY:  ZACH GLUBIAK, ESQ.
12         1100 New York Ave., Suite 500
13         Washington, DC 20005
14         (202) 408-4600
15         zglubiak@cohenmilstein.com
16
17    FOR DEFENDANT DEFENDANT INTUITIVE SURGICAL, INC.:
18         COVINGTON & BURLING LLP
19         BY:  ISAAC D. CHAPUT, ESQ.
20              MARIAM AZHAR, ESQ.
21         415 Mission Street, Suite 5400
22         San Francisco, California 94105-2533
23         (415) 591-6000
24         ichaput@cov.com
25         mazhar@cov.com
```

Page 3

```
 1    APPEARANCES:  (CONTINUED)
 2
 3          HALEY GULLIANO LLP
 4          BY:  GREGORY LUNDELL, ESQ.
 5          111 North Market Street, Suite 900
 6          San Jose, California 95114
 7          (669) 213-1050
 8          greg.lundell@hglaw.com
 9
10    Also Present:
11          Bobby Amick, ESQ., In-House Counsel,
12             Hospital Plaintiffs
13          Scott Slater, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

1           agreement.
2        BY MR. CHAPUT:
3           Q.   Okay.  So if, you know, for example,
4    tomorrow, Franciscan were to request a transaction
5    agreement for a new robot purchase, you would          12:37:14
6    agree -- you would review that transaction
7    agreement; correct?
8           A.   Correct.
9           Q.   Did you review transaction agreements
10   between 2020 and March of 2021 when the Dyer          12:37:28
11   agreement was entered into?
12          A.   I have only reviewed this particular
13   document.  I have not reviewed any previous
14   transaction documents.
15          Q.   You can set that document aside.  Thank   12:37:42
16   you.
17               So we had talked some about the
18   procurement process earlier, and I'd just like to
19   briefly understand a little bit more about that
20   process.                                              12:38:09
21               So could you please walk me through
22   before Franciscan had the master agreement, what
23   would the procurement process be for a hospital
24   that wanted to purchase a da Vinci robot?
25          A.   So speaking from my director days, we    12:38:29

Page 103

```
1    would identify a need for procuring either a robot
2    or a second robot.  We would have to have a
3    request for that, and have documentation for
4    reasoning, for needing a robot or a second robot;
5    that, in turn, requests would be taken forward and      12:38:53
6    our finance department would assist in developing
7    a return on investment and a portfolio pro forma
8    so that we could make the presentation to our
9    corporate senior leaders for the funding.
10          And then if that funding based on that           12:39:23
11   request was approved, then the facility was
12   approved for purchase.
13       Q.  So at the first step, identifying the
14   need for a robot, who would identify that need?
15       A.  So from my previous experience, it would       12:39:53
16   be myself, Intuitive, physicians looking at our
17   availability of time and the ability to schedule
18   procedures.
19       Q.  Would you also look at overall case
20   volume of surgeries that were being performed --       12:40:28
21   let me rephrase this question.
22          Would you also look at the overall volume
23   of the procedures that were being performed,
24   whether a laparoscopic or open modality are also
25   robotic modality?                                      12:40:53
```

Page 104

1        A.    Not in identifying the need.
2        Q.    And why wouldn't you look at that in
3    identifying the need?
4        A.    Because that's not -- that wasn't based
5    on any criteria.  You would not look at that in                   12:41:06
6    identifying the need for a second robot; that
7    would be part of a pro forma.
8        Q.    Okay.  So you -- you would consider that
9    in the return on investment analysis; is that
10   correct?                                                          12:41:25
11       A.    Correct.
12       Q.    Okay.  And so when you -- when you
13   document the reasons for the request, is that the
14   same as that need that you were just describing of
15   looking at the availability of robot time and the                 12:41:40
16   ability to schedule robotic surgeries?
17       A.    As well as a physician request.
18       Q.    So then you mentioned that the request
19   goes forward to the finance department who helps
20   develop an ROI portfolio.                                         12:42:08
21             What's included in the ROI portfolio?
22       A.    Typically cost of equipment, all service
23   costs, disposable costs, instrumentation costs.
24   So the entire start-up costs.
25             And then volume, projected volume,                      12:42:36

Page 105

```
 1    reimbursement, and that carries out to five years,
 2    usually.
 3         Q.   And in order to get the request approved
 4    by corporate leadership, would this pro forma need
 5    to reflect a positive ROI?                              12:43:10
 6         A.   Doesn't always reflect a positive ROI.
 7    Depending on the number of years, if it needs to
 8    go out five more years or seven or ten, it needs
 9    to reflect the return on investment and what that
10    would look like.                                        12:43:36
11         Q.   So you said it doesn't always reflect a
12    positive ROI.  Are you -- do you recall specific
13    instances where a da Vinci robot purchase did not
14    reflect a positive ROI in the pro forma, and
15    corporate senior leadership nonetheless approved        12:43:57
16    the request?
17         A.   I can't speak to anyone other than the
18    time frame when I brought forth a request to add a
19    da Vinci robot in our Lafayette campus.
20              So I can't answer that.  I don't know.        12:44:14
21         Q.   So I just want to make sure that I'm
22    understanding.
23              Are you saying that you only --
24    Franciscan only purchased one da Vinci robot
25    during your tenure as surgical director at              12:44:29
```

```
1    Lafayette?
2        A.  We purchased two:  The Si, and then we
3    added an Xi while I was there several years later.
4        Q.  Okay.  And for both of those purchases,
5    did you follow the process, the procurement              12:44:50
6    process that you explained to me a few minutes
7    ago?
8        A.  It would have followed the procurement
9    process.  I was not as involved as I was with the
10   second one.                                              12:45:02
11       Q.  Just so we're clear:  You were not
12   involved in the first purchase as you were with
13   the second; is that right?
14       A.  I didn't provide as much information on
15   the first request as the second request.                 12:45:14
16       Q.  And for those two requests, did the ROI
17   analysis that the finance department put together
18   reflect a positive ROI?
19       A.  I don't recall seeing the first pro
20   forma.                                                   12:45:39
21           The second pro forma, I don't remember.
22   I can't recall if it was positive or negative.  I
23   don't -- I can't remember.  I would have to look
24   at it.
25       Q.  Do you expect that the corporate senior          12:46:09
```

Page 107

```
 1    STATE OF CALIFORNIA    )
                             (    Ss.
 2    COUNTY OF LOS ANGELES  )
 3
 4         I, RENEE HARRIS, do hereby certify that I
 5    am a licensed Certified Shorthand Reporter, duly
 6    qualified and certified as such by the State of
 7    California;
 8       That prior to being examined, the witness named
 9    in the foregoing deposition was by me duly sworn
10    to testify to tell the truth, the whole truth, and
11    nothing but the truth;
12       That the said deposition was by me recorded
13    stenographically;
14       And the foregoing pages constitute a full,
15    true, complete and correct record of the testimony
      given by the said witness;
16         That I am a disinterested person, not
17    being in any way interested in the outcome of said
18    action, or connected with, nor related to any of
19    the parties in said action, or to their respective
20    counsel, in any manner whatsoever.
21         Dated: October 7, 2022
22
23         [signature]
24         Renee Harris, CSR, CCR, RPR
           CA CSR No. 14168,
25         NJ CRR No. 30XI00241200; RPR
```

Page 157