# ATTACHMENT 7

```
 1                UNITED STATES DISTRICT COURT
 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                    SAN FRANCISCO DIVISION
 4
     IN RE: DA VINCI SURGICAL          )
 5   ROBOT ANTITRUST LITIGATION        ) Case No.:
     _____    ) 3:21-cv-03825-VC
 6   THIS DOCUMENT RELATES TO:         )
     ALL CASES                         )
 7   _____    )
     SURGICAL INSTRUMENT SERVICE       )
 8   COMPANY, INC.,                    )
                                       )
 9              Plaintiff,             )
                                       )
10         vs.                         )
                                       )
11   INTUITIVE SURGICAL, INC.,         )
                                       )
12              Defendant.             )
     _____    )
13
14
15                    DEPOSITION OF:
16                     JOHN WAGNER
17             TUESDAY, OCTOBER 11, 2022
18           9:05 a.m. Pacific Daylight Time
19
20   REPORTED BY:
21   Vickie Blair
22   CSR No. 8940, RPR-CRR
23   JOB NO. 5506653
24
25   PAGES 1 - 153
```

Page 1

```
 1    Deposition of JOHN WAGNER, the witness, taken on behalf
 2    of the Defendant, on Tuesday, October 11, 2022,
 3    9:05 a.m. Pacific Daylight Time, before VICKIE BLAIR,
 4    CSR No. 8940, RPR-CRR.
 5
 6    APPEARANCES OF COUNSEL VIA ZOOM:
 7
 8    FOR THE PLAINTIFF:
 9            COHEN MILSTEIN SELLERS & TOLL
              BY MANUEL J. DOMINGUEZ, Partner
10            11780 U.S. Highway One
              Suite 500
11            Palm Beach Gardens, Florida  33408
              877 515 7955
12            561 515 1401
              jdominguez@cohenmilstein.com
13
      FOR PLAINTIFF/COUNTER-DEFENDANT SURGICAL INSTRUMENT
14    SERVICE CO. INC.,:
15            HALEY GUILIANO LLP
              BY DONNY K. SAMPORNA, Associate
16            111 North Market Street
              Suite 900
17            San Jose, California  95113
              +1 669 213 1080
18            donny.samporna@hglaw.com
19    FOR DEFENDANT INTUITIVE SURGICAL, INC.:
20            COVINGTON & BURLING LLP
              BY CORTLIN H. LANNIN, Partner
21            415 Mission Street
              Suite 5400
22            San Francisco, California  94105-2533
              +1 415 591 7078
23            clannin@cov.com
24
25
```

```
 1    APPEARANCES OF COUNSEL VIA ZOOM:
 2    FOR DEFENDANT INTUITIVE SURGICAL, INC.:  (Continued)
 3           COVINGTON & BURLING LLP
              BY PAUL STRAUCH
 4            One CityCenter
              850 Tenth Street, NW
 5            Washington, D.C.  20001-4956
              +1 202 662 5033
 6            pstrauch@cov.com
 7    ALSO PRESENT:
 8            RAMON A. PERAZA, Videographer
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

| | | |
|---|---|---|
| 1 | Q    Do you recall how an even more substantial | 11:47:55 |
| 2 | discount was negotiated in the interim? | 11:48:00 |
| 3 | A    I don't recall, no. | 11:48:04 |
| 4 | Q    You weren't involved in asking Intuitive | 11:48:04 |
| 5 | for an additional discount on top of the previous one? | 11:48:08 |
| 6 | A    Me personally? | 11:48:11 |
| 7 | Q    Yes. | 11:48:21 |
| 8 | A    Is that what you're asking? | 11:48:21 |
| 9 | Q    You personally, yes. | 11:48:23 |
| 10 | A    I don't recall if I was involved. | 11:48:25 |
| 11 | Q    Okay.  This email has a number of | 11:48:26 |
| 12 | attachments, but we're only going to look at a few of | 11:48:37 |
| 13 | them.  Let's start with page three of the PDF.  So it | 11:48:40 |
| 14 | ends on 15995. | 11:48:46 |
| 15 | A    Okay. | 11:48:56 |
| 16 | Q    This email from John Tull at Intuitive to | 11:48:56 |
| 17 | several folks at Valley includes, in the middle there, | 11:48:59 |
| 18 | a listing of the discounts that have been offered at | 11:49:04 |
| 19 | this point. | 11:49:07 |
| 20 | Do you see that? | 11:49:08 |
| 21 | A    Yes. | 11:49:08 |
| 22 | Q    So, at this point, the discount on the | 11:49:10 |
| 23 | table was $249,000 if both Valley and NW moved forward | 11:49:14 |
| 24 | with the robot; is that fair? | 11:49:21 |
| 25 | A    That's what's written here. | 11:49:25 |

| | | | |
|---|---|---|---|
| 1 | Q | It notes, a little bit further down, | 11:49:30 |
| 2 | Mr. Tull wrote (as read): | | 11:49:34 |
| 3 | | Please note, Scott and I are seeking | 11:49:35 |
| 4 | | approval for the pricing protection for an | 11:49:38 |
| 5 | | additional Xi purchase in July 2019. | 11:49:40 |
| 6 | | Do you see that? | 11:49:43 |
| 7 | A | Yes. | 11:49:43 |
| 8 | Q | Do you understand what he meant by that? | 11:49:43 |
| 9 | A | I could speculate, but I-- | 11:49:49 |
| 10 | Q | What's your -- your understanding, best | 11:49:51 |
| 11 | understanding of that? | | 11:49:53 |
| 12 | A | I presume he's referring to if we were to | 11:49:54 |
| 13 | purchase another Xi robot, that there would be some | | 11:49:59 |
| 14 | protection of pricing should we choose to purchase | | 11:50:05 |
| 15 | that. | | 11:50:09 |
| 16 | Q | Okay.  So, if you look at -- we're going | 11:50:09 |
| 17 | to skip forward to -- the attachments were provided a | | 11:50:16 |
| 18 | bit out of order in this one, but if you skip to page | | 11:50:23 |
| 19 | 51 of the PDF, it will end on 160- -- 16043 on the | | 11:50:27 |
| 20 | bottom. | | 11:50:37 |
| 21 | A | 16043? | 11:50:56 |
| 22 | Q | Yes. | 11:50:58 |
| 23 | A | Yes. | 11:50:59 |
| 24 | Q | This is a quote dated August 13, 2018. | 11:50:59 |
| 25 | | Do you see that? | 11:51:07 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A    Yes. | 11:51:07 |
| 2 | Q    And this quote reflects the $200,000 | 11:51:07 |
| 3 | discount on the purchase of an Xi robot. | 11:51:12 |
| 4 |      Do you see that? | 11:51:16 |
| 5 | A    Yes. | 11:51:16 |
| 6 | Q    That's an increase from the earlier quotes | 11:51:16 |
| 7 | we saw; right? | 11:51:21 |
| 8 | A    Yes. | 11:51:22 |
| 9 | Q    It includes the same $25,000 discount on | 11:51:25 |
| 10 | the table; correct? | 11:51:29 |
| 11 | A    Are you referring to the -- the section | 11:51:31 |
| 12 | below? | 11:51:41 |
| 13 | Q    Yes. | 11:51:41 |
| 14 | A    Yes. | 11:51:42 |
| 15 | Q    And the proctoring and customer programs, | 11:51:42 |
| 16 | again, we talked about this on the last quote, those | 11:51:45 |
| 17 | are -- will be provided free; is that right? | 11:51:47 |
| 18 | A    On this quote it does, yes. | 11:51:54 |
| 19 | Q    And as with the previous quotes, the | 11:51:56 |
| 20 | service -- the quoted service fee is free for the first | 11:51:58 |
| 21 | year and then $154,000 a year for the next four years; | 11:52:03 |
| 22 | is that right? | 11:52:10 |
| 23 | A    Yes. | 11:52:10 |
| 24 | Q    And then, under "Additional Information," | 11:52:10 |
| 25 | it reads (as read): | 11:52:13 |

|    |   |                                                              |          |
|----|---|--------------------------------------------------------------|----------|
| 1  |   |         This quote will have a $250,000 Si                   | 11:52:14 |
| 2  |   |     trade value lock for 12 months.                          | 11:52:18 |
| 3  |   |     Do you see that?                                         | 11:52:21 |
| 4  | A | Yes.                                                         | 11:52:21 |
| 5  | Q | So, consistent with what you said earlier,                   | 11:52:21 |
| 6  |   | Mr. Wagner, does that mean that if Valley went to trade      | 11:52:26 |
| 7  |   | in its Si within the next 12 months, they would receive      | 11:52:30 |
| 8  |   | a $250,000 discount?                                         | 11:52:34 |
| 9  | A | I believe that's what this states.                           | 11:52:37 |
| 10 | Q | All right.  If you look at page five of                      | 11:52:39 |
| 11 |   | the PDF, so near the top, the digits in the bottom will      | 11:53:03 |
| 12 |   | be 15997 --                                                  | 11:53:13 |
| 13 | A | Okay.                                                        | 11:53:13 |
| 14 | Q | -- this email was attached or included in                    | 11:53:18 |
| 15 |   | the first email we looked at, it's from, again, John         | 11:53:20 |
| 16 |   | Tull to Lindy and Jodi dated August 20th, he writes (as      | 11:53:23 |
| 17 |   | read):                                                       | 11:53:23 |
| 18 |   |         Per our discussion Friday morning,                   | 11:53:28 |
| 19 |   |     attached is the SLSA draft for Valley's                  | 11:53:30 |
| 20 |   |     review and processing.                                   | 11:53:32 |
| 21 |   |     Do you understand what the SLSA was?                     | 11:53:36 |
| 22 | A | No.                                                          | 11:53:42 |
| 23 | Q | Mr. Tull writes (as read):                                   | 11:53:43 |
| 24 |   |         As a reminder, a fully executed SLSA                 | 11:53:53 |
| 25 |   |     is required to acquire a da Vinci system.                | 11:53:56 |

Page 107

| | | |
|---|---|---|
| 1 | Mr. Wagner, to the contract that was attached, so it | 12:10:49 |
| 2 | will be -- begin on page four of the PDF, it ends in | 12:10:54 |
| 3 | 2062 -- I'm sorry, 20652 on the bottom right. | 12:10:58 |
| 4 | Do you see that? | 12:11:05 |
| 5 | A    Yes. | 12:11:05 |
| 6 | Q    This is the sales, license, and service | 12:11:05 |
| 7 | agreement for the purchase of the Xi robot; is that | 12:11:09 |
| 8 | right? | 12:11:17 |
| 9 | A    Yes. | 12:11:17 |
| 10 | Q    And, if you turn to page -- what is page | 12:11:17 |
| 11 | eight of the contract, ending in 20659, you should see | 12:11:23 |
| 12 | Jeannine Grinnell's signature. | 12:11:41 |
| 13 | Do you see that? | 12:11:45 |
| 14 | A    Yes. | 12:11:45 |
| 15 | Q    This is consistent with what you testified | 12:11:45 |
| 16 | earlier, that it was ultimately Ms. Grinnell's decision | 12:11:49 |
| 17 | to purchase the Xi robot? | 12:11:52 |
| 18 | A    She is the final step in authorizing the | 12:11:55 |
| 19 | purchase. | 12:11:59 |
| 20 | Q    If you look at two pages after that one, | 12:12:02 |
| 21 | ending in 20661, it's a continuation of what's labeled | 12:12:10 |
| 22 | Exhibit A. | 12:12:15 |
| 23 | Do you see that? | 12:12:17 |
| 24 | A    Yes. | 12:12:17 |
| 25 | Q    So "Pricing," it indicates the price for | 12:12:18 |

Page 118

```
 1    the Xi robot was $1.7 million.                          12:12:25
 2             Do you see that?                               12:12:34
 3         A   Yes.                                           12:12:34
 4         Q   So, at this point, from the initial quote      12:12:34
 5    that you had received earlier in 2018 to now, the price 12:12:41
 6    had dropped by $200,000; is that right?                 12:12:45
 7         A   I believe so.                                  12:12:51
 8         Q   If you look at the "Annual Service Fees"       12:12:52
 9    column of that table, it indicates the first year of    12:12:58
10    initial term was included in the system purchase price. 12:13:04
11             Do you see that?                               12:13:17
12         A   Yes.                                           12:13:17
13         Q   And then, for subsequent years, two to         12:13:17
14    five, the price for the service plan was $149,000 a     12:13:22
15    year.                                                   12:13:26
16             Do you see that?                               12:13:27
17         A   Yes.                                           12:13:27
18         Q   The -- the last quote we looked at, which      12:13:27
19    was Defendant's Exhibit 56, had indicated or quoted a   12:13:34
20    price of $154,000 for service in years two through      12:13:39
21    five.                                                   12:13:44
22             Do you have any recollection of how the        12:13:45
23    price was reduced another $5,000 a year since that last 12:13:47
24    quote?                                                  12:13:52
25         A   I don't recall.                                12:13:53
```

Page 119

| | | |
|---|---|---|
| 1 | Q     Okay.  I'll represent to you we looked and | 12:13:54 |
| 2 | couldn't find a record of it, so I have no document to | 12:13:58 |
| 3 | show you. | 12:14:01 |
| 4 | And someone, presumably, at some point, | 12:14:02 |
| 5 | asked for an additional discount on the service fee? | 12:14:04 |
| 6 | A     I -- I -- I don't know if that occurred or | 12:14:07 |
| 7 | not. | 12:14:16 |
| 8 | Q     But we can agree that from the last quote | 12:14:17 |
| 9 | to this one, the price had dropped by $5,000 a year for | 12:14:21 |
| 10 | service in those years? | 12:14:27 |
| 11 | A     The price here listed is different than | 12:14:30 |
| 12 | the previous quote, yes. | 12:14:35 |
| 13 | Q     Is it possible that the information ECRI | 12:14:37 |
| 14 | conveyed that we discussed earlier, that some | 12:14:39 |
| 15 | facilities had negotiated a discount in the service | 12:14:45 |
| 16 | fee, prompted Valley to ask for a discount on the | 12:14:48 |
| 17 | service fee? | 12:14:50 |
| 18 | A     It's possible. | 12:14:57 |
| 19 | Q     Do you remember one way or the other | 12:14:59 |
| 20 | whether that happened? | 12:15:01 |
| 21 | A     I don't. | 12:15:04 |
| 22 | Q     Okay.  You can close that document. | 12:15:04 |
| 23 | But you said earlier, Mr. Wagner, you were | 12:15:26 |
| 24 | pleased with the job that your team did in procuring | 12:15:29 |
| 25 | this Xi robot in 2018? | 12:15:32 |

Page 120

```
 1   STATE OF CALIFORNIA    )
 2                          )  ss.
 3   COUNTY OF LOS ANGELES  )
 4              I, Vickie Blair, CSR No. 8940, RPR-CRR, in
 5   and for the State of California, do hereby certify:
 6              That, prior to being examined, the witness
 7   named in the foregoing deposition was by me duly sworn
 8   to testify as to the truth, the whole truth, and
 9   nothing but the truth;
10              That said deposition was taken before me
11   at the time and place therein set forth, and was taken
12   down by me stenographically and thereafter transcribed
13   via computer-aided transcription under my direction and
14   is a true record of the testimony given;
15              I further certify I am neither counsel
16   for, nor related to, any party to said action, nor
17   interested in the outcome thereof;
18              IN WITNESS WHEREOF, I have hereto
19   subscribed my name this 20th day of October, 2022.
20
21
22
23
24
25              Vickie Blair, CSR No. 8940, RPR-CRR
```

Page 150