# ATTACHMENT 9

**From:** "ssosag@larkinhospital.com" <ssosag@larkinhospital.com>
**To:** "Jody.Szatkiewicz@intusurg.com" <Jody.Szatkiewicz@intusurg.com>
**Cc:** <mearly@larkinhospital.com>, <afessenden@larkinhospital.com>
**Subject:** contract da Vinci
**Date:** Fri, 09 Jun 2017 18:54:20 -0500
**Importance:** Normal
**Attachments:** 2017_06_09_19_53_28.pdf
**Inline-Images:** image001.jpg

---

**Sandy Sosa-Guerrero, FACHE, RN, BSN, MBA-HA**
Chief Executive Office

LARKIN COMMUNITY HOSPITAL

A Teaching Hospital
Administrative Offices
5996 SW 70th Street. 5th Floor.
South Miami, FL 33143
Main: 305.284.7700
Fax: 305.284.7545
Email: ssosag@larkinhospital.com
Website: www.larkinhospital.com

| Facebook | Twitter | LinkedIn | Web | Map | Email |

**I**ntegrity **C**ustomerFocused **A**ccountability **R**espect **E**xcellence

DEFENDANT'S EXHIBIT 32 VO

CONFIDENTIAL                                    LARKIN-00009370

Contract Number: MA-168-2017 (CLM 404723)

## LEASE AGREEMENT

This Lease Agreement ("Lease Agreement") is dated June 9, 2017 and is made and entered into between **Intuitive Surgical, Inc.**, a Delaware corporation, located at 1020 Kifer Road, Sunnyvale, California 94086 ("**Lessor**"); and

**Lessee:** Larkin Community Hospital
**Registered Address:** ~~1475 W 49th Place, Hialeah, FL 33012~~ 7031 SW 62ND AVE SOUTH MIAMI FloRida 33143 (IC)

Lessor and Lessee are contemporaneously entering into a Use, License & Service Agreement, dated June 9, 2017.

The Lessor and the Lessee are referred to as the "Parties" collectively, or "Party" individually.

| Qty. | Included in Periodical Lease Payment | Not included in Periodical Lease Payment | Equipment Description | Price |
|---|---|---|---|---|
| 1 | ☒ | ☐ | System Type: da Vinci® Si® Certified Pre-owned Firefly® Fluorescence System: (single console) | $850,000 |
| 1 | ☒ | ☐ | Service during the first twelve months of the Lease Period | Included |
| n/a | ☐ | ☒ | Service beginning on the thirteenth month of the Lease Period, or if Lessee purchases the Equipment; see Special Conditions | $149,000 / per year* |
| 1 | ☒ | ☐ | System delivery fee | $10,000 |
| 1 | ☒ | ☐ | Other: da Vinci® Si® Vessel Sealer and Stapler Vision Cart Upgrade | $16,500 |

*Intuitive will credit Lessee a pro-rata amount of the annual Service fee Lessee has paid to Intuitive for the leased System based on the number of months remaining in the current Service year from the date the leased System is de-installed. The credit will be applied to Lessee's account with Intuitive within thirty (30) days from the date the leased System is de-installed.

| Lease Conditions | |
|---|---|
| **Lease Period** | 60 Months. The Lease Period may be extended in accordance with the Lease Agreement. |
| **Commencement Date** | This Lease Agreement will commence on the date of Acceptance specified in the Acceptance Document. |
| **Interest Rate** | 3% |
| **Periodical Lease Payments** | Months 1-12 $8,052.80 per month<br>Months 13-60 $16,105.60 per month<br><br>Customer agrees and acknowledges payments due herein shall not be excused by any contingencies including, but not limited to, Lessee's internal practices, policies, or any state approvals. | No. of Periodical Lease Payments: 60 (subject to extension of Lease Period) | ☒ Monthly payments |
| | ☐ The first Periodical Lease Payment is due on Commencement Date. Thereafter, each subsequent Periodical Lease Payment is due on the corresponding day of each month, as applicable, of the Lease Period (payments in advance).<br>☒ The first Periodical Lease Payment is due one month after the Commencement Date. Thereafter, each subsequent payment is due on the corresponding day of each month of the Lease Period (payments in arrears). | | |
| **Deposit** | $0 | The Deposit, if any, is due on the Commencement Date | |
| **Balloon Payment** | n/a | The Balloon Payment, if any, is due on the last day of the Lease Period. | |
| **End of Lease Options** | ☐ End of Lease option A applies (see 13.1 of Standard Terms and Conditions)<br>☒ End of Lease option B applies (see 13.2 of Standard Terms and Conditions)<br>☐ See Special Conditions below | | |
| **Funding Amount** | Original Equipment Cost (OEC): $876,500 | Down-Payment from Lessee to Lessor: $0 | Funding Amount: $876,500 |

| Direct Debit |
|---|
| Notwithstanding the agreed due date of the periodical Lease Payments, the Lessor will be authorized to deduct the Periodical Lease Payments from the Lessee's bank account on the following dates: (i) on the fifth (5th) calendar day of the month, if the Commencement Date is before the eleventh (11th) calendar day of the month; (ii) on the fifteenth (15th) calendar day of the month, if the Commencement Date is before the twenty-first (21st) calendar day of the month; or (iii) on the twenty-fifth (25th) calendar day, if the Commencement Date is between the twenty-first (21st) calendar day and the end of the month. The Lessee is required to have sufficient funds in its account during the period in which a withdrawal is scheduled and will notify the Lessor in case of any changes of its accounts details. The Lessee hereby authorizes the Lessor, to collect all payments to be made by the Lessee by direct debit from the following bank account: |

| Bank : | | Bank Account no.: | |
|---|---|---|---|
| Name of signatory: | | Must be signed by duly authorized representative of Lessee | |

| Special Conditions |
|---|
| |

All amounts are denominated in USD and net of taxes, any applicable taxes will be for the account of the Lessee. Where the terms of this Lease Agreement are inconsistent with the Special Conditions above, if any, the Special Conditions prevail. The Standard Terms and Conditions of Leasing attached hereto are hereby incorporated to and form an integral part of this Agreement. All references to this Agreement will include the terms and conditions set out herein, in the Annexes and the Standard Terms and Conditions of Leasing. By signing this Lease Agreement, Lessee agrees to be bound by and undertakes to comply with all the terms and conditions set out in this Lease Agreement.

**BOTH PARTIES HAVE READ, UNDERSTOOD, AND AGREED TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE EFFECTIVE DATE. IF THIS AGREEMENT IS NOT SIGNED BY BOTH PARTIES AND RETURNED TO INTUITIVE ON OR BEFORE JUNE 15, 2017, THE TERMS WILL BE SUBJECT TO CHANGE.**

Lessee name: Larkin Community Hospital
MA-168-2017 (CLM 404723)
Rev date: 09 June 2017

Page 1 of 5

CONFIDENTIAL

LARKIN-00009371

ACCEPTED BY: INTUITIVE SURGICAL, INC.

Signature: _MGiuffrida_ (Jun 9, 2017)

Email: marc.giuffrida@intusurg.com

Title: Director, Contract Administration

Company: Intuitive Surgical, Inc

ACCEPTED BY: SIGNED FOR AND ON BEHALF OF LESSEE

By: _[signature]_

Name: MARK EARLY

Title: CFO

Date: 6/9/17

CP _CP_   NS _RQ_   BK _BK_

### Standard Terms and Conditions of Leasing

#### 1. DEFINITIONS

Terms not herein defined will have the meanings set out in the Lease Agreement, unless the context otherwise requires.

**"Acceptance"** means the Equipment is deemed accepted by Lessee upon delivery to Lessee's designated location as evidenced by Lessee's execution of an acceptance letter, a form of which is attached hereto as Annex 1.

**"Lease Agreement"** means the agreement between the Lessor and the Lessee for the lease of the Equipment from the Lessor to the Lessee, including the Annexes thereto, incorporating these Standard Terms and Conditions.

**"Event of Default"** means an event specified under Clause 14 of these Terms and Conditions.

**"Equipment"** means the equipment specified in the Lease Agreement and any part thereof including, without limitation, all component parts and all software.

**"Lease Payment"** means the payment of rent for the lease of the Equipment, owed by the Lessee to the Lessor under the Lease Agreement, including but not limited to the periodical installments and the Balloon Payment.

**"Obligors"** mean the Lessee, and the Guarantor, if any, and **"Obligor"** means each or any of the Obligors as the context requires.

**"Termination Sum"** means the aggregate of:

(i) all Lease Payment due and payable under the Lease Agreement;

(ii) an amount equal to one-hundred-ten per cent (110%) of all Lease Payments yet to fall due under the Lease Agreement discounted by the contract interest rate inherent in the Lease Agreement; and

(iii) all other sums due and payable under the Lease Agreement (including, without limitation, Default Interest, costs and expenses related to or connected with the termination of the Lease Agreement and any sum recoverable from the Lessee).

**"Total Loss"** includes any actual, constructive, or agreed total loss, theft, damage beyond repair, taking back of the Equipment (or any part thereof) by the owner of the Equipment pursuant to a right incorporated in the Lease Agreement for the sale of the Equipment and any seizure or confiscation of the Equipment.

#### 2. RENTAL, SELECTION AND DELIVERY OF EQUIPMENT

(a) The Lessor agrees to rent to the Lessee and the Lessee agrees to rent from the Lessor the Equipment on the terms and conditions as set out in the Lease Agreement.

(b) The Lessee has chosen the Equipment and agreed with the Lessor upon the terms of delivery of the Equipment.

(c) Upon delivery, the Lessee will immediately inspect the Equipment, ensure that the Equipment is in good and working order and condition, and issue and deliver the duly signed and dated Acceptance Letter set out in Annex 1 of the Lease Agreement to the Lessor.

#### 3. LEASE AND OTHER PAYMENTS

(a) The Lessee will pay (i) to the Lessor the Lease Payment and all other payments on the dates and in the manner specified in the Lease Agreement, and (ii) all taxes, rates, registration charges or other outgoings in respect of the Equipment.

(b) If the Lessee fails to pay any amount payable by it under the Lease Agreement on its due date, it will pay to the Lessor interest on the overdue amount ("Default Interest") from and excluding such due date up to and including the date of actual payment. Default Interest will be twelve per cent (12%) per annum, or the maximum rate allowed by the applicable law, whichever is lower, and will be calculated on a daily basis. Default Interest not paid when due will be compounded and Default Interest will be payable thereon. Default Interest will be immediately payable by the Lessee on demand by the Lessor.

(c) The Lessee will pay all payments when due under the Lease Agreement notwithstanding that the Equipment are unusable for any reason at any time during the Lease Period, and the Lessor will not be liable to provide the Lessee with any replacement equipment.

(d) The Lessor will have a right to set-off in respect of any payments, charges or other sums due or prematurely due and payable, and the Lessee agrees to waive any legal defense against such set-off. The Lessee will have no right of set-off in respect of any payments, charges or other sums due or claimed to be due to the Lessee from the Lessor hereunder or under any other agreement between the Parties.

(e) Lessee agrees that Lessee's obligation and duty to pay all sums due and to become due pursuant to this Agreement will be absolute and unconditional and are not subject to any defense, counterclaim, setoff or recoupment by reason of any past, present, or future claims which lessee may have against Lessor or any other person. Additionally, Lessee will not assert against any assignee of this Agreement any defense, counterclaim, setoff or recoupment by reason of any past, present, or future claims which Lessee may have against Lessor.

#### 4. LOCATION, USE AND MAINTENANCE OF THE EQUIPMENT

(a) The Equipment will be kept at the Location as set out in the Lease Agreement and will not be removed without the prior written consent of the Lessor.

#### 5. OWNERSHIP PLATES, INSPECTION AND TESTING

(a) The Lessor may at any time during the Lease Period require inspection of the Equipment. For such purpose, the Lessee will ensure that the Lessor and its authorized representatives have access to the Equipment and the premises at which the Equipment is located and to the records relating to the Equipment, during normal business hours. The Lessee will keep proper accounts of all its dealings in relation to the Equipment and deliver to the Lessor any such records when requested by the Lessor.

#### 6. PROHIBITION AGAINST DEALING WITH EQUIPMENT

(a) The Lessee will not (i) sell, transfer, lease, sub-lease or otherwise dispose of the Equipment (ii) create or permit to subsist any security interest on the Equipment (iii) affix the Equipment to any premises in such a manner as to make it a part of such premises (iv) represent itself to be, hold itself out as being or suffer or permit anything to be done whereby it may be reputed to be, the owner of the Equipment and/or (v) alter or modify or permit any alteration of the Equipment, without the Lessor's prior written consent.

(b) The Lessee will notify the Lessor immediately of any enforcement of any security interest created by it and/or any landlord of the premises on or in which the Equipment is located or the appointment of any receiver of all or part of the assets of the Lessee.

#### 7. REPRESENTATIONS AND WARRANTIES

(a) The Lessee represents and warrants to the Lessor that: (i) it has the power to enter into and perform, and has taken all necessary action to authorize the entry into and performance of the Lease Agreement and the transactions contemplated by the Lease Agreement; and (ii) all information supplied by it or on its behalf to the Lessor in connection with the Lease Agreement and any Guarantee (as the case may be) are true and accurate as at the date at which it is stated to be given.

#### 8. TOTAL LOSS AND INSURANCE

(a) The Lessee will bear the risks related to a Total Loss of the Equipment after delivery. If a Total Loss occurs with respect to the Equipment, Lessee will promptly notify Lessor thereof. On the Lease Payment date following such notice, Lessee will pay to Lessor an amount equal to the Termination Sum plus a sum equal to the calculated residual value at the time of expiration of the Lease Period, if any. Upon the making of such payment by Lessee, the payment obligation for such Equipment will cease, the Lease Agreement as to such Equipment will terminate and, except in the case of a Total Loss, Lessor will be entitled to recover possession at Lessee's expense in accordance with Clause 12 below. *Provided* that Lessor has received all payments to be made by the Lessee under this Lease Agreement, the Lessee will be entitled to the proceeds of any recovery in respect of that Equipment from insurance or otherwise.

(b) If not agreed otherwise in writing, the Lessee will at its own expense insure the Equipment on a policy and terms with such insurers as may be approved by the Lessor and will keep this insurance coverage in place until the Equipment is returned to the Lessor or the title has been transferred to the Lessee.

(c) The Lessee hereby irrevocably appoints the Lessor as its attorney to recover in its and the Lessee's name any claim for loss of or damage to the Equipment under any insurance or otherwise and to give effectual releases and receipts therefor. The proceeds of the insurances will be paid to the Lessor and

Lessee name: Larkin Community Hospital
MA-168-2017 (CLM 404723)
Rev date: 09 June 2017

CONFIDENTIAL       LARKIN-00009372

applied towards satisfaction of all amounts owing by the Lessee to the Lessor under the Lease Agreement.

(d) If the Lessee fails to comply with this Clause 8 the Lessor may (but is not obligated to do so), at the expense of the Lessee, effect any insurance, and all costs and expenses incurred in so doing will be repaid to the Lessor by the Lessee on demand.

## 9. SECURITY DEPOSIT

(a) The Lessee will, in order to secure and guarantee performance of the obligations under this Lease Agreement, pay the Deposit as set out in the Lease Agreement upon commencement of this Lease Agreement. No interest will accrue on the Deposit.

(b) The Lessor will, if the Lessee will have fully performed all obligations under this Lease Agreement, return the Deposit to the Lessee upon the expiration of the Lease Period.

(c) In the event the Lessee fails to perform any of its obligations under this Lease Agreement, the Lessor may apply the Deposit to the payment of any liabilities owed by the Lessee to the Lessor under this Lease Agreement, including, without limitation, delayed Lease Payments.

(d) If the Lessor applies the Deposit pursuant to (c) above, the Lessee will immediately restore the Deposit and pay to the Lessor the interest accrued on such delayed payment as set forth in Clause 3(d) hereof until the date of such restoration.

## 10. [Intentionally deleted.]

## 11. OWNERSHIP IN THE EQUIPMENT

The Lessor will be the sole legal and beneficial owner of the Equipment and the Lessee will not do or permit to be done anything that could prejudice the rights of the Lessor in respect of the Equipment. During the Lease Period ownership in the Equipment will not for any reason pass to the Lessee.

## 12. RETURN OF EQUIPMENT

(a) In the event that the Lease Agreement is terminated for any reason other than by reason of a Total Loss, the Lessee will, at its own risk, cost and expense, immediately (i) return the Equipment to the Lessor or its designated agent, by delivering the Equipment to such address as the Lessor may require or (ii) allow the Lessor access to pick up the Equipment. The Lessee will return the Equipment to the Lessor, free and clear of any security interest and in good working condition without any damage or fault which would affect the value of the Equipment or its operation (reasonable wear and tear excepted) together with all licenses, certificates and other documents relating to the Equipment.

(b) If upon return the Equipment is not in the condition stated in Clause 12(a) above, the Lessor may at its own discretion cause such repair works as it deems necessary to be carried out by a provider of its choice. All costs and expenses in connection with such repairs will be paid by the Lessee.

## 13. END OF LEASE OPTIONS

### 13.1 OPTION A

(a) *Provided* that the Lessee has fulfilled all its obligations under this Lease Agreement and paid the Balloon Payment, if any, in full, title to the Equipment will pass to the Lessee on an "as is where is" basis without any warranties whatsoever given by the Lessor, upon expiry of the Lease Period.

(b) The Lessee may request the Lessor to re-lease all (but not part thereof) of the Equipment to the Lessee after the expiry of the Lease Period, *provided* that the Lessee's financial situation has not deteriorated and that the Lessee has duly fulfilled its obligations under this Lease Agreement. The new Lease Payments to be stipulated for the period covered by the lease renewal will be calculated on the basis of an amount that is at least equal to the Balloon Payment. If the Lessee wishes to renew the Lease Agreement, it will notify the Lessor in writing no less than ninety (90) days prior to the expiry of the Lease Period. If the Lessor does not confirm acceptance of the Lessee's request within four (4) weeks, it is deemed to have been declined. In case the Lessor refuses such request, the Lessee continues to be obliged to make the Balloon Payment in the manner and on the date as specified in the Lease Agreement.

### 13.2 OPTION B

*Provided* that no Event of Default has occurred at the expiry of the Lease Period, the Lessee may, by giving the Lessor no less than 90 days prior to the expiry of the Lease Period written notice, exercise one of the options below. If the Lessee does not notify Lessor within this period, the Lease Agreement will be automatically renewed for a period of one (1) month at any one time, unless either Party gives notice to the other party no less than two (2) weeks prior to the expiry of the respective renewal period of its desire to terminate the Lease Agreement. Unless otherwise agreed between the Parties, the Lessee will in such case return the Equipment to the Lessor in accordance with Clause 12 hereof.

(a) The Lessee may request the Lessor to sell all (but not part thereof) of the Equipment to the Lessee after the expiry of the Lease Period and the Lessor will meet such request *provided* that the Lessee has fulfilled all its obligations under this Lease Agreement. The purchase price of the Equipment will be an amount equal to the fair market value, as determined by the Lessor, at its sole discretion. Upon payment of the purchase price, title to the Equipment will pass to the Lessee on an "as is where is" basis without any warranties whatsoever given by the Lessor. If no sale can be achieved, the Lessee will return the Equipment to the Lessor immediately upon the expiry of the Lease Period in accordance with Clause 12 hereof; or

(b) The Lessee may request the Lessor to re-lease all (but not part thereof) of the Equipment to the Lessee after expiry of the Lease Period, *provided* that, that the Lessee's financial situation has not deteriorated and that the Lessee has duly fulfilled its obligations under this Lease Agreement. If the Lessor does not confirm acceptance of the Lessee's request within four (4) weeks, it is deemed to have been declined. The Lease Payments and the Lease Period of the re-lease will be determined between the Parties hereto at the time of re-lease. If the Lessor refuses such request, the Lessee will return the Equipment to the Lessor immediately upon the expiry of the Lease Period in accordance with Clause 12 hereof.

## 14. EVENT OF DEFAULT

Each of the events set out in this Clause 14 is an Event of Default. Upon the occurrence of an Event of Default, the Lessor may by written notice to the Lessee terminate the Lease Agreement, which will take effect in accordance with its terms.

(a) An Obligor does not pay on the due date any amount payable by it under the Lease Agreement or any Guarantee in the prescribed manner.

(b) An Obligor does not comply with any term of the Lease Agreement, any Guarantee, any Sales/Use, License and Service Agreement between Lessor and Lessee, or any other similar agreement governing the use of the Equipment.

(c) Any representation made or repeated by an Obligor in the Lease Agreement or any Guarantee is proved to be incorrect in any material respect when made or deemed to be repeated.

(d) Any of the indebtedness of an Obligor is not paid when due, becomes prematurely due and payable, is placed on demand, or is cancelled or suspended as a result of an Event of Default.

(e) Any Obligor is unable to pay its debts as they fall due, admits its inability to pay its debts as they fall due, or is otherwise deemed for the purposes of any law to be insolvent, suspends making payments on any of its debts or announces an intention to do so, or (by reason of actual or anticipated financial difficulties) begins negotiations with any creditor for the rescheduling of any of its indebtedness.

(f) Any step is taken with a view to a moratorium, rehabilitation or composition with any of an Obligor's creditors, a meeting of its shareholders, directors or other officers is convened for the purpose of considering any resolution for, to petition for or to file documents with a court or any registrar for, its winding-up, bankruptcy, dissolution or judicial management or any such resolution is passed or any person petitions for or files documents for the same, an order for its bankruptcy, winding-up, judicial management or dissolution is made or any other analogous step or procedure is taken in any jurisdiction.

(g) Any provisional attachment, attachment, sequestration, distress, execution or analogous event affects any asset(s) of an Obligor and is not discharged within 14 days.

(h) Where the Obligor is an individual, the Obligor dies, becomes partly or wholly incapacitated.

(i) It is or becomes unlawful for an Obligor to perform any of its obligations under the Lease Agreement or any Guarantee, or the Lease Agreement or any Guarantee is not effective in accordance with its terms or is alleged by an Obligor to be ineffective in accordance with its terms for any reason.

(j) An event or series of events occur which, in the opinion of the Lessor, is likely to result in a Total Loss.

(k) The Lessee abandons the Equipment or does anything which, in the opinion of the Lessor, prejudices the rights of the Lessor in or over the Equipment.

(l) There is, in the Lessor's opinion, a material change in the shareholding of a corporate Obligor or any person, or group of persons acting in concert, acquires control of a corporate Obligor.

(m) An event or series of events occur which, in the opinion of the Lessor, have or are likely to have a material adverse effect on the financial condition of any Obligor.

## 15. TERMINATION

(a) After execution of the Lease Agreement, the Lessee will, except as set out in Clause 15(f), not be entitled to cancel or terminate the Lease Agreement before expiration of the Lease Period.

(b) Any termination of the Lease Agreement and any delivery of the Equipment by the Lessee to the Lessor will be without prejudice to any right or claim the Lessor may have against the Lessee under the Lease Agreement (including, without limitation, for arrears in Lease Payment, other sums payable by the Lessee under the Lease Agreement and damages for breach of the Lease Agreement).

(c) Where the Lease Agreement is terminated due to an Event of Default, the Lessee will pay to the Lessor the Termination Sum.

(d) Until the Lessor has received the Termination Sum in full, all obligations of the Lessee under the Lease Agreement will continue and the Lessee will continue to pay the Lease Payment notwithstanding any repossession of the Equipment by the Lessor.

Lessee name: Larkin Community Hospital
MA-168-2017 (CLM 404723)
Rev date: 09 June 2017

Page 3 of 5

CONFIDENTIAL

LARKIN-00009373

(e) Upon termination of the Lease Agreement, the Lessor will without prejudice to any other rights which it may have, have the right to repossess the Equipment and for this purpose to enter the land, building or premises at which the Equipment are located and the Lessee will give access to or procure that the Lessor or its agents be given access to the land, building or premises for this purpose.

(f) During the Lease Period, *provided* that no Event of Default has occurred and the Lessee has duly performed all of its obligations under this Lease Agreement and all other Lease Agreements between the Lessee and the Lessor, the Lessee may by written notice to the Lessor request to early terminate the Lease Agreement. On the Lease Payment date following such notice, Lessee will pay to Lessor an amount equal to the Termination Sum. Upon the making of such payment by Lessee, the payment obligation for such Equipment will cease and the Lease Agreement as to such Equipment will terminate. The Lessee will in such case return the Equipment to the Lessor in accordance with Clause 12 hereof.

### 16. SUBMISSION OF MATERIALS

Upon request by the Lessor for the purpose of credit preservation, the Lessee will immediately provide overall outstanding liabilities of the Lessee, credit status of the Lessee and the Guarantor, and information regarding status of securities to the Lessor, and cooperate with the Lessor for any investigations thereon. At Lessor's request, the Lessee is required to provide a copy of its year-end financial statements as soon as possible and not later than two (2) months from the end of the financial year. The Lessee will immediately notify the Lessor of any material change or any suspected material change in the status of credit or securities of the Lessee or the Guarantor.

### 17. TAXES AND COSTS

(a) Lessee is responsible for all license and registration fees, and all sales, use, property, stamp and other taxes and charges relating in any manner to the Equipment or this Lease Agreement, except the Medical Device Excise Tax.

(b) All payments by the Lessee under the Lease Agreement will be made free and clear of and without any deduction for or on account of any taxes and withholding taxes, except to the extent that the Lessee is required by law to make payment subject to taxes. If any amounts in respect of tax or any other deduction must be made from any amounts payable by the Lessee to the Lessor under the Lease Agreement, the Lessee will pay such additional amounts as may be necessary to ensure that the Lessor receives a net amount equal to the full amount which it would have received had the payment not been made subject to tax or the deduction.

(c) The Lessee will bear the costs for the protection or exercise of the Lessor's rights, or the protection, collection or disposition of securities including but not limited to the stamp duty, the expense for sending demand or notice to the Lessee, the expenses for registration, change and cancellation of security interest, and all legal fees which Lessor may incur in connection with the enforcement of this Lease Agreement.

(d) Unless otherwise provided, this Lease Agreement is entered into with the assumption that Lessor is the owner of the Equipment for income tax purposes and is entitled to certain federal and state tax benefits available to the owner of equipment (collectively "Tax Benefits"), including without limitation, accelerated cost recovery deductions and deductions for interest incurred by Lessor to finance the purchase of the Equipment, available under the Code. Lessee represent, warrant, and covenant to Lessor that (a) unless Lessee has provided Lessor with a 501(c)(3) letter indicating that Lessee is tax exempt, then Lessee is not a tax exempt entity (as defined in Section 168(h) of the Code, (b) Lessee will use the Equipment solely within the United States, and (c) Lessee will take no position inconsistent with the assumption that Lessor is the owner of the Equipment for any tax purposes. If, because of any act or omission by Lessee, or any party acting through Lessee, or the breach or the inaccuracy of any representation, warranty or covenant made by Lessee in this Agreement, Lessor reasonably determine that Lessor cannot claim, are not allowed to claim, lose, or must recapture any or all of the Tax Benefits otherwise available with respect to the Equipment (a "Tax Loss"), then Lessee will, promptly upon demand, pay to Lessor an amount sufficient to provide Lessor the same after-tax rate of return and aggregate after-tax cash flow through the end of the term of the Lease Agreement as Lessor would have realized but for such Tax Loss.

### 18. INDEMNITY

The Lessee will indemnify the Lessor against all damages, claims or liabilities which may be incurred or suffered by the Lessor in connection with: (i) the occurrence of any Event of Default; (ii) any late payment of any sum (including, without limitation, any overdue amount) being received from any source otherwise than on its due date; (iii) Lessee's breach of any law affecting the Equipment, their use, operation or leasing, or the Lease Payment to be paid; (iv) any failure of any Obligor to perform any of its obligations under the Lease Agreement or any Guarantee; (v) the execution or enforcement (including any attempts thereof) of any of the rights, powers, remedies, authorities or discretions vested in the Lessor under or pursuant to the Lease Agreement; (vi) any failure or delay by Lessee in completing the procedure required for importation and providing Equipment; (vii) any loss arising from non-or incomplete performance by Lessee of the Lease Agreement, the delivery and the inspection of the Equipment; or (viii) the early termination of refinancing arrangements caused by the cancellation of this Lease Agreement due to non-delivery of the Equipment.

### 19. FORCE MAJURE

(a) Neither Lessor nor Lessee will be liable for any loss, damage, detention, delay, or failure to perform in whole or in part resulting from causes beyond that party's control including, but not limited to, acts of terrorism, acts of God, fire, earthquake, war, the threat of imminent war, riots, or other acts of civil disobedience, insurrection, labor or trade disputes, shortage of components, any governmental law, order, regulation, ordinance or any other supranational legal authority, explosion, storms, floods, lightning, or earthquake.

### 20. UCC FILINGS AND FINANCIAL STATEMENTS.
Lessee authorizes Lessor to file a financing statement with respect to the Equipment and grants the Lessor the right to sign such financing statement on Lessee's behalf. If Lessor deems it necessary, Lessee agrees to submit financial statements (audited if available).

### 21. UCC-ARTICLE 2A Provisions:
Lessee agrees that this Lease Agreement is a Finance Lease as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). Lessee waives any and all rights and remedies granted Lessee under Sections 2A-508 2A-522 of the UCC.

### 22. MISCELLANEOUS

(a) The Lease Agreement will not be construed to be a purchase or an agreement for the purchase of the Equipment by the Lessee.

(b) The Lessee may not assign or transfer any of its rights and obligations under the Lease Agreement. The Lessor may at any time without the consent of the Lessee assign or transfer any of its rights and obligations under the Lease Agreement and dispose of its rights and title to the Equipment.

(c) This Lease Agreement constitutes the entire obligation of the parties hereto and supersedes any prior expressions of intent or understandings with respect to this transaction. Any amendment of this Lease Agreement will be in writing and will be signed by duly authorized representatives of both parties hereto.

(d) No failure or delay on the part of the Lessor to exercise any right provided for in this Lease Agreement will constitute a waiver of such right or any obligation of the Lessee under this Lease Agreement, nor will any single or partial exercise of any such right preclude any further exercise thereof. No waiver by the Lessor hereunder will be effective unless it is in writing. The rights and remedies provided for in this Lease Agreement are cumulative and not exclusive of any other rights or remedies which the Lessor may otherwise have.

(e) If any one or more of the provisions of this Lease Agreement or any document executed in connection herewith will be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein will not in any way be affected or impaired thereby.

(f) The obligations of the Obligors under this Lease Agreement will be joint and severable.

(g) The Lessee acknowledges and agrees that the sole responsibility for determining the proper treatment of this Lease Agreement for tax purposes rests with the Lessee. The Lessor makes no representations whatsoever as to the proper treatment of this Lease Agreement for tax purposes. The Lessee acknowledges that the Lessor is the legal owner of the Equipment.

(h) All notices, claims, requests, demands, and other formal communications hereunder will be in writing and will be deemed given at the time of personal delivery or completed facsimile, or, if sent by a reputable overnight courier or registered or certified mail, one business day after such sending.

(i) The Lessee will notify the Lessor promptly of any changes in company name, registered office, and any other matters which may affect this Lease Agreement.

(j) This Agreement shall be governed by the laws of the State of California, excluding its conflicts of laws principles. With respect to any legal action or proceeding relating to this Agreement, the parties consent and submit to the *exclusive* jurisdiction of the Federal and State courts located in Santa Clara County, California, and the parties agree that venue therein is proper.

CONFIDENTIAL    LARKIN-00009374



# Annex 1

INTUITIVE SURGICAL

## ACCEPTANCE DOCUMENT

I, the undersigned, as an authorized representative of the below named hospital, acknowledge that the following product was (check the box below which applies):

☐ Delivered ☐ Installed

| CUSTOMER |
|---|
| |

| END USER |
|---|
| |

| CLM Agreement Number: | |
|---|---|

| Equipment Description | Serial Number |
|---|---|
| | |

| ACCEPTANCE | |
|---|---|
| ACCEPTANCE CRITERIA - PER AGREEMENT: | |

EXAMPLE

Signature:______________________ Date:______________

Print Name:______________________

Title:______________________

**Please email signed acceptance letter to** Acceptance@Intusurg.com

837921-03, Rev F

# Larkin Si and Xi ULSA 06092017

Adobe Sign Document History          06/09/2017

| | |
|---|---|
| Created: | 06/09/2017 |
| By: | Colleen Nagareda (Colleen.Nagareda@intusurg.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAmMebf9gcojyGDk5cJgFWEjBhmUTXIhG0 |

## "Larkin Si and Xi ULSA 06092017" History

- Document created by Colleen Nagareda (Colleen.Nagareda@intusurg.com)
  06/09/2017 - 9:12:18 AM PDT- IP address: 204.27.197.5

- Document emailed to Marc Giuffrida (marc.giuffrida@intusurg.com) for signature
  06/09/2017 - 9:15:47 AM PDT

- Document emailed to Christine Pham (revenue@intusurg.com) for approval
  06/09/2017 - 9:15:47 AM PDT

- Document emailed to Nick Santore (nick.santore@intusurg.com) for approval
  06/09/2017 - 9:15:47 AM PDT

- Document emailed to Brian King (brian.king@intusurg.com) for approval
  06/09/2017 - 9:15:47 AM PDT

- Document viewed by Marc Giuffrida (marc.giuffrida@intusurg.com)
  06/09/2017 - 9:16:06 AM PDT- IP address: 204.27.197.5

- Document viewed by Brian King (brian.king@intusurg.com)
  06/09/2017 - 9:27:47 AM PDT- IP address: 172.56.38.76

- Document approved by Brian King (brian.king@intusurg.com)
  Approval Date: 06/09/2017 - 9:29:41 AM PDT - Time Source: server- IP address: 172.56.38.76

- Document viewed by Nick Santore (nick.santore@intusurg.com)
  06/09/2017 - 9:44:32 AM PDT- IP address: 108.171.131.189

- Document approved by Nick Santore (nick.santore@intusurg.com)
  Approval Date: 06/09/2017 - 9:44:47 AM PDT - Time Source: server- IP address: 108.171.131.189

INTUITIVE     POWERED BY
              Adobe Sign

CONFIDENTIAL                                                    LARKIN-00009376

- Document e-signed by Marc Giuffrida (marc.giuffrida@intusurg.com)
  Signature Date: 06/09/2017 - 9:52:09 AM PDT - Time Source: server- IP address: 204.27.197.5

- Document viewed by Christine Pham (revenue@intusurg.com)
  06/09/2017 - 11:05:48 AM PDT- IP address: 204.27.197.5

- Document approved by Christine Pham (revenue@intusurg.com)
  Approval Date: 06/09/2017 - 11:09:55 AM PDT - Time Source: server- IP address: 204.27.197.5

- Signed document emailed to Christine Pham (revenue@intusurg.com), Marc Giuffrida (marc.giuffrida@intusurg.com), Brian King (brian.king@intusurg.com), Colleen Nagareda (Colleen.Nagareda@intusurg.com), and 1 more
  06/09/2017 - 11:09:55 AM PDT

INTUITIVE | POWERED BY Adobe Sign

CONFIDENTIAL

LARKIN-00009377