# ATTACHMENT 14

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN FRANCISCO
 4   _____
 5   IN RE: DA VINCI SURGICAL      )
     ROBOT ANTITRUST               )
 6   LITIGATION,                   )
                                   )
 7   ---------------------------   ) NO. 3:21-cv-03825-VC
                                   )
 8   THIS DOCUMENT RELATES TO:     )
     ALL CASES                     )
 9                                 )
     ---------------------------   )
10                                 )
     SURGICAL INSTRUMENT           )
11   SERVICE COMPANY, INC.,        )
                                   )
12                                 )
               Plaintiff,          )
13        vs.                      )
                                   )
14   INTUITIVE SURGICAL, INC.,     )
                                   )
15             Defendant.          )
                                   )
16
     _____
17
              VIDEOTAPED ZOOM DEPOSITION
18
             UPON ORAL EXAMINATION OF
19
                   MARK EARLY
20   _____
21
             Thursday, October 6, 2022
22
                  Miami, Florida
23
24
     REPORTED BY: VICKY L. PINSON, RPR-CCR Washington 2559
25              California No. 9845; Oregon No. 16-0442


                                                   Page 1
```

```
 1                    A P P E A R A N C E S
 2
 3
 4    FOR THE PLAINTIFF:
 5         KEVIN BRUCE LOVE
           Criden & Love, P.A.
 6         7301 SW 57th Court, Ste 515
           South Miami, FL 33143
 7         305.357.9010
           klove@cridenlove.com
 8
 9
      FOR THE DEFENDANT INTUITIVE SURGICAL, INC.:
10
           ANDREW LAZEROW
11         MIRIAM ARGHAVANI
           Covington Burling, LLP
12         One City Center 850 Tenth Street NW
           Washington, D.C. 20001-4956
13         202.662.6000
           alazerow@cov.com
14         Marghavani@cov.com
15
16
17    VIDEOGRAPHER:
18         LORI TALBOTT, Legal Videographer, CLVS
           Veritext Legal Solutions
19
20
21
22
23
24
25

                                                Page 2
```

```
 1                MR. LAZEROW:  Check what?  I'm sorry,
 2    Kevin, we couldn't hear that.
 3                MR. LOVE:  I said check his parking.
 4                MR. LAZEROW:  Oh, okay.
 5                MR. LOVE:  You have to wait 18 seconds.
 6    Andrew, if you could just wait 15 seconds, he's got to
 7    re-do his parking.
 8                MR. LAZEROW:  Okay.
 9                MR. LOVE:  It's weird.  It won't let you
10    do it till it's over.
11                All right.  Please read the email.
12                THE WITNESS:  Okay.
13                MR. LOVE:  And I think, Andrew, when
14    you're done with this exhibit, maybe we'll break for
15    lunch?
16                MR. LAZEROW:  (Nods head affirmatively.)
17         A.   Okay.
18         Q.   So now that you've had a chance to review that
19    email, does it outline the -- some of the financial
20    aspects that are being discussed as of this time
21    between Intuitive and Larkin for the purchase of two Da
22    Vinci Surgical Systems?
23         A.   Yeah.  It looks like an outline of the
24    agreement.
25         Q.   Why at this time was Larkin contemplating
```

1  buying two surgical systems as opposed to one?
2       A.  At that time I believe one was for
3  urology-related procedures, the other was for
4  different -- a different procedure other than
5  urology-type procedures.
6       Q.  Which one did Larkin intend to use for
7  urology, the SI or the XI?  Do you know?
8       A.  It's my understanding that they needed the SI
9  to do urology and the XI for other.
10      Q.  And the, the -- was the reason that Larkin
11 wanted a -- an SI for urology was because Dr. Razdan
12 was going to be joining?
13      A.  I don't remember which was which, whether the
14 SI or the XI was for -- which device was for urology
15 and which one wasn't.  I just remember one was -- that
16 was the reason.  And of course the only person that was
17 going to do urology was Razdan.
18      Q.  And at this time do you recall whether you
19 knew how many cases Larkin was projecting it would do
20 for urological procedures?
21      A.  No, I don't remember.
22      Q.  Okay.  And by this point, the other unit was
23 going to be used by Dr. Estape.  Isn't that right?
24      A.  Yes.  And -- and -- and potentially other.
25      Q.  Do you recall how many procedures at this time

Page 93

1  been pulled by whoever pulled this for this
2  spreadsheet?  Do you see that?
3       A.   Yeah, I do.  Yeah.
4       Q.   And then the next line says the net income
5  cash was $600,137.  Do you see that?
6       A.   Um-hmm.
7       Q.   So according to this spreadsheet that we're
8  looking at, the -- there was a net loss on the
9  procedures for Dr. Estape as of this time of over
10 600,000.  Is that -- that's the way this document
11 reads.  Is that correct?
12      A.   Yes.  Yeah, it was a startup.  Yep.
13      Q.   Okay.  Is it consistent with your recollection
14 that for the first few months that Dr. Estape was
15 performing robotic surgeries that Larkin lost over
16 $600,000?
17      A.   According to this report, yes, but -- I would
18 say yeah.
19      Q.   Okay, I understand.  I -- we, we all can look
20 at the document.  And I know you, you don't know who
21 prepared it, and you've already, you know, you've given
22 us testimony.
23           What I'm trying to understand is independent
24 of the document, do you have a recollection of the --
25 of Larkin having a net loss in terms of the cash

Page 132

1  brought in versus the expenses of Dr. Estape's robotics
2  program for the first few months of around $600,000?
3      A.  Yeah, I would say this is reasonable.
4      Q.  Okay.  And then at the bottom -- let's see.
5  Yeah, she's got it.  She's got it.  You can stay there.
6  You'll see that it says:  Surgical cases, 145.
7          Do you see that?
8      A.  Yeah, I do.  Yeah.
9      Q.  Okay.  Do you -- do you recall how many cases,
10 if any, Larkin assumed that Dr. Estape would perform in
11 a year at the time that they were considering whether
12 to bring him into Larkin?
13     A.  I don't know that information, no.
14     Q.  Okay.  The next row down says:  Intuitive
15 Invoices.
16         Do you see that one?
17     A.  Yeah, I do.
18     Q.  And at the end of it, it, it comes to, you
19 know, after doing some math, it looks like comes to a,
20 a number of $3,862 per case.  Do you see that?
21     A.  Yeah, I do.  Yeah.
22     Q.  And do you recall -- is it consistent with
23 your recollection that Larkin was paying 3 -- around
24 $3,800 for the equipment per case for the Da Vinci
25 Surgical System?

Page 133

```
 1                    REPORTER'S CERTIFICATE
 2
 3          I VICKY L. PINSON, RPR-CCR, the undersigned
 4   Certified Court Reporter, authorized to administer
 5   oaths and affirmations in and for the states of
 6   Washington, Oregon and California, do hereby certify:
 7          That the sworn testimony and/or proceedings, a
 8   transcript of which is attached, was given before me at
 9   the time and place stated therein; that the witness was
10   duly sworn or affirmed to testify to the truth; that
11   the testimony and/or proceedings were stenographically
12   recorded by me and transcribed under my supervision.
13          That the foregoing transcript contains a full,
14   true, and accurate record of all the testimony and/or
15   proceedings occurring at the time and place stated in
16   the transcript; that a review of which was requested.
17          That I am in no way related to any party to the
18   matter, nor to any counsel, nor do I have any financial
19   interest in the event of the cause.
20
     WITNESS MY HAND this 27th day of October, 2022.
21
22      [signature: Vicky L. Pinson]
23
     VICKY L. PINSON, RPR-CCR
24   Washington Certified Court Reporter, No. 2559
     Oregon State Certified Court Reporter, No. 16-0442
25   California State Certified Court Reporter, No. 9845
```

Page 241