Samuel Maida (SBN 333835)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415-633-1908
Fax: 415-358-4980
Email: smaida@hausfeld.com

Manuel J. Dominguez (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Tel: 561-515-2604
Fax: 561-515-1401
Email: jdominguez@cohenmilstein.com

Jeffrey J. Corrigan (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
Fax: 215-496-6611
Email: jcorrigan@srkattorneys.com

*Co-Lead Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No.: 3:21-cv-03825-AMO-LB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: The Honorable Araceli Martínez-Olguín |

Counsel for Larkin Community Hospital ("Larkin"), Franciscan Alliance, Inc. ("Franciscan") and King County Public Hospital District No. 1, d/b/a Valley Medical Center ("Valley Medical") (collectively, "Plaintiffs"), on behalf of themselves and the Class, and Intuitive Surgical, Inc. ("Intuitive" or "Defendant") (collectively, "the Parties"), submit this Joint Case Management Statement ("CMS") pursuant to the Court's March 11, 2026 Order Scheduling a Case Management Conference (Dkt. No. 361), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-10(d).[1]

## I.    Progress and Changes Since the Last Case Management Statement was Filed.

The last Case Management Statement was filed on May 23, 2024 (Dkt. No. 262). Since that time: (1) on July 30, 2024, the Court granted in part Intuitive's motion for reconsideration of the March 31, 2024 Order granting Plaintiffs' Motion for Summary Adjudication (Dkt. No. 232) and vacated its holdings related to the definition of the EndoWrist repair and replacement market and Intuitive's power in that market (Dkt. No. 287); (2) on March 31, 2025, the Court granted Plaintiffs' Motion for Class Certification (Dkt. No. 333); (3) on May 22, 2025, the Ninth Circuit denied Intuitive's Fed. R. Civ. P. 23(f) petition to appeal the Court's class certification Order (No. 25-2395, Dkt. No. 15.1); (4) on January 29, 2026, the Court granted Plaintiffs' Motion to Authorize Class Notice and Appoint Notice Administrator (Dkt. No. 359); (5) on February 19, 2026, the Notice Plan was implemented as direct notice was mailed to the class, the class-dedicated website went live, and media notice was initiated; and (6) the deadline for class members to opt out was April 20, 2026, and three class members opted out.

The Parties have different proposals for the remainder of the case development process.

## II.    Proposals for the Remainder of the Case Development Process.

**Plaintiffs' Statement:** At the May 14 Case Management Conference ("CMC"), Plaintiffs will ask the Court to set a trial date and pretrial schedule. Defendant will propose an indefinite delay of the trial, pending the Ninth Circuit's resolution of *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, No. 25-1372 (9th Cir. 2025) ("*SIS*"). The primary issue on appeal is whether this Court erred by instructing the jury that SIS was required to meet the four-part "lock-in" test articulated by

---

[1] Previous Case Management Statements were filed at Dkt. Nos. 35, 98, 191, and 262.

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023). But, as Intuitive concedes, *infra* at 10, the Ninth Circuit may not even reach that issue. And the propriety of the "lock-in" jury instruction in *SIS* will not be dispositive in this case regardless of the Ninth Circuit's decision. The prejudice an indefinite, potentially multi-year trial delay—with its attendant prolonging of Intuitive's unlawful exercise of monopoly power—would cause Plaintiffs and the class far outweighs the remote possibility of having to address that non-dispositive issue twice. Plaintiffs have triable issues for a jury to decide, and Intuitive's arguments to delay that reckoning are more tactical than practical.

**a.** Nearly five years into this litigation, Intuitive continues to impose its anticompetitive restraints—which include not just the restrictions on EndoWrist repair at issue in *SIS* but also Intuitive's restraints on servicing the da Vinci robot, not challenged by SIS—on Plaintiffs and the thousands of other hospitals that make up the class. Those restraints continue to distort the marketplace, deprive class members of consumer choice, and allow Intuitive to continue to extract monopoly rents from them. That Restore has completed Intuitive's so-called "authorization process" for a small fraction of EndoWrists does not remotely address the ongoing harm to the hospital class. Such "process" is a contrivance that, in truth, is nothing more than the product of years of litigation and a settlement—which includes competition-delaying terms—on the courthouse steps. *See infra* at 4–5. Plaintiffs' and the class's ability to choose from different options to obtain viable EndoWrist instruments and da Vinci service has been, and continues to be, sharply constrained. As the Court found in partially granting Plaintiffs' Motion for Summary Adjudication, "the Hospital Plaintiffs present several forms of evidence to show that, when given a choice (and even despite threats and limitations from Intuitive), several health care providers opted to purchase aftermarket EndoWrist services from IRCs." Dkt. No. 232, at 12. Unless and until Intuitive's violations are enjoined, Plaintiffs and the class will continue to suffer anticompetitive harm. Thus, delaying a trial indefinitely would greatly prejudice Plaintiffs and the class. It also would harm patients who are priced out of robotic surgery during the delay—and who will not be made whole by later monetary damages paid to hospitals. Intuitive asserts, *infra* at 6, that Plaintiffs "speculat[e]" about such patient harm. Not so. *See, e.g.*, Dkt. No. 164-2, ¶¶ 337–339; Dkt. No. 164-3, ¶ 298; Dkt. No. 268-2, ¶¶ 590–594. And the Court found that "[t]he evidence shows that several hospitals viewed repaired EndoWrists as

functionally equivalent to new EndoWrists from Intuitive." Dkt. No. 232, at 12.

**b.**   The Ninth Circuit—which is not operating under the extraordinary time pressure of trial and has the benefit of appellate briefing and numerous *amici*—likely will reject Intuitive's position on the applicability of the *Kodak/Epic Games* "lock-in" test to a case where the defendant has a monopoly in the primary equipment market. There is Supreme Court precedent that "lock-in" is not, as Intuitive suggests, a requirement in every case that involves an aftermarket, but rather offers an alternative way to prove market power *if the defendant lacks power in the foremarket. See, e.g.*, *Eastman Kodak Co. v. Image Tech. Svcs., Inc.*, 504 U.S. 451, 472–78 (1992). The FTC's *amicus* brief in the *SIS* appeal underscores this point: "There is no need for such proof [of 'lock-in'] when the defendant has market power in the foremarket[.]" *SIS*, FTC Amicus Br. in Supp. of Neither Party, No. 25-1372, Dkt. No. 52.1, at 1 (9th Cir. Aug. 6, 2025). So does an *amicus* brief in support of SIS filed by Herbert Hovenkamp and several other leading antitrust professors: "The *Epic* factors apply to claims of aftermarket monopolization only where the defendant lacks monopoly power in the foremarket, not where, as in this case, the defendant has a monopoly in the foremarket." *SIS*, Antitrust Law Profs. Amicus Br. in Supp. of Pl.-Appellant, No. 25-1372, Dkt. No. 34.1, at 3 (9th Cir. July 30, 2025).[2]

But even if the Ninth Circuit were to agree with Intuitive, Plaintiffs still could prevail without needing to satisfy the *Kodak/Epic Games* "lock-in" test. That test would apply only when plaintiffs define a relevant "aftermarket" in terms of a single brand, *i.e.*, a relevant market comprised entirely of products or services used only with a single seller's primary product. But here, where Intuitive completely dominates all facets of minimally invasive robotic surgery, Plaintiffs need not limit any

---

[2] The Court addressed this point in its reconsideration Order, finding the foremarket-power predicate for its application remained a question for the jury (Dkt. No. 287 at 5 (emphasis added)): "Plaintiffs … [argue] that the *Epic Games* 'lock-in' factors need not be reached to establish a single-brand aftermarket where an antitrust plaintiff first shows that the defendant held significant market power in the foremarket…. But that is not what has happened here: the Court did not find that Intuitive holds market power in the foremarket. The Court expressly denied summary judgment for Plaintiffs on market definition and power as to the surgical robot foremarket, holding that disputed issues of fact remained for the jury to decide. ECF 232 at 14-16. Thus, if a single-brand aftermarket for EndoWrist instruments can be established **at this stage**, it must be accomplished through satisfaction of the *Epic Games* 'lock-in' factors. The Hospital Plaintiffs cannot do so." At trial, Plaintiffs can and will prove Intuitive's near-absolute monopoly power in the robot foremarket, obviating the need to prove "lock-in."

relevant market to a single brand to establish Intuitive's monopoly power. In other words, Intuitive has monopoly power in the markets for minimally invasive surgical robot instruments and servicing even if those markets are defined to include instruments and servicing for *all* brands of MIST robots. *See, e.g.*, Dkt. No. 164-2 (Elhauge Rep.) ¶ 191 (explaining why Prof. Elhauge's "conclusions about Intuitive's monopoly power would not change if the relevant market were broadened to include not only the repair and replacement of EndoWrist instruments used with the da Vinci, but also the repair and replacement of wristed instruments used with other MIST surgery robots as well."). Thus, the *SIS* appeal will not be dispositive of this case or fundamentally alter Plaintiffs' and the class's claims.

**c.** In its failed bid to delay class notice, Intuitive trotted out a new-to-this-case "authorized third-party" defense it raised at the *SIS* trial and on appeal. Intuitive claims that if the Ninth Circuit addresses this alternative ground for affirmance and adopts its argument that SIS had the burden to show that Intuitive's claimed "third-party authorization process" was a sham and failed to do so, affirmance "could affect the entire foundation of Plaintiffs' antitrust claims." Opp'n to Pls.' Mot. to Approve Notice Plan, Dkt. No. 354, at 2. That defense is meritless and provides no rational basis to delay a trial in this case.

Intuitive relies on the evidentiary record in *SIS*, a record that does not bind Plaintiffs. In the *SIS* trial, Intuitive was able to exploit certain evidentiary rulings to suggest that Intuitive "authorized" Rebotix and Restore to sell refurbished EndoWrists while shielding from the jury that Intuitive's "authorization process" consisted of: (a) being sued by Rebotix and Restore for antitrust violations, (b) litigating those cases for several years until the eve of trial, and (c) settling the cases by paying undisclosed sums of money in exchange for commitments from those companies to complete a burdensome and unnecessary regulatory approval process never imposed by the FDA before competing again in the relevant market (an agreement that has served, as Intuitive surely intended, to slow Rebotix's and Restore's entry and to discourage entry from others). But, for purposes of Plaintiffs' case, that aspect of the *SIS* trial does not matter. Plaintiffs will have their own opportunity at trial to introduce sufficient (and abundant) evidence that Intuitive's claimed "third-party authorization process" for EndoWrist repair was a sham. Intuitive "authorized" third-party-repaired EndoWrists only after it settled with Restore and Rebotix—and while this case was being litigated—

and only to the extent they have achieved a regulatory endorsement that, despite years of Intuitive's lobbying, the FDA itself has never required. Before its 2023 Internet post, Intuitive had never identified any process that third-party EndoWrist repair or da Vinci service companies could follow to become authorized. It certainly had never authorized any such third parties. *See, e.g.*, Rosa Dep. 152:13–153:2, Dkt. No. 267-20 (admitting that Intuitive did not have an "agreed-to" authorization policy for EndoWrists before March 2023). Likewise, Plaintiffs will prove that Intuitive abandoned a limited self-servicing option it offered to a handful of hospitals to perform maintenance on their own da Vinci robots more than two decades ago and did not replace it with any authorization process for would-be third-party robot servicers.

Thus, however Intuitive intends to employ this new defense at Plaintiffs' trial, the Ninth Circuit's evaluation of it in the context of the *SIS* trial record cannot be dispositive of Plaintiffs' claims or warrant the denial of Plaintiffs' right to a trial date now. At most, issues relating to that defense should be the subject of a motion *in limine*.

Plaintiffs maintain they have a triable case regardless of the *SIS* appeal's outcome and respectfully seek forward progress. Although *SIS* will be argued next month, no one knows when a decision will be handed down. Rather than wait to begin scheduling until after *SIS* is decided, Plaintiffs propose that the Court set a trial date in June or July of 2027, along with a corresponding pretrial schedule. That would result in a trial date sufficiently close to keep the Parties on track for ultimate resolution of this litigation, but also sufficiently distant that the Court and the Parties will likely have the Ninth Circuit's guidance before finalizing jury instructions. Critically, much of what the Parties must do to prepare for trial—and much of what they must prove at trial—will not be affected by the Ninth Circuit's decision in *SIS*. Setting a schedule now therefore advances work that will be required in any event.

Delaying setting a trial date until after *SIS* is decided serves no purpose other than to allow this case to fall still further behind as the Court's calendar fills up in the interim. By contrast, setting a date now provides momentum and accommodates the Court's calendar, while allowing the Parties and the Court to reassess as the trial date approaches, in light of any developments in *SIS* or otherwise. To the extent the Ninth Circuit's *SIS* decision alters the landscape, the Parties can confer and, if

warranted, seek adjustments to the schedule. But as a baseline, establishing a trial date and pretrial milestones now is the most efficient course to ensure timely and orderly resolution of this matter. Even if the Court later decides to push back the trial date itself to wait for the Ninth Circuit's opinion, the parties' completion of substantial and important pretrial tasks—such as exhibit-list and deposition-designation negotiations—will have moved the ball forward, minimizing the ultimate delay and prejudice to Plaintiffs and the class. Accordingly, Plaintiffs respectfully submit that the Court should set a trial date and pretrial schedule regardless of when or how the *SIS* appeal is decided.

**Intuitive's Statement:** Intuitive respectfully submits this case should be set for trial after the Ninth Circuit resolves *SIS*. The Ninth Circuit's decision in *SIS* will determine legal questions that both sides agree are relevant to this case, and the court of appeals' guidance will clarify and streamline pretrial and trial proceedings in this case. Plaintiffs nevertheless urge the Court in the name of efficiency to set a trial date now, and start the parties down the path of completing "substantial" and time-consuming pretrial tasks, without regard to "when or how the *SIS* appeal is decided." *Supra* 6. There is nothing efficient about Plaintiffs' proposal. If trial in this case takes place before *SIS* is decided, there is a material risk the case would have to be retried based on the Ninth Circuit's ruling. And even if the Ninth Circuit rules before Plaintiffs' requested trial date, setting a pre-trial schedule now all but guarantees that the parties will waste time and resources doing pretrial work that will have to be revisited and redone to account for the Ninth Circuit's ruling. Indeed, Plaintiffs themselves acknowledge that a ruling in *SIS* may well "alter[] the landscape," requiring the parties and the Court to "reassess" and "seek adjustments." The far more efficient course is to conserve the Court's and the parties' time and resources while the Ninth Circuit is deciding *SIS*.

There is no countervailing equitable justification for the inefficiency that would result from Plaintiffs' proposal. Plaintiffs all (or nearly all) continue to use Intuitive's surgical systems. Their alleged harm is all monetary—*i.e.*, they complain they pay too much for those systems. The prejudice they claim they will suffer from waiting for resolution of the *SIS* appeal—scheduled for argument on June 25—is illusory. Plaintiffs also claim patients will be "priced out of robotic surgery" in the interim, or that patients would be safer and better off if *unauthorized*, *non-FDA-cleared* instruments were more prevalent. That speculation does not justify trying this case before *SIS* is decided.

Plaintiffs here, like SIS, will try to prove that Intuitive violated the antitrust laws by entering into agreements that supposedly restrained trade in an alleged single-brand aftermarket consisting solely of Intuitive's own EndoWrist instruments. Intuitive will maintain that Plaintiffs cannot prevail on those claims because, among other things, (1) Plaintiffs cannot prove the "lock in" factors that antitrust plaintiffs must show to establish a single-brand aftermarket under the Ninth Circuit's decision in *Epic Games*, and (2) Intuitive's contracts are lawful because they protect patient safety and permit Plaintiffs to purchase from ***authorized*** third parties. Plaintiffs do not dispute that each of those issues will have to be resolved in any eventual trial in this case, and each of those issues is now before the Ninth Circuit in the *SIS* appeal. The Ninth Circuit's determination of the law as to one or both issues will apply to this case. Allowing for resolution of the *SIS* appeal before investing time and resources in making pretrial determinations and trying this case would thus be a sound and sensible exercise of this Court's inherent authority to control its docket. Plaintiffs provide no compelling reason why a trial should be scheduled before the Ninth Circuit has spoken.

**1. Plaintiffs are not prejudiced by waiting for the Ninth Circuit's ruling.** Plaintiffs argue that time is of the essence because "Intuitive continues to impose its anticompetitive restraints," and so "delaying a trial indefinitely would greatly prejudice Plaintiffs and the class." *Supra* 2–3. That argument is baseless and false. First, Intuitive is not asking the Court to delay trial "indefinitely"—rather, only to wait until after the Ninth Circuit resolves *SIS*, which is unlikely to take "years." Second, Plaintiffs do not identify any non-monetary "prejudice" from waiting. They do not claim, for example, that any material evidence will be lost or that they will not continue to be able to operate their businesses or even that they cannot access Intuitive's products. Rather, their alleged injury is strictly monetary—they claim to have overpaid for Intuitive products—and (if proven) is entirely compensable with money damages. And third, Plaintiffs have the option of buying third-party remanufactured instruments *today*, which further undercuts any claim of "great prejudice."

Since the *SIS* trial concluded, one third-party (Restore Robotics) has obtained FDA clearance to remanufacture three different current-generation EndoWrist instruments, is actively marketing those remanufactured instruments to hospitals, and claims to have more FDA clearances for more instruments coming soon. Restore claims that "more than 300 hospitals and surgery centers across

the United States" are participating in its "remanufacturing program."[3]  Restore claims hospitals that buy its remanufactured EndoWrists "can save a significant amount per year."[4]  It claims to offer nationwide distribution through a third-party, Encore Medical,[5] which has opened two "[n]ew state-of-the-art repair labs."[6]  And Restore acknowledges that, by virtue of having FDA clearance, its remanufactured instruments are deemed authorized by Intuitive and customers are free to purchase those instruments under Intuitive's contracts.[7]

Plaintiffs denigrate Restore's ability to sell remanufactured EndoWrists as the byproduct of a "competition-delaying" settlement, but that is false and irrelevant.  Intuitive's contracts have been procompetitive from the start:  they have always allowed customers to use *authorized* third-party products and services with the da Vinci and restricted only the use of *unauthorized* third-parties in the interest of patient safety.  Intuitive's contracts plainly are not restraining Restore *or anyone else*—regardless of any litigation or settlement—from offering Plaintiffs a third-party option today on any instrument for which it takes the reasonable and responsible step of obtaining FDA clearance.

Plaintiffs also make the baseless assertion that Intuitive's policy on unauthorized instruments is pricing patients out of robotic surgery.  There is no evidence of that, and also no evidence that any savings from cheaper EndoWrists would be passed on to patients—as opposed to going to hospitals' bottom lines.  Nor is there evidence that patients would benefit from greater prevalence of robotic surgical instruments that have been modified by *unauthorized* third parties and have *not* been cleared as safe and effective by the FDA.

**2. Plaintiffs' speculation about how the Ninth Circuit, or a jury, might decide the market definition issue is not a reason to proceed to trial.**  Plaintiffs next argue the Court should schedule a trial because the Ninth Circuit's ruling *might* not be dispositive in this case.  *Supra* 3–4.  Plaintiffs have no way of knowing how the Ninth Circuit will rule or the content of its ruling.  There is no

---

[3] https://www.restorerobotics.com/oct-14-2025
[4] https://www.restorerobotics.com/mar-25-2025
[5] https://www.restorerobotics.com/mar-31--2026
[6]   https://www.prnewswire.com/news-releases/encore-medical-device-repair-expands-instrument-repair-services-and-robotic-instrument-remanufacturing-programs-302737318.html
[7] https://www.restorerobotics.com/mar-31--2026 ("Intuitive Surgical, Inc. has granted approval under its contracts for Restore Robotics to remanufacture any EndoWrist that falls under the scope of any 510(k) clearance from the FDA.").

course this Court can plot, at this stage, that will not risk its work or the parties' pretrial work being undone by the Ninth Circuit's decision in *SIS*. If this case proceeds to trial and the Court adheres to the jury instruction it gave in *SIS*, then a reversal by the Ninth Circuit in *SIS* (which Plaintiffs say is likely) would require *two* new trials—one in *SIS* and one in this case. If, on the other hand, the Court were to give Plaintiffs' preferred jury instruction in this case and the Ninth Circuit affirms in *SIS*, a new trial in this case would also be required. And the Ninth Circuit's ruling will undoubtedly shape the presentation of proof at trial and thus the parties' pretrial work on exhibit lists, deposition designations, jury instructions, and motions in limine. Waiting to see how the Ninth Circuit rules in *SIS* would avoid some or all of this work needing to be done and redone multiple times.[8]

Plaintiffs alternatively suggest this case should be set for trial now because Plaintiffs have an alternative market definition theory that does not depend on proving a single-brand aftermarket. That is a red herring. Plaintiffs have *not* disclaimed their single-brand aftermarket theory. The Court will thus be required to instruct the jury on the standards for proving a single-brand aftermarket, just as it did in the *SIS* trial. At most, Plaintiffs can offer only the speculation that a jury might reject their single-brand market definition but accept their alternative market definition. But that does not avoid the problem. For example, it is at least equally likely the jury would reject *both* of Plaintiffs' theories, prompting a request for a new trial on the *Epic* issue.

So long as Plaintiffs continue to assert a single-brand aftermarket theory (as they do), there is no way for this Court to avoid addressing the legal standard that applies to that theory, which is the very question now pending before the Ninth Circuit in *SIS*. Proceeding to trial before the Ninth Circuit decides that question, or requiring the parties to expend time and resources conducting pretrial work in ignorance of how the Ninth Circuit's ruling will impact trial, makes no sense.

**3. The authorization issue is also before the Ninth Circuit and is another compelling reason to wait for a decision in *SIS*.** Plaintiffs also argue the Court need not wait on the Ninth Circuit to decide Intuitive's "authorization" defense, because they predict that the evidentiary record

---

[8] Complicating matters further, SIS and its amici have presented the Ninth Circuit with *multiple different versions* of the legal standard for market definition that they claim this Court should have applied in the *SIS* trial. Thus, even if the Court were inclined to deviate in some way from the single-brand market instruction it gave in the *SIS* trial, it would still risk giving an instruction that the Ninth Circuit might disapprove of or hold should be modified in the *SIS* appeal.

on that issue in this case will be different from *SIS*.  *Supra* 4–5.  But Plaintiffs point to the *same* evidence as SIS did—and, in particular, the *same* evidence this Court held *inadmissible* at trial and in pretrial rulings in *SIS*.  And developments in the marketplace since the conclusion of the *SIS* trial, *supra* 7–8, only bolster Intuitive's position that its authorization policy is not a "sham."  It would be wasteful and inefficient for this Court to hold pretrial and trial proceedings addressing Intuitive's authorization defense without the benefit of the Ninth Circuit's guidance.

Plaintiffs' argument also misconstrues the nature and significance of the authorization issue that is before the Ninth Circuit.  In the *SIS* appeal, Intuitive maintains that the record on third-party authorization provides an alternative and independent ground for affirming judgment as a matter of law in that case.  Whether or not a Ninth Circuit ruling agreeing with Intuitive on that issue would, as a technical legal matter, "bind" Plaintiffs in this action, it clearly will have an impact on pretrial and trial proceedings.  The authorization question is sure to present itself here in any number of different forms, including motions *in limine*, evidentiary objections, and Rule 50 motions.  It would be better and more efficient for this Court to know how the Ninth Circuit analyzes that issue before making such pretrial and trial decisions, rather than to find out only after the fact what the Ninth Circuit thinks.

Finally, for all the same reasons described above, the Ninth Circuit's ruling in *SIS* will provide valuable guidance to the parties themselves—on the central issues of market definition and authorization—that will help to focus and streamline trial preparation and avoid duplication of pretrial proceedings.  And given the importance of these legal issues, it is also likely that the Ninth Circuit's guidance will have at least some impact on settlement dynamics.

**4. Summary.**  The same issues currently before the Ninth Circuit in *SIS* will also have to be decided in this case.  The *SIS* appeal will be argued in just over a month.  It would be far more efficient for trial and pretrial scheduling to be set based on the Ninth Circuit's decision in *SIS*.

### III.    The Parties' Views About Whether Using ADR Would be Appropriate.

In early 2022, the Parties, with Court approval (Dkt. No. 77), retained private mediator Gregory Lindstrom of Phillips ADR.  Since then, they have had separate discussions with Mr. Lindstrom at various times. The Parties intend to continue working with Mr. Lindstrom.

DATED: May 7, 2026

By: *Daniel P. Weick*
    Daniel P. Weick

Manuel J. Dominguez (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Tel: 561-515-2604
Fax: 561-515-1401
Email: jdominguez@cohenmilstein.com

Benjamin D. Brown (SBN 202545)
Daniel McCuaig (*pro hac vice*)
Zachary Glubiak (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave., Suite 800
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699
Email: bbrown@cohenmilstein.com
       dmccuaig@cohenmilstein.com
       zglubiak@cohenmilstein.com

Christopher J. Bateman (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: 212-838-7797
Fax: 212-838-7745
Email: cbateman@cohenmilstein.com

Jeffrey J. Corrigan (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
Fax: 215-496-6611
Email: jcorrigan@srkattorneys.com
       jspector@srkattorneys.com

Jeannine M. Kenney (*pro hac vice*)
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: 215-985-3270
Fax: 215-985-3271
Email: jkenney@hausfeld.com

Reena A. Gambhir (*pro hac vice*)
HAUSFELD LLP
888 16th St NW
Washington, DC 20006
Tel: 202-540-7145
Fax: 202-540-7201
Email: rgambhir@hausfeld.com

Daniel P. Weick (pro hac vice)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: 646-647-1282
Fax: 212-202-4322
Email: dweick@hausfeld.com

Samuel Maida (SBN 333835)
Gary I. Smith, Jr. (SBN 344865)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, CA 94104 Tel: 415-633-1908
Fax: 415-358-4980
Email: smaida@hausfeld.com
       gsmith@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Class*

Michael J. Boni
BONI LAW FIRM LLC
1820 Rittenhouse Square
Philadelphia, PA 19103
Tel: 610-348-2526
Email: mike@boni.law

*Counsel for Plaintiffs and the Class*

Dated: May 7, 2026

By: *Paul D. Brachman*
William B. Michael (pro hac vice)
Crystal L. Parker (pro hac vice)
Daniel A. Crane (pro hac vice)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Paul D. Brachman *(pro hac vice)*
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc*

**FILER'S ATTESTATION**

I, Daniel P. Weick, am the ECF user whose ID and password are being used to file this document. I hereby attest pursuant to N.D. Cal. Civil. L.R. 5-1(h)(3) that each of the other signatories to this document have concurred in its filing.

DATED: May 7, 2026                              By: _Daniel P. Weick_
                                                    Daniel P. Weick