# Exhibit A to the Declaration of Class Counsel

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Civil Action No. 4:21-cv-03825<br><br>**SETTLEMENT AGREEMENT** |

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Settlement Agreement is made and entered into between and among (a) Plaintiffs, individually and on behalf of the Class Members, and (b) Defendant Intuitive Surgical, Inc. ("Intuitive" or "Defendant"), by and through their respective duly authorized counsel. When used collectively, Plaintiffs, Class Members, and Intuitive are referred to herein as the "Parties."

This Settlement Agreement is intended by the Parties to fully and finally compromise, resolve, discharge, release and settle Plaintiffs' Released Claims, and to dismiss the Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merit or lack of merit of any claim or defense by the Parties.

**WHEREAS:**

A. All words or terms used herein that are capitalized shall have the meaning ascribed to those words or terms as set forth herein in the section entitled "Definitions."

B. On May 20, 2021, Plaintiff Larkin Community Hospital filed a complaint against Defendant alleging violations of federal antitrust laws. On July 6, 2021, Plaintiffs Franciscan Alliance Inc. and King County Public Hospital District No. 1 (DBA Valley Medical Center) filed a complaint against Defendant alleging violations of federal antitrust laws. On September 10, 2021, plaintiffs Larkin Community Hospital, Franciscan Alliance, Inc., King County Public

Hospital District No. 1, DBA Valley Medical Center, and Kaleida Health filed a Consolidated Amended Class Action Complaint (the "Complaint," defined below). Plaintiffs allege, among other things, that Intuitive violated federal antitrust laws by tying the purchase or lease of a da Vinci to the purchase of da Vinci service from Intuitive, tying the purchase or lease of a da Vinci and da Vinci service to the purchase of replacement EndoWrists from Intuitive, entering into exclusive dealing arrangements with customers relating to da Vinci service and EndoWrists, and monopolizing alleged aftermarkets for da Vinci service and for EndoWrist repair and replacement.

C. On January 14, 2022, plaintiff Kaleida Health voluntarily dismissed its claims without prejudice.

D. On June 6, 2024, Plaintiffs moved the Court under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure for an order certifying the Action as a class action.

E. On March 31, 2025, the Court granted Plaintiffs' motion for class certification and certified the Class, as defined in the Court's March 31, 2025 Order.

F. Plaintiffs believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims asserted. Plaintiffs, however, recognize and acknowledge the expense, uncertain outcome, and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Based on their evaluation, Plaintiffs and Plaintiffs' Counsel believe that this Settlement Agreement confers substantial monetary and other benefits upon Class Members, and that it is fair, adequate, reasonable, and in the best interest of Class Members.

G. Intuitive has denied and continues to deny any wrongdoing or that it committed any act or omission giving rise to any liability or violation of the law. Intuitive has denied and continues to deny each and every one of the claims alleged by Plaintiffs in the Action, including

all claims asserted in Plaintiffs' Complaint. Intuitive enters into this Settlement Agreement for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate Plaintiffs' claims, and for the purpose of putting to rest the controversies with Plaintiffs and Class Members, without any admission of liability or wrongdoing whatsoever.

H. This Settlement Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of Intuitive with respect to any fact or matter alleged in the Action, or any claim of fault or liability or wrongdoing or damage whatsoever.

**NOW THEREFORE**, without any concession by Plaintiffs that the Action lacks merit, and without any concession by Intuitive of any liability or wrongdoing or lack of merit in its defenses,

**IT IS HEREBY STIPULATED AND AGREED**, by and among the Parties, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties, all Plaintiffs' Released Claims as against all Defendant's Released Parties shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, as set forth below:

## DEFINITIONS

1. As used in this Agreement, the following terms shall have the meaning set forth below. In the event of any inconsistency between any definitions set forth below and any definitions in any other document related to the Settlement Agreement, the definitions set forth herein shall control.

a) "Action" means the civil action captioned *In re: Da Vinci Surgical Robot Antitrust Litigation*, Case No. 4:21-cv-03825, pending in the United States District Court for the

Northern District of California before the Honorable Araceli Martínez-Olguín, United States District Judge.

b) "Eligible Claimant" means a Class Member who submits a timely, valid claim and is eligible for its share of the Net Settlement Fund.

c) "Claims Administrator" means the firm to be retained by Plaintiffs' Counsel, subject to Court approval, to (among other things) provide Notice and administer the Court-approved Plan of Allocation.

d) "Class" means all entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017, to December 31, 2021. Hospitals run by the Departments of Defense and Veterans Affairs are excluded from the Class.

e) "Class Member" means each member of the Class who did not request to be excluded from the Class by opting out on or before April 20, 2026.

f) "Plaintiffs" means Larkin Community Hospital, Franciscan Alliance, Inc., and King County Public Hospital District No. 1, DBA Valley Medical Center.

g) "Complaint" means the Consolidated Amended Class Action Complaint, filed in this Action on September 10, 2021.

h) "Court" means the United States District Court for the Northern District of California.

i) "Defendant" or "Intuitive" means Intuitive Surgical, Inc.

j) "Defendant's Counsel" means the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP.

k) "Defendant's Released Parties" means Defendant and each of its respective past or present parents, subsidiaries, affiliates, successors and predecessors; its current and former

respective officers, directors, employees, and agents; and individuals acting on behalf of the foregoing.

l) "Effective Date" means the date on which Final approval has been obtained in this Action, as set forth in Paragraph 43 below.

m) "Eligible EndoWrists" means S/Si and X/Xi models of Intuitive EndoWrist instruments purchased by customers. Eligible EndoWrists include those X/Xi EndoWrists capable of being used on the da Vinci 5.

n) "Escrow Account" means the separate escrow account designated by Plaintiffs' Counsel at one or more national banking institutions, controlled pursuant to Paragraphs 3 and 5, and into which the Settlement Amount will be deposited for the benefit of Class Members pursuant to this Settlement Agreement.

o) "Escrow Agent" means the national banking institutions or institutions designated by Plaintiffs' Counsel.

p) "Execution Date" means the date this Settlement Agreement shall be deemed to have been made and entered into, namely, October 16, 2026.

q) "FDA" means the United States Food and Drug Administration.

r) "Final," with respect to a court order (including the "Judgment," as defined below) means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration, or a petition for a writ of certiorari and, if certiorari is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on certiorari to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for certiorari

from the order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension) if any appeal or review is not sought. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Plan of Allocation, or to the Court's award of attorneys' fees or expenses or service awards, shall not in any way delay or affect the time set forth above for the Judgment, or otherwise preclude the Judgment from becoming Final.

s) "Judgment" means the proposed judgment to be submitted by Plaintiffs' Counsel (in substantially the form of Exhibit 1 attached hereto unless modified by mutual agreement of the Parties) as a proposed order to the Court.

t) "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and reimbursement of expenses; (ii) Court-awarded service awards to Plaintiffs; (iii) Notice and Administration Expenses; (iv) Taxes; and (v) any other fees or expenses approved by the Court.

u) "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with a notice plan, Plan of Allocation, and claims process ultimately approved by the Court.

v) "Notice" means the Court-approved Notice of Class Settlement to be disseminated to the Class.

w) "Person" or "Persons" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint

venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

x) "Plaintiffs' Counsel" means the law firms of Spector Caldes & Corrigan, P.C., Cohen Milstein Sellers & Toll LLP, Hausfeld LLP, and Boni Law Firm LLC, as well as other firms that have entered their appearance on behalf of Plaintiffs and the Class and have performed work at the direction of the Court-appointed Plaintiffs' co-lead counsel.

y) "Plaintiffs' Releasing Parties" means Plaintiffs, each Class Member, and each of their respective past or present parents, subsidiaries, affiliates, successors and predecessors; their current and former respective officers, directors, employees, and agents; and individuals acting on behalf of the foregoing.

z) "Plan of Allocation" means the plan for allocating the Net Settlement Fund to Eligible Claimants, as proposed by Plaintiffs' Counsel, described in the Notice, and approved by the Court, including any modification thereof approved by the Court.

aa) "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement.

bb) "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Settlement Agreement.

cc) "Settlement Agreement" means this Settlement Agreement.

dd) "Settlement Amount" means the total principal amount of $450,000,000.00 in cash.

ee) "Settlement Fund" means the Settlement Amount and any and all interest earned thereon.

ff) "Settlement Hearing" means the hearing to be held by the Court to decide Plaintiffs' motion for final settlement approval.

gg) "Parties" means Defendant, Plaintiffs, and Class Members.

**SETTLEMENT CONSIDERATION**

2. In consideration of the full release and discharge of all Plaintiffs' Released Claims, as specified herein, Defendant shall pay or cause to be deposited the Settlement Amount of $450,000,000.00 into the Escrow Account.

3. Defendant shall cause the Settlement Amount to be paid and deposited into the Escrow Account on or before thirty (30) calendar days after the entry of the Court's Preliminary Approval Order. As of the time that the Settlement Amount is deposited into the Escrow Account, Defendant shall no longer have any right, title or interest in the sums held in the Escrow Account except for a contingent interest in the event that the Effective Date does not occur.

4. The Settlement Amount is an all-in settlement number, meaning that it includes all attorneys' fees, service awards, Notice and Administration Expenses, Taxes, and costs of any kind associated with the resolution of the Action, if any. Other than the obligation of Defendant to pay or cause to be paid the Settlement Amount into the Escrow Account pursuant to Paragraph 5, Defendant shall have no obligation to make any payment into the Escrow Account or to any Plaintiff, Class Member, Plaintiffs' Counsel, or any other person or entity pursuant to this Settlement Agreement.

5. Promptly after the filing with the Court of the application for entry of the Preliminary Approval Order, Plaintiffs' Counsel and Defendant shall establish an interest-bearing Escrow Account in a bank of Plaintiffs' choosing. Plaintiffs' Counsel shall control the Escrow

Account until the Settlement becomes Final, with full transparency to Defendant, at which time Defendant shall relinquish all rights to the Escrow Account.

6. In addition to the monetary relief described above, the Parties agree to the following structural relief:

a) Consistent with the language currently on Intuitive's website, for a period of five years from the Effective Date, Intuitive will not void its service contract with, cease doing business with, or consider it a breach of contract by a customer in the United States who chooses to purchase remanufactured instruments that have been remanufactured by a third party pursuant to and in compliance with a 510(k) clearance or equivalent granted by the FDA. For agreements entered into for a period of five years from the Effective Date, Intuitive shall include in its United States (i) Sales, License, and Service Agreements and (ii) Use, License, and Service Agreements contractual language consistent with the language currently on Intuitive's website confirming that da Vinci customers may use refurbished or remanufactured Eligible EndoWrists that either (i) have received 510(k) clearance from the FDA; or (ii) have been authorized by Intuitive pursuant to Intuitive's Third Party Compatibility Program; *provided that*, in order to be authorized by Intuitive, a party that has not received 510(k) clearance from the FDA must stipulate that Intuitive takes no responsibility for that party's regulatory compliance and will indemnify Intuitive for any liability arising from regulatory non-compliance.

b) Intuitive shall maintain in the United States for a period of time promptly from the Effective Date until five years thereafter, an authorization process for the refurbishment and use-counter reset of Eligible EndoWrists continuously owned by their original purchaser, including (i) making available, on commercially reasonable terms, to customers and legitimate independent third-party companies who participate in Intuitive's Third Party Compatibility

Program each Eligible EndoWrist's technical specifications reasonably necessary to conduct safety and reliability testing (provided that all customers or third parties accessing such technical specifications agree to limit use of any such specifications to the authorized servicing of Eligible EndoWrists and not to disclose or use them for any other purpose); (ii) providing a reasonable opportunity for customers and legitimate independent third-party companies to demonstrate (based on transparent and objective criteria), and to provide Intuitive with necessary and sufficient information (including technical specifications) to evaluate, their ability to dependably return Eligible EndoWrists to OEM specs and function with equal safety and reliability as the original instrument, at which point Intuitive will (A) authorize such servicing (for continued customer use, not for resale), *provided that*, in order to be authorized by Intuitive, a party that has not received 510(k) clearance from the FDA must respect and not infringe Intuitive's intellectual property and must stipulate that Intuitive takes no responsibility for that party's regulatory compliance and will indemnify Intuitive for any liability arising from regulatory non-compliance; and (B) provide compatibility with the da Vinci system for authorized instruments from entities who participate in Intuitive's Third Party Compatibility Program and have reset use counters on Eligible EndoWrists; *provided, however*, that if the FDA at any point issues a Final Rule, Advisory Opinion, or equivalent order that such activities require 510(k) clearance, this Paragraph 6(b)(ii) shall be nullified and have no force or effect.

c) For a period of five years from the Effective Date, Intuitive shall in the United States refrain from any threats or acts to void da Vinci robot warranties, cease da Vinci robot servicing, or stop selling EndoWrists for use with a da Vinci robot to which an authorized or 510(k)-cleared refurbished or remanufactured EndoWrist instrument has been attached absent evidence that the instrument damaged the robot or caused it to malfunction, or endangers the safety

of patients; *provided that* nothing in this Agreement shall be construed as an admission by Intuitive that it has engaged in any such conduct in the past and *provided that*, Intuitive will be under no obligation to warranty an Eligible EndoWrist that has been refurbished, remanufactured, or otherwise serviced by a third party.

d) For a period of five years from the Effective Date, Intuitive shall in the United States refrain from taking any action that prohibits authorized independent third-party companies or remanufacturers, or entities whose refurbished and remanufactured Eligible EndoWrists have received 510(k) clearance, to provide modified or refurbished Eligible EndoWrists, including any conduct that prevents customers from providing used Eligible EndoWrists to authorized independent third-party companies or remanufacturers or entities whose refurbished and remanufactured Eligible EndoWrists have received 510(k) clearance; *provided that* nothing in this Agreement shall be construed as an admission by Intuitive that it has engaged in any such conduct in the past and *provided that*, Intuitive may freely advocate the superiority of its own instruments, servicing, and processes and offer any lawful pricing or other contractual terms to encourage customers to recycle their instruments with Intuitive, purchase instruments from Intuitive, have Intuitive service their instruments, or otherwise to do business with Intuitive rather than any third party.

e) For a period of five years from the Effective Date, Intuitive shall maintain, develop and pilot, with the goal and expectation of implementing, an authorization process for United States hospitals or third-party independent service organizations to conduct preventative maintenance and field-based repairs for da Vinci X/Xi robots; *provided that*, (i) to obtain and maintain authorization, such hospitals or other third parties must acquire a license from Intuitive, which includes compliance with training curriculum, demonstration of essential business and

technological capability (e.g., credit-worthiness and use of a quality-management system sufficient to respond to FDA inquiries triggered by adverse events), payment of applicable fees (which shall be cost-based and commercially reasonable), agreement to respect and not infringe Intuitive's intellectual property, and support of Intuitive's OEM safety and compliance obligations; (ii) subject to payment of applicable fees and costs (including those for training, toolkits, periodic tool calibration, and annual software licenses), servicing engineers licensed by Intuitive will receive access to Intuitive service training, software, and other necessary tools and services to ensure effective servicing, safety, and compliance with other terms of license; (iii) authorized hospitals and third parties must comply with Intuitive protocols to maintain logs of device history and ensure traceability; (iv) service activities that jeopardize Intuitive's ability to service devices, meet regulatory requirements, or preserve intellectual property will be excluded from the scope of authorized activities; (v) Intuitive will provide authorized hospitals and authorized third parties with reasonable access to parts (generally within 1 business day of request; authorized hospitals and authorized third parties also will be permitted to stock Intuitive parts but not to resell them other than in conjunction with authorized service) necessary to conduct authorized service activities (subject to payment of applicable fees and costs, which shall be no greater than the materials costs paid pursuant to Intuitive's "Time and Materials" contracts). For the avoidance of doubt, selling (other than authorized services), upgrading, rebuilding, and new product development and engineering activities are outside the scope of the licenses and authorized service activities referenced in this Paragraph 6(e). The Parties acknowledge and agree that Intuitive's current projected launch timing for a pilot of the program described in this Paragraph 6(e), for which Intuitive's preparations will reasonably begin and not wait for preliminary or final settlement approval, to include a limited number of participating United States hospitals, is Q1

2028; that Intuitive projects the initial piloting phase to take 18-24 months; and that subsequent expansion and roll-out of the program will be subject to the results of the pilot phase.

7. The Parties acknowledge and agree that nothing in this Settlement Agreement is intended to impede innovation by Intuitive nor shall anything in this Settlement Agreement prevent Intuitive from making bona fide product improvements in either instruments or surgical robots. Further, for the avoidance of doubt, introduction of the new enhanced security chips related to Intuitive's May 21, 2026 press release will not be deemed a breach of this Settlement Agreement, and Intuitive will not have any obligation to assist third parties in bypassing encryption or resetting the use counter on such chips. Intuitive will abide by Paragraph 6(b)(ii)(B) as to Eligible EndoWrists containing such chips.

8. After the Settlement contemplated herein becomes Final, the Parties agree to submit any dispute in connection with the Settlement, or any antitrust, competition, or comparable claim except for any claims alleging collusion between Intuitive and any competitor, accruing in the period of five years from the Effective Date, to alternative dispute resolution, consisting of mandatory mediation by videoconference (if agreed by the Parties) or in San Francisco, California, followed by binding arbitration, if necessary, before a panel of neutral experts to be mutually selected by the Parties and with costs divided between Intuitive and the Class Member(s) initiating such proceeding. Where an issue in dispute may apply broadly to Class Members, the Parties will meet and confer about an appropriate procedure for pursuing class-based resolution in arbitration.

## <u>SCOPE AND EFFECT OF SETTLEMENT AND RELEASE</u>

9. The obligations incurred pursuant to this Agreement are in full and final disposition of the claims in the Action with respect to the Defendant's Released Parties. Plaintiffs' Releasing Parties hereby release the Defendant's Released Parties, subject to the conditions subsequent

contained in Paragraph 43 below, from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity that any Class Member ever had, now has, or hereafter can, shall, or may in the future have, and that have accrued as of the Settlement Effective Date or accrue no later than five years after the Effective Date, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Defendant's Released Parties that are or have been alleged or otherwise raised in the Action or that could have been alleged or otherwise raised in the Action, including but not limited to any claims based on or relating to the future effect in the United States of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act. This release also includes Unknown Claims as defined herein. This release is referred to herein as "Plaintiffs' Released Claims." Plaintiffs' Released Claims do not include any claims relating to the enforcement of the Settlement. This release extends to, but only to, the fullest extent permitted by federal law.

10. "Unknown Claims" means any and all Plaintiffs' Released Claims that any Plaintiff or other Class Member does not know or suspect to exist in his, her, or its favor at the Effective Date, which if known by him, her, or it might have affected his, her, or its decision with respect to the Settlement, including the decision of a Plaintiff or other Class Member to object to the terms of the Settlement. The Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall have, and each other Class Member shall be deemed to have, and by operation of the Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any

and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

11. Plaintiffs or other Class Members may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the subject matter of the Plaintiffs' Released Claims, but Plaintiffs expressly, fully, finally, and forever settle and release, and each Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Plaintiffs' Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. For the avoidance of doubt, this Settlement is not intended to, and does not, release any claims between Plaintiffs, Class Members, and Defendant's Released Parties that are unrelated to Plaintiffs' Released Claims or Defendant's Released Claims, including claims unrelated to Plaintiffs' Released Claims or Defendant's Released Claims arising under Article 2 of the Uniform Commercial Code (pertaining to the sales of goods), or claims unrelated to Plaintiffs' Released Claims or Defendant's Released Claims for negligence, product liability, breach of implied or expressed warranty, breach of contract, or personal injury. Claims solely to enforce the terms of this Settlement Agreement are not released.

12. By operation of the Judgment, Plaintiffs and each and every other Class Member, on behalf of themselves and each of their respective predecessors, successors, affiliates, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and

dismissed each and every one of the Plaintiffs' Released Claims against each and every one of the Defendant's Released Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Plaintiffs' Released Claims against any and all of the Defendant's Released Parties, subject only to the occurrence of the Effective Date.

13. Plaintiffs and each and every other Class Member on behalf of themselves and each of their respective predecessors, successors, affiliates, and assigns covenants and agrees that it shall not, hereafter, seek to establish, or permit another to act for it in a representative capacity to seek to establish, liability against any of Defendant's Released Parties based, in whole or in part, upon any conduct covered by any of the claims released in Paragraph 12 above.

14. Upon the Effective Date, Defendant and Defendant's Released Parties shall release Plaintiffs, the Class, and Plaintiffs' Counsel from any claims arising from or relating to the institution, prosecution, settlement, or subject matter of the Action. This release is referred to herein as "Defendant's Released Claims." Defendant's Released Claims do not include any claims relating to the enforcement of the Settlement Agreement.

15. Plaintiffs and the other Class Members acknowledge and agree, collectively and individually herein that, if Intuitive complies with subsections (a) through (e) of Paragraph 6 herein, Intuitive's conduct in furtherance of such compliance will be reasonable based on all the facts and circumstances and no Plaintiff or Class Member shall contend in any forum that Intuitive's compliance with those provisions constitutes a violation of any antitrust, competition, or comparable law. Plaintiffs and Class Members further agree that no Plaintiff or Class Member shall bring any antitrust, competition, or comparable claim against Defendant based on or relating to such conduct.

**USE AND TAX TREATMENT OF SETTLEMENT FUND**

16. The Settlement Fund shall be used: (a) to pay any Taxes; (b) to pay Notice and Administration Expenses; (c) to pay any attorneys' fees and expenses awarded by the Court; (d) to pay any other fees, expenses and/or service awards awarded by the Court; and (e) to pay the claims of Eligible Claimants.

17. The Net Settlement Fund shall be distributed to Eligible Claimants in the manner approved by the Court. The Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held in the Escrow Account and all earnings thereon, shall be deemed to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Settlement Agreement, or further order of the Court. The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction accounts that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance. Defendant's Counsel shall have the right to approve the escrow agreement with the Escrow Agent.

18. After the Settlement Amount has been paid into the Escrow Account, the parties hereto agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1. Defendant shall have the option of whether the Qualified Settlement Fund shall be deemed to have come into existence at the earliest possible date and, at the election of Defendant, (i) the Settlement Fund shall be treated as a Qualified Settlement Fund from the earliest date possible, and (ii) the Parties shall agree to any relation-back election required to treat the Escrow Accounts as a Qualified Settlement Fund from the earliest

date possible. Defendant's Counsel agrees to timely provide to the Escrow Agents the statement described in Treasury Regulation § 1.468B-3(e).

19. All Taxes resulting from the tax liabilities of the Settlement Fund arising after transfer to the Escrow Account shall be paid solely out of the Settlement Fund. In all events, Defendant and Defendant's Counsel shall have no liability or responsibility whatsoever for such Taxes or the filing of any tax return or other document with the Internal Revenue Service or any other state or local taxing authority. Any Taxes or tax expenses owed on the Settlement Amount prior to its Transfer to the Escrow Account shall be the sole responsibility of the entities that make the deposit. Neither the Settlement Fund nor Defendant shall be responsible for any taxes owed by Plaintiffs or any Class Members as a result of any distributions to them out of the Settlement Fund.

20. Except as provided in Paragraph 43, Defendant's Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the maintenance, investment or distribution of the Settlement Fund, the establishment or maintenance of the Escrow Accounts, the terms or administration of the Plan of Allocation or of any plan of allocation, the determination, administration, or calculation of Class Member claims, the payment or withholding of Taxes, the distribution or disbursement of the Net Settlement Fund, the administration of the Settlement, or any other expenses or losses in connection with such matters. Without limiting the foregoing, the Settlement Fund shall be the sole source of Taxes, Notice and Administration Expenses, attorneys' fees and expenses, service awards, and other expenses, and there shall be no recourse against Defendant's Released Parties for any such expenses.

## ATTORNEYS' FEES AND EXPENSES

21. Plaintiffs' Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation expenses incurred in prosecuting the Action, plus any

interest earned on such amounts at the same rate and for the same periods as earned by the Settlement Fund.

22. The amount of attorneys' fees and expenses is within the sole discretion of the Court. Subject to Court approval, any attorneys' fees and expenses awarded by the Court may be paid to Plaintiffs' Counsel immediately after entry of the Order approving such attorneys' fees and expenses , notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.

23. Any payment of attorneys' fees and litigation expenses pursuant to Paragraph 22 above shall be subject to Plaintiffs' Counsel's obligation to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued earnings at the same net rate as if earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Settlement Agreement or fails to become effective for any reason or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or litigation expenses is reduced or reversed by a Final non-appealable court order. Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than fifteen (15) calendar days after receiving notice from a court of appropriate jurisdiction of the termination of the Settlement or notice of any reduction or reversal of the award of attorneys' fees or litigation expenses by a Final non-appealable court order.

## ADMINISTRATION OF THE SETTLEMENT

24. All Class Members will be bound by all of the terms of this Settlement Agreement, including without limitation the terms of the Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Defendant's Released Parties concerning Plaintiffs' Released Claims, regardless of whether they are an Eligible Claimant.

25. Given the structural relief afforded by this Settlement under Fed. R. Civ. P. 23(b)(2), as well as the prior opportunity (and deadline) to opt-out of the Class, Class Members shall not be permitted an additional opportunity to opt out of this Settlement.

26. Subject to Court approval, Plaintiffs' Counsel shall engage a qualified Claims Administrator that will assist with the claims process as set forth herein using best practices. Subject to Court-approval, the Claims Administrator shall effectuate the notice plan, disseminate the Notice, administer and calculate the claims submitted by Class Members, and distribute the Net Settlement Fund to Eligible Claimants in accordance with the Plan of Allocation approved by the Court, subject to the oversight of Plaintiffs' Counsel. If it is impossible or impractical for Plaintiffs to find information from other available sources, Defendant will use commercially reasonable efforts to cooperate in claims administration to update Class Member information.

27. Plaintiffs' Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Plaintiffs' Counsel may advise the Claims Administrator to waive what Plaintiffs' Counsel deems to be immaterial defects in any claim form submitted. Defendant and Defendant's Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging of claims of Class Members. Plaintiffs' Counsel may not cancel or terminate this Settlement Agreement based on the Claims Administrator's, the Court's, or any appellate court's decision with respect to any claim form or any other claim by any Class Members to any portion of the Settlement Fund.

28. Each claimant who submits a claim form shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim. In connection with processing the claim form, no discovery shall be allowed on the merits of the Action or the Settlement.

29. Payment shall be deemed final and conclusive against any and all Class Members. All Class Members shall be bound by all of the terms of this Settlement Agreement regardless of whether their claim has been denied in accordance with the Court-approved Plan of Allocation, including without limitation the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Defendant's Released Parties concerning Plaintiffs' Released Claims.

30. All proceedings with respect to the administration, processing and determination of Class Member claims relating to the Net Settlement Fund described by this Settlement Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.

31. No Person shall have any claim of any kind against the Defendant's Released Parties or Defendant's Counsel with respect to the matters set forth in this section, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

32. No Person shall have any claim against Plaintiffs, any other Class Member, Plaintiffs' Counsel, the Claims Administrator, or any other agent designated by Plaintiffs' Counsel, based on the distributions made substantially in accordance with this Settlement Agreement and the Settlement contained herein, the Plan of Allocation, or further orders of the Court.

**DISTRIBUTION TO ELIGIBLE CLAIMANTS**

33. Plaintiffs' Counsel will move for Court-approval of a Claims Administrator, notice plan, Plan of Allocation, and claims process. As with all motions filed with the Court, Plaintiffs' Counsel will first send a copy to Defendant's Counsel and seek their agreement not to oppose the motion.

34. Subject to Court approval, the Plan of Allocation will provide that payment from the Net Settlement Fund to Eligible Claimants will be made promptly after the Effective Date.

35. The Claims Administrator shall administer the Settlement pursuant to the Court-approved Plan of Allocation and claims process, under Plaintiffs' Counsel's supervision and subject to the jurisdiction of the Court. Defendant and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Class in connection with such administration.

36. Defendant has no role in the development of, and will take no position with respect to, the Plan of Allocation. The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular plan of allocation be approved by the Court. Plaintiffs' Counsel may not cancel or terminate this Settlement Agreement based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the action. Defendant shall have no responsibility or liability for reviewing or challenging claims, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

37. Any balance that may remain in the Net Settlement Fund after exhaustion of payments made under the Plan of Allocation shall be contributed to non-sectarian, not-for-profit charitable organizations serving the public interest and reasonably related to the goals of the Action, as designated by Plaintiffs' Counsel and approved by the Court, or may, without further order of the Court, be escheated pursuant to appropriate unclaimed property law.

## ADMINISTRATION EXPENSES

38. Except as otherwise provided herein, the Settlement Fund shall be held in the Escrow Account until the Effective Date.

39. Prior to the Effective Date, Plaintiffs' Counsel may pay from the Settlement Fund, without further approval from Defendant or the Court, Notice and Administration Expenses reasonably and actually incurred up to the sum of $250,000, including, without limitation, locating Class Members, soliciting Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Eligible Claimants, and processing claim forms. All Notice and Administration Expenses incurred in excess of $250,000 shall be paid from the Settlement Fund, subject to approval from the Court. Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid as incurred..

## COURT APPROVAL OF THE SETTLEMENT

40. No later than November 20, 2026 or any other date directed by the Court, Plaintiffs' Counsel shall move on notice to Defendant's Counsel for entry of the Preliminary Approval Order. The Preliminary Approval Order will, *inter alia*, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Class.

41. No later than twenty-eight (28) calendar days prior to the Settlement Hearing or on any other date directed by the Court, and unless the Settlement has otherwise been terminated pursuant to this Settlement Agreement, Plaintiffs' Counsel shall move on notice to Defendant's Counsel for (a) final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (b) entry of the Judgment; (c) approval of the Plan of Allocation; and (d) an award of attorneys' fees and/or expenses and service awards.

42. Plaintiffs' Counsel shall provide a draft of all papers to be submitted on its motions for preliminary and final approval to Defendant's Counsel before such motions are filed. Plaintiffs'

Counsel agrees to consider any comments or edits to such papers proposed by Defendant's Counsel in good faith, and incorporate such comments or edits as appropriate in the discretion of Plaintiffs' Counsel.

**EFFECTIVE DATE OF SETTLEMENT**

43. The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been expressly waived:

a) entry of the Preliminary Approval Order;

b) payment of the Settlement Amount into the Escrow Account;

c) approval by the Court of the Settlement, following notice to the Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

d) a judgment that adopts the substantive terms agreed to in this Settlement Agreement will have been entered by the Court and will have become Final.

44. Within fifteen (15) business days of: (a) the Court's entry of an order expressly declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Settlement Agreement or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect and such modification or reversal becomes Final, Plaintiffs and Defendant shall each have the right to terminate the Settlement and this Settlement Agreement, by providing written notice to the other of an election to do so; *provided, however,* that any decision, ruling, or order solely with respect to an application for attorneys' fees, expenses, service awards, or to any Plan of Allocation shall not be grounds for termination.

45. If Defendant or Plaintiffs exercise the right to terminate the Settlement pursuant to Paragraph 44:

a) this Settlement Agreement shall be canceled and terminated;

b) the Effective Date shall not occur;

c) Plaintiffs and Defendant shall be restored to their respective positions as of October 9, 2026;

d) the terms and provisions of this Settlement Agreement, with the exception of Paragraphs 19, 23, 39, 45, and 46 herein, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding by anyone for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and

e) within ten (10) business days after any such termination, the Settlement Fund (including accrued interest), less any allowable Notice and Administration Expenses that have either been disbursed, or are determined to be incurred and chargeable as Notice and Administration Expenses, and less any Taxes paid or owing, shall be refunded by the Escrow Agents to Defendant. At the request of Defendant, the Escrow Agents shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Defendant.

**NO ADMISSION**

46. Except as set forth in Paragraph 47 below, this Settlement Agreement, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to this Settlement Agreement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

a) do not constitute, and shall not be offered or received against or to the prejudice of Defendant as evidence of, or construed as, or deemed to be evidence of any

presumption, concession, or admission by Defendant with respect to the truth of any allegation by Plaintiffs and Class Members, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including, but not limited to, Plaintiffs' Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendant or any person or entity whatsoever;

b) do not constitute, and shall not be offered or received against or to the prejudice of Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentation, omission, or other wrongdoing or actionable conduct with respect to Defendant, or against or to the prejudice of Plaintiffs or any other member of the Class as evidence of any infirmity in the claims of Plaintiffs or any Class Members;

c) do not constitute, and shall not be offered or received against or to the prejudice of the Defendant, Plaintiffs, any Class Members, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendant, Plaintiffs, Class Members, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

d) do not constitute, and shall not be construed against the Defendant, Plaintiffs, or Class Members, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

e) do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or Class Members that any of their

claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; and

f) do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Defendant that any of its defenses are without merit or infirm or the amount of damages, if any, that would have been recoverable in the Action.

47. The Parties, and their respective counsel, may file this Settlement Agreement and the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy. The Parties may file this Settlement Agreement and the Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and the Judgment.

**MISCELLANEOUS PROVISIONS**

48. The Judgment is a material and integral part hereof and is fully incorporated herein by reference.

49. The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted with respect to the Plaintiffs' Released Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Parties and their counsel agree that each has complied fully with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree that the amount paid and the other terms of the

Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel, and with the assistance of an effective and experienced mediator.

50. This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto or their successors.

51. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

52. The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court for the purpose of entering orders providing for awards of attorneys' fees and any expenses and service awards and implementing and enforcing the terms of this Settlement Agreement.

53. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

54. This Settlement Agreement and the Judgment constitute the entire agreement among the Parties concerning the Settlement, and no representation, warranty, or inducement has been made by any Party concerning this Settlement Agreement and the Judgment other than those contained and memorialized in such documents.

55. Nothing in this Settlement Agreement, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

56. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement.

57. All designations and agreements made, or orders entered, during the course of the Action relating to the confidentiality of documents or information shall survive this Settlement Agreement.

58. This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures sent by facsimile or via e-mail in portable document format (PDF) shall be deemed originals.

59. This Settlement Agreement shall be binding when signed, but the Settlement shall only be effective upon the entry of the Judgment that becomes Final and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

60. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

61. The construction, interpretation, operation, effect, and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the law of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

62. This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, with the assistance of an effective and experienced mediator, and all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

63. All counsel and any other person executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

64. Plaintiffs' Counsel, with the full cooperation of Defendant's Counsel, will promptly file Plaintiffs' motion for preliminary settlement approval and for a Settlement Hearing date. Plaintiffs' Counsel, with the full cooperation of Defendant's Counsel, will file Plaintiffs' motion for final settlement approval. Plaintiffs' Counsel will also file Plaintiffs' petition for attorneys' fees, expenses, and service awards for consideration at the Settlement Hearing. The Parties and their counsel will promptly execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement.

65. The Parties and their counsel agree to cooperate fully with one another in issuing public statements regarding the Settlement. Consent to another Party's public statements shall not be unreasonably withheld.

66. Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs.

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as of October 16, 2026.

DATED: October 16, 2026

By: /s/ Manuel J. Dominguez
Manuel J. Dominguez (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL LLP
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Tel: 561-515-2604
Fax: 561-515-1401
Email: jdominguez@cohenmilstein.com

Benjamin D. Brown (SBN 202545)
Daniel McCuaig (*pro hac vice*)
Zachary Glubiak (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL LLP
1100 New York Ave., Suite 800
Washington, DC 20005
Tel: 202-408-4600
Fax: 202-408-4699
Email: bbrown@cohenmilstein.com
dmccuaig@cohenmilstein.com
zglubiak@cohenmilstein.com

Christopher J. Bateman (*pro hac vice*)
COHEN MILSTEIN SELLERS &
TOLL LLP
199 Water Street, 21st Floor
New York, NY 10038
Tel: 212-838-7797
Fax: 212-838-7745
Email: cbateman@cohenmilstein.com

By: /s/ Jeffrey J. Corrigan
Jeffrey J. Corrigan (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
SPECTOR CALDES & CORRIGAN, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
Fax: 215-496-6611
Email: jcorrigan@scc.law
jspector@scc.law

By: /s/ Reena A. Gambhir
Reena A. Gambhir (*pro hac vice*)
HAUSFELD LLP
888 16th St NW
Washington, DC 20006
Tel: 202-540-7145
Fax: 202-540-7201
Email: rgambhir@hausfeld.com

Jeannine M. Kenney (*pro hac vice*)
HAUSFELD LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
Tel: 215-985-3270
Fax: 215-985-3271
Email: jkenney@hausfeld.com

Daniel P. Weick (*pro hac vice*)
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: 646-647-1282
Fax: 212-202-4322
Email: dweick@hausfeld.com

Samuel Maida (SBN 333835)
Gary I. Smith, Jr. (SBN 344865)
Bonny E. Sweeney (SBN176174)
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, CA 94104 Tel: 415-633-1908
Fax: 415-358-4980
Email: smaida@hausfeld.com

gsmith@hausfeld.com
bsweeney@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Class*

By: */s/ Michael J. Boni*
Michael J. Boni
BONI LAW FIRM LLC
1820 Rittenhouse Square
Philadelphia, PA 19103
Tel: 610-348-2526
Email: mike@boni.law

*Counsel for Plaintiffs and the Class*

Dated: October 16, 2026

By: *<u>/s/ William B. Michael</u>*_________

William B. Michael (pro hac vice)
Crystal L. Parker (pro hac vice)
Daniel A. Crane (pro hac vice)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: wmichael@paulweiss.com
Email: cparker@paulweiss.com
Email: dcrane@paulweiss.com

Paul D. Brachman *(pro hac vice)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 204-7420
Email: kgallo@paulweiss.com
Email: pbrachman@paulweiss.com

Joshua Hill Jr. (SBN 250842)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
Email: jhill@paulweiss.com

*Attorneys for Defendant Intuitive Surgical, Inc*

## SCHEDULE OF EXHIBIT

- **Exhibit 1**: [Proposed] Final Order and Judgment Approving Class Action Settlement

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Action No. 4:21-cv-03825-AMO<br><br>**[PROPOSED] FINAL ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT** |

WHEREAS, Plaintiffs' Counsel, on behalf of the Class, on the one hand, and Defendant Intuitive Surgical, Inc. ("Intuitive"), on the other hand, entered into a Settlement Agreement in the above-entitled litigation (the "Action"), filed in this Action on __________, 2026 that provides for a complete dismissal with prejudice of the claims asserted in the Action against Intuitive on the terms and conditions set forth in the Settlement Agreement, subject to the approval of this Court; and

WHEREAS, pursuant to the Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, entered on __________, 2026 (the "Preliminary Approval Order"), the Court scheduled a hearing for __________, 2027, at __________ (the "Settlement Hearing") to, among other things: (i) determine whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court; and (ii) determine whether a judgment dismissing the Action with prejudice as provided for in the Settlement Agreement should be entered; and

WHEREAS, the Court ordered that the Notice of Class Settlement (the "Notice") be mailed as soon as practicable after the date of entry of the Preliminary Approval Order ("Notice Date") to all Class Members. The Notice advised Class Members of the date, time, place, and purpose of

the Settlement Hearing. The Notice further advised that any objection to the Settlement was required to be filed with the Court and served on counsel for the Settling Parties such that it would be received by __________, 2026; and

WHEREAS, the provisions of the Preliminary Approval Order as to notice were fully complied with and notice to the Class was given in the manner required by the Court; and WHEREAS, the Settlement Hearing was duly held before this Court on ________, 2027, at which time all interested Persons were afforded the opportunity to be heard; and

WHEREAS, this Court has duly considered Plaintiffs' Counsel's motion, all papers and evidence submitted in connection therewith, the Settlement Agreement, [all timely objections to the Settlement [or fee petition]], and all of the submissions and arguments presented at the Settlement Hearing with respect to the proposed Settlement; and

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. This Final Approval Order and Judgment ("Judgment") incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used in this Judgment that are not otherwise defined herein shall have the same meanings as set forth in the Settlement Agreement.

2. This Judgment incorporates and makes a part hereof: (a) the Settlement Agreement filed with the Court on ________, 2026; and (b) the Notice, which also was filed with the Court on ________, 2026.

3. This Court has jurisdiction over the subject matter of the Action and over all Parties and all Class Members.

4. The Notice: (i) was provided and made in full compliance with the Preliminary Approval Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated to apprise the Class of the terms of Settlement, Plaintiffs Counsel's application for an award of attorney's fees, costs, and expenses incurred in connection with the Action, of Class Members' right to object to the Settlement or Plaintiffs' Counsel's application for an award of attorney's fees, costs and expenses, and service awards to Plaintiffs, and of the right of Class Members to appear at the Settlement Hearing; (iv) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (v) fully satisfied the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause of the Fifth Amendment to the Constitution), and all other applicable law and rules.

5. [*In the event any objections to the Settlement are filed*]. The Court has considered any objections to the Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure. The Court finds and concludes that each of the objections is without merit, and they are hereby overruled.

6. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, and in light of the substantial benefits provided to the Class by the Settlement, the complexity, expense, and possible duration of further litigation of the Action, including any possible appeals, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the Settlement as set forth in the Settlement Agreement in all respects, and finds that the Settlement is in all respects fair, reasonable and adequate, and in the best interests of Plaintiffs, the Class, and the Class Members. This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length

negotiations conducted by experienced counsel representing the interests of their respective Parties.

7. The Complaint is hereby dismissed in its entirety, with prejudice, and without costs to any Party, except as otherwise provided in the Settlement Agreement.

8. The release as set forth in Paragraph 12 of the Settlement Agreement (the "Release"), together with the definitions contained in Paragraph 1 of the Settlement Agreement relating thereto, are expressly incorporated herein in all respects. The Release is effective as of the Effective Date unless otherwise indicated in the Settlement Agreement. Accordingly, this Court orders that, as of the Effective Date, and without limiting the scope of the Release as set forth in the Settlement Agreement: By operation of the Judgment, Plaintiffs and each and every other Class Member on behalf of themselves and each of their respective past or present predecessors, successors, assigns, parents, subsidiaries, and affiliates shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of Plaintiffs' Released Claims as against each and every one of Defendant's Released Parties, and shall forever be barred, enjoined, and restrained from commencing, instituting, prosecuting or maintaining any and all of Plaintiffs' Released Claims against any and all of Defendant's Released Parties. By operation of the Judgment, Defendant and Defendant's Released Parties shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of Defendant's Released Claims as against each and every one of Plaintiffs, the Class, and Plaintiffs' Counsel, and shall forever be barred, enjoined, and restrained from commencing, instituting, prosecuting or maintaining any and all of Defendant's Released Claims against any and all of Plaintiffs, the Class, and Plaintiffs' Counsel.

9. Each Class Member, whether or not an Eligible Claimant, is bound by this Judgment, including, without limitation, the Release set forth above.

10. The terms of the Settlement Agreement and of this Judgment shall be forever binding on the Parties and Class Members, as well as all of their successors and assigns.

11. This Judgment and the Settlement Agreement, whether or not this Judgment becomes Final, and any discussions, negotiations, proceedings, agreements or other papers relating to the Settlement Agreement, the Settlement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the Parties, or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a.) do not constitute, and shall not be offered or received against or to the prejudice of Intuitive as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by Intuitive with respect to the truth of any allegation by Plaintiffs and the Class, or the validity of any claim that has been or could have been asserted in the Action or in any litigation, including, but not limited to, Plaintiffs' Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Intuitive or any Person whatsoever;

(b.) do not constitute, and shall not be offered or received against or to the prejudice of Intuitive as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Intuitive, or against or to the prejudice of Plaintiffs or any other members of the Class as evidence of any infirmity in the claims of Plaintiffs or any Class Members;

(c.) do not constitute, and shall not be offered or received against or to the prejudice of Intuitive or Defendant's Counsel, as evidence of a presumption, concession, or

admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of Intuitive or Defendant's Counsel, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement;

(d.) do not constitute, and shall not be construed against Intuitive, Plaintiffs, or Class Members, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

(e.) do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or Class Members that any of their claims are without merit or infirm or that damages recoverable under the Complaint would not have exceeded the Settlement Amount; and

(f.) do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Intuitive that any of its defenses are without merit or infirm or the amount of damages, if any, that would have been recoverable in the Action.

12. Any dispute among the Parties that the Settlement Agreement identifies as arbitral shall be submitted to alternative dispute resolution in accordance with the procedures set forth in the Settlement Agreement.

13. If the Effective Date does not occur or the Settlement is terminated in accordance with the terms of the Settlement Agreement, then this Judgment (and any orders of the Court relating to the Settlement) shall be vacated, rendered null and void, and be of no further force or effect, except as otherwise provided by the Settlement Agreement.

14. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (i) any applications for attorneys' fees, costs, interest, and payment of

expenses in the Action; (ii) the Class Members for purposes of adjudicating any dispute relating to a claim to the Settlement Fund; and (iii) any motion to approve the Plan of Allocation.

15. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

16. The Parties are hereby directed to consummate the Settlement Agreement and to perform its terms.

17. A separate order shall be entered regarding Plaintiffs' Counsel's application for attorneys' fees and payment of expenses, and service awards to Plaintiffs, as allowed by the Court. A separate order shall be entered regarding the Plan of Allocation. Such orders shall in no way disturb or affect this Judgment and shall be considered separate and apart from the Settlement Agreement and this Judgment.

18. There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

__________________________________
Araceli Martínez-Olguín
UNITED STATES DISTRICT JUDGE