UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Case No. 4:21-cv-03825-AMO<br><br>Judge Araceli Martínez-Olguín |

**DECLARATION OF GREGORY P. LINDSTROM, ESQ.**

I, Gregory P. Lindstrom, hereby declare under penalty of perjury:

1. I am a mediator, arbitrator and independent panelist at Phillips ADR. I was retained to act as a mediator between the parties in the above-captioned matter and make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of their settlement with Defendant Intuitive Surgical, Inc. ("Intuitive"). I have personal knowledge of the facts hereinafter stated.

2. I have functioned as a full-time neutral mediator and arbitrator since 2012. Since then, I have mediated more than 250 cases, typically complex litigation matters involving antitrust, securities or intellectual property law. Over the past few years, my practice has become almost exclusively focused on antitrust litigation. For example, and in addition to this matter, I have served or am currently serving as the mediator over the last 28 months in the following class action antitrust cases pending in the Northern District of California (listed in alphabetical order of the primary named defendant): Align, Google (Rabin), LinkedIn, Meta fka Facebook, Sutter Health, and Tesla. I also recently mediated the resolution of more than twenty separate sets of antitrust claims asserted against the National Association of Realtors and a number of large real estate brokerage firms, resulting in over $1 billion of settlement payments to the class and wide-ranging business practice changes regarding commissions and governing the way real property is sold in the U.S.

3. Prior to becoming a mediator and arbitrator and for approximately 30 years, I practiced as an attorney at Latham & Watkins LLP, specializing in antitrust disputes, where I rose

to the level of senior partner. And, following my career at Latham, I served as General Counsel, Corporate Secretary, and member of the Office of the Chairman of The Irvine Company. Once my tenure at The Irvine Company was completed in 2012, I began my career as a mediator. A copy of my biography from the Phillips ADR website is attached.

4. In February 2022, pursuant to the local rules and ADR procedures, Plaintiffs' counsel and Intuitive's counsel asked me to mediate their dispute, and I was formally retained to do so soon thereafter. Following an initial call with the parties on February 16, 2022, and a separate call with Plaintiffs on February 22, 2022, on February 24, 2022, we held a formal, half-day mediation session by Zoom. However, the case was in its infancy at that point (it was filed in May 2021), and so no resolution was reached.

5. Over the next several years, I periodically checked in with the parties by phone and/or email. And at key case junctures, I had more detailed discussions with the parties and read key decisions and briefs. For example:

- In April 2024, I read the Court's summary judgment and *Daubert* opinions and discussed those with the parties.
- In January 2025, I discussed the SIS trial and its conclusion with the parties.
- In April 2025, I read the Court's class certification opinion and discussed it with the parties.
- From July to December 2025, I read the SIS and Intuitive appellate briefs.
- In May 2026, I discussed with the parties the case management conference, at which the Court set trial for September 14, 2027.
- In June 2026, I discussed with the parties the 9th Circuit hearing concerning the SIS appeal.
- In August 2026, I read the 9th Circuit opinion concerning the SIS appeal and discussed it with the parties.

6. From early 2022 until March 2026, there was no significant movement towards settlement.

7. In March 2026, with my encouragement, the parties engaged in multiple settlement communications. Ultimately, the parties made sufficient progress on both monetary and non-monetary issues that an in-person mediation session made sense.

8. We scheduled an in-person, two-day mediation in San Francisco for October 8 and 9, 2026. At this advanced stage of the case, all its facts and circumstances were well known to the parties and me. I nonetheless asked the parties to submit brief mediation statements, largely to highlight for one another the substantial litigation risk that each side faced.

9. During that two-day mediation session, I engaged in "shuttle diplomacy" between the parties, during which substantial, arms' length negotiations took place, and also moderated two joint sessions on the non-monetary issues. At the end of the second (long) day, I made a double-blind mediator's proposal of $450 million plus the non-monetary relief which had been extensively discussed and negotiated over the course of the two-day session. Over the next several days, the parties both communicated to me that they accepted my proposal, and I then communicated to the parties that we had a deal.

10. Plaintiffs' counsel informed me that over the next week they and Intuitive counsel negotiated a detailed settlement agreement, which they signed on October 16, 2026. I have reviewed a copy of the signed agreement and find it consistent with the settlement terms the parties reached at the mediation. As I worked with the parties to reach resolution, I was guided by the governing legal standards for preliminary and final approval. Where any proposal raised any concern for me or any party with respect to approval, I discussed those concerns frankly with the parties. I have identified no such concerns with the October 16 Settlement Agreement.

11. Based on my experience and involvement in the mediation and the lengthy and detailed negotiations leading up to it, this settlement was reached through fierce litigation and substantial, arms' length negotiations between skilled, experienced, and well-informed counsel on both sides. The parties treated these negotiations with the utmost seriousness, with Plaintiffs' counsel advocating strongly for the class and Intuitive carefully considering forward looking relief regarding both remanufactured EndoWrists and third-party servicing of da Vinci robots. At all times, the parties remained ready to revert to their litigation positions if agreement could not be

reached. Given the amount of time and effort spent on this matter by the parties and the uncertainties and risks inherent in a multi-week trial—and recognizing that, ultimately, this determination sits with the Court—it is my firm opinion that the settlement reached is fair, adequate, and reasonable to all of the Class Members.

12. I am prepared to provide further information to the Court regarding these settlement negotiations, should the Court wish me to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of November 2026, in NAPA, CA.

Gregory P. Lindstrom