**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**All Actions** | **Lead Case No. 3:21-cv-03825-AMO**<br><br>**DECLARATION OF ERIC J. MILLER OF A.B. DATA, LTD. REGARDING PROPOSED NOTICE PLAN** |

I, Eric J. Miller, declare as follows:

1. I am the Senior Vice President of Case Management at A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data" or "AB"), whose corporate office is located in Milwaukee, Wisconsin. My business address is 5080 PGA Boulevard, Suite 209, Palm Beach Gardens, FL 33418, and my telephone number is 561-336-1801.

2. I submit this declaration at the request of Plaintiffs' Co-Lead Counsel in connection with the settlement of the above-captioned action (the "Action").

3. At the earlier class certification stage of this Action, I submitted the *Declaration of Eric J. Miller of A.B. Data, Ltd. Regarding Proposed Notice Plan* (ECF No. 345-3), outlining my and A.B. Data's credentials ("Class Certification Notice Plan Declaration"). A.B. Data was approved by the Court and has been acting as Notice Administrator in this Action and implemented the Court-approved class certification-related notice plan. As stated in my previous declaration, Plaintiffs' Co-Lead Counsel retained A.B. Data, after a competitive bidding process, to provide notice and related administrative services. Plaintiffs' Co-lead Counsel have used A.B. Data for various claims-administration services but have no financial or other ties with A.B. Data.

4. An updated profile of A.B. Data's background and capabilities, including representative case and client lists, is attached as **Exhibit 1**.

5. This declaration will provide the Court with information about the implementation of the class certification-related notice plan and the procedures and methods to be used to provide notice to Class Members about the proposed Settlement with Intuitive Surgical, Inc. ("Intuitive"). This declaration is based upon my personal knowledge and information provided by Plaintiffs' Co-Lead Counsel, my associates, and staff.

**CLASS CERTIFICATION NOTICE IMPLEMENTATION**

6. Pursuant to the Court's *Order on Plaintiffs' Motion to Authorize Class Notice and Appoint Notice Administrator* dated January 29, 2026 (ECF No. 359), A.B. Data implemented the class certification-related notice plan described in my Class Certification Notice Plan Declaration and approved by the Court. This plan included robust direct notice via email and First-Class Mail and supplemental paid media and establishing and maintaining a case-specific toll-free telephone number, email address, and website to serve as additional resources for potential Class Members to get more information.

7. To effectuate class certification notice, Plaintiffs' Co-Lead Counsel provided A.B. Data with a list of names (and mailing and email addresses, if available). A.B. Data utilized information databases and other standard tools to attempt to locate mailing and/or email addresses for potential Class Members for whom an email or mailing address was not provided. This list, the Class Member List, was used to provide direct notice.

8. On February 19, 2026, A.B. Data sent a Summary Notice, in the form of an email ("Email Notice"), to 1,463 potential Class Members with valid email addresses. Of the Email Notices that were sent, 1,429 were delivered and 34 were undeliverable. A copy of the Email Notice is attached as **Exhibit 2**.

9. On February 19, 2026, A.B. Data mailed a Summary Notice, in the form of a

postcard ("Postcard Notice"), via U.S. First-Class Mail to 2,126 potential Class Members with available mailing addresses. Of the Postcard Notices that were sent, 4 Postcard Notices were returned by the USPS as undeliverable as addressed ("UAA") and were re-mailed to updated addresses obtained through the USPS, an authorized representative, or third-party information services. A copy of the Postcard Notice is attached as **Exhibit 3**.

10. From February 19, 2026, through March 21, 2026, digital banner and social media advertising appeared in e-newsletters available on medical device and diagnostic industry-related websites and LinkedIn. This advertising delivered over 4,045,411 gross impressions and generated 1,065 clicks to the case-specific website.[1]

11. All digital and social media ads included an embedded link to the case-specific website. Sample banner ads as they appeared are attached as **Exhibit 4**.

## SETTLEMENT NOTICE PLAN

12. In consultation with Plaintiffs' Co-Lead Counsel, I prepared a proposed notice plan ("Notice Plan") to inform Class Members about the Settlement in this Action. This declaration will describe the Notice Plan and how it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

13. The objective of the Notice Plan is to provide notice of the Settlement to the certified Class, which is defined as:

> All entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017, to December 31, 2021.

14. The Notice Plan includes robust direct notice via email and First-Class Mail and supplemental paid media. It is designed to be substantially similar to the class certification notice

[1] Gross (targeted) impressions are the duplicated sum of audiences of all media vehicles containing the notice.

plan. The dedicated, case-specific website and telephone line will be updated to focus on the Settlement, complement the Notice Plan, and serve as an additional resource for Class Members to get more information.

***Direct Notice***

15. The proposed Notice Plan includes direct notice by email and First-Class Mail.

16. The Class Member List used to effectuate class certification notice now contains 1,970 mailing addresses and 2,087 email addresses to which direct notice was previously sent by A.B. Data and delivered. This list will be used to provide direct notice about the Settlement.

17. A.B. Data will send a Summary Notice, in the form of an email ("Email Notice"), to Class Members for whom an email address is available.

18. Prior to emailing, A.B. Data will perform several tasks to maximize deliverability. These tasks include a) running the list of recipient email addresses through a deliverability analysis to ensure the email addresses are valid and b) working with our email service providers to develop sending strategies to achieve optimal deliverability. A.B. Data will also incorporate best practices, such as excluding words or phrases known to trigger SPAM or junk filters, not including email attachments, and sending the emails in tranches.

19. A.B. Data will also send the Detailed Notice and a pre-populated Claim Form ("Notice Packet") by First-Class Mail to Class Members with a known mailing address.

20. Prior to mailing, A.B. Data will standardize and update all mailing addresses through the United States Postal Service ("USPS") national change of address ("NCOA") database. For Class Members with a registered change of address, A.B. Data will mail a Notice Packet to the updated mailing address provided by the USPS.

21. For any Notice Packet that the USPS returns to A.B. Data as undeliverable as addressed ("UAA") with a forwarding address provided, A.B. Data will promptly remail the notice

to the forwarding address. For any UAA Notice Packet returned with no forwarding address provided, A.B. Data will search for an updated address using an information provider to which we subscribe. If an updated address is available, A.B. Data will promptly remail the Notice Packet to the updated address.

22. The Summary Notice, Detailed Notice, and Claim Form will be substantially in the form of the attached **Exhibits 5-7**.

***Supplemental Paid Media***

23. To supplement the comprehensive direct notice, A.B. Data designed a paid media plan (including digital and social media) to reach Class Members who do not receive the Summary Notice via email or the Notice Packet via mail. Customized banner ads will appear in e-newsletters available on medical device and diagnostic industry-related websites. Ads will also be targeted to users on LinkedIn who have identified themselves as hospital decision-makers. These ads will appear across desktop, tablet, and mobile devices for 30 days. All digital and social media ads will include an embedded link to the case-specific website.

**WEBSITE AND TOLL-FREE TELEPHONE NUMBER**

24. A.B. Data established the dedicated, case-specific website, www.DaVinciAntitrustClassAction.com; toll-free number, 1-888-208-9630; and email address, info@DaVinciAntitrustClassAction.com, for potential Class Members to easily get information and updates about this Action.

25. The website contains relevant documents and information. The website will be updated with information about the Settlement and provide, among other things, a case summary; information about Class Members' rights and options; instructions on how Class Members may object or file a claim; important dates and deadlines; and relevant documents that Class Members may view or download, such as the Detailed Notice, the Settlement Agreement, the Amended

Complaint (ECF No. 52), the Order Granting Class Certification (ECF No. 333), the Order Re: Cross Motions for Summary Judgment (ECF No. 232), the Order Granting Defendant's Motion for Reconsideration (ECF No. 287), and any other significant pleadings and Court orders. It will be updated to include functionality for Class Members to submit their claims online. The Detailed Notice will be available on the website in English and Spanish. The website is secured with an "https" designation. As of November 18, 2026, there have been 1,534 unique visitors to the website.

26. The toll-free telephone number is equipped with an automated interactive voice response ("IVR") system. The automated IVR system presents callers with a series of choices to hear prerecorded information about this Action. It will be updated to focus on the Settlement. The automated telephone system is available 24 hours per day, seven days per week. If callers need further help, they have an option to speak with a live operator during regular business hours. After regular business hours, callers may leave a voicemail message, and their call will be returned in a timely manner. As of November 18, 2026, there have been 30 calls to the toll-free telephone number.

27. Individuals who need assistance may also send an email to have their questions answered during business hours. As of November 18, 2026, the case-specific email address established by A. B. Data has received 4 emails.

28. The Settlement Notices will include the website address and toll-free telephone number. The digital and social media ads will also include the website address and link directly to the case-specific website.

**NOTICE DESIGN**

29. The Notices are designed to be noticed, reviewed, and – by presenting the

information in plain language – understood by Class Members. The notice design follows the principles embodied in the Federal Judicial Center's ("FJC") illustrative model notices posted at www.fjc.gov. Many courts have approved notices similarly written and designed. The Notices contain substantial, easy-to-read, summaries of all key information about Class Members' rights, including the ability and deadline to object to the Settlement, or requests for attorneys' fees and expenses, notice and claims administration fees and expenses, and service awards to the Plaintiffs. Consistent with our normal practice, all Notices will undergo a final edit for grammatical errors and accuracy prior to actual mailing and publication.

30. The Summary Notice states the nature of the class action Settlement, describes the Plaintiffs' claims, and states the class definition. It provides information about Class Members' rights and options. This Summary Notice also states that important information is contained in the Detailed Notice and will provide a link to the dedicated case-specific website where the Detailed Notice can be found.

31. The Detailed Notice contains: a description of this case and the Plaintiffs' claims; the class definition; a summary of Class Members' legal rights and options; the process and deadline for Class Members who want to object or file a claim; and other information. Also, the Detailed Notice provides contact information for Plaintiffs' Co-Lead Counsel and the Claims Administrator, so Class Members may request more information.

## CLAIMS ADMINISTRATION

32. If approved by the Court, A.B. Data will also provide claims administration services, including processing each submitted Claim Form, determining each claimant's distribution amount, and preparing and sending distribution checks to eligible Class Members. A.B. Data will also provide additional services, including setting up, administering, and preparing

a tax return for the Qualified Settlement Fund ("QSF").

33. Class Members who wish to be eligible for a payment from the Settlement Fund will be required to complete, sign, and submit a Claim Form, either by mail or online through the website, no later than the claims-submission deadline established by the Court.

34. To the extent possible, the Claim Form included in the Notice Packet will be personalized to include each Class Member's da Vinci service payments to Intuitive and EndoWrist purchases by year, based on Intuitive' s records. The Claim Form will also contain a personal Unique ID Number that Class Members can utilize to file claims online through the case website. "Pre-populating" the Claim Form with known payment and purchase information, where possible, will help simplify the claims process.

35. Class Members who disagree with their pre-populated data or who have missing data will be able to supplement their known payment and purchase information and provide documents to support their claimed amounts.

36. A.B. Data will review each claim upon receipt to verify that all required information was provided. Information provided with each claim will also be reviewed for accuracy. A.B. Data will process each claim in accordance with all relevant Court orders.

37. If a claim is determined to be defective, A.B Data will send a deficiency notification to the claimant, via letter or email, that describes why the claim is deficient and including, where applicable, what is necessary to cure the deficiency. The deficiency notification will also advise claimants how much time they have to submit the appropriate information and/or documentary evidence to complete/cure their claim. If a claimant does not cure the deficiency in their claim, the claim will be recommended for rejection (in whole or in part). The deficiency notification will also advise claimants of their right to contest A.B. Data's administrative determination with respect to

their claim.

38. After the claims (and responses to deficiency notifications) have been fully processed, quality assurance reviews performed, and final administrative determinations have been made as to which claims are valid, A.B. Data will present the Court with its administrative report on the claims received, along with a proposed distribution plan. Thereafter, A.B. Data will distribute payments from the Net Settlement Fund to eligible Class Members.

39. Distributions from the Net Settlement Fund will be sent to eligible Class Members via wire transfer or check with a specified period for each claimant to cash their payment (typically 90 or 120 days).

40. In addition, A.B. Data will provide the Court a post-distribution accounting report detailing how the Settlement Fund was allocated and distributed.

**PROJECTED CLAIMS RATE & ESTIMATED CASH PAYMENT AMOUNT**

41. A.B. Data has experience with class actions involving the healthcare space, and we consistently receive a high percentage of claims from class members. For example, a recent case in which A.B. Data was involved with claims administration for a class of hospitals had a claims rate of nearly 75% (class size 5,732). See *San Miguel Hospital Corporation v. Johnson & Johnson*, No. 1:23-cv-00903-KWR-JFR (D.N.M.). In other healthcare-related matters, a very high percentage of purchases were accounted for in the claims, and, in cases where class size is known, filing rates comprised a very high percentage of the class. See *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*, Civil Action No. 2:17-md-02785-DDC-TJJ (D. Kan.); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, Case No. 18-md-2819 (E.D.N.Y.); *In re Zetia (Ezetimibe) Antitrust Litigation*, Civil Action No. 2:18-md-2836 (E.D. Va.); *KPH Healthcare Services, Inc., et al. v. Mylan, N.V., et al.*, Civil Action No. 2:20-cv-02065-

DDC-TJJ (D. Kan.); *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.); *In re Intuniv Antitrust Litigation*, Master File No. 1:16-cv-12653-ABD (D. Mass.). Our experience also indicates that healthcare-related claimants typically receive sizable payments.

42. Thus, in this Action we expect a substantial portion of the class to submit claims. Given the estimated class size (2,200) and the Settlement amount ($450 million), many of those claimants will receive sizable distribution payments.

43. Actual payment amounts will vary based on the final claims rate, adjusted payment or purchase amounts; the notice and administration costs, attorneys' fees and expenses, and service awards approved by the Court; and the final Net Settlement Fund.

## DATA PRIVACY AND SECURITY

44. A.B. Data has numerous control systems and procedures in place, that it believes meet or exceed relevant industry standards, to securely handle Class Member data. A summary of those systems and procedures, addressing the items highlighted in the updated *Northern District of California Procedural Guidance for Class Action Settlements* ("Procedural Guidance") (including technical, administrative, and physical controls; retention; destruction; audits; crisis response, etc.) is attached as **Exhibit 8**.

45. A.B. Data accepts responsibility for the security of Class Member information and claimant data; accurate calculation of claims pursuant to a court-approved plan of allocation, subject to the guidance of counsel; and accurate distribution of funds pursuant to relevant Court orders. All case data provided to A.B. Data by the parties and/or Class Members will be used solely for the purpose of this Action. Specifically, Class Members' information will not be used, disseminated, or disclosed by or to any other person for any other purpose unrelated to this Action. A.B. Data will also comply with the provisions in the Procedural Guidance.

46. A.B. Data will continue to host and maintain the case data until otherwise instructed in writing by the parties to delete, archive, or return such data. When a customer requests that A.B. Data delete or destroy all data, A.B. Data agrees to delete or destroy all such data; however, A.B. Data may retain data as required by applicable law, rule, or regulation, and to the extent such copies are electronically stored in accordance with A.B. Data's record retention or back-up policies or procedures (including those regarding electronic communications) then in effect.

47. A.B. Data maintains adequate insurance in the case of errors, which includes: (a) professional liability errors and omissions insurance coverage; (b) a fidelity bond for employee dishonesty losses (plus additional computer fraud and wire transfer communication fraud coverages); and (c) network and information security liability coverage.

## ESTIMATED ADMINISTRATION FEES

48. Based on its experience administering similar antitrust class actions and the defined scope of work provided by Plaintiffs' Co-Lead Counsel and the Settlement Agreement, A.B. Data currently estimates that the notice and settlement administration costs described may range from approximately $75,000 to $125,000. In addition to the amount stated above, A.B. Data's fees and expenses in connection with the class certification Notice Plan were deferred and to date total approximately $68,000. These costs will be paid from the Settlement Fund in accordance with the Settlement Agreement and relevant Court orders.

49. These amounts are estimates, and the true administration costs could change based on the actual circumstances and volumes. For example, such costs could change if the number of Notice Packets or Email Notices sent are substantially greater (or smaller) than A.B. Data's estimate, the media notice costs increase, or if the number of claims received is substantially greater (or smaller) than the estimate. In addition, administration costs could also be impacted by

any out-of-scope work encountered during the course of the administration. A.B. Data will always strive to minimize costs whenever possible.

## CONCLUSION

50. It is my opinion, based on my individual expertise and experience and that of my A.B. Data colleagues, that the proposed Notice Plan is designed to effectively reach all or nearly all Class Members. This plan, including robust direct notice and supplemental paid media, conforms to the standards employed by A.B. Data in similar notification programs, including the one used earlier in this Action. This Notice Plan is the best practicable approach to reach Class Members in this Action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of November, 2026 in Palm Beach Gardens, Florida.

Eric J. Miller
Senior Vice President, A.B. Data, Ltd.

# EXHIBIT 1

Class
Action
Administration

ab
DATA

# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned**, more than 40-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. A.B. Data Class Action is powered by exceptional talent, driven by innovative technology, and backed by proven experience to deliver trusted, efficient, and client-focused class action administration services.

## Services

**Every A.B. Data client is deserving of the best job we can put forward**. A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. A.B. Data – Powered by Talent. Driven by Technology. Proven by Experience.

# Services

## All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

## Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

## Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

## Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.

ab DATA

## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds**, check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to

instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.

# A.B. Data's Leadership

**A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Justin Parks, Senior Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. Mr. Parks brings extensive experience in client relations to A.B. Data's business development team. Mr. Parks has over 15 years of experience in the legal settlement administration services industry and has successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), including some of the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Elaine Pang, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Pang brings more than 15 years of experience in developing and implementing multifaceted digital and traditional media for high profile complex legal notice programs. She uses her experience in class actions and advertising to provide the best practicable notice plans for large scale campaigns across domestic and international regions, and she leverages her expertise to better understand the evolving media landscape and utilize cutting-edge technology and measurement tools. Prior to entering the class action industry, Ms. Pang worked with many leading reputable brands, including General Mills, Air Wick, Jet-Dry, Comedy Central, Madison Square Garden, Radio City Music Hall, and Geox. She earned her MBA from Strayer University and holds a BS in Marketing from Pennsylvania State University. Ms. Pang's credentials include Hootsuite Social Marketing Certification, Google Adwords and Analytics Certification, and IAB Digital Media Buying and Planning Certification.

**Paul Sauberer, Vice President of Quality**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Steve Straub, Vice President, Operations**, started with A.B. Data in 2012 as a Claims Administrator. He moved through the ranks within the company where he spent the past five years as Senior Project Manager managing many of the complex commodities cases such as *In re LIBOR-Based Financial Instruments Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, and *Laydon v. Mizuho Bank, Ltd., et al*. Mr. Straub's performance in these roles over the past ten years, along with his comprehensive knowledge of company and industry practices and first-person experience leading the project management team, has proven him an invaluable member of the A.B. Data team.

In his role as Vice President of Operations, his responsibilities include developing efficiencies within the operations center, which includes mailroom, call center, and claims processing areas. His areas of expertise include business process development, strategic/tactical operations planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. Mr. Straub is well-versed in the administration of securities, consumer, and antitrust class action settlements. He earned his Juris Doctor degree from Seton Hall University School of Law in Newark, New Jersey.

**Jack Ewashko, Director of Client Services**, brings twenty years of industry and brokerage experience to his role with A.B. Data. He is an accomplished client manager adept at facilitating proactive communications between internal and outside parties to ensure accurate and timely deliverables. Mr. Ewashko previously held positions at two claim administration firms where he oversaw the securities administration teams and actively managed numerous high-profile matters, including the $2.3 billion foreign exchange litigation. He notably served as Vice President, FX and Futures Operations at Millennium Management, a prominent global alternative investment management firm. As he progressed through trading, analytic, management, and consultancy roles at major banks and brokerage firms, Mr. Ewashko gained hands-on experience with vanilla and exotic securities products, including FX, commodities, mutual funds, derivatives, OTC, futures, options, credit, debt, and equities products. In the financial sector, he also worked closely with compliance and legal teams to ensure accuracy and conformity with all relevant rules and regulations regarding the marketing and sale of products, as well as the execution and processing of trades. He has held Series 4, Series 6, Series 7, and Series 63 licenses, and has been a member of the Futures Industry Association

(FIA) and Financial Industry Regulatory Authority (FINRA). Mr. Ewashko earned his Bachelor of Business Administration from Long Island University, Brooklyn, New York.

**Brian Devery, Director of Client Services**, brings more than a decade of experience in class action administration and project management, as well as over two decades of experience as an attorney (ret.). Mr. Devery currently focuses on consumer, antitrust, employment, and other non-securities based administrations. In addition to driving project administration, he is focused on the implementation of process improvement, streamlining, and automation. Mr. Devery is admitted to practice law in State and Federal Courts of New York with his Juris Doctorate earned from the Maurice A. Deane School of Law at Hofstra University, Hempstead, New York.

**Adam Walter, PMP, Director of Client Services**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Eric Nordskog, Director of Client Services**, started with A.B. Data in 2012 on the operations team, managing dozens of team leads and claims administrators in the administration of legal cases and actions. In 2017, Mr. Nordskog was promoted to Project Manager, due in part to his proven ability to add consistency and efficiency to the e-claim filing process with new streamlined processes and audit practices. Today, as Director of Client Services, he directs many of A.B. Data's securities, insurance, and consumer cases. He regularly oversees the administration of large insurance cases, such as two recent Cigna Insurance matters that involved complex calculations and over one million class members each. He is also the primary hiring and training manager for new project managers and coordinators. Mr. Nordskog earned his Juris Doctor degree from Marquette University Law School, Milwaukee, in 2001.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

ab DATA

# Secure Environment

**A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

# Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

## Fraud Prevention and Detection

**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

## Representative Class Action Engagements

**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

### Consumer & Antitrust Cases

- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *In re Broiler Chicken Antitrust Litigation - Commercial (Indirect)*
- *In re Broiler Chicken Antitrust Litigation – Indirect*
- *In re Broiler Chicken Antitrust Litigation – Direct*
- *In re Pork Antitrust Litigation – Directs*
- *In re Pork Antitrust Litigation – Indirects*
- *Peter Staley, et al. v. Gilead Sciences, Inc., et al.*
- *In re: Opana ER Antitrust Litigation*
- *In re Ranbaxy Generic Drug Application Antitrust Litigation*
- *In re Valeant Pharmaceuticals Int'l, Inc. Third-Party Payor Litigation*
- *Staley, et al., v. Gilead Sciences*
- *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation – Direct Purchasers*
- *Beef Direct Purchaser Antitrust Litigation*
- *BCBSM, Inc. v. Vyera Pharmaceuticals, et al.* (Daraprim)
- *In re Automobile Antitrust Cases I and II*
- *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.* (Turkey)
- *Integrated Orthopedics, Inc., et al. v. UnitedHealth Group, et al.*
- *In Re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*
- *Vista Healthplan, Inc., et al. v. Cephalon, Inc., et al.* (Provigil)
- *Jeffrey Koenig, et al. v. Vizio, Inc.*

- *Wit, et al. v. United Behavioral Health*
- *Weiss, et al. v. SunPower Corporation*
- *Smith, et al. v. FirstEnergy Corp., et al.*
- *Resendez, et al. v. Precision Castparts Corp. and PCC Structurals, Inc.*
- *Julian, et al. v. TTE Technology, Inc., dba TCL North America*
- *Eugenio and Rosa Contreras v. Nationstar Mortgage LLC*
- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*
- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*

- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Plymouth County Retirement Association v. Spectrum Brands Holdings, Inc., et al.*
- *Tung, et al. v. Dycom Industries, Inc., et al.*
- *Boutchard., et al. v. Gandhi, et al.* ("Tower/e-Minis")
- *MAZ Partners LP v. First Choice Healthcare Solutions, Inc.*
- *SEB Investment Management AB, et al. v. Symantec Corporation, et al.*
- *In re Impinj, Inc. Securities Litigation*
- *In re Netshoes Securities Litigation*
- *Yellowdog Partners, LP, et al. v. Curo Group Holdings Corp., et al.*
- *In re Brightview Holdings, Inc. Securities Litigation*
- *In re Obalon Therapeutics, Inc. Securities Litigation*
- *In re Willis Towers Watson PLC Proxy Litigation*
- *In re Blue Apron Holdings, Inc. Securities Litigation*
- *In re: Qudian Inc. Securities Litigation*
- *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, et al.*
- *In re Perrigo Company PLC Securities Litigation*
- *Enriquez, et al. v. Nabriva Therapeutics PLC, et al.*
- *Teamsters Local 456 Pension Fund, et al. v. Universal Health Services, Inc., et al.*
- *Olenik, et al. v. Earthstone Energy, Inc.*
- *Shenk v. Mallinckrodt plc, et al.*
- *In re The Allstate Corp. Securities Litigation*
- *Christopher Vataj v. William D. Johnson, et al.* (PG&E Securities II)
- *Kirkland v. WideOpenWest, Inc.*
- *Oklahoma Police Pension and Retirement System v. Sterling Bancorp, Inc.*
- *In re Uxin Limited Securities Litigation*
- *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Ergen, et al.* (Echostar)
- *Lewis v. YRC Worldwide Inc., et al.*
- *Tomaszewski v. Trevena, Inc., et al.*
- *In re Restoration Robotics, Inc. Securities Litigation*
- *Public Employees' Retirement Systems of Mississippi, et al. v. Treehouse Foods, Inc., et al.*
- *Ronald L. Jackson v. Microchip Technology, Inc., et al.*

- *In re Micro Focus International plc Securities Litigation*
- *In re Dynagas LNG Partners LP Securities Litigation*
- *Weiss, et al. v. Burke, et al.* (Nutraceutical)
- *Yaron v. Intersect ENT, Inc., et al.*
- *Utah Retirement Systems v. Healthcare Services Group, Inc., et al.*
- *In re PPDAI Group Inc. Securities Litigation*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *In re Aqua Metals, Inc. Securities Litigation*
- *St. Lucie County Fire District Firefighters' Pension Trust Fund v. Southwestern Energy Company*
- *In re CPI Card Group Inc. Securities Litigation*
- *Arkansas Teacher Retirement System, et al. v. Alon USA Energy, Inc., et al.*
- *In re TAL Education Group Securities Litigation*
- *GCI Liberty Stockholder Litigation*
- *In re SciPlay Corporation Securities Litigation*
- *In re Allergan Generic Drug Pricing Securities Litigation*
- *In re Vivint Solar, Inc. Securities Litigation*
- *In re YayYo Securities Litigation*
- *In re JPMorgan Treasury Futures Spoofing Litigation*
- *Searles, et al. v. Crestview Partners, LP, et al.* (Capital Bank)
- *In re Lyft, Inc. Securities Litigation*
- *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*
- *In re JPMorgan Precious Metals Spoofing Litigation*
- *In re Pivotal Software, Inc. Securities Litigation*
- *Longo, et al. v. OSI Systems, Inc., et al.*
- *In re Homefed Corporation Stockholder Litigation*
- *Pierrelouis v. Gogo Inc., et al.*
- *Pope v. Navient Corporation, et al.*
- *In re Merit Medical Systems, Inc. Securities Litigation*
- *In re Frontier Communications Corporation Stockholder Litigation*
- *Holwill v. AbbVie Inc.*
- *Budicak, Inc., et al. v. Lansing Trade Group, LLC, et al.* (SRW Wheat Futures)
- *Yannes, et al. v. SCWorx Corporation*
- *In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*
- *In re Myriad Genetics, Inc. Securities Litigation*
- *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*
- *The Arbitrage Fund, et al. v. William Petty, et al.* (Exactech)
- *In re Columbia Pipeline Group, Inc. Merger Litigation*
- *Martinek v. AmTrust Financial Services, Inc.*
- *City of Pittsburgh Comprehensive Municipal Pension Trust Fund, et al. v. Benefitfocus, Inc., et al.*
- *In re: Evoqua Water Technologies Corp. Securities Litigation*
- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*
- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*

ab DATA

- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*
- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*

- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Verizon OFCCP Settlement*
- *Alvarez, et al. v. GEO Secure Services, LLC*
- *Sartena v. Meltwater FLSA*
- *Carmen Alvarez, et al. v. Chipotle Mexican Grill, Inc., et al.*
- *Turner, et al. v. Chipotle Mexican Grill, Inc.*
- *Long, et al. v. Southeastern Pennsylvania Transportation Authority*
- *Matheson, et al. v. TD Bank, N.A.*
- *Ludwig, et al. v. General Dynamics Information Technology, Inc., et al.*
- *Bedel, et al. v. Liberty Mutual Group Inc.*
- *Irene Parry, et al. v. Farmers Insurance Exchange, et al.*
- *Maldonado v. The GEO Group, Inc.*
- *Alderman and Maxey v. ADT, LLC*
- *Albaceet v. Dick's Sporting Goods*
- *Rodriguez v. The Procter & Gamble Company*
- *Adekunle, et al. v. Big Bang Enterprises, Inc. d/b/a The Revenue Optimization Companies*
- *Gorski, et al. v. Wireless Vision, LLC*
- *Lopez, et al. v. New York Community Bank, et al.*
- *Hamilton, et al. v. The Vail Corporation, et al.*
- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*
- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al.* ("Dovetail Settlement")

- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*
- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

## Data Breach/BIPA Cases

- *Hunter v. J.S.T. Corp. BIPA Settlement*
- *Atkinson, et al. v. Minted, Inc.*
- *Rosenbach, et al. v. Six Flags Entertainment Corporation and Great America LLC*
- *Pratz, et al. v. MOD Super Fast Pizza, LLC*
- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*
- *In re: Barr, et al. v. Drizly, LLC f/k/a Drizly, Inc., et al.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Perrong, et al. v. Orbit Energy & Power, LLC*
- *Baldwin, et al. v. Miracle-Ear, Inc.*
- *Floyd and Fabricant, et al. v. First Data Merchant Services LLC, et al.*
- *Hoffman, et al. v. Hearing Help Express, Inc., et al.*
- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*

- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America, et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**.

# EXHIBIT 2

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**SUMMARY NOTICE OF PENDING CLASS ACTION**

# If you purchased EndoWrists and service for a da Vinci surgical robot, a class action lawsuit may affect your rights.

*Para una notificación en español, visite www.DaVinciAntitrustClassAction.com.*

*In Re: Da Vinci Surgical Robot Antitrust Litigation*
PO Box 173081,
Milwaukee, WI 53217

Postal Service: Please Do Not Mark or Cover Barcode

**NOTICE OF PENDING CLASS ACTION** You could be affected by a pending class action lawsuit that Plaintiff hospitals brought against Intuitive Surgical, Inc. ("Intuitive"). The case is *In Re: Da Vinci Surgical Robot Antitrust Litigation*, No. 21-cv-03825 (N.D. Cal.). The Court decided that this lawsuit should be tried to a jury as a class action on behalf of a group, or "class," of entities that could include you. No monetary or other benefits are available now because the lawsuit is not resolved. There is no guarantee they will ever be available. If they do become available, you will be notified about how to seek a share in any recovery, unless you choose to exclude yourself from this lawsuit (see below).

**WHAT IS THIS CASE ABOUT?** Plaintiffs allege that Intuitive violated federal antitrust laws by engaging in anticompetitive tying, exclusive dealing, and monopolization of an alleged market for the repair and replacement of EndoWrist instruments and an alleged market for da Vinci service. Plaintiffs allege that Intuitive requires hospitals and other surgery centers that wish to obtain a da Vinci robot to agree to (a) purchase EndoWrists only from Intuitive; (b) refrain from servicing, repairing, or modifying EndoWrists or hiring independent repair companies (IRCs) to do so; (c) discard EndoWrists when they reach Intuitive's pre-set use limit (typically 10); and (d) use only Intuitive to service the da Vinci robot. Plaintiffs claim that absent Intuitive's allegedly anticompetitive conduct, da Vinci robots and EndoWrists could be safely repaired and serviced by IRCs instead of Intuitive, resulting in lower prices and more options for hospitals and surgery centers. Plaintiffs seek monetary and injunctive relief as a result of these alleged violations.

Intuitive denies that it did anything wrong and maintains that its conduct and contracts have been reasonable, lawful, and procompetitive. Intuitive disputes Plaintiffs' alleged markets and denies that it has monopolized those alleged markets or engaged in any other violation of the federal antitrust laws. Intuitive disputes Plaintiffs' allegation that third-party modification of EndoWrists constitutes repairs. If the class action does not resolve prior to trial, Plaintiffs will have to prove their claims in Court.

**ARE YOU INCLUDED?** The Court certified a class (the "Class") defined as: All entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017, to December 31, 2021. The Class does not include hospitals run by the Departments of Defense and Veterans Affairs and any entity that excludes itself. If you have questions about membership in the Class, please visit www.DaVinciAntitrustClassAction.com.

**WHO REPRESENTS YOU?** The Court has appointed the law firms Spector Roseman & Kodroff P.C., Hausfeld LLP, and Cohen Milstein Sellers & Toll PLLC to represent the Class as "Plaintiffs' Co-Lead Counsel." You don't have to pay Plaintiffs' Co-Lead Counsel or anyone else to participate. Instead, if Plaintiffs' Co-Lead Counsel get money or other benefits for members of the Class, they will ask the Court for attorneys' fees and costs. Any fees and costs would be deducted from money obtained or paid separately by Intuitive. You may hire your own lawyer to appear in Court for you, but if you do, you will have to pay that lawyer.

**WHAT ARE YOUR OPTIONS?** **If you are a member of the Class, you may choose either to exclude yourself or do nothing.** Exclude Yourself: If you exclude yourself from the Class, you will keep your right to file or participate in any other lawsuit against Intuitive regarding the claims and factual allegations that this lawsuit raised or could have raised. But you will not be allowed to seek a share of any monetary benefits that may become available through this lawsuit. To exclude yourself from the Class, you must send a letter by email or mail (postmarked) by **April 20, 2026** stating that you wish to opt out. You must include (1) the name and address of the entity opting out; (2) the name, address, telephone number, email address, title, and signature of the person opting out on the entity's behalf; (3) a statement that the entity wishes to opt out of the Class in *In Re: Da Vinci Surgical Robot Antitrust Litigation*; and (4) a statement that the person opting out on the entity's behalf has authority to do so. You must send your letter by email to info@DaVinciAntitrustClassAction.com, or by mail to *In Re: Da Vinci Surgical Robot Antitrust Litigation* Exclusions, PO Box 173001, Milwaukee, WI 53217.

Do Nothing: If you do nothing, you will be bound by the outcome of this lawsuit, and you may seek a share of any monetary benefits that may become available. But you will not be able to file or participate in any other lawsuit against Intuitive regarding the claims and factual allegations that this lawsuit raised or could have raised.

**HOW CAN YOU GET MORE INFORMATION?** Important information about this lawsuit is available in the Detailed Notice at www.DaVinciAntitrustClassAction.com or by request from the Notice Administrator. You can contact the Notice Administrator by email at info@DaVinciAntitrustClassAction.com, by mail at: *In Re: Da Vinci Surgical Robot Antitrust Litigation*, PO Box 173081, Milwaukee, WI 53217, or by phone at 1-888-208-9630.

The deadlines contained in this Notice may be amended by order of the Court, so please check www.DaVinciAntitrustClassAction.com for updates.

You should review the Detailed Notice to inform yourself further of your rights in this lawsuit.

Please do not contact the Court for information about this lawsuit.

# EXHIBIT 3

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

**SUMMARY NOTICE OF PENDING CLASS ACTION**

# If you purchased EndoWrists and service for a da Vinci surgical robot, a class action lawsuit may affect your rights.

*Para una notificación en español, visite www.DaVinciAntitrustClassAction.com.*

## NOTICE OF PENDING CLASS ACTION

You could be affected by a pending class action lawsuit that Plaintiff hospitals brought against Intuitive Surgical, Inc. ("Intuitive"). The case is *In Re: Da Vinci Surgical Robot Antitrust Litigation*, No. 21-cv-0382 (N.D. Cal.). The Court decided that this lawsuit should be tried to a jury as a class action on behalf of a group, or "class," of entities that could include you. No monetary or other benefits are available now because the lawsuit is not resolved. There is no guarantee they will ever be available. If they do become available, you will be notified about how to seek a share in any recovery, unless you choose to exclude yourself from this lawsuit (see below).

## WHAT IS THIS CASE ABOUT?

Plaintiffs allege that Intuitive violated federal antitrust laws by engaging in anticompetitive tying, exclusive dealing, and monopolization of an alleged market for the repair and replacement of EndoWrist instruments and an alleged market for da Vinci service. Plaintiffs allege that Intuitive requires hospitals and other surgery centers that wish to obtain a da Vinci robot to agree to (a) purchase EndoWrists only from Intuitive; (b) refrain from servicing, repairing, or modifying EndoWrists or hiring independent repair companies (IRCs) to do so; (c) discard EndoWrists when they reach Intuitive's pre-set use limit (typically 10); and (d) use only Intuitive to service the da Vinci robot. Plaintiffs claim that absent Intuitive's allegedly anticompetitive conduct, da Vinci robots and EndoWrists could be safely repaired and serviced by IRCs instead of Intuitive, resulting in lower prices and more options for hospitals and surgery centers. Plaintiffs seek monetary and injunctive relief as a result of these alleged violations.

Intuitive denies that it did anything wrong and maintains that its conduct and contracts have been reasonable, lawful, and procompetitive. Intuitive disputes Plaintiffs' alleged markets and denies that it has monopolized those alleged markets or engaged in any other violation of the federal antitrust laws. Intuitive disputes Plaintiffs' allegation that third-party modification of EndoWrists constitutes repairs.

If the class action does not resolve prior to trial, Plaintiffs will have to prove their claims in Court.

## ARE YOU INCLUDED?

The Court certified a class (the "Class") defined as: All entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017, to December 31, 2021. The Class does not include hospitals run by the Departments of Defense and Veterans Affairs and any entity that excludes itself.

If you have questions about membership in the Class, please visit www.DaVinciAntitrustClassAction.com.

## WHO REPRESENTS YOU?

The Court has appointed the law firms Spector Roseman & Kodroff P.C., Hausfeld LLP, and Cohen Milstein Sellers & Toll PLLC to represent the Class as "Plaintiffs' Co-Lead Counsel." You don't have to pay Plaintiffs' Co-Lead Counsel or anyone else to participate. Instead, if Plaintiffs' Co-Lead Counsel get money or other benefits for members of the Class, they will ask the Court for attorneys' fees

and costs. Any fees and costs would be deducted from money obtained or paid separately by Intuitive. You may hire your own lawyer to appear in Court for you, but if you do, you will have to pay that lawyer.

## WHAT ARE YOUR OPTIONS?

**If you are a member of the Class, you may choose either to exclude yourself or do nothing.**

Exclude Yourself: If you exclude yourself from the Class, you will keep your right to file or participate in any other lawsuit against Intuitive regarding the claims and factual allegations that this lawsuit raised or could have raised. But you will not be allowed to seek a share of any monetary benefits that may become available through this lawsuit. To exclude yourself from the Class, you must send a letter by email or mail (postmarked) by **April 20, 2026** stating that you wish to opt out. You must include (1) the name and address of the entity opting out; (2) the name, address, telephone number, email address, title, and signature of the person opting out on the entity's behalf; (3) a statement that the entity wishes to opt out of the Class in *In Re: Da Vinci Surgical Robot Antitrust Litigation*; and (4) a statement that the person opting out on the entity's behalf has authority to do so. You must send your letter by email to info@DaVinciAntitrustClassAction.com, or by mail to *In Re: Da Vinci Surgical Robot Antitrust Litigation* Exclusions, PO Box 173001, Milwaukee, WI 53217.

Do Nothing: If you do nothing, you will be bound by the outcome of this lawsuit, and you may seek a share of any monetary benefits that may become available. But you will not be able to file or participate in any other lawsuit against Intuitive regarding the claims and factual allegations that this lawsuit raised or could have raised.

## HOW CAN YOU GET MORE INFORMATION?

Important information about this lawsuit is available in the Detailed Notice at www.DaVinciAntitrustClassAction.com or by request from the Notice Administrator. You can contact the Notice Administrator by email at info@DaVinciAntitrustClassAction.com, by mail at: *In Re: Da Vinci Surgical Robot Antitrust Litigation*, PO Box 173081, Milwaukee, WI 53217, or by phone at 1-888-208-9630.

The deadlines contained in this Notice may be amended by order of the Court, so please check www.DaVinciAntitrustClassAction.com for updates.

You should review the Detailed Notice to inform yourself further of your rights in this lawsuit.

Please do not contact the Court for information about this lawsuit.

# EXHIBIT 4

# If you purchased **EndoWrists** and service for a ***da Vinci Surgical Robot,***



**A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS.**

daVinciAntitrustClassAction.com

<< LEARN MORE

# EXHIBIT 5

# If You Purchased EndoWrists and Service for a da Vinci Robot from Intuitive Surgical, Inc. in the United States Between May 21, 2017 and December 31, 2021, You May be Entitled to Benefits From a $450 Million Settlement

There is a Settlement in a class action lawsuit with Intuitive Surgical, Inc. ("Intuitive"). The lawsuit alleges that Intuitive harmed competition in an alleged market for EndoWrist repair and replacement and in an alleged market for da Vinci robot service, and in doing so, violated federal antitrust laws to the detriment of its customers – hospitals and surgery centers. Intuitive denies any wrongdoing.

Earlier this year, a different notice was sent to those hospitals and surgery centers, announcing that the Court certified the case as a class action for litigation purposes. This notice is about the Settlement of the class action.

**Am I included in the Settlement?**

You are included in the Settlement because records show that you purchased certain EndoWrists and da Vinci service from Intuitive in the United States between May 21, 2017 and December 31, 2021. The covered EndoWrists are listed at www.DaVinciAntitrustClassAction.com.

**What does the Settlement provide?**

To settle this lawsuit, Intuitive will pay $450 million and provide non-monetary relief. The Settlement Fund will be distributed to the Class after deducting Court-approved attorneys' fees and expenses, notice and claims administration costs, and service awards to the class representatives.

In addition to monetary relief, Intuitive has agreed to provide non-monetary benefits that Plaintiffs' expert has valued at $1-2 billion. These benefits will be provided automatically, and Class Members do not need to submit a Claim Form or take any other action to receive them.

**How can I get a payment?**

No later than [DATE], you must submit a claim form (1) online at [link to homepage of the claim portal], or (2) by mail, postmarked by the deadline, at [mailing address]. You may have received by regular mail a packet containing a pre-populated claim form with your relevant purchase information. If you did not receive the packet and believe you are a Class Member, please contact the Claims Administrator at 1-888-208-9630. You will have an opportunity to dispute the pre-populated purchase information on your claim form.

If your claim is valid, you will receive a proportional (or *pro rata*) share of the Net Settlement Fund. Your payment amount will depend on the number of valid claims and the amount of da Vinci service and EndoWrists you purchased.

**What are my rights?**

You may object to the Settlement by [**Month 00, 2027**]. Detailed information about how to object is available on the website, www.DaVinciAntitrustClassAction.com. Because you did not exclude yourself in response to the earlier notice described above, you are bound by the Court's decisions, including as to this Settlement.

The Court will hold a hearing on [**Month 00, 2027**] to consider if it will approve the Settlement and a request for attorneys' fees up to one-third of the Settlement Fund, expenses up to $10,000,000, and service awards up to $XXX for each class representative. You or your own lawyer may appear and speak at the hearing at your own expense.

**FOR MORE INFORMATION**

**Visit: www.DaVinciAntitrustClassAction.com Call 1-888-208-9630**

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: DA VINCI SURGICAL ROBOT ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Civil Action No. 4:21-cv-03825-AMO |

# NOTICE OF CLASS ACTION SETTLEMENT

*Da Vinci Surgical Robot Antitrust Settlement*
*(In Re: Da Vinci Surgical Robot Antitrust Litigation*, No. 21-cv-03825)
United States District Court for the Northern District of California

# If You Purchased EndoWrists and Service for a da Vinci Robot from Intuitive Surgical, Inc. in the United States Between May 21, 2017 and December 31, 2021, You are Entitled to Benefits From a $450 Million Settlement.

*This Settlement Notice is provided by federal court order. It is not a solicitation from a lawyer. You are not being sued.*

**YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT. PLEASE READ THIS ENTIRE NOTICE CAREFULLY.**

*Para una notificación en español, visite www.DaVinciAntitrustClassAction.com.*

A Settlement has been reached with Intuitive Surgical, Inc. ("Intuitive") to resolve a class action lawsuit pending against Intuitive, alleging that it harmed competition in a market for EndoWrist repair and replacement and in a market for da Vinci robot service, and in doing so, violated federal antitrust laws to the detriment of hospitals and surgery centers that make up the Class.

The Class—those entitled to receive monetary and other relief from the Settlement—includes all entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time between May 21, 2017 and December 31, 2021.

Intuitive has agreed to pay $450,000,000 to the Class and provide valuable non-monetary relief. Although Intuitive denies any wrongdoing, it has settled to avoid the burden, expense, and uncertainty of a trial.

Throughout this Settlement Notice, "you" or "yourself" refers to members of the Class.

This chart summarizes your rights and options:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Submitting a timely, valid claim form is the only way you can receive a payment from the Net Settlement Fund (defined below). If you do not submit a timely claim, you will not receive any payment from the Settlement but you could still receive the benefits of the non-monetary relief. |

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | You may submit your pre-populated claim form online using the Unique ID Number listed on the claim form accompanying this Notice, or by mail postmarked, no later than **[date]**.<br><br>If you did not receive a pre-populated claim form, please contact the Claims Administrator at 1-888-208-9630. The Claims Administrator will assist you in obtaining and completing a claim form, so you may submit a claim. |
| **OBJECT TO THE SETTLEMENT** | You may object to any or all aspects of the Settlement, including the Plan of Allocation, Plaintiffs' Counsel's request for attorneys' fees and expenses, and requested service awards for the Class Representatives. For instructions on how to object, see Question 16 below.<br><br>If the Court approves the Settlement over your or any other objection, you must still submit a claim form if you want to receive a Settlement payment. |
| **GO TO THE SETTLEMENT HEARING** | The Court has scheduled a Settlement Hearing on **Month 00, 2027**.<br><br>You are not required to attend the Settlement Hearing.<br><br>If you submit a written objection, you may ask to appear and argue your objection at the Settlement Hearing where the Court will hear arguments concerning approval of the Settlement.<br><br>If you or your attorney wishes to speak at the Settlement Hearing, you must make a request to do so in your written objection.<br><br>If you choose to appear through your own attorney, you may do so at your own expense. |

- These rights and options—and the deadlines to exercise them—are explained in greater detail below.

- The Court in charge of this case must still decide whether to approve the Settlement. Payments will be made only if (a) the Court does so and (b) all appeals (if any) are resolved in favor of Plaintiffs. Please be patient.

**TABLE OF CONTENTS**

**BASIC INFORMATION ............ 6**

1. What is a class action? ............ 6
2. Why did I get this Settlement Notice? ............ 6
3. Who are the Plaintiffs? ............ 6
4. What is this lawsuit about? ............ 6
5. Why is there a Settlement? ............ 7

**WHO IS IN THE SETTLEMENT? ............ 7**

6. How do I know if I am a Class Member in this Settlement? ............ 7
7. What if I'm still not sure if I'm included? ............ 8
8. Can I still ask to exclude myself? ............ 8
9. If I didn't exclude myself, can I sue Intuitive for the same thing later? ............ 8

**THE SETTLEMENT BENEFITS ............ 8**

10. What does the Settlement provide? ............ 8
11. How and when do I receive payment from the Net Settlement Fund and how much will it be? ............ 9
12. What happens if there are funds remaining after distribution? ............ 10
13. If I excluded myself, can I get money from the Settlement? ............ 10

**WHAT AM I GIVING UP? ............ 10**

14. What am I "releasing," or giving up? ............ 10
15. What happens if the Settlement is not approved or is terminated? ............ 11

**OBJECTING TO THE SETTLEMENT ............ 11**

16. How do I tell the Court I don't like the Settlement? ............ 11
17. If I object to the Settlement, can I still file a claim? ............ 12

**SETTLEMENT HEARING ............ 13**

18. When and where will the Court decide whether to approve the Settlement? ............ 13
19. Do I have to attend the Settlement Hearing? ............ 13

**IF YOU DO NOTHING ............ 13**

20. What happens if I do nothing at all? ............ 13

**THE LAWYERS REPRESENTING YOU ............ 14**

21. Do I have a lawyer representing my interests in the Action and the Settlement? ............ 14

22. How will the lawyers be paid? Will the named Plaintiffs receive an award? ...... 14
23. Should I get my own lawyer? ...... 15
**GETTING MORE INFORMATION ...... 15**
24. Where can I get more information? ...... 15
25. Should I contact Intuitive about this case? ...... 15

## BASIC INFORMATION

### 1. What is a class action?

In a class action, one or more individuals or entities called "Class Representatives"—for example, the Plaintiffs in this action—sue on behalf of a "Class" of other individuals or entities that have similar claims. (In this action, it would be individuals or entities who have similar claims against Intuitive.) Those individuals or entities are referred to as "Class Members."

One Court and one case resolve all issues in the lawsuit for the Plaintiffs and the Class Members. The Court, as well as the Class Representatives and Co-Lead Class Counsel appointed to represent the Class (see Questions 16 and 22), all have a responsibility to make sure that the interests of the Class are adequately represented.

### 2. Why did I get this Settlement Notice?

You received this Settlement Notice because records indicate that you are a Class Member and as such are entitled to learn about a Settlement and your rights and options, including the right to receive money from the Net Settlement Fund, before the Court decides whether to approve the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Your legal rights are affected whether you act or not.

A previous notice was sent to Class Members about the Court certifying the Class for litigation purposes. This Notice is about the Settlement.

### 3. Who are the Plaintiffs?

The Plaintiffs are Larkin Community Hospital, Franciscan Alliance, Inc., and King County Public Hospital District No. 1, d/b/a Valley Medical Center. The Court appointed the Plaintiffs to represent you and the other Class Members. The Plaintiffs are sometimes referred to in this Notice as the Class Representatives.

### 4. What is this lawsuit about?

The name of the case is *In Re: Da Vinci Surgical Robot Antitrust Litigation*, No. 21-cv-03825. Judge Araceli Martínez-Olguín of the United States District Court for the Northern District of California is presiding over this class action and Settlement.

Plaintiffs brought the Action against Intuitive, the Defendant in this lawsuit. Intuitive manufactures, services, and sells the da Vinci robot and manufactures and sells the EndoWrist instruments used with the robot. Plaintiffs allege that Intuitive engaged in anticompetitive tying, exclusive dealing, and monopolization in alleged markets for (a) EndoWrist repair and replacement, and (b) da Vinci service, in violation of federal antitrust laws (Sections 1 and 2 of the Sherman Act). Plaintiffs further allege the following: (1) Intuitive's da Vinci is the dominant minimally invasive soft tissue (MIST) surgical robot in the United States, giving Intuitive monopoly power in an alleged market for MIST surgical robots; and (2) Intuitive leverages its monopoly power by contractually requiring hospitals and other surgery centers that purchase or lease da Vinci robots to (a) purchase EndoWrist instruments only from Intuitive; (b) refrain from repairing, servicing, or modifying EndoWrists or

hiring an independent service organization ("ISO") to do so; (c) discard EndoWrists when they reach Intuitive's arbitrary pre-set use limit (typically 10) in order for Intuitive to sell more EndoWrists and not, as Intuitive argues, for "safety" reasons; and (d) use only Intuitive to service hospitals' da Vinci robots. Plaintiffs further allege that Intuitive's customer contracts provide that, if a customer violates these provisions, Intuitive may cease service support for the robot, cancel the da Vinci warranty, terminate its contract with the customer, and withhold the sale of additional instruments and replacement parts.

Plaintiffs claim that absent Intuitive's allegedly anticompetitive conduct, hospitals and surgical centers (a) would not have had to purchase as many new EndoWrists because they, or the ISOs they hire, could tune-up or repair their EndoWrists, reset the use counter, and use their EndoWrists more than just 10 times, and (b) could service their own da Vincis or hire ISOs to do so, all resulting in lower prices and more options.

Intuitive denies Plaintiffs' allegations and any wrongdoing or unlawful activity. Specifically, Intuitive denies that it has market or monopoly power, and contends that Plaintiffs' alleged markets are improper. Intuitive maintains that its contracts allow customers the option to use EndoWrist instruments made or approved by Intuitive, and that its contracts therefore do not constitute tying or exclusive dealing arrangements. Intuitive also maintains that the use limits on EndoWrists and the terms of its agreements with customers are procompetitive and that they promote patient safety and product quality. Intuitive denies that third-party modification of EndoWrists constitutes "repairs."

This description of Plaintiffs' claims is only a summary. More detail is provided in the Complaint, Plaintiffs' Motion for Summary Judgment, other motions, and the Settlement Agreement, all available at www.DaVinciAntitrustClassAction.com.

### 5. Why is there a Settlement?

The case has not gone to trial, and the Court has not decided in favor of the Class or Intuitive. Instead, the Class Representatives and Intuitive have agreed to settle. The Class Representatives and Co-Lead Class Counsel believe the Settlement is best for all Class Members because of the benefits it provides to them, and it avoids the considerable risk, delay, expense, and uncertainty of trial.

Intuitive denies the allegations against it and denies that it did anything wrong. It has agreed to settle to avoid the burden, expense, and uncertainty of trial. The Settlement does not mean that any law was broken or that Intuitive did anything wrong.

## WHO IS IN THE SETTLEMENT?

### 6. How do I know if I am a Class Member in this Settlement?

On March 31, 2025, the Court certified the Class, defined as: All entities that purchased da Vinci service and EndoWrists from Intuitive in the United States at any time from May 21, 2017 to December 31, 2021 (the "Class Period").

Hospitals run by the Departments of Defense and Veterans Affairs are not included in the Class.

On January 29, 2026, the Court approved Plaintiffs' motion to authorize a detailed Notice that the Court certified this lawsuit to proceed as a class action and a summary of that notice. On February 19, 2026, the summary notice was mailed (and emailed where email addresses were known) to all potential members of the Class, and digital and social media ads appeared online with links to the detailed notice at www.DaVinciAntitrustClassAction.com ("Settlement Website"). The Notice of Pending Class Action explained, among other things, that the potential members of the Class were entitled to opt out of the Class, exactly how to do so, and that they had to opt out no later than April 20, 2026. Three hospital systems opted out and are no longer in the Class. All other entities that meet the Class definition above are Class Members.

**7. What if I'm still not sure if I'm included?**

If you are not sure whether you are included, or have any other questions, visit the website, www.DaVinciAntitrustClassAction.com, or call the toll-free number, 1-888-208-9630. You may also send questions to the Claims Administrator at *In Re: Da Vinci Surgical Robot Antitrust Litigation*, P.O. Box 173081, Milwaukee, WI 53217.

**8. Can I still ask to exclude myself?**

No. The deadline to exclude yourself from the certified Class has passed. You cannot ask to be excluded now.

**9. If I didn't exclude myself, can I sue Intuitive for the same thing later?**

No. Unless you previously excluded yourself, you gave up the right to sue Intuitive for the claims in this lawsuit.

## THE SETTLEMENT BENEFITS

**10. What does the Settlement provide?**

**a. Monetary relief**. The Settlement provides a $450,000,000 Settlement Fund. That fund, plus interest earned from the date it is deposited, minus any Court-approved Notice and Administration Expenses, attorneys' fees and expenses, Class Representative service awards, any reasonable escrow fees, and taxes due on interest earned by the Settlement Fund, is called the "Net Settlement Fund," which will be distributed to Class Members filing valid claims as discussed in Question 11 below.

**b. Non-monetary relief**. In addition to the monetary relief, Intuitive has agreed that, for a period of 5 years after the Settlement becomes final and no longer appealable, U.S. da Vinci customers—Class Members and new customers—may: (1) use S/Si and X/Xi models of Intuitive EndoWrist instruments (including instruments capable of being used on the da Vinci 5) that have been refurbished or whose use counters have been reset by customers or ISOs that have either been cleared by the FDA or authorized by Intuitive to do so; and (2) conduct, or hire ISOs to conduct, preventive maintenance and field-based repairs for da Vinci X/Xi robots, provided such customers and ISOs successfully undergo an authorization process that Intuitive has agreed to develop, pilot,

and maintain for this purpose. Plaintiffs' expert economist has analyzed the non-monetary benefits of the Settlement and values them at $1-2 billion. His analysis is available (with limited redactions due to a confidentiality order) on the Settlement Website, www.DaVinciAntitrustClassAction.com.

This is only a broad summary of the non-monetary relief Plaintiffs' Counsel obtained on behalf of the Class. The Settlement Agreement contains detailed, technical descriptions of these two forms of non-monetary relief and Intuitive's obligations to provide them, including as to its authorization processes. The Settlement Agreement also sets forth important caveats and conditions as to these benefits. The Settlement Agreement is available on the Settlement Website, www.DaVinciAntitrustClassAction.com, or by calling the Claims Administrator at 1-888-208-9630.

### 11. How and when do I receive payment from the Net Settlement Fund and how much will it be?

Accompanying this Notice is a personalized claim form pre-populated, by year, with your (a) total da Vinci service payments to Intuitive, and (b) EndoWrist purchases from Intuitive. These totals are based on purchase data produced by Intuitive during this lawsuit and include transactions between May 21, 2017 and December 31, 2023. Not all instruments and accessories purchased from Intuitive are covered by the Settlement, and only eligible EndoWrist purchases are included in your totals. A list of the EndoWrists included in the Settlement is attached to this Notice and the claim form, and may be found on the Settlement Website. If you agree with the amounts in your pre-populated claim form, you must sign and return the claim form.

If you dispute any of the amounts listed in your pre-populated claim form, you must return the claim form, indicate which amounts you dispute, and provide supporting documentation. If you dispute the EndoWrist purchases listed, you must provide documentation identifying the models and quantities of EndoWrist instruments you purchased. If you dispute the da Vinci service payments listed, you must provide documentation identifying the service payments you made to Intuitive. For each disputed amount, you must also indicate the amount you believe is correct and the difference between that amount and the amount listed on your claim form.

If you believe you are a Class Member and entitled to receive a payment from the Net Settlement Fund but you have not received a pre-populated claim form, you may request that the Claims Administrator provide a claim form for you to complete, sign, and return. You must provide documentation to substantiate your claimed da Vinci service payments to Intuitive and eligible EndoWrist purchases from Intuitive between May 21, 2017 and December 31, 2023.

**If you dispute the amount(s) on your pre-populated claim form or submit a claim form without pre-populated totals, please keep all documentation related to your eligible purchases.**

All Class Members seeking a payment from the Net Settlement Fund must submit a valid, timely claim form (whether they (a) agree with the pre-populated purchase amounts, (b) dispute the pre-populated purchase amounts, or (c) did not receive a pre-populated claim form) at www.DaVinciAntitrustClassAction.com by **MONTH DD, 20YY**, or by mail to the Claims Administrator at the address on the claim form, postmarked by **MONTH DD, 20YY**.

At this time, it is unknown how much each Class Member who files a valid claim will receive. Class Members that have submitted valid, timely claim forms will be paid proportionally (or *pro rata*) based on estimated damages calculated by applying the Class's expert's methodology to approved EndoWrist and da Vinci service purchase amounts. Each Class Member's share will be determined using approved purchase totals from May 21, 2017 through December 31, 2023. If a Class Member accepts the pre-populated totals in its claim form, its damages calculation will be based upon those figures. If a Class Member substantiates different purchase amount(s), either as part of a dispute regarding its pre-populated total(s) or in support of a new claim form, the calculations will be based on those figures. Each Class Member's share of the Net Settlement Fund will be determined by comparing that Class Member's calculated damages total to the combined calculated damages totals for all Class Members that submit valid, timely claim forms.

**This is known as the Plan of Allocation.**

The Claims Administrator will issue payments after (a) the Court grants final approval of the Settlement and all appeals from the order affirm it; and (b) all disputed purchase amounts have been resolved. If there are appeals, resolving them can take time. Please be patient.

### 12. What happens if there are funds remaining after distribution?

If there are any funds remaining after all distributions under the Plan of Allocation are made, those funds will be distributed to non-profit organization(s) approved by the Court. No remaining funds will be returned to Intuitive.

### 13. If I excluded myself, can I get money from the Settlement?

No. If you excluded yourself, you cannot file a claim, and you will not get any money from the Settlement.

## WHAT AM I GIVING UP?

### 14. What am I "releasing," or giving up?

If and when the Settlement is approved and becomes final, you will give up, or release, your right to sue Intuitive and the other Released Parties for any claims that arise out of or relate in any way to claims in the Action, including unknown claims and claims that accrue within the next five years. At that time, all Releasing Parties—Plaintiffs, Class Members, and others defined below—shall be deemed to have released all Released Claims against the Released Parties, regardless of whether you submit a claim form, object to the Settlement, or do nothing.

- "Released Parties" means, in summary, Intuitive and each of its respective past or present parents, subsidiaries, affiliates, successors and predecessors; its current and former respective officers, directors, employees, and agents; and individuals acting on behalf of the foregoing.

- "Releasing Parties" means, in summary, Plaintiffs and every other Class Member, and each of their respective past or present parents, subsidiaries, affiliates, successors and predecessors; their current and former respective officers, directors, employees, and agents; and individuals acting on behalf of the foregoing.

- "Released Claims" means, in summary, any and all individual or class-wide claims, whenever incurred, for the payment of money or for any non-monetary relief, whether known or unknown (or suspected or unsuspected), that any Releasing Party ever had, has, or may in the future have, and that accrued as of the Effective Date or accrue within 5 years after the Effective Date, arising out of or relating in any way to any conduct, acts, failures to act, statements, or omissions by any Released Party that were or could have been alleged in the Action, including any claims based on or relating to the future effect in the United States of any such conduct, acts, failures to act, statements, or omissions.

- Class Members must submit to alternative dispute resolution (mediation, arbitration, etc.) any dispute accruing within five years after the Effective Date concerning antitrust or other competition-based claims other than claims for collusion between Intuitive and any competitor.

This description of the claims you are giving up is only a summary. The complete terms of the release are set forth in the Settlement Agreement. The Settlement Agreement is available at www.DaVinciAntitrustClassAction.com. If you have any questions, you can talk to the lawyers listed in Question 22 for free, or you can talk to your own lawyer if you have questions about what this means.

### 15. What happens if the Settlement is not approved or is terminated?

The Court may not approve the Settlement or it may be terminated as outlined in the Settlement Agreement. If the Settlement is not approved by the Court, or is terminated under the terms of the Settlement, the case will proceed either to trial or negotiation of another settlement agreement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

### 16. How do I tell the Court I don't like the Settlement?

You can object to, or comment on, all or any part of the Settlement, Plaintiffs' Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives, and/or the Plan of Allocation. You can explain the reasons for your objection, and the Court will consider your views when deciding if it will approve the Settlement. You can't ask the Court to order a different Settlement; the Court can only approve or reject the Settlement (but it can order different attorneys' fees and costs, and Plaintiffs' service awards, than requested). If the Court does not approve the Settlement, no Settlement payments will be made, and the lawsuit will continue. If that is what you want to happen, you may object.

To object, you must send a letter to the Court, Plaintiffs' Counsel, and Intuitive's Counsel saying that you object. Any objection must be in writing, state that you object to the Settlement, and include:

(a) the case name and number (*In Re: Da Vinci Surgical Robot Antitrust Litigation*, No. 21-cv-03825); (b) state your full name, current mailing address, and telephone number; (c) a notice of whether you intend to appear at the Settlement Hearing (your appearance is not necessary for the Court to consider your objection); (d) proof that you are a Class Member; and (e) the specific grounds for the objection, as well as all documents or writings you'd like the Court to consider.

In addition, your objection must be both: (a) filed with the Court at the address below no later than **[date]**; and (b) mailed to Plaintiffs' Counsel and Intuitive's Counsel at the addresses provided below and postmarked no later than **[same date]**. If you fail to object in the manner set forth in this Settlement Notice, you may have waived your objection to any aspect of the Settlement.

The addresses for filing and mailing objections are:

| ***Court*** |
|---|
| Class Action Clerk<br>United States District Court for the<br>Northern District of California<br>1301 Clay Street<br>Oakland, CA 94612 |

| ***Plaintiffs' Counsel*** | |
|---|---|
| Manuel J. Dominguez<br>Cohen Milstein Sellers & Toll LLP<br>11780 U.S. Highway One<br>Suite N500<br>Palm Beach Gardens, FL 33408 | Jeffrey J. Corrigan<br>Spector Caldes & Corrigan, P.C.<br>2001 Market Street<br>Suite 3420<br>Philadelphia, PA 19103 |
| Reena A. Gambhir<br>Hausfeld LLP<br>1200 17th Street N.W.<br>Suite 600<br>Washington, DC 20036 | Michael J. Boni<br>Boni Law Firm LLC<br>1820 Rittenhouse Square<br>Philadelphia, PA 19103 |

| ***Intuitive's Counsel*** |
|---|
| William B. Michael<br>PAUL, WEISS, RIFKIND,<br>WHARTON & GARRISON LLP<br>1345 Avenue of the Americas<br>New York, NY 10105-0302 |

**17. If I object to the Settlement, can I still file a claim?**

Yes. You may file a claim even if you object to, or comment on, the Settlement.

## SETTLEMENT HEARING

The Court will hold a hearing (called a Settlement Hearing) to decide whether to approve the Settlement. You may attend and ask to speak, but you don't have to.

### 18. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Settlement Hearing on ________, at _____ **a.m.** at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 6 - 2nd Floor, 1301 Clay Street, Oakland, CA 94612. However, the Court may reschedule the hearing without further notice, so you should check the Settlement Website or the Court's PACER site (ecf.cand.uscourts.gov) to confirm that the date has not been changed.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, whether to approve it, and whether to award the requested attorneys' fees and expenses, service awards to the Class Representatives, and approve costs for pending or future Notice and Administration Expenses. If there are any objections, the Court will consider them and may listen to people who have asked to speak at the hearing.

After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 19. Do I have to attend the Settlement Hearing?

No. Co-Lead Class Counsel will be prepared to answer questions on behalf of Class Members. But you are welcome to come at your own expense.

Class Members that filed written objections may—but do not have to—appear at the Settlement Hearing, in person or through an attorney hired at their own expense. As long as you mailed your written objection on time, the Court will consider it.

If you want to appear, or if you want your own lawyer instead of Co-Lead Class Counsel to speak for you at the hearing, you must follow all the procedures for objecting to the Settlement listed in Question 16 above—and specifically include a statement whether you and your lawyer will appear at the Settlement Hearing.

## IF YOU DO NOTHING

### 20. What happens if I do nothing at all?

If you do nothing, you are still bound by the Court's decisions and judgment and by the Settlement if it is approved. Unless you submit a valid and timely claim form, you will not receive any money from the Net Settlement Fund. Regardless of whether you submit a claim form, you will release your claims as described in Question 14 above. You could still benefit from the non-monetary relief.

## THE LAWYERS REPRESENTING YOU

### 21. Do I have a lawyer representing my interests in the Action and the Settlement?

Yes. The Court has appointed lawyers to represent you and other members of the Class. These lawyers are called "Co-Lead Class Counsel."

| PLAINTIFFS' CO-LEAD CLASS COUNSEL | | |
|---|---|---|
| Reena A. Gambhir<br>Hausfeld LLP<br>1200 17th Street N.W.,<br>Suite 600<br>Washington, DC 20036<br>202-540-7200 | Jeffrey J. Corrigan<br>Spector Caldes &<br>Corrigan, P.C.<br>2001 Market Street,<br>Suite 3420<br>Philadelphia, PA 19103<br>215-496-0300 | Manuel J. Dominguez<br>Cohen Milstein<br>Sellers & Toll LLP<br>11780 U.S. Highway One,<br>Suite N500<br>Palm Beach Gardens, FL 33408<br>561-515-1400 |

In addition, there are other Court-approved lawyers representing the Plaintiffs and Class, including Michael J. Boni, Boni Law Firm LLC, 1820 Rittenhouse Square, Philadelphia, PA 19103, 610-348-2526. (That law firm and Co-Lead Class Counsel are called "Plaintiffs' Counsel" in this notice and the Settlement Agreement.)

You will not be charged for contacting these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 22. How will the lawyers be paid? Will the named Plaintiffs receive an award?

For their successfully representing and achieving the Settlement benefits for the Class, Plaintiffs' Counsel will ask the Court to award attorneys' fees in an amount not to exceed one-third of the $450 million in monetary relief and reimbursement of the reasonable expenses advanced by Plaintiffs' Counsel, with such expenses not to exceed $10,000,000.

Plaintiffs' Counsel will file a motion for attorneys' fees and expenses, service awards of $_____ for each of the three Class Representatives, and Notice and Administration Expenses with the Court by [DATE - 35 days prior to objection deadline]. The motion will be posted on the Settlement Website. If the Court approves Plaintiffs' Counsel's request, the foregoing amounts will be deducted from the Settlement Fund. No matter what happens, you will not have to pay any attorneys' fees or expenses or any other costs unless you choose to have your own attorney represent you as part of an objection and/or at the Settlement Hearing. The amount of Plaintiffs' attorneys' fees and expenses, Class Representative service awards, and Notice and Administration Expenses will ultimately be determined by the Court.

### 23. Should I get my own lawyer?

You do not need to hire your own lawyer. As a Class Member, you are represented by Plaintiffs' Counsel. You may choose to be represented by your own lawyer, but it would be at your own expense. If your lawyer wishes to speak for you in Court, he or she must file a notice of appearance.

## GETTING MORE INFORMATION

### 24. Where can I get more information?

This Notice summarizes the Settlement. For its precise terms, please see the Settlement Agreement by going to the Settlement Website, www.DaVinciAntitrustClassAction.com, calling the Claims Administrator toll free at 1-888-208-9630, writing to the Claims Administrator at *In Re: Da Vinci Surgical Robot Antitrust Litigation*, P.O. Box 173081, Milwaukee, WI 53217, or emailing the Claims Administrator at info@DaVinciAntitrustClassAction.com. Certain case documents and other information are also available on the Settlement Website.

You may also contact Plaintiffs' Counsel for the Settlement Agreement at their addresses above, by accessing the Court docket in the Action, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

***Please do not contact Judge Martínez-Olguín or the Chambers of the Court to inquire about this Settlement or the claim process.***

### 25. Should I contact Intuitive about this case?

No, Intuitive may not communicate with you about the substance of the lawsuit or the Settlement except through Co-Lead Class Counsel or your own lawyer. Intuitive cannot provide you with any advice, legal or otherwise, about the Settlement.

* * * * * * * * * * * *

DATED: [DATE]

BY ORDER OF
THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT 7

*In Re: Da Vinci Surgical Robot Antitrust Litigation*
PO Box 173081
Milwaukee, WI 53217
www.DaVinciAntitrustClassAction.com

# CLAIM FORM

## Instructions

**To be eligible for a payment from this Settlement, you must complete and submit this Claim Form (and any supporting documents, if applicable) at www.DaVinciAntitrustClassAction.com or by mail to the address listed above no later than [Month 00, 2027].**

## STEP 1: ENTER CLAIMANT INFORMATION

Please complete the Claimant Information form below.

**PERSONAL ACCESS CODE** (printed on your notice):________________________

| CLAIMANT INFORMATION | | | |
|---|---|---|---|
| **CONTACT NAME:** | First | M.I. | Last |
| **TITLE** | | | |
| **COMPANY NAME: [PRE-POPULATED]** | Company Name | | |
| **CURRENT MAILING ADDRESS:** | Address 1 | | |
| | Address 2 | | |
| | City | | |
| | State/Province | | |
| | Postal Code | Country | |
| **CONTACT TELEPHONE:** | |__|__|__| - |__|__|__| - |__|__|__|__| | | |
| **CONTACT EMAIL ADDRESS:** | | | |

## STEP 2: REVIEW YOUR PURCHASE INFORMATION

Below are your total da Vinci service payments to Intuitive and EndoWrist purchases from Intuitive from May 21, 2017 to December 31, 2023, based on purchase data produced by Intuitive during this lawsuit. (Not all instruments and accessories purchased from Intuitive are covered by the Settlement. A list of the EndoWrists included in the Settlement may be found at the end of this Claim Form and at the end of the Notice, and may be found on the Settlement Website.) These purchases will be used solely to calculate your share of the Net Settlement Fund. You will not receive a payment for the amount you purchased.

Review the pre-populated purchase data.

- If you **agree** with the pre-populated purchase data, please complete and submit this Claim Form. You do not need to submit supporting documents.

- If you **disagree** with the pre-populated purchase data or if data is missing, please fill out the relevant columns in the table below, complete this Claim Form, and submit your Claim Form along with supporting documents that prove the purchase amounts you claim. Supporting documents could include (1) actual receipts or invoices that include the type of service, and/or model number of EndoWrist products, amount paid, quantity (if applicable), delivery or service date, and delivery or service address, (2) da Vinci service agreements, or (3) any other documentation you believe demonstrates your claimed purchase amounts. Please exclude from your totals any amounts paid for taxes, shipping, and any Intuitive instruments and accessories not included in the attached list of included EndoWrists.

Service Payments

| **Year** | **Total Amount Paid (Intuitive Records)** | *Only complete these columns if you disagree with the total amount listed or data is missing.* | |
|---|---|---|---|
| | | **Check here if you disagree with the amount listed.** | **Total Amount Paid (Your Records)** |
| 2017 (starting May 21) | | | |
| 2018 | | | |
| 2019 | | | |
| 2020 | | | |
| 2021 | | | |
| 2022 | | | |
| 2023 | | | |

EndoWrist Purchases

| **Year** | **Total Amount Paid (Intuitive Records)** | *Only complete these columns if you disagree with the total amount listed or data is missing.* | |
|---|---|---|---|
| | | **Check here if you disagree with the amount listed.** | **Total Amount Paid (Your Records)** |
| 2017 (starting May 21) | | | |
| 2018 | | | |
| 2019 | | | |
| 2020 | | | |
| 2021 | | | |
| 2022 | | | |
| 2023 | | | |

## STEP 3: SIGN STATEMENT

By signing this Claim Form:

I confirm that the information in this Form is true, accurate, and complete to the best of my knowledge. I certify that I am legally authorized to sign this Claim Form on behalf of [the hospital name].

I understand, agree, and consent that the Claims Administrator and Plaintiffs' Counsel may contact me via email, phone, and/or mobile phone.

I agree to provide additional information if the Claims Administrator asks me to do so.

I will work in good faith to resolve any disputed payments and purchases, or the amount of my settlement payment, with the Claims Administrator and Plaintiffs' Counsel. If we are unable to resolve any such disputes, I will notify the Court in writing at [mailing address], and explain the basis for my disagreement and the remedy I seek.

I confirm that I submit to the jurisdiction of the United States District Court for the Northern District of California for all purposes associated with this Claim Form, any disputes relating to the Claim Form, and for all purposes associated with the Settlement; and I will abide by all applicable terms of the Settlement Agreement, including Paragraphs 8-15 (go to www.DaVinciAntitrustClassAction.com for a copy of the Settlement Agreement).

**Signature:** ____________________________________________
**Date:** ___________________________________

**Printed Full Name (First, Middle, and Last):** ________________________
**Title**: __________________________

**Company Name:** _[pre-populated]
_________________________________________________________________

## STEP 4: SUBMIT YOUR CLAIM FORM BY [MONTH 00, 2027]

Please submit your Claim Form (and any supporting documents, if applicable) at www.DaVinciAntitrustClassAction.com or mail your completed form to the address listed above, postmarked by [**Month 00, 2027**]. You **do not** need to attach supporting documents if you agree with the purchase amounts listed above.

**EndoWrist Model Numbers**

| Number | Description | Platform |
|---|---|---|
| 420001 | ASSEMBLY, POTTS SCISSORS, 8MM, IS2000 | da Vinci S/Si |
| 420006 | ASSEMBLY, LARGE NEEDLE DRIVER, 8MM, IS2000 | da Vinci S/Si |
| 420007 | ASSEMBLY, ROUND TIP SCISSORS, 8MM, IS2000 | da Vinci S/Si |
| 420033 | ASSEMBLY, BLACK DIAMOND MICRO FORCEPS, 8MM | da Vinci S/Si |
| 420036 | ASSEMBLY, DEBAKEY FORCEPS, 8MM, IS2000 | da Vinci S/Si |
| 420048 | ASSEMBLY, LONG TIP FORCEPS, 8MM, IS2000 | da Vinci S/Si |
| 420049 | 8MM, CADIERE FORCEPS, IS2000 | da Vinci S/Si |
| 420093 | 8MM, PROGRASP FORCEPS, IS2000 | da Vinci S/Si |
| 420110 | ASSEMBLY, PRECISE BIPOLAR FORCEPS, 8MM, IS2 | da Vinci S/Si |
| 420121 | ASSEMBLY,FINE TISSUE FORCEPS,8MM,IS2000 | da Vinci S/Si |
| 420157 | ASSEMBLY,SNAP-FIT SCALPEL INSTRUMENT,8MM | da Vinci S/Si |
| 420171 | ASSEMBLY,MICRO BIPOLAR FORCEPS,8MM,IS200 | da Vinci S/Si |
| 420172 | ASSEMBLY,MARYLAND BIPOLAR FORCEPS,8MM,IS | da Vinci S/Si |
| 420178 | 8MM,CURVED SCISSORS,IS2000 | da Vinci S/Si |
| 420179 | 8MM,MONOPOLAR CURVED SCISSORS,IS2000 | da Vinci S/Si |
| 420181 | ASSEMBLY,RESANO FORCEPS,8MM,IS2000 | da Vinci S/Si |
| 420183 | 8MM,PERMANENT CAUTERY HOOK,IS2000 | da Vinci S/Si |
| 420184 | ASSEMBLY,PERMANENT CAUTERY SPATULA,8MM,I | da Vinci S/Si |
| 420189 | ASSEMBLY,DOUBLE FENESTRATED GRASPER,8MM, | da Vinci S/Si |
| 420190 | 8MM,COBRA GRASPER,IS2000 | da Vinci S/Si |
| 420192 | ASSEMBLY,VALVE HOOK,8MM,IS2000 | da Vinci S/Si |
| 420194 | 8MM,MEGA NEEDLE DRIVER,IS2000 | da Vinci S/Si |
| 420203 | ASSEMBLY,PERICARDIAL DISSECTOR,8MM,IS200 | da Vinci S/Si |
| 420204 | ASSEMBLY,ATRIAL RETRACTOR,8MM,IS2000 | da Vinci S/Si |
| 420205 | ASSEMBLY,FENESTRATED BIPOLAR FORCEPS,8MM | da Vinci S/Si |
| 420207 | 8MM,TENACULUM FORCEPS,IS2000 | da Vinci S/Si |
| 420215 | ASSEMBLY,CARDIAC PROBE GRASPER,8MM,IS200 | da Vinci S/Si |
| 420227 | ASSEMBLY,PK DISSECTING FORCEPS,8MM,IS200 | da Vinci S/Si |
| 420246 | ASSEMBLY,ATRIAL RETRACTOR SHORT RIGHT,8M | da Vinci S/Si |

| Number | Description | Platform |
|---|---|---|
| 420249 | ASSEMBLY,DUAL BLADE RETRACTOR,8MM,IS2000 | da Vinci S/Si |
| 420278 | ASSEMBLY,GRASPING RETRACTOR,8MM,IS2000 | da Vinci S/Si |
| 420309 | ASSEMBLY,MEGASUTURECUT ND,IS2000 | da Vinci S/Si |
| 420318 | ASSEMBLY,SMALL GRASPING RETRACTOR,8MM,IS | da Vinci S/Si |
| 420344 | ASSEMBLY,CURVED BIPOLAR DISSECTOR,8MM,IS | da Vinci S/Si |
| 470001 | 8MM,POTTS SCISSORS,IS4000 | da Vinci X/Xi |
| 470006 | 8MM,LARGE NEEDLE DRIVER,IS4000 | da Vinci X/Xi |
| 470007 | 8MM,ROUND TIP SCISSORS,IS4000 | da Vinci X/Xi |
| 470033 | 8MM,BLACK DIAMOND MICRO FORCEPS,IS4000 | da Vinci X/Xi |
| 470036 | 8MM,DEBAKEY FORCEPS,IS4000 | da Vinci X/Xi |
| 470048 | 8MM,LONG TIP FORCEPS,IS4000 | da Vinci X/Xi |
| 470049 | 8MM,CADIERE FORCEPS,IS4000 | da Vinci X/Xi |
| 470093 | 8MM,PROGRASP FORCEPS,IS4000 | da Vinci X/Xi |
| 470171 | 8MM,MICRO BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |
| 470172 | 8MM,MARYLAND BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |
| 470179 | 8MM,MONOPOLAR CURVED SCISSORS,IS4000 | da Vinci X/Xi |
| 470181 | 8MM,RESANO FORCEPS,IS4000 | da Vinci X/Xi |
| 470183 | 8MM,PERMANENT CAUTERY HOOK,IS4000 | da Vinci X/Xi |
| 470184 | 8MM,PERMANENT CAUTERY SPATULA,IS4000 | da Vinci X/Xi |
| 470190 | 8MM,COBRA GRASPER,IS4000 | da Vinci X/Xi |
| 470194 | 8MM,MEGA NEEDLE DRIVER,IS4000 | da Vinci X/Xi |
| 470205 | 8MM,FENESTRATED BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |
| 470207 | 8MM,TENACULUM FORCEPS,IS4000 | da Vinci X/Xi |
| 470215 | 8MM,CARDIAC PROBE GRASPER,IS4000 | da Vinci X/Xi |
| 470246 | 8MM,ATRIAL RETRACTOR SHORT RIGHT,IS4000 | da Vinci X/Xi |
| 470249 | 8MM,DUAL BLADE RETRACTOR,IS4000 | da Vinci X/Xi |
| 470296 | 8MM,LARGE SUTURECUT NEEDLE DRIVER,IS4000 | da Vinci X/Xi |
| 470309 | 8MM,MEGA SUTURECUT ND,IS4000 | da Vinci X/Xi |
| 470318 | 8MM,SMALL GRASPING RETRACTOR,IS4000 | da Vinci X/Xi |
| 470344 | 8MM,CURVED BIPOLAR DISSECTOR,IS4000 | da Vinci X/Xi |
| 471006 | 8MM,LARGE NEEDLE DRIVER,IS4000 | da Vinci X/Xi |
| 471048 | 8MM,LONG TIP FORCEPS,IS4000 | da Vinci X/Xi |
| 471049 | 8MM,CADIERE FORCEPS,IS4000 | da Vinci X/Xi |
| 471093 | 8MM,PROGRASP FORCEPS,IS4000 | da Vinci X/Xi |
| 471171 | 8MM,MICRO BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |
| 471172 | 8MM,MARYLAND BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |

| Number | Description | Platform |
|---|---|---|
| 471190 | 8MM,COBRA GRASPER,IS4000 | da Vinci X/Xi |
| 471205 | 8MM,FENESTRATED BIPOLAR FORCEPS,IS4000 | da Vinci X/Xi |
| 471296 | 8MM,LARGE SUTURECUT NEEDLE DRIVER,IS4000 | da Vinci X/Xi |
| 471309 | 8MM,MEGA SUTURECUT ND,IS4000 | da Vinci X/Xi |
| 471344 | 8MM,CURVED BIPOLAR DISSECTOR,IS4000 | da Vinci X/Xi |

# EXHIBIT 8

ab DATA

**Settlement Administration Data Protection Checklist**

| Category | Control / Question | Response |
|---|---|---|
| Limitation on Use of Data | Affirmation that data provided to the administrator for purposes of notice, settlement, or award administration will be used solely for settlement implementation and for no other purpose | All data provided directly to A.B. Data will be used solely for the purpose of effecting the terms of the Settlement. A.B. Data will not use such information or information to be provided by Settlement Class Members for any other purpose than the administration of the Settlement in this Action; specifically the information provided will not be used, disseminated, or disclosed by or to any other person/entity for any other purpose. |
| Technical Controls | Firewalls and intrusion detection/prevention systems | A.B. Data uses modern next generation firewall systems which include intrusion detection, prevention, and alerting functions. A.B. Data's Information Security Policy requires firewalls be configured for intrusion detection and alerting of incidents to the A.B. Data IT department staff. |
| Technical Controls | Endpoint detection and response (EDR) systems | A.B. Data uses host based endpoint protection systems which are managed by the A.B. Data IT Department. These protection systems are configured to provide alerting to the IT team for security events who are in turn responsible for responding as required based on incident severity. |
| Technical Controls | Complex password requirements | A.B. Data requires complex passwords as part of its Information Security Policy. User accounts are required to have a minimum of 12 character passwords with alpha, numeric, and symbols along with upper and lower cases. |
| Technical Controls | Multi-factor authentication for access to systems and data | A.B. Data Class Action Administration Systems require Multi-Factor Authentication for access to all claims systems and data. |
| Technical Controls | Malware protection, anti-virus and vulnerability scanning and penetration tests | A.B. Data uses industry leading endpoint protection systems which include Malware, Anti-Virus and host based intrusion protection technologies. A.B. Data utilizes regular vulnerability testing scans on a monthly basis to detect vulnerabilities in its systems on both internal and external networks. These vulnerability scans are performed by a third party and reported back to the A.B. Data IT department for review and remediation as necessary. |
| Technical Controls | Data encryption (including, "encrypted at rest and in transit," "scrambled in storage," and "cell- or column-level encryption for PII" protocols) | A.B. Data's data encryption standards follow its Information Security Policy requirements such that all data is encrypted at rest on all servers, and, while in transit, must meet encryption standards of AES256 bit or greater. |
| Technical Controls | "Key management" for access to encrypted databases (e.g., using a hardware security module (HSM) or a key management service (KMS)) | A.B. Data utilizes a KMS (Key Management System) for encrypted databases. |

| Category | Control / Question | Response |
|---|---|---|
| Technical Controls | Access only provided on need-to-know basis | A. B. Data Group uses the "Least Privilege" security model, whereby all user accounts are granted no security permissions by default and only given the least level of security permissions necessary to properly complete user assigned work duties as defined by the specific department management. |
| Administrative Policies | Personnel and support staff risk assessment and management, including pre-hire background checks and screening processes | All employees must pass a pre-employment background check, including a lawful ten-year criminal record review, employment verification, education verification (if required by position), and credit history. In addition, substance testing is a hiring requirement. |
| Administrative Policies | Personnel and support staff required to enter into non-disclosure and confidentiality agreements | All employees must sign a Confidentiality Agreement ensuring they will recognize their responsibilities in upholding confidential information accessed using data and resources through A.B. Data's networks, databases, and all technology systems. All employees must also sign a Non-Compete, Trade Secret, Proprietary and Confidential Information Non-Disclosure Agreement. This agreement requires the employee to understand, acknowledge, and agree to all the covenants and conditions not to compete and not to disclose proprietary information without consequences for any violation. |
| Administrative Policies | Access controls to systems and data, including guidance for granting, modifying, and reviewing access rights | A.B. Data access, modifications and removal is authorized by human resources and managed by its IT department. Access permissions are reviewed and approved by management. |
| Administrative Policies | Information security and privacy policy trainings, including policy review, best practices, and data security | A.B. Data requires annual Security Awareness Trainings of all employees and upon hire. These trainings cover existing and new security policy changes to the organization. The Information Security Policy is reviewed annually by A.B. Data's Security and Compliance team ensuring it is meeting industry best practices and procedures for the industry. Additional security trainings are required for roles that require elevated levels of data access. |
| Administrative Policies | No remote access to systems for employees | A.B. Data allows certain employees remote access privileges to its systems as required for performance of their job duties. All remote access utilizes two-factor authentication. |
| Administrative Policies | Exit interviews/confirmation that terminated/departed employees are immediately cut off from access | A.B. Data's termination procedures require all user account access be removed immediately upon termination. A.B. Data's IT Department is required upon receipt of termination notification to disable account and system access (physical and logical) within one (1) hour, 24 hours per day, 7 days per week. |
| Administrative Policies | Robust audits of data privacy policies by third-party vendors | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually. Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |
| Administrative Policies | Accreditation in accordance with ISO 27001 and SOC2 (among the industry standards listed below) | A.B. Data currently holds SOC1 SSAE18 annual audit by third part auditors who review its policies annually. Additionally, A.B. Data is currently in the process of obtaining a SOC2 audit report in 2023. |

| Category | Control / Question | Response |
|---|---|---|
| Administrative Policies | Disclosure of external certifications and any notice of expiration | A.B. Data may only disclose certifications and expirations upon written request. |
| Crisis and Risk Management | Incident response / "disaster plan" for immediate response to security incidents such as data breach | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, and law enforcement if required. |
| Crisis and Risk Management | Process and timing for notification to attorneys, claimants, and other stakeholders of a data breach and consideration of resources and/or remedies to provide thereto | A.B. Data has a formal written Incident Response Policy which addresses immediate security incidents. This plan addresses all levels of response and coordination which include management, security response teams, external partners, and law enforcement if required. |
| Crisis and Risk Management | Vendor management program that determines and defines requirements to manage risk associated with outsourcing | A.B. Data has a formal vendor management and risk management policy which defines requirements for vendors of A.B. Data. This policy is available for review upon request. |
| Physical Access Controls | Physical Access Security - Security Guards | A.B. Data contracts physical security monitoring to an accredited alarm monitoring company. As part of this contract, A.B. Data has access to security guards on patrol who will respond to issues at our facilities. |
| Physical Access Controls | Physical Access Security - Access cards to facilities with assignment of identification card subject to approval and review | A.B. Data utilizes access control cards (ACS) and identification cards to control physical access to its facilities. Cards are only issued though a management approval process. |
| Physical Access Controls | Physical Access Security - Logs of access | A.B. Data retains logs of all access to/from our facilities. |
| Physical Access Controls | Alarm Systems | AB Data utilizes multiple alarm systems which offer intrusion, fire, and duress alarms. These systems are monitored by certified third party monitoring companies and respond to alarms on a 24 hour basis, 7 days a week, 365 days per year. |
| Physical Access Controls | CCTV recording systems | AB Data manages CCTV and recording systems in house through its IT department management. Video recordings are maintained for 90 days for review retention. All building external entrances and exits are covered by CCTV recordings. In our datacenter, additional coverage is monitoring all exits and entrances along with coverage views of critical equipment and systems. All systems are maintained under a battery and generator power backup to ensure continuous coverage. |
| Data Collection and Retention | Minimization of collection of personally identifiable information, e.g., social security numbers and banking information | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Data collection only required to extent necessary for settlement administration | A.B. Data only requests information that is needed for purposes of settlement administration and approved by the Court. Typically complete social security numbers and banking information are not required. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Data classification (including implementation of appropriate safeguards to protect from theft, loss, and/or unauthorized disclosure, use, access, destruction) | A.B. Data's Information Security Policy addresses all data classification and protection policies and procedures. Additionally A.B. Data's staff sign confidentiality and privacy agreements to ensure data is handled appropriately. These policies are available for review upon request. |

| Category | Control / Question | Response |
| --- | --- | --- |
| Data Collection and Retention | Various methods for ensuring data protection and security - Compliance with applicable laws and regulations (see below) | A.B. Data's Information Security Policy addresses all data compliance and regulatory protections. These policies are available for review upon request. |
| Data Collection and Retention | Various methods for ensuring data protection and security - Secure Data Transfer | A.B. Data requires all data transfers to follow industry standard security requirements. A.B. Data's Information Security Policy details these requirements, which include use of encryption during data transfers along with additional security measures. |
| Data Destruction | Preservation of data only for so long as required for administration of the settlement and any relevant reporting required following the payments or distributions | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court Order and/or client agreements. If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Secure data destruction (e.g., 6 months – 1 year or when no longer required) | A.B. Data retains settlement administration data based on the requirements set forth in relevant Court orders and/or client agreements. If no guidance is provided, A.B. Data destroys all data when no longer needed for purposes of settlement administration. |
| Data Destruction | Physical media (e.g., paper, CDs) shredded or destroyed to point where they cannot be reconstructed | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards. Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures. If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Data Destruction | Destruction of all derivative copies and/or back-ups | A.B. Data's Information Security Policy details physical media destruction requirements which meet industry standards. Electronic media that is being retired from service must be erased using the NIST Data Destruction Standard 800-88 Media Sanitation Procedures. If media is no longer functional, the media must be physically destroyed via shredding, degaussing, hammer, or other physical method to make the media fully unusable and severely difficult for physical reconstruction. |
| Applicable Laws, Standards, and Other Regulation | Industry standards: National Institute of Standards and Technology (NIST), HIPAA, FISMA, System and Organization Controls (SOC1 and SOC2) or more advanced assessment, ISO 27001 | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Applicable Laws, Standards, and Other Regulation | Local, national, international privacy regulations (including CCPA) | A.B. Data follows all applicable local, national, and international privacy regulations. A.B. Data's security team facilitates and monitors compliance with privacy policies. |
| Ethical Rules | Administrative policies and/or employee handbook incorporating commitment to ethical rules (e.g., company, court ethical rules) setting forth standards of ethical and legal behavior | All employees are subject to the terms of A.B. Data's Employee Handbook which outlines all employee administrative policies, obligations, and requirements. |
| Ethical Rules | Enforcement clauses, violation resulting in disciplinary action including and up to termination of employment | Consequences of employee breaches of administrative policies is subject to management discretion. |
| Customer Service Measures | Description of settlement website and posting thereto of relevant privacy policies or statements (including portal for reporting suspected loss of confidential data submitted with claim) | All settlement websites contain a link to A.B. Data's privacy policy and, for dynamic websites where A.B. Data collects data, A.B. Data utilize an SSL certificate that authenticates a website's identity and enables an encrypted connection. |

| Category | Control / Question | Response |
|---|---|---|
| Customer Service Measures | Explanation of role of claims administrator and how to prevent phishing (e.g., clear indication that administrator will not request confidential information by e-mail and how to identify a valid email sent from the administrator) | Emails sent to class members are written in concise language, contain prominent links to the settlement website, and include an explanation of how the email is related to a court-approved settlement. A.B. Data never requests that confidential information by sent over email. A.B. Data also implements certain best practices when disseminating email to minimize confusion and maximize deliverability. For example, the subject line, the sender, and the body of the message will be designed to overcome SPAM filters and encourage readership. Emails are sent in an embedded html text format without graphics, tables, images, attachments, and other elements that would increase the likelihood that the message could be blocked by an e-mail service provider or labeled as SPAM. Emails are also transmitted with a digital signature to the header and content, which allows e-mail service providers to programmatically authenticate that the emails are from A.B. Data's authorized mail servers. |